## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| *In re:* Application Pursuant to 28 U.S.C.§ 1782 of<br><br>FARHAD AZIMA<br>5921 Ward Parkway<br>Kansas City, Missouri 64113<br><br>      Petitioner,<br><br>  v.<br><br>INSIGHT ANALYSIS AND RESEARCH LLC<br>13727 SW 152 Street #715<br>Miami, Florida 33177<br><br>      Respondent,<br><br>SDC-GADOT LLC<br>3200 Collins Ave.<br>Suite L2<br>Miami Beach, Florida 33140<br><br>      Respondent. | No. 22 mc- |

**MEMORANDUM OF LAW IN SUPPORT OF FARHAD AZIMA'S
APPLICATION FOR ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

    A. Summary of the UK Proceedings .................................................................................2

    B. Mr. Azima's Amended Counterclaim ...........................................................................3

    C. The Discovery Requested ..............................................................................................6

III. ARGUMENT ...........................................................................................................................7

    A. Mr. Azima's Application Satisfies All of the Statutory Requirements of 28 U.S.C. § 1782 ................................................................................8

    B. The *Intel* Discretionary Factors Also Weigh in Favor of Granting Mr. Azima's Application ................................................................................................10

        1. Respondents are Not Participants in the UK Proceedings ..........................10

        2. The UK Court is Receptive to Section 1782 Discovery .............................11

        3. Mr. Azima Is Not Concealing an Attempt to Circumvent Any UK Court Proof-Gathering Restrictions ............................................12

        4. The Discovery Mr. Azima Seeks is Relevant and Narrowly Tailored ........................................................................................................13

IV. CONCLUSION ......................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007) ...................................................................................................11

*In re England/Bahamas*,
    No. 20-MC-61696, 2021 WL 3270074 (S.D. Fla. July 30, 2021 ...........................9, 11, 12, 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).................................................................................................. *passim*

*In re Kivisto*,
    521 F. App'x 886 (11th Cir. 2013) ...............................................................................................13

*In re Novoship (UK) Limited*,
    No. 20-60876, 2020 WL 3286308 (S.D. Fla. June 18, 2020)..................................................11

*Victoria, LLC v. Likhtenfeld*,
    791 F. App'x 810, 816 (11th Cir. 2019)..............................................................................9, 11

**Statutes**

28 U.S.C. § 1782................................................................................................................ *passim*

28 U.S.C. § 1782(a) .........................................................................................................8, 9, 10, 12

**Other Authorities**

*BellTrox works on same hacking contracts as ancestor Appin*, Intelligence Online,
    Issue 859, (August 26, 2020), https://www.intelligenceonline.com/corporate-
    intelligence/2020/08/26/belltrox-works-on-same-hacking-contracts-as-
    ancestor-appin,109602044-art ...................................................................................................3

Raphael Satter and Christopher Bing, *Israeli charged in global hack-for-hire
    scheme wants plea deal – court filing*, Reuters (June 30, 2021)...............................................3

I.        INTRODUCTION

U.S. citizen Farhad Azima currently has a pending case in the High Court of Justice of England and Wales (the "UK Court"), which seeks to hold a group of overseas defendants (the "UK Defendants") responsible for the unlawful hacking of Mr. Azima's electronic data. *See Farhad Azima -v- (1) RAKIA (2) David Neil Gerrard (3) Dechert LLP and (4) James Edward Deniston Buchanan* (Claim Number: HC-2016-002798) (the "UK Proceedings"). A recent affidavit filed before the UK courts makes clear that the respondents here, Florida-based companies Insight Analysis and Research LLC ("Insight") and SDC-Gadot LLC ("Gadot") (collectively "Respondents"), have material information relevant both to the unlawful hacking and to the cover up of that hacking by the UK Defendants in an earlier UK trial. In this application, brought pursuant to 28 U.S.C. § 1782, Mr. Azima seeks the assistance of this Court in obtaining this critical information for use in the UK proceeding.

As explained below, the application should be granted because it satisfies the statutory requirements for obtaining discovery under section 1782. In particular, (i) Mr. Azima seeks discovery from Florida corporations (Insight and Gadot) located in this District; (ii) the discovery will be used in proceedings that are pending before a foreign tribunal, namely the UK Court; and (iii) Mr. Azima is a party to that litigation. In addition, the discretionary factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), all support the granting of the requested discovery: (i) the Respondents to this Application are not parties to the case before the UK Court; (ii) the UK Court is receptive to discovery obtained pursuant to Section 1782; (iii) Mr. Azima's Application is not an attempt to circumvent the UK Court's proof-gathering requirements; and (iv) the discovery that Mr. Azima

seeks is highly relevant to the matters in dispute in the underlying litigation and is narrowly tailored to avoid imposing undue burden or intrusion on the respondent.

For these reasons, which are set forth more fully below, Mr. Azima respectfully submits that his application for discovery pursuant to Section 1782 should be granted.

## II. BACKGROUND

The factual background of the dispute underlying the Counterclaim is set forth in detail in the Amended Counterclaim, attached as Exhibit A to the Declaration of Dominic Holden ("Holden Decl."). Because the Amended Counterclaim is extremely lengthy, the key allegations relevant to this petition are summarized below.

### A. Summary of the UK Proceedings

The UK Proceedings commenced in 2016, when the Ras Al Khaimah Investment Authority ("RAKIA")[1] sued Mr. Azima in a civil action in the UK Court over a business dispute. RAKIA's claim against Mr. Azima was based on information that was obtained by the illegal hacking of Mr. Azima's computers and e-mail accounts.[2] Mr. Azima's counterclaim alleged RAKIA and its agents were responsible for the hacking. After an initial trial, the UK Court entered a judgment for RAKIA and dismissed Mr. Azima's counterclaim. However, the dismissal of Mr. Azima's hacking claim was reversed on appeal, and the claim was remanded for a new trial in which Mr. Azima was permitted to develop and submit new evidence.

Following the remand, Mr. Azima amended his Counterclaim to add additional defendants, namely RAKIA's outside counsel Dechert LLP, Dechert partner Neil Gerrard,

---

[1] RAKIA is the investment authority of the Ras Al Khaimah ("RAK"), which is one of the seven Emirates which together constitute the United Arab Emirates.

[2] RAKIA's initial position in the UK Proceedings was that its agents came across the material obtained from the hacking innocently on the internet.

2

RAKIA executive Jaime Buchanan, and Stuart Page, a private investigator.[3] Holden Decl. ¶ 12. The Amended Counterclaim also added more detailed allegations as to how the defendants and others conspired to hack Mr. Azima's computers and electronic data. *See* Holden Decl. ¶ 12, Ex. A ¶¶ 101-11 (summarizing the case against RAKIA and each of the additional defendants).

Recently, the Amended Counterclaim was amended further to allege a widespread scheme by the UK Defendants to present false testimony to the UK court in the first trial to cover up their illicit methods of obtaining Mr. Azima's data. *See* Holden Decl. ¶ 9, Ex. A. The most recent amendments were based largely upon an affidavit from Stuart Page, who served as a RAKIA witness in the first trial but recently provided an affidavit to the UK Supreme Court exposing the extent of the fraud perpetrated on the UK Court in the first trial.

**B. Mr. Azima's Amended Counterclaim**

As alleged in the Amended Counterclaim and detailed in Mr. Page's affidavit, RAKIA worked with Mr. Page, who in turn instructed Israeli hacker, Amit Forlit, to investigate Mr. Azima and others. Holden Decl. ¶ 10. Mr. Forlit works for Respondents, Insight and Gadot, both of which are Florida-based and both of which use signal intelligence techniques such as hacking to gather information, and is the authorized member for Gadot. *See* Holden Decl. ¶¶ 10-11, Ex. B. Mr. Forlit also has connections with other known hackers. Mr. Forlit is reportedly "close to" Aviram Azari, who is currently in custody in New York facing criminal charges related to hacking.[4]

---

[3] Mr. Page has since settled with Mr. Azima.

[4] *See BellTrox works on same hacking contracts as ancestor Appin*, Intelligence Online, Issue 859, (August 26, 2020), https://www.intelligenceonline.com/corporate-intelligence/2020/08/26/belltrox-works-on-same-hacking-contracts-as-ancestor-appin,109602044-art; Raphael Satter and Christopher Bing, *Israeli charged in global hack-for-hire scheme wants plea deal – court filing*, Reuters (June 30, 2021),

3

Mr. Page paid Mr. Forlit for his work through the US bank accounts of Respondents Insight and Gadot.  *See* Holden Decl. ¶ 10(a), Ex. C (invoices from Respondents, Insight and Gadot to Mr. Page seeking payment through accounts with Bank of America, JP Morgan Chase, and Citibank).  The invoices for payment were sent using the Respondents' Florida addresses.[5]

Mr. Page's affidavit indicates that starting in at least February 2015, Mr. Forlit and Respondents were paid to prepare a series of reports for the UK Defendants about the investigation subjects, which included Mr. Azima.  *See* Holden Decl., Ex. D ¶¶ 9-10.  At least some of the reports contained extracts from hacked communications, and it would have been clear to anyone reading the reports that the extracts were the result of hacking.  *See* Holden Decl. ¶ 15; Ex. D ¶ 16.  Though the reports were exchanged confidentially and destroyed as a matter of course, one report from March 2015 was provided to Mr. Azima by RAKIA in UK discovery.  That report proposed action against Mr. Azima by RAKIA and its agents including "*gather[ing] intelligence on their progress in order to monitor their activities and attempt to contain or ruin their plans.*"  Holden Decl. ¶ 15.  Mr. Page and Mr. Forlit communicated via secure communications, including through draft emails in a joint account that would be saved and deleted, as well as through secure messaging applications, such as Silent Circle and Signal.  *See* Holden Decl. ¶ 22, Ex. D ¶ 20.  Mr. Page paid Respondents approximately $250,000 per month for this work.  *See* Holden Decl. ¶ 10(a), Ex. D ¶ 17.

A subsequent witness statement submitted by Mr. Page in separate proceedings demonstrates that Mr. Forlit's hacking continued well into 2020.  Holden Decl. ¶ 22, Ex. E.

---

https://www.reuters.com/technology/israeli-charged-global-hacker-for-hire-scheme-wants-plea-deal-court-filing-2021-06-30/

[5] Before Respondents were incorporated in Florida, the entities conducted operations out of Israel, including with respect to the investigation of Mr. Azima.  *See* Holden Decl. ¶ 12.

According to that witness statement, during Mr. Azima's first trial in early 2020, Mr. Handjani and Mr. Gerrard met with Mr. Page on multiple occasions, including at the Royal Automobile Club in London, to instruct Mr. Page to investigate the funding of Mr. Azima's and other's litigation related RAKIA and Dechert LLP.  *Id*.  Mr. Page instructed Mr. Forlit to conduct the investigation and provided Mr. Forlit's report, which included hacked documents, to Mr. Handjani.  Mr. Page also met with Mr. Gerrard at a service station in mid-2020 to show him a copy of the report.  *Id*.  Given the role Mr. Forlit played in the investigation of Mr. Azima and others and the creation and distribution of the reports containing hacked data, as well as the payments made to Respondents for this work, Respondents should have relevant documents and information for the UK Proceedings.

In addition to describing the role that Mr. Forlit (and Respondents) played in the investigation of Mr. Azima, which included hacking, Mr. Page's affidavit also confirms that the UK Defendants, along with Mr. Forlit, engaged in an elaborate conspiracy to submit perjured testimony in the UK proceedings. *See* Holden Decl. at Ex. D, Ex. F.

To summarize, RAKIA's defense at the first trial was that they had obtained Mr. Azima's hacked data when an Israeli journalist, Majdi Halabi, found links to the hacked data on the internet.  *See* Holden Decl. ¶¶ 23-26.  Multiple RAKIA witnesses, including its lawyer, Neil Gerrard, testified to this story.  However, in his January 2022 affidavit, Mr. Page stated that this story was false because, Mr. Page states, links to the stolen data were provided to Mr. Page by Mr. Forlit.

The UK defendants concocted the false story of innocent discovery to avoid telling the UK court the true story of how they came into possession of Mr. Azima's stolen data.  *See* Holden Decl. ¶¶ 24-25.  In a series of meetings in 2018 and 2019, Mr. Forlit joined Mr. Gerrard,

5

Mr. Hughes, Mr. Buchanan, Mr. Page, and Mr. Halabi, along with others, at meetings in Cyprus, Switzerland, and England, to develop and rehearse the false story. Mr. Forlit attended these meetings, and because he was working and being paid for his services by the Respondents, they should have relevant documents about the scheme to defraud the UK Court.

A separate witness statement filed by Paul Robinson in a different proceeding shows additional document destruction extending through at least June 2020. *See* Holden Decl. at Ex. G. Mr. Robinson explained that he had undertaken various engagements for Nicholas Del Rosso, including gathering information about Mr. Azima. Mr. Robinson received his instructions from Patrick Grayson and understood those instructions to be on behalf of Mr. Del Rosso. In June 2020, Mr. Grayson directed Mr. Robinson to destroy and sanitize any material that could connect Mr. Grayson or Mr. Del Rosso to the investigation of Mr. Azima carried out by Mr. Robinson. *See* Holden Decl. ¶ 27-28, Ex. G. These instructions for investigators working for RAKIA to sanitize and destroy documents relevant to these proceedings occurred at or around the same time as Mr. Page's meetings with Mr. Handjani and Mr. Gerrard to pedal one of Mr. Forlit's reports containing hacked documents. It is likely that similar instructions were provided to Mr. Forlit as well.

    **C.**    **The Discovery Requested**

Based on the sworn allegations and pleadings in the UK Proceedings, it is clear that Respondents are in possession of relevant evidence related to both the hacking and the presentation of the false story about how the UK Defendants obtained the hacked materials. Respondents were paid millions of dollars for these services and issued invoices from their US-based addresses. Mr. Forlit's services began in February 2015 and continued through at least May 2020 and likely to present. Accordingly, Mr. Azima seeks this Court's assistance in

obtaining compulsory process so that he can collect evidence and testimony from Respondents Insight and Gadot.

Draft subpoenas detailing the documents and communications sought by Mr. Azima are attached as Exhibit H to the Holden Declaration. In summary, Mr. Azima seeks two narrow and discrete categories of documents. First, Mr. Azima seeks documents and communications related to the investigation work performed by Mr. Forlit and Respondents from February 2015 to present, including for example, the monthly reports prepared for RAKIA, the underlying hacked documents supporting those reports, and invoices, payment records, and communications about that investigative work. Second, Mr. Azima seeks documents and communication related to Mr. Azima's first UK trial and the conspiracy to mislead the court about the origin of Mr. Azima's hacked data. This request includes communications with the co-conspirators who developed and rehearsed the false testimony, as well as information about meetings with those conspirators.

With regard to the requested depositions, Mr. Azima seeks from each Respondent a Rule 30(b)(6) deposition of a company representative with knowledge of the two issues discussed above: (1) the investigation of Mr. Azima, related hacking, and preparation of investigation reports; and (2) the subsequent cover-up and scheme to submit false evidence to the UK Court. Mr. Azima also requests that the Respondents be directed to produce their employee, Mr. Forlit, for a deposition on these same subjects.

## III.    ARGUMENT

This Court has the authority to grant Mr. Azima's application pursuant to 28 U.S.C. Section 1782 for assistance in obtaining evidence for use in connection with the UK Proceedings. Section 1782 provides in pertinent part that "[t]he district court of the district in

which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  As shown below, Mr. Azima's application meets the statutory requirements for obtaining discovery under Section 1782.  Mr. Azima is an "interested person" for purposes of Section 1782.  Mr. Azima seeks evidence, through deposition testimony and documents.  That evidence is sought for use in connection with a proceeding pending before a foreign tribunal (the UK Court).  Respondents reside in or are found in Miami, Florida.

In addition, the four discretionary factors that have been identified by the United States Supreme Court in *Intel Corp.*, 542 U.S. at 249, all weigh in favor of granting Mr. Azima's request.  Respondents are not parties to the UK Proceedings; the UK Court is not opposed to this form of discovery; Mr. Azima is not concealing an attempt to circumvent the requirements of the UK Court; and the discovery sought is both highly relevant to the matters in dispute and narrowly tailored to avoid imposing any undue burden or intrusion on the Respondents.

### A. Mr. Azima's Application Satisfies All of the Statutory Requirements of 28 U.S.C. § 1782

Section 1782 authorizes federal district courts to assist foreign litigants and other interested parties in gathering evidence for use in a proceeding before a foreign or international tribunal.  *See Intel Corp.*, 542 U.S. at 247.  The statute provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the

>> document or other thing produced, in accordance with the Federal
>> Rules of Civil Procedure.

28 U.S.C. § 1782(a). The Eleventh Circuit has held that the requirements of Section 1782 are met when the following are shown: "(1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 816 (11th Cir. 2019) (cited by *In re England/Bahamas*, No. 20-MC-61696, 2021 WL 3270074, at *2 (S.D. Fla. July 30, 2021)). Mr. Azima's application satisfies all four requirements.

*First*, Mr. Azima is an "interested person" in the underlying foreign or international proceeding. Litigants in a case being adjudicated before a foreign tribunal are "interested persons" for purposes of Section 1782. The Supreme Court has held that "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel Corp.*, 542 U.S. at 256. Accordingly, Mr. Azima is an "interested person" within the meaning of Section 1782.

*Second*, Mr. Azima seeks to compel testimony by Respondents' corporate representatives and the production of documents. The nature of his requests clearly meet the second statutory requirement that the request be for "evidence."

*Third*, the discovery is sought for use in connection with a proceeding before a foreign or international tribunal. The discovery sought in this case will be used for the proceedings before the High Court of Justice of England and Wales. The UK Court is clearly a foreign tribunal within the meaning of Section 1782. *See Intel Corp.*, 542 U.S. at 257-58.

9

*Fourth*, the Respondents from which discovery is sought reside in or are found the district where the application is made. Here, Respondent Insight resides or is found in the Southern District of Florida. According to its Florida Limited Liability Company Annual Report, filed on February 3, 2021, Insight maintains an office at 13727 SW 152 Street #715, Miami, Florida, 33177. *See* Holden Decl. ¶ 10, Ex. B. According to its Florida Limited Liability Company Annual Report, filed on February 3, 2021, Gadot operates through its registered agent at an office at 4101 Pine Tree Drive, Unit 1530, Miami Beach, Florida, 33140. *Id.*

In sum, Mr. Azima's application satisfies all four statutory requirements and should be granted. As discussed *infra*, the discretionary factors identified by the Supreme Court in *Intel Corp.* also weigh in favor of granting Mr. Azima's application.

**B.     The *Intel* Discretionary Factors Also Weigh in Favor of Granting Mr. Azima's Application**

The Supreme Court in *Intel* has identified four discretionary factors that guide district courts in considering the grant of a Section 1782 discovery application: (1) whether the respondent is a participant in the international tribunal proceedings, (2) whether the foreign tribunal is resistant to section 1782 discovery, (3) whether the petitioner is concealing an attempt to circumvent tribunal proof-gathering restrictions, and (4) whether the requested discovery is relevant and narrowly tailored. Each of the discretionary factors weigh in favor of granting Mr. Azima's Section 1782 discovery application.

**1.     Respondents are Not Participants in the UK Proceedings**

First, *Intel* held that district courts should consider whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Id.* at 264. This is because "the need for § 1782(a) aid [against a participant] generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.*

10

Neither Respondent is a participant in the UK Proceedings. *See* Holden Decl. ¶ 4, Ex. A. Thus, the evidence held by Respondents is outside the jurisdictional reach of the UK Court. Indeed, Section 1782 was enacted specifically to assist parties in litigation facing this type of situation. "A foreign tribunal has jurisdiction over those appearing before it. . . .In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent [Section] 1782(a) aid." *Intel Corp.*, 542 U.S. at 244. For that reason, the fact that the person from which discovery is sought is a "nonparticipant" in the foreign or international proceedings typically weighs in favor of granting the requested discovery. *Id*. at 264.

### 2.   The UK Court is Receptive to Section 1782 Discovery

Second, *Intel* held that a district court should consider the "receptivity" of the foreign or international tribunal in question to "U.S. federal-court judicial assistance." *Intel Corp.,* 542 U.S. at 264. This does not require the district court to engage in an extensive analysis of whether a foreign or international tribunal would be receptive to discovery assistance. Rather, the inquiry requires courts to "contemplate[] the climate of the foreign court and proceedings to ascertain how receptive it will be to the sought discovery." *Victoria LLC*, 791 F. App'x at 817. In so doing, courts consider "the nature of the foreign tribunal" and "the character of the proceedings." *In re Clerici*, 481 F.3d 1324, 1335 (11th Cir. 2007). After conducting this analysis, the Southern District of Florida has granted applications pursuant to Section 1782 for matters pending in the UK. *See In re England/Bahamas*, 2021 WL 3270074, at *2; *In re Novoship (UK) Limited*, No. 20-60876, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020).

The nature and character of the UK Proceeding is such that the court will be receptive to foreign discovery. The documents, materials, and information sought from Respondents concern

11

potential evidence that supports Mr. Azima's claims of misconduct perpetrated by the counterclaim defendants. Given their relevance to the proceedings, Mr. Azima has good reason to believe that the requested documents and deposition testimony could, and would, be considered by the UK court. There is no reason to think that the discovery sought would be inadmissible or otherwise rejected by the UK court.

### 3. Mr. Azima Is Not Concealing an Attempt to Circumvent Any UK Court Proof-Gathering Restrictions

Third, *Intel* held that a district court should consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel,* 542 U.S. at 265. This factor is intended to protect against an applicant's misuse of the process by verifying that it is not attempting to avoid proof-gathering restrictions that are imposed in the underlying proceeding. However, the law is clear that, absent bad faith on the part of the applicant, a court will not weigh this factor against allowing discovery. Courts will not withhold discovery if nothing in the record suggest that the application conceals an attempt to circumvent foreign proof-gathering. Courts have held that the fact that the request information would not be discoverable in the foreign proceeding is insufficient to demonstrate that a Section 1782 application is an attempt to circumvent restrictions. *See In re England/Bahamas*, 2021 WL 3270074, at *6 (holding that there is no attempt to circumvent UK proof gathering restrictions when the court "is unaware of any authority to support the conclusion that either jurisdiction would prohibit parties from obtaining and using deposition testimony obtained elsewhere").

Mr. Azima's application does not seek to avoid any proof-gathering requirements of the UK Court and is a good-faith attempt to seek discovery that would assist him in presenting his case at the UK Court, namely by obtaining additional evidence regarding the hacking perpetrated

by the UK Defendants and subsequent cover-up. The fact that the UK Court has no jurisdiction over Respondents makes it necessary for Mr. Azima to pursue discovery from Respondents through this court. Mr. Azima is pursuing this discovery at the first available opportunity because in the first trial, RAKIA did not disclose Respondents' involvement in the investigation of Mr. Azima or in the scheme to defraud the UK Court. *See* Holden Decl. ¶¶ 5-7.

### 4. The Discovery Mr. Azima Seeks is Relevant and Narrowly Tailored

Lastly, *Intel* held that a district court should consider whether "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel Corp.*, 542 U.S. at 265. In reviewing this factor, courts look to whether the request is sufficiently tailored to the litigation issues for which production is sought. The Eleventh Circuit instructs district courts to examine whether an application contains "unduly intrusive or burdensome requests," is "made in bad faith or for the purpose of harassment," or is part of a "fishing expedition." *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013).

Here, Mr. Azima's request is narrowly tailored and not unduly burdensome or intrusive. Mr. Azima has confined his request solely to Respondents' documents related to two categories: (1) All documents and communications from February 2015 to March 2020 related to any work performed by Respondents, Mr. Forlit or Mr. Page for RAKIA and/or its agents related directly or indirectly to Mr. Azima; and (2) All documents and communications from January 2018 to March 2020 related to Mr. Azima's trial and the conspiracy to lie to the UK court about the discovery of the hacked data. This limited discovery is not overly broad or unduly burdensome. Both of the reports prepared by Respondents and the subsequent cover up of the hacking are key

issues in the Amended Counterclaim and will be issues at trial. The requests are narrowly tailored to address those two narrow issues. [6]

In sum, Mr. Azima's Section 1782 application satisfies both the relevant statutory requirements and the discretionary factors that have been identified by the Supreme Court in *Intel*. Mr. Azima's application accordingly should be granted.

## IV. CONCLUSION

For the foregoing reasons, Mr. Azima respectfully requests that this Court grant his Section 1782 discovery application and enter the accompanying proposed order directing Respondents to produce the documents requested and appear for a deposition.

Respectfully submitted,

Dated: March 8, 2022

/s/ Michael S. Pasano
Michael S. Pasano (FBN 475947)
Email: MPasano@carltonfields.com
Vanessa Singh Johannes (FBN 1028744)
E-mail: VJohannes@carltonfields.com
CARLTON FIELDS P.A.
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Telephone: (305) 530-0050

---

[6] If Respondents have any legitimate concerns regarding confidentiality and or the scope of any documents requested, Mr. Azima is willing to discuss a protective order to facilitate the production of the requested discovery. *See In re England/Bahamas*, 2021 WL 3270074, at *7.

14

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2022, I caused a true and correct copy of Farhad Azima's Memorandum of Law in support of his Application was sent via FedEx to the following recipient:

Insight Analysis and Research LLC
13727 SW 152 Street, Unit 715
Miami, Florida 33177
Serve: SRSL Management, Inc. (Registered Agent)
4101 Pine Tree Drive, Unite 1530
Miami Beach, Florida 33140

SDC-GADOT LLC
W 210 89th Street, Apt. 1K
New York, NY 10024
Serve: SRSL Management, Inc. (Registered Agent)
4101 Pine Tree Drive, Unite 1530
Miami Beach, Florida 33140

/s/ Michael S. Pasano
Michael S. Pasano