IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re: Application Pursuant to<br>28 U.S.C. 1782 of<br><br>FARHAD AZIMA<br><br>      Petitioner,<br>v.<br><br>INSIGHT ANALYSIS AND RESEARCH,<br>LLC, and SDC-GADOT LLC,<br><br>      Respondents, | Case No.: 22-20707-MC-MARTINEZ |

## NON-PARTY'S SUPPLEMENT TO MOTION TO QUASH SUBOPENA AND SERVICE OF SUBPOENA, AND MOTION FOR PROTECTIVE ORDER, AND RESPONSE TO PETITIONER'S CROSS-MOTION TO COMPEL:

Non-party, AMIT FORLIT, by and through the undersigned attorneys, hereby files this, his Supplement to his Motion to Quash Subpoena and Service of Subpoena, and his Response to the Petitioner's Cross-Motion to Compel, upon proffer of the following:

1. On May 16, 2022, AMIT FORLIT filed an Affidavit in support of his Motion to Quash. See DE # 10-1. Therein, he confirmed under penalty of perjury that a) he is not a resident of the Unites States, b) he is not a resident of the State of Florida, c) SDC-GADOT, LLC has not conducted business in Florida, and d) though the entity has remained active it has no employees and conducts no business.

2. Shortly thereafter, the Petitioner filed a Response in Opposition to AMIT FORLIT's Motion to Quash Subpoena and Service of Subpoena. See DE # 14 and 14-1. The Response also incorporated a Cross-Motion seeking relief directed to the Respondents, compelling them to

produce individuals for a Rule 30(b)(6) deposition. This filing supplements AMIT FORLIT'S original Motion, and is also directed to the portion of Petitioner's Cross-Motion to Compel which appears directed to AMIT FORLIT.

3. As an initial point, nowhere the Petitioner's Response has the Petitioner contended or asserted that AMIT FORLIT was validly and lawfully served with a subpoena for his deposition. The Response tacitly acknowledges that "service" of the subpoena was not made personally upon AMIT FORLIT, where the Petitioner admits that his counsel delivered a copy of the subpoena to an agent of a corporate entity (SDC-GADOT, LLC) as an e-mail attachment, and then Petitioner's counsel requested that said agent send the deposition subpoena, via e-mail, to AMIT FORLIT for the benefit of the Petitioner. See Response at DE 14-1, Pages 53-66 of 97.

4. There is currently a split of authority in the Eleventh Circuit as to whether personal service of subpoenas pursuant to Rule 45 is required. Though this Court initially sided with the majority view (*See In re Under Investigation by Grand Jury No.1*, 2011 WL 761234 (S.D. Fla. 2011)) which required personal service of process for Rule 45 subpoenas, more recent decisions of this Court have followed a more relaxed standard, upholding and finding service appropriate where a showing is made that "service that is reasonably calculated to ensure actual receipt of the subpoena" has been performed. *See eg Dixon v. Bank of Am., N.A.*, 2019 U.S. Dist. LEXIS 134369, *4 (S.D. Fla. 2019) ("There is clearly conflicting authority on the issue of whether personal service of a subpoena is required. *See Rainey v. Taylor*, No. 18-24802-MC, 2019 U.S. Dist. LEXIS 72138, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019). However, recent decisions in this District have found that Rule 45 does not require personal service, but it does require service that is reasonably calculated to ensure actual receipt of

the subpoena. *See e.g., TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019); *Rainey v. Taylor*, 2019 U.S. Dist. LEXIS 72138, 2019 WL 1922000, at *2; *Bozo v. Bozo*, No, 2013 U.S. Dist. LEXIS 198636, 2013 WL 12128680, at *1-2 (S.D. Fla. Aug. 16, 2013).")). While your undersigned would submit that the rationale in *In re Under Investigation by Grand Jury No.1* is sound, and that it is supported by fellow Court rulings holding that the majority rule should be followed (such as *Green v. Pickens County Sch. Sys.*, 2021 U.S. Dist. LEXIS 119446, *18 (N.D. Ga. 2021)), your undersigned will address below how the "service" attempt here falls woefully short of an attempt that is "reasonably calculated to ensure actual receipt of the subpoena."

5. Here, the Petitioner's "service" attempt is one which, only by sheer luck and a non-party's double checking of rejected forwarded emails, resulted in the delivery of electronic e-mail attachment copies of the subject subpoena to AMIT FORLIT. As can be seen by the documents proffered as Exhibits to AMIT FORLIT's Motion to Quash (specifically Exhibit 1 at DE 7-1), and the e-mail communications involving Petitioner's counsel attached as Exhibits to Petitioner's Response (specifically Exhibits 6 - 9 at DE 14-1), the Petitioner and his counsel were well aware that they were seeking to obtain the "consent" of an agent who lacked authority to bind the Respondents, let alone non-party AMIT FORLIT, as the vehicle for "service" of the subject deposition subpoenas. It was only after the Petitioner retained a process server to actually deliver document production subpoenas to Mr. Shimon Goldberger (as registered agent of the two Respondents) that the Petitioner's counsel conducted a follow-up call with Mr. Goldberger, thereafter providing copies of additional deposition subpoenas

as e-mail attachments with a request that they be forwarded to the intended deponents. One such attachment included the deposition subpoena at issue directed to AMIT FORLIT.

6. After Petitioner's counsel requested that Mr. Goldberger deliver the e-mail attachments (on behalf of Petitioner and Petitioner's counsel), Petitioner's counsel conducted further follow-up contact with Mr. Goldberger wherein he advised that he did not directly confirm that AMIT FORLIT actually received the forwarded e-mail attachments, but instead Mr. Goldberger relied on his contacts with a "Mr. Propis" as a basis for confirming delivery and receipt. Moreover, in his response email dated April 27, 2022 Mr. Goldberger expressly stated the following to Petitioner's counsel:

> **"I have not heard back yet. I messaged Mr. Propis if he has heard from. I will not be attending any depositions. I do not represent the companies. I am not their authorized agent or legal representative. Nor do I have any knowledge regarding their business. I am only the registered agent for communication purposes."**

7. At no point in the communications did Mr. Golberger ever state that he was authorized to accept service, or to convey a deposition subpoena via email, on behalf of AMIT FORLIT. To the contrary, he actively asserted that he was not an authorized agent for the Respondents, he had no authority to do anything accept receive communications in his capacity as registered agent, and that he had done nothing more than forward via e-mail the electronic documents which were sent to Mr. Goldberger by Petitioner's counsel.

8. Under the instant circumstances, Petitioner has wholly failed to show valid and proper service of the deposition subpoena directed to AMIT FORLIT. The instant factual scenario demonstrates the pitfalls of a more relaxed standard for "service" of Rule 45 subpoenas, as here the Petitioner and his counsel were aware at all times that AMIT FORLIT was not a

Florida resident (having relied upon Florida Department of State, Division of Corporations filings for SDC-GADOT, LLC to identify AMIT FORLIT in the first place, which therein identified a contact address for AMIT FORLIT in Tel Aviv, Israel), and yet despite this they sought to use 28 U.S.C. § 1782 as a vehicle to issue a deposition subpoena for a foreign non-party who was not residing in or found in this District, with the express intention of serving the deposition subpoena via e-mail upon a third person to have it "passed along" to the non-party, and then to seek an Order of the Court requiring the foreign party to appear domestically in Miami for a deposition if said party did not travel from abroad voluntarily.

9. As the foregoing shows that service of the subpoena was not valid, it must be quashed and a protective Order granted disallowing the individual deposition of AMIT FORLIT based upon said defective service.

10. Second, the Plaintiff's Response in Opposition cites to no authority for the proposition that 28 U.S.C § 1782 may be stretched and expanded to allow for the knowing issuance, and e-mail delivery, of a subpoena for deposition in the Southern District of Florida directed to a person or entity which is not a resident of the District and is not found in the District for the express purpose of requiring such person or entity to travel from abroad to a location in the District for a deposition. Instead, the Petitioner heavily interjects his false "conspiracy theory" as a justification for expansion of the scope of 28 U.S.C. § 1782 far beyond its limited statutory application, and in so doing completely overlooks and ignores well established Florida law holding that a corporate entity such as a limited liability company is a separate entity, distinct and apart from its owners or Members, and the activities of the entity do not automatically render Members liable for the entity or confer jurisdiction of the Courts over the individual

owners or Members based upon the entity's activities. *See gen. Great Lakes Ins. Se v. Sea 21-21 LLC*, 2021 U.S. Dist. LEXIS 248686, *24 (S.D. Fla. 2021) ("Moreover, Jet Boat Miami is a distinct legal entity from SEA 21, and both entities are legally distinct from Mr. Fernandez. *See Bigfoot Media Props., LLC v. Cushman In T, LLC*, 185 A.D.3d 772, 773, 128 N.Y.S.3d 36 (N.Y. App. Div. 2020) ( "[A] limited liability company is a separate legal entity from its members[.]" (alterations added; quotations marks and citations omitted)); *see also* Fla. Stat. § 605.0108(1) ("A limited liability company is an entity distinct from its members.")"); see also *AMI Global Meeting Solutions v. Fin. Brand*, 2016 U.S. Dist. LEXIS 191584, *3-4 (S.D. Fla. 2016) ("Moreover, it is well-established that limited liability companies are distinct legal entities, separate from their members. E.g., In re Harder, 413 B.R. 827, 835 (Bankr. D. Or. 2009) ("Fundamental principles of corporate law hold that . . . a LLC and its members are separate legal entities")."); see § 605.0108(1), Fla. Stat. (2013); § 605.0304, Fla. Stat. (2013); § 605.04093, Fla. Stat. (2013). It is axiomatic that, as a corporate entity and its Members are separate and distinct legal entities, the service of process upon one does not automatically confer jurisdiction of the issuing Court upon the other.

11. As to the "hacking" conspiracy narrative advanced by the Petitioner as a basis for compelling AMIT FORLIT to appear in this District for a deposition, while the Petitioner waxes poetic about his belief in the creation of a "criminal enterprise for the precise purpose of laundering the proceeds of computer hacking" in Florida (doing so based upon the affidavit statements of one Mr. Stuart Page who, therein, admits to the prior commission of perjury via false testimony he provided to the U.K. Courts no less [See DE 14-1 at Exhibit 13, Attachment B,

at Paragraphs 32 and 33])[1], the Petitioner turns a blind eye to factual inconsistencies in his own conspiracy theory which demonstrate the abject falsity of the Petitioner's assertions.

12. Firstly, the Respondent entities were created on **October 18, 2017**. This is established by the same corporate filings relied on by the Petitioner to identify AMIT FORLIT as Member of SDC-Gadot, LLC, which filings are publicly available from the Florida Department of State, Division of Corporations. Despite this, the Petitioner relies upon Mr. Page's "sworn" statements that the entities (specifically "Insight") existed and provided services **from 2015 through 2020**. Mr. Page's testimony, which is the backbone of the support for the Petitioner's theory and request for discovery, is temporally impossible, and yet the Petitioner and his counsel ignore this.

13. Next, Petitioner, and his counsel, know full well that they have initiated other proceedings in the Federal District Courts in the United States pertaining to the alleged "hacking", and therein they have asserted (as Mr. Holden states in DE 1-3) that any alleged "hacking" purportedly occurred between March of 2015 and September of 2016, notably **years before either of the Respondent entities were created**. Attached hereto as Exhibit "2" is a true copy of a Complaint filed by the Petitioner in the United States District Court in and for the Middle District of North Carolina (in Case No.: 20-cv-954), wherein the Petitioner is currently suing Defendants NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC., alleging "Defendants Del Rosso and Vital oversaw and directed the hacking of Plaintiff Farhad Azima. Defendants stole Azima's computer data, including emails and trade secrets.

---

[1] Mr. Stuart Page is also a party Defendant in an action brought by the Petitioner against RAKIA and multiple other party Defendants in judicial proceedings in the UK. See Exhibit "1" attached hereto, which is a "Declaration" of Petitioner's English legal counsel, Dominic Holden, stating as much.

The stolen data was then published online and used by Defendants and others, on behalf of the Ras Al Khaimah Investment Authority ("RAKIA"), in an attempt to ruin Azima's reputation and damage him financially. Upon information and belief, Defendants were engaged and paid by Dechert LLP, which represented RAKIA in a dispute with Azima." Therein, Petitioner expressly alleges that the "hacking" performed by said Defendants (notably parties who are not AMIT FORLIT) occurred in 2015, and that by August 7, 2016 "BellTroX" and "CyberRoot" had created blog sites with BitTorrent links to "stolen" data belonging to the Petitioner.

14. Of note, not a single allegation in Case No.: 20-cv-954 identifies non-party AMIT FORLIT or alleges a) that he performed or participated in this "hacking", b) that he was somehow affiliated with "BellTroX" or "CyberRoot" after the fact, or c) that he was in any way involved in setting up the BitTorrent sites which hosted the Petitioner's data.

15. In now-dismissed Case 1:16-cv-01948 brought in the United States District Court in and for the District of Columbia, the Petitioner alleged directly that RAK and RAKIA were responsible for the alleged "hacking" of the Petitioner and the illegal acquisition of his "data", with the "hacking" having occurred during the same time period (i.e., early 2015 through August of 2016). A true copy of the Petitioner's Amended Complaint in said action is attached hereto as Exhibit "3". That action was ultimately dismissed by the Court on forum non-conveniens grounds so that the Petitioner could pursue his claims in the Courts of UK, which he is apparently now doing.

16. Again, **it is temporally impossible** for AMIT FORLIT to have worked for either Respondent, and in such capacity to have "hacked" the Petitioner, years before either of the Respondent entities existed.

17. In reality, AMIT FORLIT did nothing of the sort alleged in the malicious and defamatory filings presented by the Petitioner in this matter. Attached hereto as Exhibit "4" is a supplemental affidavit of AMIT FORLIT, attesting under oath and penalty of perjury to the fact that:

    a. He is not a United States Citizen.

    b. He does not hold a green card.

    c. He was last in Florida in 2017, and has not conducted any business in the State of Florida, does not work in the State of Florida, and has no current plans to return to the State of Florida.

    d. He was last in the United States in 2019 when he travelled to New York.

    e. He is not a hacker, and did not hack the Petitioner or steal any of his data.

18. The entirety of the Petitioner's basis for the discovery sought pertaining to AMIT FORLIT is nothing more than a fanciful fabrication pointing the finger to the next target "hacker" of the moment, completely ignoring inconsistent statements and positions of the Petitioner as to who allegedly "hacked" him, including those that the Petitioner is currently advancing in the aforementioned alternate forums.

19. It is highly puzzling, and troubling, that Petitioner and his counsel would be aware of, and actively participate in, these other foreign proceedings without bringing to the attention of this Court the fact that, while simultaneously making the defamatory and false allegations that

AMIT FORLIT is an "Israeli Hacker" who "hacked" the Petitioner to obtain private and confidential information and data (with no factual support for said false and libelous assertions other than the sworn statements of one Mr. Page who admits to having previously provides a false witness report to the Courts of the UK), the Petitioner is actively suing other individuals and entities, in other forums, as the alleged underlying culprits of the exact same "hacking" activity.

20. It is readily apparent that the Petitioner is forum shopping his claims and requests for discovery, bouncing from District to District and party to party (and in this case non-party AMIT FORLIT), and the Petitioner is now relying upon a false affidavit of an admitted perjurer as the basis for a secondary affidavit (the Dominic Holden Declaration) which is ripe with conjecture and hearsay, all for the end-around purpose of trying to obtain discovery from non-party AMIT FORLIT in a jurisdiction in which a) he does not reside, and b) in which he is not found.

21. Again, Petitioner has cited to no authority holding that a District Court, acting under 28 U.S.C. § 1782, can compel a non-party, non-resident, non-Citizen to appear domestically for a discovery deposition to obtain testimony to be used in a foreign proceeding. Your undersigned has also failed to locate any on-point authority which would support the Petitioner's position asserted in his Response in Opposition.

22. Moreover, the link between AMIT FORLIT and this District (and the State of Florida in general) is extremely attenuated, and a careful examination of the "affidavits" and "declarations" put forward by the Petitioner shows that there are no sworn attestations or assertions that AMIT FORLIT a) worked for either Respondent in Florida, b) performed any

activities in Florida, or c) has even been in the State of Florida at any point in recent history (or for that matter during the timeframe in which the alleged "hacking" activities occurred).

23. In point of fact, Petitioner went out of his way to include a footnote in his original Memorandum of Law (DE 1-2) at page 4, footnote 5, which expressly states: "**Before Respondents were incorporated in Florida, the entities conducted operations out of Israel**, including with respect to the investigation of Mr. Azima". While this reference cites to paragraph 12 of Dominic Holden's Declaration as support therefor, Mr. Holden's declaration at said paragraphs actually says nothing of the sort (instead stating: "Mr. Forlit is the authorized person listed in Gadot's 2021 Annual Report").

24. The foregoing is a direct admission by the Petitioner that the activities alleged to have occurred in 2015 and 2016, which it is uncontested were years prior to the actual organization of the Respondent entities, did not allegedly take place in the United States, let alone Florida, at all. Rather, Petitioner asserts that those activities were conducted in Israel.

25. The foregoing is of importance as AMIT FORLIT has sworn, under oath, in Exhibit "4" attached hereto that he a) is not a hacker, b) he did not do any work for either Respondent in the State of Florida, c) he has not been to Florida since 2017, and d) he has no current plans to come to the State of Florida.

26. Stated plainly, there is no connection between AMIT FORLIT and the State of Florida (specifically including this District) aside from the fact that AMIT FORLIT was listed as a Member of SDC-GADOT, LLC in its annual corporate filings, with a contact address for AMIT FORLIT located in Israel.

27. Having shown nothing more, there is no attenuation between AMIT FORLIT and the State of Florida upon which this Court could find a basis to require him to travel internationally to Miami to be deposed by the Petitioner's counsel.

28. At all times, Petitioner and his counsel have been free to contact AMIT FORLIT and conduct a deposition in an alternate forum in which he resides or is actually located. Instead, Petitioner has decided to play games, and has required AMIT FORLIT to retain local counsel in Florida to move for relief on his behalf quashing an improperly served subpoena for a deposition in a District in which he does not reside, does not conduct business, and is not located.

**WHEREFORE** AMIT FORLIT requests that this Court GRANT the instant Motion, that the subpoena and purported "service" of same directed to AMIT FORLIT be quashed, that a protective Order be entered disallowing the Petitioner from seeking to depose AMIT FORLIT in this proceeding in the State of Florida as he is not a resident herein and is not "found" herein, that the Court impose sanctions appropriately against the Petitioner in the form of an award to the Movant of a recovery of his incurred court costs and/or attorney's fees, and that the Court GRANT AMIT FORLIT such other relief as the Court deems just and proper.

### **GOOD FAITH CERTIFICATION**:

The undersigned counsel hereby certifies that: (A) that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 1st day of June, 2022, that a true and correct copy of the foregoing has been filed through the Court's CM/ECF-filing portal and that a true copy has been served through the portal upon all counsel of record in this action.

Respectfully submitted,

By: */s/ Christopher S. Salivar, Esq.*
Christopher S. Salivar, Esquire
Florida Bar No.: 57031
6576 Whispering Wind Way
Delray Beach, FL 33484
Tel: (561) 628-8908
Email: cssalivarattorney@gmail.com

By: */s/ Elan I. Baret, Esq.*
Elan I. Baret, Esquire
Florida Bar No.: 20676
3999 Sheridan Street, 2nd Floor
Hollywood, Florida 33021
Tel: (954) 486-9966
Facsimile: (954) 585-9196
Email: elan@baretlawgroup.com