IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re: Application Pursuant to 28 U.S.C. 1782 of<br><br>FARHAD AZIMA,<br><br>      Petitioner,<br>v.<br><br>INSIGHT ANALYSIS AND RESEARCH, LLC, and SDC-GADOT LLC,<br><br>      Respondents, | Case No.: 22-20707-MC-MARTINEZ |

### RESPONDENTS' MOTION FOR PROTECTIVE ORDER:

Respondents, INSIGHT ANALYSIS AND RESEARCH, LLC and SDC-GADOT, LLC, by and through the undersigned attorneys, hereby file this, their Motion for Protective Order directed to new Rule 30(b)(6) Notices for Deposition recently issued and sent via e-mail to the Respondents' Registered Agent, upon proffer of the following:

1. When the Petitioner initiated this action, he submitted two (2) proposed subpoenas for documents to the Court, copies of which are attached hereto as Exhibit "1". These are also found as DE 1-11 as filed of record with the Court in this proceeding. Thereby, Petitioner sought production of the following documents from the Respondents[1]:

---

[1] Identical production subpoenas were directed to each of the Respondents, as can be seen by review of DE 1-11, and the copies of the subpoenas later filed as Exhibit 1 to DE 14. These were the proposed subpoenas proffered by the Petitioner to the Court, and which are referenced in DE 5 as being authorized by the Court to be served upon the Respondents.

*Page 1*

a. All documents and communications from February 2015 to present relating to or reflecting any work performed by you, Mr. Amit Forlit, and/or Mr. Stuart Page relating directly or indirectly to Mr. Farhad Azima or Azima's Associates, including but not limited to:

   i. All reports prepared about Mr. Azima and/or Azima's Associates;

   ii. All documents of Mr. Azima or others obtained for the Project, including all hacked data from Mr. Azima or Azima's Associates, whether or not it was included in a report;

   iii. All engagement letters relating to Mr. Azima or the Project;

   iv. All invoices for the Project, including but not limited to invoices sent to Page Group ME Ltd and any other Page Group entity;

   v. All communications regarding Mr. Azima or Azima's Associates; and

   vi. All communications about any websites, torrents, or WeTransfer links relating to Mr. Azima.

b. All documents and communications from January 2018 to present relating to Mr. Azima's trial and/or attempts to mislead or a conspiracy to mislead the UK court about the discovery of the hacked data, including but not limited to:

   i. All communications with Mr. Neil Gerrard, Mr. David Hughes, Mr. Jamie Buchanan, Mr. Amit Forlit, Mr. Majdi Halabi, Mr. Stuart Page, Dechert, or Stewarts Law;

      ii. All documents and communications regarding meetings between or among you and/or any of the conspirators, including at the Hotel Moosegg in Switzerland, any hotel in Cyprus, or any office(s) of Dechert; and

      iii. All travel records reflecting trips to Switzerland, Cyprus, or England.

2. After service of the production subpoenas, the Petitioner issued Rule 30(b)(6) Notices of Deposition for each Respondent, identifying the following areas of inquiry for a corporate representative to be identified and produced by each Respondent:

    a. The investigation of Mr. Azima, related hacking, and preparation of investigation reports.

    b. The subsequent cover-up and scheme to submit false evidence to the UK Court. See Exhibit "2" attached hereto.

3. On May 16, 2022, Petitioner filed a response to non-party AMIT FORLIT's Motion to Quash which incorporated therein a Cross-Motion to Compel directed to these Respondents. In the Motion, Petitioner sought entry of an Order directing the Respondents to produce Rule 30(b)(6) representatives on a date certain to provide testimony based upon the previously served Rule 30(b)(6) Notices and Subpoenas, and to produce documents responsive to the production subpoenas previously served upon each Respondent.

4. On June 8, 2022, this Court entered the Order found at DE 21, wherein the Court ruled (as directed to these Respondents) as follows:

      i. The Cross Motion to Compel is hereby **GRANTED**. Respondents were properly served and have elected not to appear for deposition. For the reasons stated at the hearing, Respondents are hereby **ORDERED** to provide

      its corporate representative(s) to appear for a deposition and produce documents as requested by the subpoenas.

  ii. The deposition of the representative for Respondent Insight Analysis and Research LLC will be on **Wednesday, June 15, 2022**, at **10:00 a.m.,** and the deposition of the representative for Respondent SDC-Gadot LLC will be on **Wednesday, June 15, 2022**, at **2:00 p.m.**

  iii. Respondents' failure to attend the deposition and/or otherwise comply with the subpoenas that have been served could result in SANCTIONS under Rule 37 of the Federal Rules of Civil Procedure.

  iv. Should Respondents fail to comply with this Order, Petitioner shall email Chambers to set the matter for hearing no later than June 20, 2022, and may file a motion of no more than 5 pages regarding what sanctions should be imposed for Respondent's failure to comply with this Court's Order.

5. On June 8, 2022, Petitioner's counsel issued new Rule 30(b)(6) Notices identifying June 15, 2022 depositions, and sent copies of same to the Respondents via e-mail to Shimon Goldberger[2].

6. Of note, in the new Notices, <u>Petitioner decided to unilaterally expand the scope of the areas of inquiry for the Respondents proposed Rule 30(b)(6) Depositions far beyond the scope of the Notices previously served (and approved) by the Court</u>. Specifically, the new

---

[2] Petitioner's counsel also sent courtesy copies of the new Rule 30(b)(6) Notices to the attention of your undersigned.

Notices identify a total of fourteen (14) areas of inquiry in place of the original two (2), as follows:

a. The formation of Insight[3];

b. The relationship of SDC-Gadot LLC to Insight Analysis and Research LLC;

c. The relationship of Insight to Gadot Information Services;

d. The identity and roles of all employees, officer, directors, managers, or other individuals associated with Insight, including but not limited to Amit Forlit and Alon Omri Gurlavie;

e. The identities and roles of any accountants, lawyers, and registered agents used by Insight, including but not limited to Ari Propis and Shimon Goldberger;

f. The nature of the work performed by Insight, who that work was performed for, and the individuals and companies used to perform that work;

g. The nature and extent of the work performed for Stuart Page, Page Group, Page Risk Management, or any other entities related to Stuart Page;

h. The account information related to Insight, including details of the bank accounts held by Insight, details regarding the transactions identified in Insight's bank statements, and details regarding the use of debit cards held by Insight;

i. The nature and purpose of all transactions conducted by Insight, including but not limited to transactions conducted with the following entities: Yesodot, Page Group ME DMCC; Gadot Information Services; Dinka Analysis Services; Mona Tours

---

[3] Again, the Notices directed to each Respondent are nearly identical, except for alternating references to "Insight" and "SDC-Gadot" in the first three (3) paragraphs of each Notice.

   Ltd.; Brian Tulloch; King of Drums, Inc.; Ezekiel Golan Intellectual; Yeret; SP.Zoo.Olhagaray Ltd.; Page Risk Management DMCC; JJPI Power and Energy DMCC; Amit Forlit; Hayarkon 48 Hoatels Ltd.; Ariel Trading Ltd.; BHB Media LLC; ASAF Adani; Global Impact Services LLC; SAS Luxury N Sight; Tekara Cyber Solutions; DOVRA Hashimshoni;

j. The nature and extent of all business conducted in Florida by Insight, Amit Forlit, or any other individuals associated with Insight, including but not limited to all transactions with Florida companies, all transactions conducted in Florida, and all property owned in Florida.

k. All work related to Farhad Azima, including but not limited to work regarding the investigation of Mr. Azima and others affiliated with Mr. Azima, the hacking of Mr. Azima and others affiliated with Mr. Azima, and the obtaining of Mr. Azima's confidential data;

l. The litigation between Mr. Azima and Ras Al Khaimah Investment Authority in both the United States and the United Kingdom, including but not limited to all meetings related to that litigation in which an individual associated with Insight participated;

m. All interactions between anyone affiliated with Insight and anyone affiliated with Ras Al Khaimah, Dechert LLP, Stewarts Law, Vital Management Services Inc., Grayson + Co. Ltd., Karv Communications, CyberRoot, and Majdi Halabi; and

n. The prior document and deposition subpoenas served in this proceeding and the failure to comply with those subpoenas.

7. Petitioner sought to expand the scope of discovery beyond that previously allowed by the Court without obtaining any leave of Court to do so, and moreover doing so despite possessing knowledge that a) the Petitioner has used false testimony (in affidavit form) to procure Orders of this Court granting the original request for discovery, and b) that there is no possible way that the Respondents could have participate in the "hacking" and subsequent alleged cover-up which are the basis for these discovery proceedings.

8. Specifically, Petitioner and his counsel are well aware that neither Respondent existed at the time of the "hacking" alleged in Stuart Page's "affidavit", the "Holden Declaration", or the affidavit of Majdi El Halabi[4]. The Respondents did not exist until 2017, and were formed long after the "hacking" of Petitioner allegedly occurred, a fact both identified (through review of online corporate filings) by Dominic Holden in his Declaration, and then ignored in the same Declaration where Mr. Holden asserts that Respondents and Amit Forlit prepared a "Project Update" in 2015, some two (2) years before the formation of either Respondent.

9. Petitioner, and his counsel, are well aware that a) they are suing other parties in other U.S. Jurisdictions alleging that they are in fact the guilty parties responsible for the alleged "hacking"[5], and b) other parties affiliated with the Petitioner have openly published news articles, or disclosed information published in news articles, detailing the factual scenarios

---

[4] Mr. Halabi also openly states in his recent "affidavit" that he knowingly committed perjury before the Courts of the UK pertaining to the same subject matter as set forth in his "affidavit" supporting the Petitioner in this proceeding. Additionally, he puzzlingly admits to executing his "affidavit" "without having reviewed the full range of my documents in detail", casting direct doubt as to the "sworn" statements made by him therein.

[5] See Exhibit "3" attached herewith.

revolving around the alleged "hacking" of the Petitioner, as well as information i) tying the "hacking" to acts of foreign governmental agents, and ii) tying the underlying reason for the "hacking" of the Petitioner to his ties to three (3) individuals who were, for a time, subject to sanctions imposed by the United States' Treasury Department.[6]

10. Petitioner, and his counsel, are aware that their "affiants" (such as Stuart Page) have made "sworn" statements based on alleged hearsay[7], "facts" well beyond their personal knowledge, and in the case of one Stuart Page, his new "sworn" testimony was procured based upon immense financial pressure imposed upon Mr. Page by the Petitioner himself which caused Mr. Page to suffer a mental breakdown that almost cost him is life (until he decided to capitulate and provide "amended" testimony beneficial to the Petitioner). See Exhibit "4" attached hereto, wherein Mr. Page states "… I found myself alone in ever increasing litigation and spiraling costs which was causing me enormous stress, leading to a mental breakdown, almost costing me my life. I was given no option but to co-operate…" Of note, in the filed Declaration of Dominic Holden, Petitioner acknowledges that Mr. Page was originally a Defendant in the UK proceedings, but was removed therefrom via the RE-Re-Amended Counterclaim based upon his "settlement" with the Petitioner. See Holden Declaration (DE 1-3) at Paragraph 9.

---

[6] See https://www.cjr.org/special_report/the-source.php/; https://apnews.com/article/iran-mo-state-wire-ks-state-wire-middle-east-international-news-4a4b6e9dfc0949e698ee0ada284414ed; and https://www.politico.com/magazine/story/2018/05/27/the-mysterious-tale-of-a-powerful-american-businessman-an-emirati-sheikhdom-three-sanctioned-iranians-and-an-imprisonment-in-tehran-218405.

[7] The Dominic Holden "Declaration" is entirely based upon hearsay as it pertains to the alleged activities of the Respondents and non-party Amit Forlit, as Mr. Holden possesses no actual personal knowledge of the "facts" he attests to.

11. Mr. Page has committed a sworn about-face decrying his prior sworn testimony based upon the excessive litigation and financial pressure placed upon him by the Petitioner, which he acknowledged nearly cost him his life and left him "no choice" but to provide the sworn statements (admitting to perjury before the UK Courts) now relied upon by the Petitioner before this Court.

12. The foregoing background is important for this Court to consider, as Petitioner has now decided to seek near *carte blanche* discovery depositions of the Respondents, without first obtaining leave of Court to do so, pertaining to all aspects of any and all business conducted each Respondent globally, for any period of time and pertaining to any customer, client, project, or service provided by either Respondent, even where same would have nothing whatsoever to do with the Petitioner or the UK Proceedings. This can be seen by review of the following expanded and wholly new "areas of inquiry":

    a. **The identity and roles of all employees, officer, directors, managers, or other individuals associated with Insight**, including but not limited to Amit Forlit and Alon Omri Gurlavie;

    b. **The identities and roles of any accountants, lawyers, and registered agents used by Insight**, including but not limited to Ari Propis and Shimon Goldberger;

    c. **The nature of the work performed by Insight, who that work was performed for, and the individuals and companies used to perform that work**;

    d. The nature and extent of the work performed for Stuart Page, Page Group, Page Risk Management, or any other entities related to Stuart Page;

e. **The account information related to Insight, including details of the bank accounts held by Insight, details regarding the transactions identified in Insight's bank statements, and details regarding the use of debit cards held by Insight**;

f. **The nature and purpose of all transactions conducted by Insight**…

13. Petitioner has initiated other 28 U.S.C. 1782 proceedings in the District Courts in the United States of America, seeking similar overly broad discovery into matters not attenuated to, or limited to, the Petitioner or the identified UK Proceedings. In April of 2022, the United States District Court in and for the Southern District of New York received such a *carte blanche* discovery request directed to CitiBank by way of a proposed production subpoena, which gave the Court pause and prompted the entry of an Order indicating concern with the fourth Intel factor, and which directed the Petitioner to submit a letter to the Court explaining why the Court should not more narrowly limit the proposed subpoena (or alternatively invited the Petitioner to submit a more narrowly tailored subpoena)[8]. See Exhibit 5 attached herewith.

14. Petitioner is now seeking to conduct a bait and switch with the subject depositions[9], seeking initially limited discovery based upon the original proposed subpoenas and the original served

---

[8] The Docket for Case No.: 22-MISC-72 (KPF) denotes that the Petitioner submitted a letter discussing his desired discovery, whereafter the Court entered a final Order allowing the subject subpoena to be served based upon Petitioner's counsel's representation that it would work with the intended Respondent to avoid disclosure of sensitive information, and also based upon the fact that the Petitioner had agreed to temporally limit the materials sought to those created in or after 2015.

[9] Respondents would also note that DE 5, the original Order entered on the Petitioner's Petition for Discovery, did not include authorization to serve Rule 30(b)(6) discovery deposition notices or subpoenas. The Order authorized the service of the subpoenas proposed at DE 1-11, subject to the rights of the Respondents under the Federal Rules of Civil Procedure and Federal Law. Only thereafter did the Petitioner decide to unilaterally serve

Rule 30(b)(6) Notices, and now (on one (1) weeks' notice and after the entry of an order compelling depositions pursuant to the previously served Notices and Subpoenas) Petitioner is seeking a nearly limitless deposition of a corporate representative of each Respondent.

15. As noted by the Court in S.D.N.Y. Case No.: 22-mc-00072(KPF), "To evaluate whether granting an application would further Section 1792's aims, the court must consider four factors that the Supreme Court set forth in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). *See Fed. Republic of Nigeria*, 27 F.4th at 148. These four so-called "Intel factors" are: [i] whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for [Section] 1782(a) aid generally is not as apparent; [ii] the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; [iii] whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and [iv] whether the request is unduly intrusive or burdensome. *Id.* (internal quotation marks omitted)." See Exhibit 5 attached hereto.

16. This Court also acknowledges that the *Intel* factors are the guidepost for determining of a Petition for Discovery under 28 USC 1792 should be granted, denied, or more narrowly tailored by the Court.

---

deposition Notices and subpoenas upon the Respondents.  This Court subsequently granted the Petitioner's Motion to Compel Rule 30(b)(6) depositions, however the Court's Order again was limited to the Notices and Subpoenas that had been served, and did not grant the Petitioner leave to craft and serve expanded Rule 30(b)(6) deposition Notices.

17. Respondents submit that the Petitioner did not produce the new Notices to this Court when the Petitioner's 28 USC 1782 Petition was first filed and presented to this Court as the Petitioner and his counsel likely knew that the Court would deny, or significantly trim and limit, what is clearly a grossly overbroad *carte blanche* attempt to turn over and examine all aspects of any business ever conducted by the Respondents, anywhere in the world, and by or through any party at any time, whether or not same was connected in any way, shape, or form to the Petitioner or the subject UK proceedings.

18. Per Rule 26(c)(1) of the Federal Rules of Civil Procedure, "A party *or any person from whom discovery is sought may move for a protective order in the court where the action is pending—* or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. *The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:* (A) forbidding the disclosure or discovery; (B) *specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery*; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) *forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters*; (E) designating the persons who may be present while the discovery is conducted; (F) *requiring that a deposition be sealed and opened only on court order*; (G) *requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way*; and (H)

requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs."

19. There is absolutely no reason whatsoever for discovery into the foreign operations, accounts, employees, or activities of the Respondents pertaining to matters which a) do not involve the Petitioner, or b) which do not involve the subject UK proceedings. Discovery into these matters should be entirely disallowed by this Court, as they do not comport with the *Intel* factors, and Petitioner has intentionally concealed his true goals in this matter by conducting a bait-and-switch attempt with his Rule 30(b)(6) disclosures after submitting the initial Petition, and a Motion to Compel, which did not disclose the grossly overly broad discovery the Petitioner now seeks.

20. To the extent discovery depositions are allowed by this Court, they should only be allowed pursuant to the original Rule 30(b)(6) Notices and Subpoenas served by the Petitioner (based upon this Court's June 8, 2022 Order compelling depositions pursuant to said Notices and Subpoenas), with the additional restriction that transcripts for the depositions shall not be disclosed or used by the Petitioner outside of the UK proceedings.

21. Given the foregoing, the Respondents request that this Court GRANT this Motion, that the Court disallow the expanded scope of inquiry set forth in the Petitioner's unilaterally modified June 8, 2022 Notices of Deposition, that the Court direct that any deposition of the Respondents be limited to the initial areas of inquiry set forth in the Notices and Subpoenas which were the subject of the Cross-Motion to Compel which was brought before this Court and was ruled upon as set forth in the Court's June 8, 2022 Order, that this Court forbid by express Order the use of any transcripts for said depositions outside of use in the subject UK

proceedings, and that this Court grant the Respondents a recovery of court costs and attorney's fees incurred in seeking the relief set forth herein.

**WHEREFORE** Respondents, INSIGHT AND SDC-GADOT, request that this Court GRANT the instant Motion, that the Court grant the Respondents all relief set forth herein, and that the Court GRANT AMIT FORLIT such other relief as the Court deems just and proper.

### GOOD FAITH CERTIFICATION:

The undersigned counsel hereby certifies that: (A) that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of June, 2022, that a true and correct copy of the foregoing has been filed through the Court's CM/ECF-filing portal and that a true copy has been served through the portal upon all counsel of record in this action.

Respectfully submitted,

By: */s/ Christopher S. Salivar, Esq.*
Christopher S. Salivar, Esquire
Florida Bar No.: 57031
6576 Whispering Wind Way
Delray Beach, FL 33484
Tel: (561) 628-8908
Email: cssalivarattorney@gmail.com

By: */s/ Elan I. Baret, Esq.*
Elan I. Baret, Esquire
Florida Bar No.: 20676
3999 Sheridan Street, 2nd Floor
Hollywood, Florida 33021
Tel: (954) 486-9966
Facsimile: (954) 585-9196
Email: elan@baretlawgroup.com