IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re: Application Pursuant to )
28 U.S.C. 1782 of )
)
FARHAD AZIMA )        Case No.: 22-20707-MC-MARTINEZ
)
            Petitioner, )
v. )
)
INSIGHT ANALYSIS AND RESEARCH, )
LLC, and SDC-GADOT LLC, )
)
            Respondents, )
)
_____ )

### RESPONSE IN OPPOSITION TO PETITIONER'S SUPPLEMENTAL APPLICATION FOR DISCOVERY UNDER 28 U.S.C. § 1782, AND MOTION TO DISMISS FOR WANT OF JURISDICTION (AND INCORPORTED MEMORANDUM OF LAW)[1]:

AMIT FORLIT, by and through the undersigned attorneys (who continue to represent AMIT FORLIT on the basis of the original Notice of Limited Appearance), hereby files this Response in Opposition to Petitioner's Supplemental Application for Discovery under 28 U.S.C. § 1782, and his Motion to Dismiss for Want of Jurisdiction, upon proffer of the following:

### COMPLETE LACK OF SUBJECT MATTER JURISDICTION

1. On April 26, 2022, AMIT FORLIT received an email from the local registered agent of Respondent, SDC-GADOT, LLC. A true copy of same is attached hereto as Exhibit "1".

---

[1] By filing this Response, which is filed pursuant to Court Order, AMIT FORLIT does not assent to personal jurisdiction or subject matter jurisdiction of this Court, but rather continues to maintain that a want of subject matter jurisdiction and personal jurisdiction require denial of the relief sought by Petitioner as to AMIT FORLIT and dismissal of these proceedings as to AMIT FORLIT.

2. Thereby, and for the first time, AMIT FORLIT, received a copy of a Notice of Deposition and proposed Subpoena for an in-person deposition set to take place on May 4, 2022 at a law office in Miami, Florida, directing AMIT FORLIT to appear in Florida for said deposition.

3. AMIT FORLIT is not a resident of the State of Florida. See Exhibit "2" attached hereto.

4. AMIT FORLIT is not a resident of the United States of America.  See Exhibit "2" attached hereto.

5. AMIT FORLIT is not a United States Citizen.  See Exhibit "2" attached hereto.

6. AMIT FORLIT has not physically been in the State of Florida since 2017.  See Exhibit "2" attached hereto.

7. AMIT FORLIT received no communication from the Petitioner or his counsel before April 26, 2022 regarding the aforementioned deposition, and the date was not scheduled or coordinated with input from AMIT FORLIT.

8. Of note, AMIT FORLIT was **never personally served within the State of Florida**, let alone within the territorial jurisdiction of the United States of America or this District Court, with any subpoena directing him to appear for a deposition in Miami, Florida.  Moreover, AMIT FORLIT has not been personally served with Petitioner's Supplemental Application pursuant to 28 U.S.C. § 1782. This Response, and Motion to Dismiss, has been filed in order to timely comply with an Order of this Court entered on June 8, 2022 which Granted AMIT FORLIT's Motion to Quash and Motion to Quash Service. In so filing this Response and Motion, AMIT FORLIT does not waive, and hereby expressly contests, the attempt of the Petitioner to have this Court assert jurisdiction over his person, and AMIT FORLIT contends that this Court lacks subject matter jurisdiction in these proceedings as to him individually.

9. At all times material hereto, Petitioner has not resided in, conducted business in, owned property in, or otherwise been present in, the State of Florida or the territorial jurisdiction of this Court. See composite Exhibit "2" attached hereto.

10. As can be seen by the information on file with the Florida Department of State, Division of Corporations for Respondent SDC-GADOT, LLC (which is the information originally utilized by the Petitioner to initially identify AMIT FORLIT), the address for AMIT FORLIT (denoted on annual filings with the Florida Department of State, Division of Corporations, for SDC-GADOT, LLC) is: 5-A Habarzel St., Tel Aviv, IL 69710-02. See Exhibit "3" attached hereto.

11. Per 28 U.S.C. § 1782(a), "**The district court of the district in which a person resides or is found** may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. **To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure**. A person may not be compelled to give his testimony or statement or to produce

a document or other thing in violation of any legally applicable privilege." See § 1782, 28 U.S.C. (1996) (emphasis added).

12. Petitioner seems to rightfully concede that AMIT FORLIT, who is not a U.S. Citizen, does not possess a green card, and owns no real property in the State of Florida, is not a resident of the State of Florida. As such, nothing further needs be addressed to the point of "residency" for determining whether subject matter jurisdiction lies in this proceeding.

13. In determining whether or not subject matter jurisdiction lies based upon a potential Respondent being "found in" a given district, the Courts routinely interpret 28 USC 1782 to provide for what is referred to as "tag" jurisdiction. Thereunder, a person who is physically served with process and/or a subpoena in the United States is located in the jurisdiction in which he is served for purposes of determining if he or she is "found in" a given district. *See generally In re Joint Stock Co. Raiffeisenbank*, 2017 U.S. Dist. LEXIS 130721 (S.D. Fla. 2017) (Section 1782 authorizes district courts to grant an application for judicial assistance, subject to the requirement that "the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." In re Clerici, 481 F.3d at 1331-32. To determine whether a person resides in the district of the district court ruling on the application within the meaning of the statute, courts have looked to the applicable state law for guidance. [*6] See, e.g., In re Application of Gazprom Latin Am. Servicios, C.A., No. 4:14-mc-1186, 2016 U.S. Dist. LEXIS 87175, 2016 WL 3654590, * 10 (S.D. Tex. July 6, 2016) (applying Texas law to conclude that Section 1782 respondent did not reside in the district). Under Florida law, residence hinges on the intent "to remain permanently a citizen of the state." Bloomfield v. City of St. Petersburg Beach, 82 So. 2d 364, 369 (Fla. 1955). …

For purposes of Section 1782, a person is found in a district if he or she has been personally served with the discovery requests underlying the Section 1782 application. See In re Edelman, 295 F.3d 171, 180 (2d Cir. 2002) (holding that "if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district").[1] See also In re Godfrey, 526 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (interpreting In re Edelman as requiring "personal" service, not "substitute" service under a state's rules of service of process and personal jurisdiction). Here, Raiffeisenbank only attempted to effectuate "substitute" service of the subpoenas by serving Beloussov's mother as his purported "coresident" at the Boca Raton Residence. See Affidavits of Service [D.E. 8, 9].2 Under the authority of In re Edelman and In re Godfrey, such purported substitute service is insufficient for Beloussov to be "found" in the Southern District of Florida for purposes of Section 1782. [3]").

14. Here, "tag" jurisdiction does not lie, as AMIT FORLIT has not been physically served with process at any time in these proceedings anywhere in the State of Florida, or in the United States.

15. Acknowledging this, Petitioner seeks to move beyond "tag" jurisdiction to argue that this Court can establish proper subject matter jurisdiction over this proceeding as to AMIT FORLIT based upon a Florida state statute governing long-arm personal jurisdiction, which is applicable to direct civil actions brought by a Plaintiff against a foreign party Defendant[2], and based upon alleged "facts" proffered by the Petitioner supporting his allegations of a)

---

[2] This is not such a direct action wherein AMIT FORLIT is a named party Defendant with sufficient alleged "contacts" to the form jurisdiction to establish that due process would allow claims to be prosecuted against him in said jurisdiction. This is a statutorily established (and limited) action for discovery to allegedly assist the prosecution of foreign claims against foreign parties in a foreign jurisdiction.

"minimum contacts" with the State of Florida, and b) that the corporate Respondents in this action are AMIT FORLIT'S "alter ego".

16. However, Petitioner <u>cites to no controlling or supporting case authority</u> for Petitioner's position that, where subject matter jurisdiction cannot be established under 28 USC 1782 by "tag" jurisdiction, a Petitioner may establish subject matter jurisdiction under 28 USC 1782 by alternatively arguing that personal jurisdiction may lie pursuant to Florida's long-arm <u>*personal jurisdiction*</u> statute (F.S. 48.193).

17. There is no decisional authority of the Eleventh Circuit which would be binding upon this Court on this subject. And as Petitioner cites to no persuasive authority to support his position, your undersigned would assert that Petitioner's exact argument has actually been expressly made, and rejected, by a sister district Court (in the Eastern District of Virginia) as recently as January of 2022.

18. In *In re Eli Lilly & Co. v. Novartis Pharma AG*, 2022 U.S. Dist. LEXIS 8984 (E.D. VA 2022), the Court performed an exhaustive analysis of the congressional intent of 28 U.S.C. § 1782, its limitations, and the meaning of the term "found" as used within the statute, therein stating the following:

> A. The plain meaning of "found" suggests that Congress intended § 1782 to provide for discovery from a party only where that party was physically present in the district in which discovery was sought.
>
> Neither the Supreme Court nor the Fourth Circuit have interpreted the meaning of "found" as used in §1782 and the case therefore presents a question of first impression. The analysis properly begins, "as always in deciding questions of statutory

interpretation, with the text of the statute." Othi v. Holder, 734 F.3d 259, 265 (4th Cir. 2013).

Absent a definition provided by the statute, a reviewing court is required to "give statutory terms their ordinary, contemporary, common meaning." Othi, 734 F.3d at 265 (citing United States v. Powell, 680 F.3d 350, 355 (4th Cir. 2012)). Courts engaging in statutory interpretation customarily rely on dictionary definitions to ascertain the ordinary, common meanings of statutory terms. See, e.g., In re Constr. Supervision Servs., Inc., 753 F.3d 124, 128 (4th Cir. 2014) (explaining that when a term is not defined in a statute, courts may consult dictionaries to ascertain that terms plain, ordinary meaning). Novartis argues that dictionary definitions of the word "found" suggests that § 1782 requires physical presence in this District. Indeed, dictionary definitions point uniformly to the conclusion that "found" requires physical presence. For example, Novartis points to the Merriam-Webster Dictionary, which defines "find" as "to perceive (oneself) to be in a certain place" and clearly suggests that to be "found" in a place is to be physically present there. Find, MERRIAM-WEBSTER.COM (last visited Jan. 5, 2022), https://www.merriamwebster.com/dictionary/find. [*8] Other dictionaries confirm that to be found in a judicial district requires physical presence in that district. See, e.g., Find, OXFORD ENGLISH DICTIONARY (last visited Jan. 5, 2022), https://www.oed.com/view/entry/70348 (defining "find" as "to exist; to occur; to be located at a specific site"); Find, CAMBRIDGE DICTIONARY (last visited Jan. 5, 2022) (defining "find" as "to discover, especially where a thing or person is"). Eli Lilly did not cite or offer a single dictionary definition in support of a contrary

definition, nor was any contrary dictionary definition found. Moreover, Eli Lilly offers no argument whatsoever that the plain, ordinary meaning of "found" does not refer to physical presence.

Accordingly, ***it is appropriate to conclude that Congress knew the ordinary, common meaning of "found" and therefore intended § 1782 to apply only to parties who are physically present in the district in which discovery is sought***. As the Supreme Court has instructed, "if the intent of Congress is clear and unambiguously expressed by the statutory language at issue," that marks the end of the statutory interpretation analysis. Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ., 550 U.S. 81, 93, 127 S. Ct. 1534, 167 L. Ed. 2d 449 (2007). The plain and ordinary meaning of "found" finds support in the statute's [*9] legislative history. Novartis convincingly argues that the legislative history of § 1782 also supports this conclusion. As the Supreme Court has instructed, the "statutory history sheds further light on the text" and can clarify a statute's meaning. United States v. Quality Stores, Inc., 572 U.S. 141, 148, 134 S. Ct. 1395, 188 L. Ed. 2d 413 (2014). The legislative history of § 1782 suggests that Congress intended for the statute to apply only to parties physically present in the district in which the § 1782 subpoena is requested. Section 1782 was initially passed in 1948, and the text of that original statute applied only to parties "residing" in a given judicial district. Act of June 25, 1948, Pub. L. No. 80-773, § 1782, 62 Stat. 869, 949. The following year Congress amended the statute, expanding the scope of § 1728 to include a district where the subpoenaed party "resides or is found." Act of May 24, 1949, Pub. L. No. 81-72, § 93, 63 Stat. 89, 103. This change suggests that Congress intended to include not only

parties with a permanent residence in a judicial district, but also those parties who were physically present in the district, even if only temporarily. Indeed, a House Report accompanying the 1949 amendment explained that the change was intended to "correct[ ] restrictive language in section 1782 ... and permit depositions in any judicial proceeding without regard to whether the deponent is 'residing' [*10] in the district or only sojourning there." H.R .Rep. No. 81-352, at 40 (1949), reprinted in 1949 U.S.C.C.A.N. 1254, 1270. Thus, § 1782's legislative history confirms that Congress intended § 1782 to apply in any judicial district in which a party is physically present and can therefore be "found," either as a resident or as a sojourner.

*See Id (emphasis added).*

19. Additionally, the case law cited by AMIT FORLIT in the Motion to Quash Subpoena and Service of Subpoena, and Motion for Protective Order, filed of record and Granted by Order of this Court (see DE 7 and DE 21), holds that subject matter jurisdiction cannot lie as AMIT FORLIT is not physically in the Southern District of Florida, is not found here, has not been personally served here, and cannot be personally served here. *See In re Joint Stock Co. Raiffeisenbank*, 2017 U.S. Dist. LEXIS 130721 (S.D. Fla. 2017) ("For purposes of Section 1782, a person is found in a district if he or she has been personally served with the discovery requests underlying the Section 1782 application. See In re Edelman, 295 F.3d 171, 180 (2d Cir. 2002) (holding that "if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district"). See also In re Godfrey, 526 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (interpreting In re Edelman as requiring "personal" service, not "substitute" service

under a state's rules of service of process and personal jurisdiction). Here, Raiffeisenbank only attempted to effectuate "substitute" service of the subpoenas by serving Beloussov's mother as his purported "co-resident" at the Boca Raton Residence. See Affidavits of Service [D.E. 8, 9]. Under the authority of In re Edelman and In re Godfrey, such purported substitute service is insufficient for Beloussov to be "found" in the Southern District of Florida for purposes of Section 1782. Because Beloussov neither resides nor is found in the Southern District of Florida, the Court lacks subject matter jurisdiction over Raiffeisenbank's Application and the Application is subject to dismissal.").

20. Given the foregoing, and the fact that Petitioner cites to no authority to support a linkage between his tortured _personal jurisdiction_ analysis under F.S. § 48.193 and the requirement of subject matter jurisdiction existing under 28 USC § 1782 based upon its plain language, no further inquiry is necessary on the issue of lack of subject matter jurisdiction.  On this basis, the Supplemental Request must be denied and this proceeding dismissed as to AMIT FORLIT individually for want of subject matter jurisdiction.

## PETITIONER'S DEFAMATORY ALLEGATIONS AND USE OF FALSE AND PERJURIOUS MATERIAL IN THIS PROCEEDING:

21. Though it does not bear upon the complete absence of subject matter jurisdiction, given the gross amount of defamatory assertions which have been made in the Petitioner's filings AMIT FORLIT wishes to address the overreaching and patently false allegations that have been made against him.

22. First and foremost, AMIT FORLIT is not a hacker.  See Exhibit "2".  He was never hired to investigate or "hack" the Petitioner.  See Exhibit "2".  AMIT FORLIT is a private investigator. See Exhibit "2".  In the supporting affidavit of Stuart Page identified by the Petitioner, Mr.

Page has never directly asserted that he affirmatively retained and paid AMIT FORLIT to "hack" the Petitioner.  This is likely because, if he made any such sworn assertion, he would be committing perjury yet again.

23. Looking to Mr. Page's affidavit (DE 23-5), **<u>he does not affirmatively attest that he hired AMIT FORLIT to hack the Petitioner or otherwise unlawfully obtain any information belonging to the Petitioner</u>**.  Instead, he states that AMIT FORLIT's services were retained for different matters altogether, and at a later point in time Mr. Page asked AMIT FORLIT to "monitor the internet and dark web" for information belonging to the Petitioner.[3]

24. Upon further inspection, it can be seen that Mr. Page's affidavit possesses a very peculiar preface statement, akin to a "qualifier" as to the matters he intends to attest to under oath[4]:

> "I have prepared this affidavit in a fairly limited time period as I understand that Mr Azima's application may be decided imminently, and so I have not had the opportunity to review the full range of potentially relevant documents that are available to me. I am therefore preparing this affidavit largely from memory and with limited assistance from documents.  Subject to this point, and except where I indicate otherwise below, the facts and matters stated in this affidavit are within my own knowledge and are true. Where information has been supplied to me by others, its source is identified and I believe it to be true."

---

[3] Mr. Forlit asserts that this sworn statement by Mr. Page is patently false, as he was never asked to investigate, let alone "hack", the Petitioner. Mr. Page actually acknowledged the falsity of his recent sworn statements in direct communications he sent to AMIT FORLIT. See Exhibit "3" attached hereto.

[4] This statement appears crafted as an escape hatch in case one further examines Mr. Page's attestations, finds them to be false, and he is referred for prosecution of perjury, so that Mr. Page can assert that he only testified based upon his memory, what limited document review he conducted, and what was told to him that he "believed" to be true.

25. After the foregoing "qualifier", Mr. Page then openly attests that his prior sworn testimony before the Courts of the UK, provided multiple times before said Court, was false:

> "I wish to correct the evidence I gave both in my Witness Statement and during my oral testimony at the First Trial as to the circumstances in which Mr Azima's confidential information came to be discovered. The fact of the matter is that Majdi Halabi ("Majdi") had no role in the discovery of Mr Azima's confidential information. I provided incorrect testimony, claiming that (i) I had approached him in relation to the threatened negative publicity campaign, and (ii) he had discovered the data. In fact, I approached Amit (and not Majdi) and asked him to monitor the Internet and the dark web for such information, and it was Amit who told me about the data."

26. After attesting under penalty of perjury to the prior commission of perjury (not once, but twice), Mr. Page then states that AMIT FORLIT <u>was not hired to investigate the Petitioner, but rather a completely different individual (Dr. Massaad)</u>, and that separate from that investigation Mr. Page requested that AMIT FORLIT "monitor the internet and dark web" whereafter Mr. Page was provided with a link to confidential data appearing to belong to the Petitioner.

27. Of note, <u>nowhere within Mr. Page's affidavit did he assert that AMIT FORLIT was hired for the purpose of investigating, let alone "hacking", the Petitioner or unlawfully obtaining data or information belonging to him</u>.

28. As noted in Exhibit "3" attached hereto, after Mr. Page was identified by the Petitioner as an additional Defendant in the UK proceedings, he suffered severe financial distress, a mental breakdown that almost cost him his life, and then he decided to "co-operate" with the

Petitioner, leading to Mr. Page's recent sworn statements relied upon by the Petitioner herein. As seen in Exhibit "3" attached hereto, Mr. Page's false sworn statements as to AMIT FORLIT led to enough guilt and remorse that Mr. Page thought it necessary to communicate directly with AMIT FORLIT to explain his recent "sworn statements", wherein Mr. Page requested to meet with AMIT FORLIT to "work out how to resolve your situation next, given what I have had to do".

29. Particularly poignant in this exchange is Mr. Page's response to AMIT FORLIT's direct statement that Mr. Page knows that AMIT FORLIT had nothing to do with any "hacking" of the Petitioner.  Specifically, in Exhibit "3" AMIT FORLIT stated the following to Mr. Page: "I need to think if I want to be dragged into this play Now the journalists accusing me in things **you know I didn't do or have anything to do with (like FA hacking)**…".

30. In response, Mr. Page did not refute AMIT FORLIT's contention that he had nothing to do with any "hacking" of the Petitioner.  Mr. Page did not further comment in support of the false sworn statements he has recently made accusing AMIT FORLIT of actions for which he is completely innocent.  Instead, Mr. Page responded as follows:

"**I understand** but you know that I really valued our friendship. Give it some serous thought, hope the family is well".

31. At this point the Petitioner, and those working on behalf of the Petitioner (including one Dominic Holden), are actively using false sworn statements made by Mr. Page to implicate AMIT FORLIT in matters in which he was not a participant, and for which he is not in any way, shape, or form responsible. It is plainly open and obvious that Petitioner is seeking to join AMIT FORLIT in these discovery proceedings in a transparent attempt to try and force

his "co-operation", just as Petitioner did with Mr. Page, through unnecessary and extraordinary litigation expense.

32. Petitioner is furthermore seeking to double down by relying on a "declaration" of Dominic Holden, an attorney representing the Petitioner in the UK Proceedings, whose declaration (DE 23-2) glosses over with broad strokes the points that Petitioner wants to make, but which are not actually identified in, attested to, or supported by Mr. Page's recent "sworn statements". Moreover, Mr. Holden's Declaration relies nearly entirely upon Mr. Page's false "sworn statements" as support for his blanket assertions.

33. By review of DE 23-2 it is plainly seen that, outside of the limited matters which are within Mr. Holden's personal knowledge (i.e., the allegations put into draft pleadings he, or his firm, have prepared for the Petitioner, and hearings in the UK proceedings in which he has actually participated), the remainder of Mr. Holden's declaration is based upon a twisting and misrepresentation of the more recent "sworn statements" provided by Mr. Page.

34. For purposes of illustration, Mr. Holden's Declaration contains an assertion in paragraph 22 wherein he asserts: "The Third Page Witness Statement states that, in or around February of 2020, Handjani invited Mr. Page to two meetings with Mr. Handjani and Mr. Gerrard, at which they instructed Mr. Page and an Israeli hacker, Mr. Amit Forlit, of Insight Analysis and Research, LLC ("Insight") to determine who was funding Mr Azima's and other's litigation relating to the Emirate of Ras Al Khaimah and Dechert, LLP".

35. Of note, Mr. Pages' Third Witness Statement says **nothing of the sort**. Nowhere did Mr. Page indicate that AMIT FORLIT was at any such meeting, or received a direct instruction by Mr.

Handjani and Mr. Gerard to "investigate" the Petitioner. Nor is there any sworn assertion that AMIT FORLIT accepted any such direction, or acted upon same.

36. The foregoing illustrates the lengths to which the Petitioner is prepared to go to utilize false "sworn" statements of whomever he can recruit to advance his own purposes.

37. In reality, and as attested to in Exhibit "2" and shown by Exhibit "3", AMIT FORLIT is not a "hacker" and did not participant in any "conspiracy" to defraud, or to "hack" the Petitioner, and he has no personal knowledge of the issues now falsely raised and asserted against him.

38. Rather, AMIT FORLIT is a licensed private investigator, having operated an authorized and reputable business in Israel (Gadot Investigative Services) since its formation in 2002 (see Exhibit "4" attached hereto), and at all times his activities have been subject to, and in compliance with, the laws of Israel as to the issuance of licenses for those wishing to engage in work as a private investigator (see Exhibit "5").

## **FOREIGN LOCATION OF ALL ALLEGED CONDUCT**:

39. Beyond the clear and facial invalidity of the "facts" identified by Petitioner in support of his request for relief, one key factor that the Petitioner and his supporting affiants routinely and openly overlook is that all allegations or attestations made relating to AMIT FORLIT pertain to alleged activity falling wholly outside of the geographic boundaries and jurisdiction of the United States of America. Of note, nowhere in the volumes of materials provided by the Petitioner does the Petitioner identify any conduct of AMIT FORLIT aimed at "misleading" or "defrauding" the Courts of the UK which allegedly occurred in the territorial jurisdiction of the United States of America. Moreover, no allegation or attestation has been made that

AMIT FORLIT conducted any "hacking" of the Petitioner from a location within the territorial jurisdiction of the United States.

40. This is likely due to the fact that a) the Petitioner knows that the defamatory accusations made against AMIT FORLIT are false, b) the Petitioner is relying upon coerced false statements of affiants to prop up this false narrative, and c) the Petitioner is currently actively pursuing claims against the actual "hackers" he believes perpetrated the interception and covert acquisition of his data. See Exhibit "6", wherein the Petitioner is suing the party Defendants he openly alleges are responsible for his "hacking".

41. In a recent decision of this Court, *In re Kurbatova*, 2019 U.S. Dist. LEXIS 84030 (S.D. Fla. 2019), the honorable Beth Bloom quashed subpoenas for discovery directed to a foreign party, stating the following in support thereof:

> Once the district court determines that the statutory requirements of § 1782 have been met, it must then also determine whether the requested discovery complies with the Federal Rules. "For example, if the subpoena at issue is directed to a party that resides or is found in the district, same must comply with Fed. R. Civ. P. 45." In re Chevron Corp., 2012 U.S. Dist. LEXIS 123315, 2012 WL 3636925, at *6 (S.D. Fla. June 12, 2012) (citing In re Application of Inversiones v. Gasolinera Petroleos Vanezuela, S. De R.L., 2011 U.S. Pursuant to Rule 45(d)(3), *the Court must quash or modify a subpoena that requires a "person to comply beyond the geographical limits specified in Rule 45(c)." Federal Rule of Civil Procedure 45(c) states that a subpoena may only command a person to attend a trial, hearing or deposition or command the production of documents "within 100 miles of where the person resides, is employed,*

*or regularly transacts business." Fed. R. Civ. Pro. 45(c)(1); Fed. R. Civ. Pro.*
*45(c)(2).* In the Motion, Credit Suisse argues that the Subpoena must be quashed because Credit Suisse has no office in Florida and thus has no employees within the 100-mile radius to engage in the act of production. ECF No. [22], at 10-12. Kurbatova responds that "Section 1782's reach is extraterritorial." ECF No. [29], at 19. However, she concedes that there is a "geographical limitation on Section 1782 discovery concern[ing] 'the location for [*7] the act of production.'" Id. *In support of its Motion,*
*Credit Suisse has provided an affidavit from its Director of Cross-Border Litigation*
*and Investigations, which provides sworn testimony affirming that it has no*
*employees within the State of Florida. ECF No. [22-1], at 2. Thus, because there is*
*no Credit Suisse employee within a 100-mile radius of the place of production, the*
*Court agrees with Credit Suisse and finds that the Subpoena must be quashed.*

*See Id*. (emphasis added).

42. Given the foregoing, even if subject matter jurisdiction did lie, the fact that AMIT FORLIT is a foreign national who resides in Israel, does not conduct business in the State of Florida, and has not been in the State of Florida since 2017, coupled with the fact that all "conduct" alleged by the Petitioner is alleged to have taken place entirely outside of the United States of America, the Court would be required to quash the Petitioner's proposed deposition and document production subpoenas, which purport to demand and require AMIT FORLIT to appear in the Southern District, and produce documents in the Southern District, at a location well beyond 100 miles from where he is located[5].

---

[5] As an aside, Petitioner does not argue, and seems to concede, that AMIT FORLIT is not currently employed, and does not routinely

### *INTEL* FACTORS:

43. As a final point, and again assuming arguendo that jurisdiction did lie under 28 USC 1782, and this Court was not concerned with the fact that all alleged "conduct" is asserted by the Petitioner to have occurred in foreign jurisdictions by a party (AMIT FORLIT) who has at all times been located in a foreign jurisdiction, consideration of the *Intel* factors should lead this Court to deny the relief requested by the Petitioner.

44. As identified by the honorable Beth Bloom in *In re Kurbatova*, 2019 U.S. Dist. LEXIS 84030 (S.D. Fla. 2019), "The Intel factors include: 1) whether the respondents are parties in a foreign proceeding; 2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a U.S. federal court,  3) whether [*8] the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and 4) whether the request is intrusive or burdensome."  See *Id*.

45. As to the first *Intel* factor, in his Declaration, Dominic Holden asserts that AMIT FORLIT has been alleged to be a party Defendant in the foreign UK Proceedings. *See* DE 23-2, at Paragraph 10 ("The Draft Counterclaim alleges that: a. Mr. Forlit, through Insight and Gadot, were engaged by Mr. Page to conduct investigation into Mr. Azima and others, and that the investigation included hacking; b. Respondents provided to Mr. Page monthly investigation reports, some of which included extracts of hacked data; c. After Mr.

---

conduct business at this time, in the State of Florida.  AMIT FORLIT has also attested to those points in Exhibit "2" attached hereto.

Azima brought a counterclaim against RAKIA, Mr. Forlit and the UK Defendants conspired to concoct a false story about how the UK Defendants came; …).

46. Though AMIT FORLIT has not been served with process in connection with the UK Proceedings, the apparent comment that he is, or is contemplated to be, a party Defendant therein, weighs against using the Courts of the United States to conduct discovery which would otherwise be available in direct proceedings in the UK, and in which AMIT FORLIT would be afforded the reciprocal right to conduct discovery to openly identify, convey, and disclose to all the patent falsity of the "sworn statements" currently being used by the Petitioner to support his conspiracy theories.

47. As to the third Intel factor, Petitioner has means available to it through the Courts of the UK to seek direct party, and non-party, discovery.  In point of fact, Petitioner has procured "witness statements" from parties and non-parties to the UK proceedings to use as the basis for its Petitions under 28 USC 1782 to this Court. At no time has the Petitioner indicated how, or why, the discovery processes of the UK Courts cannot be used to obtain any discovery sought directly from AMIT FOLIT.  Moreover, and to the extent AMIT FORLIT is, or is being made, a party to the UK Proceedings (based upon Dominic Holden's Declaration), this factor weighs against having this Court act as a second avenue for the conducting of discovery which is readily available to the Petitioner directly in the currently pending UK Proceedings.

48. Finally, as to the fourth *Intel* factor, Petitioner seeks a discovery deposition of AMIT FORLIT with no limitations whatsoever on the lines of questioning to be asked, and he seeks document production which is wholly unrelated to a) the Petitioner, or b) the claims allegedly at issue in

the UK Proceedings (based upon the re-re-amended counter-claim provided by Dominic Holden).  As noted above, AMIT FORLIT has been operating in the private sector as a Private Investigator in Israel **<u>since 2002</u>** (See Exhibit "4"). In order to open Gadot Information Services in his home in Israel, AMIT FORLIT was required to obtain a license (which he did) to perform services as a private investigator.  See Exhibit "5" attached hereto.

49. Across the past 20 years, AMIT FORLIT has worked for a number of clients, **<u>none of which ever hired him to investigate the Petitioner, or to "hack" the Petitioner.</u>**  AMIT FORLIT should not be subjected to limitless discovery about his activities as a private investigator, the identify of his clients and the services he provided, the when, where, how, and what clients paid for AMIT FORLIT's services or the scope of his services, or anything else that is not directly related (and limited) to a) the Petitioner, or b) the testimony provided in the subject UK proceedings and which is the subject matter or the "re-re-amended counter-claim". At a bare minimum, the grossly overbroad and limitless deposition subpoena should be denied, and the request (if the Court somehow looks beyond all of the foregoing and determines that jurisdiction exists and the sought discovery is appropriate) must be trimmed and tailored so as to match the actual alleged "issues" and "need" for the desired discovery deposition.

50. As to the production subpoena proposed by the Petitioner, the same issue exists.  Petitioner seeks materials that are in no way tailored, or relevant, to the UK Proceedings, including:

    a. All records related to transactions in the state of Florida or the United States, including all bank records, wire transfers, tax records, and property owned or used by you in the United States.

b.  All records related to Alon Omri Gurlavie, including information regarding Mr. Gurlavie's address, date of birth, and United States immigration status.

c.  All records related to your United States immigration status, including any prior U.S. immigration documents and applications.

51. The foregoing bears no relevance to the UK Proceedings, or the stated "need" for this Court's assistance in gathering discovery for use in said proceedings, and highlights the improper means and methods resorted to by the Petitioner in his expanding and persisting efforts to coerce further individuals into assisting him (through coerced false testimony) with his conspiracy claims pending in the UK Proceedings.

## <u>CONCLUSION</u>:

Based upon the foregoing, subject matter does not lie in this proceeding as to AMIT FORLIT, and as such the Supplemental Request by the Petitioner must be denied, the intended discovery disallowed, and these proceedings dismissed as to AMIT FORLIT.  AMIT FORLIT furthermore should be awarded a recovery of reasonable attorney's fees and court costs incurred in being forced to respond to the Petitioner's filings and actions in this proceeding.

WHEREFORE AMIT FORLIT requests that this Court DENY all relief requested by the Petitioner, and grant relief to AMIT FORLIT as set forth hereinabove.

## <u>GOOD FAITH CERTIFICATION</u>:

The undersigned counsel hereby certifies that: (A) that counsel for the undersigned has conferred with all parties or non-parties who may be affected by the relief sought in the foregoing in a good faith effort to resolve the issues raised in the foregoing and has been unable to do so.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 17nd day of June, 2022, that a true and correct copy of the foregoing has been filed through the Court's CM/ECF-filing portal and that a true copy has been served through the portal upon all counsel of record in this action.

Respectfully submitted,

By: */s/ Christopher S. Salivar, Esq.*
Christopher S. Salivar, Esquire
Florida Bar No.: 57031
6576 Whispering Wind Way
Delray Beach, FL 33484
Tel: (561) 628-8908
Email: cssalivarattorney@gmail.com

By: */s/ Elan I. Baret, Esq.*
Elan I. Baret, Esquire
Florida Bar No.: 20676
3999 Sheridan Street, 2nd Floor
Hollywood, Florida 33021
Tel: (954) 486-9966
Facsimile: (954) 585-9196
Email: elan@baretlawgroup.com