IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-MC-20707-JEM/BECERRA

*In re:* Application Pursuant to
28 U.S.C.§ 1782 of

FARHAD AZIMA,

      *Petitioner,*

v.

INSIGHT ANALYSIS AND RESEARCH, LLC,
SDC-GADOT, LLC, and
AMIT FORLIT,

      *Respondents.*
_____/

## **OPPOSITION TO MOTION TO TERMINATE DISCOVERY (D.E. 45)**

On the evening of August 5, 2022, Respondents filed a "supplement," including various sub-motions seeking relief, at D.E.s 45 and 46. Petitioner understands from those pleadings that, in part, Respondents Insight and Gadot ("Respondents") claim that they have fulfilled their discovery obligations and are seeking to "terminate discovery." (*See* D.E. 45). Petitioner Farhad Azima opposes that "motion," and respectfully requests that the Court compel the Respondents to (1) produce documents (which they have yet to do) responsive to subpoenas issued, as the Court has done in prior orders and Petitioner has sought in prior pleadings filed (*see, e.g.*, D.E. 32), and (2) continue the depositions of Insight and Gadot for the reasons explained herein.

As the court was advised in Respondents' pleadings, the parties conducted Rule 30(b)(6) depositions of the Respondents last month, but it is undisputed that Respondents' designated corporate representative (Amit Forlit) refused to answer multiple questions, and was unprepared to answer other relevant questions. Many of those questions stem from Respondents' bank records

1

and directly relate to Petitioner's pending claim in the UK Proceeding.

During the deposition, Mr. Forlit admitted that Respondents received more than $10 million from Stuart Page. Mr. Page has stated under oath that he paid Mr. Forlit for hacking services and preparing reports that included hacked data. Mr. Forlit testified at his deposition that some of those funds received in the US by the Respondents were used to pay employees and subcontractors who performed work against Mr. Azima. Despite the direct tie between Gadot and Insight's US bank accounts and payments to the employees and subcontractors, Mr. Forlit refused to identify the subcontractors, vendors, employees and sources involved in this work. In short, Respondents received millions of dollars in the US that they used to pay employees and others for work regarding Petitioner, yet Respondents refuse to provide any information on those who performed that work, which was bought and paid for by Respondents. Questions about who performed the work and prepared the reports – paid for by Respondents – are clearly relevant to the UK Proceeding. For these reasons, Petitioner requests that the Court order that the depositions of Respondents Insight and Gadot be continued, and compel these entities' corporate representative to answer all questions that do not call for privileged information.[1]

## ARGUMENT

Petitioner filed his application for discovery on March 8, 2022 (D.E. 1) and the Court granted the application two days later (D.E. 5). Petitioner served subpoenas and notices of deposition on Respondents' registered agent. Those notices (the "First Deposition Notices"), sought a representative who would be knowledgeable about the following topics: (1) the

---

[1] There are three issues pending before this Court, to be addressed at the August 11, 2022 hearing: (1) whether discovery from Mr. Forlit in his personal capacity will be authorized; (2) the scope of the discovery from Respondents Insight and Gadot; and (3) whether sanctions and costs against the Respondents are appropriate for their lack of compliance with discovery obligations.

investigation of Petitioner, related hacking of Petitioner's data; and preparation of investigation reports related thereto; and (2) the subsequent cover-up and scheme to submit false evidence to the UK Court. Respondents failed to designate any representative for those depositions, failed to attend the depositions and failed to even respond to Petitioner's application and subpoenas (though Mr. Forlit, the owner, creator, and sole employee of Respondents filed a motion to quash).

Following a hearing on June 6, 2022, the Court ordered Petitioner to notice new depositions for June 10, 2022 and the Respondents to comply. Petitioner served new notices of deposition and provided Respondents with further information about the topics that Petitioner intended to ask about in the deposition ("Second Deposition Notices"). The Second Deposition Notices included, for example, additional topics based on bank records Petitioner had obtained since the original application was filed. Again, Respondents failed to designate a representative or attend the depositions, though this time, Respondents did enter an appearance.

Though Petitioner's application clearly sought "subpoenas for depositions and the production of documents," D.E. 1, Respondents have since argued that the Court's order did not include the issuance of deposition subpoenas. That issue is moot, however, because Petitioner and Respondents agreed to hold Rule 30(b)(6) depositions on July 20 and July 21.[2] (*See* Attachments A and B: deposition transcripts from July 20 and 21, 2022, respectively.)

Petitioner agreed to hold the depositions under the First Deposition Notices but put

---

[2] Respondents also filed a motion arguing that the Second Deposition Notices improperly expanded the topics beyond what was included in the original application. However, it is not appropriate to refuse to answer a deposition question on the basis that the questions were not listed in the notice of deposition. A Rule 30(b)(6) deposition notice merely puts the respondent on notice of the topics for which the corporate representative must be prepared. It does not limit the scope of the questions that can be asked and must be answered if the corporate representative knows the answer. *DHL Express (USA), Inc. v. Express Save Industries Inc.*, 2009 WL 3418148, at *1 (S.D. Fl. Oct. 19, 2009) (holding that a 30(b)(6) deponent's testimony "goes beyond matters personally known to that designee or to matters in which the designee was personally involved.").

Respondents on notice that under the Federal Rules of Civil Procedure, the deponent could only refuse to answer questions on the basis of privilege, not relevance or the scope of the notice. (*See* D.E. 46-1.) As a courtesy, Petitioner agreed to travel to Tel Aviv to take the depositions because Mr. Forlit claimed that he could not travel to the U.S. At the depositions, Respondents' counsel objected less than 10 times over two days.

Respondents failed to answer questions on a number of key topics. On multiple occasions, Mr. Forlit stated that he knew the answer to the questions but refused to provide the information. Specifically, Mr. Forlit failed to answer questions about the following topics.

**Identity of Employees and Contractors paid with funds from Respondents:** Mr. Forlit testified that Respondents made payments to compensate individuals involved in the Project Beech investigations via Mr. Forlit's Israeli company, Gadot Information Services ("GIS"). Petitioner asked Mr. Forlit to identify the employees, subcontractors, and vendors who performed this work, but he refused to do so. Mr. Forlit claimed that because the individuals who prepared the reports were employees of his own company, that is, GIS, he would not respond. Tr. 7/20/22 at 25-26; Tr. 7/21/22 at 48-50. Information regarding the individuals who prepared the investigation reports is directly relevant to the UK Proceeding and the notice of deposition. The work performed by these individuals was ultimately paid for by Insight and Gadot.

In addition, in other instances, Mr. Forlit testified that he did not recall other individuals or entities who Insight and Gadot paid for work on Project Beech. Tr. 07/21/22 at 40. To the extent this is true, Mr. Forlit was not adequately prepared as the corporate representative of Respondents. Even under the First Deposition Notice, this information was noticed, as it is directly relevant to the UK Proceeding.

**Services of Ezekiel Golan:** Respondents' bank records establish that they paid Ezekiel

Golan from accounts containing millions of dollars from Stuart Page. Petitioner asked about the services that Ezekiel Golan provided to Respondents, and Mr. Forlit refused to answer because of an unspecified agreement with Ezekiel Golan. Tr. 7/20/22 at 143-44. Mr. Forlit confirmed that the work with Ezekiel Golan did not involve a lawyer. Thus, the information does not appear to be privileged, and Respondents should provide information regarding the nature of the services they were provided by Ezekiel Golan.

**Services of BMI Analysis Limited:** Respondents bank records indicate that they paid BMI Analysis Limited, again from accounts containing millions of dollars from Mr. Page. Invoices confirm the company did work for Project Beech, which included the investigation into and reports regarding Petitioner. However, when asked about the role the BMI played, Mr. Forlit said that he did not recall. Tr. 7/20/22 at 131-32. Mr. Forlit was inadequately prepared to fulfill his role as a corporate representative and should be further deposed regarding this issue.

**Services of Panda Face:** Respondents bank records indicate that they paid Panda Face from the same bank accounts. Mr. Forlit testified that he did not recall what role that company played. Tr. 7/20/22 at 148-49. Mr. Forlit, again, was inadequately prepared to fulfill his role as a corporate representative and should be further deposed regarding this issue.

**Services of Overseas Consulting Ltd:** Respondents bank records also indicate that they were paid hundreds of thousands of dollars from Overseas Consulting Limited LLP, a Florida corporation, during the same time they were receiving money from Mr. Page for hacking and the preparation of the hacking reports. Mr. Forlit refused to answer questions about Overseas Consulting, claiming that it was unrelated to Mr. Page. Tr. 7/20/22 at 129-30. However, given the substantial amount of funds paid by Overseas Consulting to Respondents during this time, Petitioner should be permitted to ask questions to determine whether the payments were relevant.

**Services of Fusion GPS:**  Respondents bank records also indicate that they paid millions of dollars to Fusion GPS around the same time that Mr. Page was paying Respondents.  Mr. Page also stated that Fusion GPS played a role in the investigation and reports from Mr. Forlit.  Petitioner should be permitted to ask about these substantial payments from Respondents to Fusion GPS that overlap with the allegation in the UK Proceeding.

**Identity of Sources:**  Mr. Forlit testified that funds received from Mr. Page regarding Project Beech were used to pay individuals who served as "sources" of information.  Petitioner ought the names of those sources but Mr. Forlit refused to answer.  Tr. 7/20/22 at 57-59.  The investigation reports, which were paid for by Respondents, included references to and information provided by the sources. Therefore, this information is directly relevant to the UK proceeding and the notices of deposition.

**Questions Regarding Aviram Azari, Confessed Hacker:**  Respondents bank records show payments to Aviram Hawk Consulting, which is owned by Aviram Azari.  Moreover, Mr. Forlit filed with this court a WhatsApp exchange between himself and Stuart Page that mentions Azari and states that Mr. Forlit is "not really in the business since what happened with Avi." *See* D.E. 31-3.  Mr. Azari has pled guilty to hacking in the Southern District of New York, and Petitioner sought information regarding the payments by Respondents to Mr. Azari, as well as Mr. Forlit's understanding of Mr. Azari's involvement in hacking.  Mr. Baret repeatedly instructed Mr. Forlit not to answer questions about Mr. Azari, claiming it was unrelated to Respondents.  Tr. 7/20/22 at 175-81.  However, given that Mr. Azari's business is hacking and the proximity between the payments received by Respondents from Mr. Page and the payments to Mr. Azari's company, Mr. Forlit's conversations with Mr. Page about Mr. Azari are directly relevant to the work and role of Respondents, and is related to the U.K. Proceeding and the notices of deposition.

**Questions Regarding Mr. Forlit's Investigative License:** Mr. Forlit filed an exhibit regarding Gadot Information Services' private investigator license, stating: "Rather, AMIT FORLIT is a licensed private investigator, having operated an authorized and reputable business in Israel (Gadot Investigative Services) since its formation in 2002 [], and at all times his activities have been subject to, and in compliance with, the laws of Israel as to the issuance of licenses for those wishing to engage in work as a private investigator." D.E. 31. At the depositions, Mr. Forlit admitted that this license was suspended because of allegations that Mr. Forlit was involved in the smuggling of an individual out of Israel. Mr. Forlit refused to answer questions about this topic on the basis that the human smuggling did not relate to Respondents. Tr. 7/20/22 at 83-84. Questions about this issue go to the credibility of Respondents' witness (Mr. Forlit) and may be relevant to Respondents' businesses.

**Report Containing Petitioner's Hacked Data:** Petitioner asked questions about an August 2015 investigative report that related to Petitioner and included Petitioner's stolen documents. Counsel for Respondents objected on the basis that the report was written prior to the formation of the companies. Tr. 7/20/22 at 185-86. However, the August 2015 report, which was entirely about Petitioner and included his hacked data, directly undermines Mr. Forlit's testimony that he never investigated Petitioner and is directly relevant to the allegations in this case. Moreover, Mr. Forlit testified that the Respondents were formed to facilitate payments to Gadot Information Services so the company could continue to investigate and produce reports for Mr. Page. Thus, Petitioner should be allowed to probe whether the August 2015 report was for the work that Respondents continued to pay for from 2017 to 2020.

As described above, each of these topics is directly relevant to Respondents and the work they did related to the allegations in the UK Proceeding. Specifically, Mr. Forlit refused to provide

information about the individuals and entities that were responsible for the investigation and reports that were paid for by Respondents. Other questions related to Aviram Azari, a confessed hacker who was paid by Respondents and whom Mr. Forlit and Mr. Page discussed on WhatsApp, as well as the private investigator license for Mr. Forlit's Israeli entity, which conducted the work paid for by Respondents. These topics are relevant to Respondents' work and the UK Proceeding, and do not call for privileged information. As such, Mr. Forlit should have answered questions related to these topics to the best of his ability. The Respondents should be deposed again, to cover such topics.

## **CONCLUSION**

As described above, Mr. Forlit, as corporate representative for Respondents, failed to answer numerous questions during the Rule 30(b)(6) depositions. Mr. Forlit either refused to answer, was not prepared to answer, or was instructed not to answer. For the foregoing reasons, the Court should order that the depositions of Insight and Gadot be continued, thereby compelling Respondents to answer questions on the topics described in this motion.[3]

Respectfully submitted,

Dated: August 9, 2022

s/ *Vanessa Singh Johannes*
Vanessa Singh Johannes (FBN 1028744)
E-mail: VJohannes@carltonfields.com
CARLTON FIELDS P.A.
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Telephone: (305) 530-0050

s/ *Ian Herbert*
Ian A. Herbert (admitted *pro hac vice*)

---

[3] Petitioner sought to confer with Respondents on this motion and sent a letter outlining the deficiencies at the depositions. Respondents did not respond substantively; rather, they proffered that their supplemental filing (D.E.s 45 and D.E. 46) addressed Petitioner's concerns. Petitioner submits that those filings are convoluted and do not properly address the procedural and outstanding issues before the Court.

          MILLER & CHEVALIER CHARTERED
          900 16th Street, NW
          Washington, D.C. 20006

          *Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2022, a true and correct copy of the foregoing document was filed via CM/ECF and served on counsel for the Respondents named in this matter, that is, Christopher S. Salivar and Elan I. Baret, via such means.

          s/ *Vanessa Singh Johannes*
          Vanessa S. Johannes