IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re: Application Pursuant to )
28 U.S.C. 1782 of )
)
FARHAD AZIMA )    Case No.: 22-20707-cv-JEM
)
         Petitioner, )
v. )
)
INSIGHT ANALYSIS AND RESEARCH, )
LLC, and SDC-GADOT LLC, )
)
         Respondents, )
)
_____ )

## RESPONDENTS' REPLY TO PETITIONER'S RESPONSE TO MOTION FOR RECONSIDERATION OF DE # 1 AND DE # 5:

Respondents, INSIGHT ANALYSIS AND RESEARCH, LLC and SDC-GADOT, LLC, by and through the undersigned attorneys, hereby file this, their Reply to DE # 54 (Petitioner's Response to Respondent's Motion for Reconsideration of DE # 1 and DE #5), as follows:

1. Petitioner's Response yet again shows the lengths to which Petitioner will go to misrepresent facts (be they clearly known or otherwise) to this Court to further the Petitioner's purposes. Therein, Petitioner asserts that the Respondents somehow violated a directive of this Court in filing the Respondents' Motion for Reconsideration. Specifically, in DE # 54 Petitioner states: "The Court reserved ruling, permitting Petitioner to "file a written motion to compel that explains the categories of documents that Petitioner believes are covered by the subpoena and why Petitioner is entitled to those documents," and Respondents to "file a written response on the issues noted at the hearing [regarding D.E. 48]. … On September 7, 2022, instead of filing an opposition to D.E. 48[1], Respondents filed a Motion for Reconsideration of D.E. 1 and 5."

_____

[1] It is believed that Petitioner mistakenly referenced DE # 48 where Petitioner intended to reference DE # 50, as

2.  The foregoing is patently inaccurate, as on September 7, 2022, Respondents filed DE # 51, which is the Respondents' Response to Petitioner's Motion to Compel (i.e., DE # 50).

3.  In addition to DE # 51, Respondents filed DE # 52, which is their instant Motion for Reconsideration.

4.  Next, Petitioner seeks to argue that DE # 52 is somehow "untimely", without citing to any support for said assertion. As a base level point of law, a Court may always revisit interlocutory Orders at any time prior to rendition of a final adjudication on the merits of a claim. *See gen Obregon v. JEP Family Enters.*, 2012 U.S. Dist. LEXIS 198384 (S.D. Fla. 2012) ("An order granting partial summary judgment is interlocutory, not final, unless the court enters a final judgment on the resolved claim, pursuant to Federal Rule of Civil Procedure 54(b). See Pacific Ins. Co. v. General Development Corp., 28 F.3d 1093, 1096 (11th Cir. 1994); Aaro, Inc. v. Daewoo Intl (America) Corp., 755 F.2d 1398, 1400 (11th Cir. 1985). Interlocutory orders can be modified or rescinded at any time before final judgment is entered. See Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000) (district court has plenary power over interlocutory orders, including power to reconsider, revise, alter or amend the interlocutory order and is not subject to the limitations of Rule 59); Bodine v. Federal Kemper Life Assur. Co., 912 F.2d 1373, 1376 (11th Cir. 1990) (order granting partial summary judgment was interlocutory and thus, subject to revision by the district court); Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir. 1970) (order denying summary judgment was interlocutory and court could modify or rescind it and any time before final decree).").

5.  An interlocutory Order is one which does not bring about the conclusion of a matter in litigation, or which does not contemplate the termination of all judicial labor. Clearly, reviewing DE #5 it is apparent that the Order is not a final Order that resolved all matters before the Court in this proceeding. Rather, it is an original Order that initiated discovery before this Court under 28 USC § 1782, wherein

---

DE # 50 is Petitioner's Motion to Compel to which Respondents were granted leave to file a Response, hence the filing of DE # 51.

the Court reserved jurisdiction for further proceedings as may be necessary to enforce DE # 5[2]. As an

interlocutory Order, this Court possesses the power to revisit, amend, or vacate DE #5 at any time.

6.   Petitioner also seeks to assert that Respondents do not contend that DE #5 was improperly entered,

but apparently this argument only arises from Petitioner not actually reading DE # 52 or the issues

raised therein. In DE # 52 it is laid bare that the Petitioner initiated this proceeding using patently false

"sworn" testimony that Petitioner coerced from Stuart Page in order to pursue a campaign of

harassment against these Respondents for ulterior purposes, and that Petitioner failed to provide this

Court with materially relevant information[3] (such as allegations and evidence presented to other

District Courts) relating to the identity of the individuals and entities responsible for the "hacking" of

the Petitioner which Petitioner has recklessly and falsely laid at the feet of the Respondents in this

proceeding. This failure deprived the Court the ability to consider this information when exercising

the Court's discretion as part of its *Intel* analysis.

7.   As identified in DE # 52 (and previously in these proceedings), this Court never authorized Rule

30(b)(6) deposition (or any depositions under Rule 30) via DE # 5. Rather, the Court authorized the

---

[2] Of note, DE #5 expressly states: "The Court retains jurisdiction over this matter for purposes of enforcing this Order." and "The Clerk is DIRECTED to ADMINISTRATIVELY CLOSE this case." Closure was done for administrative purposes only, and not to close this action based upon the entry of a final Order or Judgment which concluded all judicial labor.

But even assuming arguendo that this Court were to consider DE # 5 as a "Final" Order, per Rule 60 the timeliness of a Motion for Reconsideration would only come into play if a Motion filed under Rule 60(b)(1), (2), or (3) was filed more than one (1) year after rendition of the Order. The instant Motion was filed well within one year of the rendition of DE #5. Moreover, an Order such as DE #5 can be reached via a Motion to vacate filed more than 30 days after rendition. *See gen In re Dep't of Antioquia*, 2016 U.S. Dist. LEXIS 193681 (S.D. Fla. 2016).

[3] This failure is particularly alarming given the fact that this proceeding was initiated *ex-parte*, and as such imposed a heightened burden of candor upon the Petitioner and his counsel. See gen *United States ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 102 F. Supp. 3d 1350 (S.D. Fla. 2015); see also *In re Dep't of Antioquia*, 2016 U.S. Dist. LEXIS 193681 (S.D. Fla. 2016) (By seeking ex parte relief from the Court, Applicants had a duty of candor. See Maine Audubon Soc. v. Purslow, 907 F.2d 265, 268-69 (1st Cir. 1990) ("Where counsel appears ex parte...the customary checks and balances do not pertain—and the court is entitled to expect an even greater degree of thoroughness and candor from unopposed counsel than in the typical adversarial setting.").

service of document production subpoenas. Petitioner decided of his own accord to issue and serve Rule 30 deposition subpoenas with no express authorization of the Court, in order to improperly expand the scope of discovery sought by the Petitioner and without prior authorization (or review) by the Court. In an attempt to amicably resolve this foundational point of contention, the Respondents proffered a corporate representative for Rule 30(b)(6) depositions, only to have said deponent subjected to a litany of questioning far afield of the agreed upon areas of inquiry. During that questioning, Petitioner made clear that his interests do not relate to any investigation of the Petitioner (as the deposition testimony provided repeatedly indicated that the Respondents were never hired to investigate, let alone "hack", the Petitioner). Rather, no investigation was needed, as Petitioner is currently suing the perpetrators of his "hacking" woes in another District Court (and has been pursuing said claims at all times during which these discovery proceedings have remained pending). Instead, Petitioner focused on asking questions about all aspects of investigations performed by an Israeli corporate entity (Gadot Israel) for unrelated clients, as well as the financial transactions relating to such investigations. This then morphed into the grossly overly broad discovery Petitioner seeks to compel via his filed DE # 50, which seeks unfettered access to information relating to investigators, investigations, financial transactions, and corporate records which have nothing whatsoever to do with the Petitioner (as again, these Respondents were never retained to investigate, and never investigated, the Petitioner, and the Respondents were never retained to "hack", and did not in fact "hack", the Petitioner).

8. The sole support for the Petitioner's continuing discovery crusade is the drumbeat argument of "$250,000.00 per month was paid…" despite the Petitioner having received direct testimony that monies paid to the Respondents by Stuart Page was not in fact for any investigation, or "hacking", of the Petitioner, and in point of fact significant sums were paid by Stuart Page for other projects which had nothing to do with the Petitioner or any "Azima Associate".

9.  Most tellingly, Petitioner does not respond to, and does not deny, the matters raised in DE # 52 highlighting Petitioner's counsel's failure to even advise this Court of the other proceedings pending at the time of filing of DE # 1 which identified the actual perpetrators of the Petitioner's "hacking", or the Petitioner's intentional misrepresentation of deposition testimony obtained in those proceeding when Petitioner has recently initiated other cases before this very District Court seeking further discovery under 28 USC § 1782. DE # 52 again lays bare before the Court that Petitioner has at all times possessed material factual information which directly contradicts the false sworn statements of Stuart Page, and others, that Petitioner utilized to initiate this proceeding, and Petitioner has knowingly and intentionally failed to present same to the Court. Moreover, Petitioner has willfully misrepresented the testimony of the Respondents' corporate representative (Amit Forlit), asserting that somehow his testimony identified Eitan Arusy as playing an "integral role" in the investigation of "the Petitioner and others" relating to the UK Proceeding. The quote which expressly misstates Respondents' testimony and which Petitioner knowingly provided to this Court was: "Based on the testimony of Forlit, it is clear that Arusy played an integral role in the investigation that Mr. Page and Forlit referred to as "Project Beech", focused, in part, on Petitioner, and that Forlit paid GIS for Arusy's work on the project. At the Rule 30(b)(6) depositions of Insight and Gadot, Forlit revealed that Arusy was part of the inner circle of people who, along with UK Defendants Mr. Gerrard and Mr. Buchanan, Mr. Page, and Forlit, attended regular "staff meetings" to discuss the investigation, which included the hacking of Petitioner. Forlit estimated that Arusy met with UK Defendant Gerrard about the investigation into Petitioner and his associates approximately five to ten times. Based on Forlit's testimony, which is corroborated by bank records showing substantial payments between Forlit's entities and Arusy's entities, it appears that Arusy played a critical role in the investigation, targeting, and hacking of Petitioner and others. For these reasons, there is a basis to seek discovery from Arusy, GIS and Truist."

10. In no way, shape, or form did these Respondents' corporate representative ever suggest or intimate, let alone assert, that Eitan Arusy, GIS, or Truist were involved in the "investigation, targeting, or hacking of Petitioner and others", and yet Petitioner and his counsel continue to knowingly advance this false narrative for Petitioner's own alternate end goals of harassment and intimidation.

11. The fact that the foregoing was completely glossed over without any discussion in DE # 54 speaks volumes in and of itself.

WHEREFORE Respondents, SDC-GADOT, LLC and INSIGHT ANALYSIS AND RESEARCH, LLC, respectfully request that the Court GRANT the relief requested by DE #52, that the Court grant the Respondents a recovery of reasonable attorney's fees and/or costs associated with their Motion for relief, and that the Court Grant the Respondents such other and further relief as this Court may deem just and proper.

### CERTIFICATE OF COMPLIANCE WITH FONT AND PAGE REQUIREMENTS:

The undersigned hereby certifies that this Reply complies with the requirements of Local Rules 5.1 and 7 pertaining to font size and length of this Reply.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7 REGARDING CONFERRING PRIOR TO FILING OF MOTION:

The undersigned hereby certifies that prior to this filing the undersigned conferred orally with Petitioner's counsel in a good faith effort to discuss the relief sought hereby (i.e., a termination of these discovery proceedings) and thereby obviate the need for this Motion.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 28th day of September, 2022, that a true and correct copy of the foregoing has been filed through the Court's CM/ECF-filing portal and that a true copy has been served through the portal upon all counsel of record in this action.

Respectfully submitted,

By: */s/ Elan I. Baret, Esq.*
    Elan I. Baret, Esquire
    Florida Bar No.: 20676
    3999 Sheridan Street, 2nd Floor
    Hollywood, Florida 33021

Tel: (954) 486-9966
Facsimile: (954) 585-9196
Email: elan@baretlawgroup.com

By: */s/ Christopher S. Salivar, Esq.*
    Christopher S. Salivar, Esquire
    Florida Bar No.: 57031
    6576 Whispering Wind Way
    Delray Beach, FL 33484
    Tel: (561) 628-8908
    Email: cssalivarattorney@gmail.com