```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                        CASE NO. 22-CV-20707-JEM
 3
      FARHAD AZIMA,
 4                                        Miami, Florida
                   Plaintiff(s),
 5                                        December 21, 2022
              vs.
 6
      INSIGHT ANALYSIS AND RESEARCH,
 7    LLC, et al.,

 8
                      Defendant(s).      Pages 1 - 109
 9    ------------------------------------------------------------

10                         DISCOVERY HEARING
                  TRANSCRIBED FROM DIGITAL AUDIO RECORDING
11               BEFORE THE HONORABLE JACQUELINE BECERRA
                    UNITED STATES MAGISTRATE JUDGE
12
      APPEARANCES:
13
      FOR THE PLAINTIFF(S):  VANESSA S. JOHANNES, ESQ.
14                           CARLTON FIELDS
                             700 NW 1st Avenue
15                           Miami, FL 33136
                             305-530-0050
16                           vjohannes@carltonfields.com

17
                             KIRBY D. BEHRE, ESQ.
18                           MILLER & CHEVALIER CHARTERED
                             900 Sixteenth Street N.W.
19                           Washington, D.C. 20006
                             202-626-1496
20                           kbehre@milchev.com

21

22

23

24

25
```

```
 1    APPEARANCES (CONT'D)

 2
      FOR THE DEFENDANT(S):   CHRISTOPHER S. SALIVAR, ESQ.
 3                            CHRISTOPHER S. SALIVAR, P.L.L.C.
                              6576 Whispering Wind Way
 4                            Delray Beach, FL 33484
                              561-347-6767
 5                            cssalivarattorney@gmail.com

 6
      TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
 7                            Court Reporter
                              jemancari@gmail.com
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    Thereupon,

 2    the following proceedings were held:

 3              THE DEPUTY CLERK:  Case No. 22 CV 20707, Martinez.

 4    Azima v. Insight Analysis and Research, LLC, et al.

 5              Counsel, please state your appearances for the record,

 6    starting with the plaintiff.

 7              MS. JOHANNES:  Good morning, your Honor.  Vanessa

 8    Johannes on behalf of petitioner Mr. Azima.

 9              THE COURT:  Good morning, Ms. Johannes.

10              MR. BEHRE:  Good morning, your Honor.  Kirby Behre on

11    behalf of the petitioner as well.

12              THE COURT:  Good morning.

13              MR. SALIVAR:  Good morning, your Honor.  Christopher

14    Salivar on behalf of the respondents SDC-Gadot and Insight

15    Research and Analysis.

16              THE COURT:  Good morning.  You may all be seated.

17              All right.  So I apologize for not getting to this

18    mess sooner.  I had a number of criminal matters referred to

19    me, and of course those take precedent and it kind of is what

20    it is.

21              We have a lot of different things pending in this

22    case.  I am going to try to work through a lot of it today

23    because I think some of it I can work through, depending on

24    what you tell me, and then I think there are a couple of things

25    I can't work through from the bench that I'm trying to get some
```

1    organization so we can really move this forward and hopefully

2    wrap anything I have up on this case early January so you guys

3    can move on.

4          I had intended to handle the other Azima case today.

5    It wasn't until last night that I realized there was a

6    calendaring error and we only set this one.  So I know you have

7    another case.  Maybe the lawyer sitting in the back is a lawyer

8    in the other case.  No.  OK.

9          I am not going to set it now.  It is too close to

10   Christmas.  I am not going to do that to anybody's schedule,

11   but we will set it early in the year.

12         Ms. Johannes, if you don't mind letting that lawyer

13   know that we intend to set it for a quick argument early in the

14   year.  As I said, yesterday when I looked at the calendar I am

15   like, why is there only one on.  So there was an error on our

16   part.

17         MS. JOHANNES:  Yes, your Honor.  Just to be clear for

18   the record, you're talking about the Eitan Arusy matter that is

19   a separate case but a sister case.

20         THE COURT:  It is a completely separate case.  It's

21   been fully briefed.  It is ripe.  Yes.  That is the one.

22         MS. JOHANNES:  Will do, your Honor.

23         THE COURT:  OK.  All right.  So let me tell you what I

24   think I have pending and how I think I can navigate this today

25   to try to bring to resolution to as many things as I can.

1          So by my count, and you let me know if I'm missing

2    something, so ECF-32 is still pending.  ECF-32, which might

3    seem like years ago now -- it wasn't, but it was a while ago --

4    ECF No. 32 is the petitioner's motion requesting sanctions and

5    compelling discovery.  That is still open.

6          Then ECF-34 is the objection to the order, but it

7    still appears as an open matter, of course, because it also had

8    the request for the district court to review my earlier

9    findings.  So 34, which within it, right, has that objection to

10   the earlier findings, is still an open matter.

11         Then ECF-50, which is the motion to compel that I

12   asked the petitioner to file, is an open matter.

13         ECF-52, which is the respondents' motion to have the

14   court reconsider the original granting of the application, is

15   open.

16         Then there is 56, which is the recent motion for

17   sanctions filed for the respondent.

18         All right.  So let's just pause there and make sure I

19   have got everything.

20         Ms. Johannes, by your count is anything else open on

21   the docket?

22         MS. JOHANNES:  Yes, your Honor.  So docket entries 23

23   and 24 is a supplemental petition seeking discovery for

24   Mr. Forlit in his personal capacity.

25         THE COURT:  I'm sorry.  That is Mr. Forlit.  Yes,

1    you're right.

2            What number was that again?

3            MS. JOHANNES:  Docket entries 23 and 24.  23 is the

4    actual petition.

5            THE COURT:  Correct.

6            MS. JOHANNES:  24 is the memorandum in support

7    thereof.

8            Your Honor, our position is that docket entries 32 and

9    50 are -- 50 is, in essence, a supplement.  The court requested

10   it, but they are related.

11           THE COURT:  Right.  I am not going to address 23

12   today.  That is why I didn't have it on my list, right, because

13   that is the issue to add Mr. Forlit.

14           I want to do these other issues first because I don't

15   know that we get there.  We may get there, we may not.  Let's

16   get to these other things first.  So I agree that is still

17   pending.

18           The court docket, because it showed it as a

19   supplement -- I think we went through this already -- it didn't

20   correct it.  The order that I had filed to sort of show it as

21   an open matter didn't in fact open it on the court docket, but

22   it doesn't matter for purposes of the referral because since

23   then Judge Martinez basically said whatever you can do by order

24   do by order, whatever you can't do by R&R.  So he has taken

25   that part of it, but that is an open matter.

1          Yes, counsel.

2          MR. SALIVAR:  As to that matter, your Honor, my

3   recollection is we had fully briefed it and we already had

4   argument in front of your Honor.  You indicated you were going

5   to reserve and then rule.

6          THE COURT:  Correct.

7          MR. SALIVAR:  I don't believe there was anything else

8   that the parties needed to take care of on that docket entry.

9          THE COURT:  I think that is right, which is why I set

10  it aside for today.

11         MR. SALIVAR:  As to the pending matters in the order,

12  your Honor, my comment would simply be if we work in reverse

13  order, addressing the issue of whether or not the case

14  continues based on the filing of the new Southern District of

15  New York action, and actually the comments in the pleadings

16  therein and the overlap might take care of all other pending

17  matters and potentially moot it if your Honor finds it is

18  appropriate to close this case.

19         THE COURT:  Right.  So you're right that if I were to

20  grant any of your motions or grant at least 52, it moots

21  everything.

22         Do you see anything else that is open on the docket,

23  though, sir?

24         MR. SALIVAR:  Let me see.  I will pull up the docket

25  right now, your Honor.

```
 1              As far as --
 2              THE COURT:  Anything other issue that I need to
 3     consider, as best you know?
 4              MR. SALIVAR:  I don't believe so.
 5              With 56, there was -- 57 and 58 were replies and
 6     responses to 56.
 7              THE COURT:  Right.
 8              MR. SALIVAR:  So that carries forward.
 9              52 your Honor already identified.
10              51 is the response to 50.
11              45 and 46 were simply supplements to 39 and 31
12     respectively.
13              THE COURT:  Correct.
14              MR. SALIVAR:  So I don't believe there is anything
15     additionally open motion-wise, your Honor.  Anything else would
16     have been reply or response to the pending items you already
17     addressed.
18              THE COURT:  OK.  So let me tell you kind of what I
19     think on each one of them that is open.  I don't know that I
20     can so neatly pick one and say this is dispositive and I'm
21     done.
22              When I pull 32, and we can go through 32, I think the
23     relief that the petitioner requested in 32 is either moot
24     and/or subsumed now by 50.  All right.  We can do that one by
25     one.
```

1          34 I think is moot because to the extent that they

2     were seeking sanctions and there is a response to sanctions,

3     I'm not sanctioning the respondents for the failure to appear

4     for the first deposition.  A lot of 34 is an objection to my

5     order requiring you to appear.  I am not sanctioning.  So I

6     think 34 kind of falls out as well.

7          I will give you my advanced ruling 56.  I will hear

8     you out on it because I am always, obviously, open to the

9     argument.

10          I am prepared to deny 56.  I don't think there is an

11    issue of sanctions.  I think what is really open is whether or

12    not the respondents -- I am not suggesting my ruling here.  I

13    think the issue that is open is whether or not respondents'

14    motion for reconsideration of the initial order should be

15    granted.  If it is, it moots 50.  If it is not, then it doesn't

16    moot 50; there are still documents that are subject to compel.

17          That is kind of how I see the world.  We can go

18    through this slowly.  I am not trying to railroad a quicker

19    ending after having waited this long to hear you out on it, but

20    that is kind of where I see the world.

21          So let me hear from you, Ms. Johannes.  I see you're

22    standing.

23          MS. JOHANNES:  We agree with you, your Honor, in

24    procedurally where this case stands.

25          I will say on behalf of petitioner, any requests that

1    we have made in docket entries 32, 34, and 50 for sanctions

2    will renege those requests.  I think at this point the

3    petitioner's position, Judge, is that we are just going to try

4    to keep this as simple as possible and move forward with

5    getting discovery, perhaps, and that is really our goal today.

6           So to streamline this, and so the court doesn't have

7    to deal with it at all on the docket, we will go ahead and

8    formally pull any requests that we had in that regard.

9           THE COURT:  I was hoping you would do that a couple of

10   weeks ago so I didn't have to read anything again, but it is

11   what it is.

12          MS. JOHANNES:  I'm sorry, your Honor.

13          THE COURT:  It is not an issue.

14          Let me go through 32 because I want to make sure that

15   the court record is clear because I am not going to be writing

16   an extensive order on this.

17          When I look at 32, at page 2 -- so ECF-32 at pages 2,

18   3 and 4 reviews what the relief is.  So the first request for

19   relief was the cost, the court reporter, videographer for the

20   depositions for which Mr. Forlit did not appear.  I was going

21   to deny that.  I also hear Ms. Johannes this morning saying

22   that that request for those sanctions are withdrawn.

23          Is that correct?

24          MS. JOHANNES:  Correct, we withdraw that.

25          THE COURT:  So No. 1 there is withdrawn.  One minute.

```
 1    Let me make sure my notes are correct now.

 2            OK.  Then the second issue, quite frankly, I think is

 3    moot, right, because Mr. Forlit did sit for the deposition.

 4            Is that correct?

 5            MS. JOHANNES:  That's correct, your Honor.  To the

 6    extent that the petitioner would seek any relief with respect

 7    to a deposition, it would be a very, very narrow deposition to

 8    question the corporate representative regarding any

 9    newly-produced documents or to answer questions that Mr. Forlit

10    as the corporate representative refused to do in the

11    depositions that were held over the summer.

12            THE COURT:  You have that as part of 50.

13            MS. JOHANNES:  Yes.  Correct, your Honor.

14            THE COURT:  OK.  So request No. 2 is denied as moot

15    both because it's either already been satisfied, it's moot, or

16    because it's been subsumed in ECF-50.  To the extent it sought

17    any sanction, that is withdrawn.

18            Then No. 3, this is the only one that I had open

19    because -- hold on.  So my reading of 3 is that it is subsumed

20    by 50.

21            MS. JOHANNES:  It is, your Honor.  That is correct.

22            THE COURT:  OK.  So 3 is denied as moot because it is

23    subsumed by 50.

24            OK.  So that takes care of ECF No. 32.

25            Now, when I get to ECF No. 34, this is the only thing
```

1    that I think is tricky, Mr. Salivar, about 34.  So to the

2    extent that there were any sanctions being sought, all of that

3    is moot because they have withdrawn all of that.  So I don't

4    think that is an issue.

5          I think it is still an issue, however, as I read it --

6    again, you can correct me if I'm wrong -- Judge Martinez has

7    now referred everything to me, but he hadn't at the time.  So

8    the issue of whether or not -- what is weird about that -- I

9    don't mean to say weird in kind of a pejorative way.  What is

10   now procedurally odd about that is that the deposition did take

11   place, right.  So the deposition did take place.  To the extent

12   it is a motion to compel more documents, obviously you are

13   still well within your rights to preserve the objection that

14   the 30(b)(6) notice should never have been served, even though

15   you sat for it, your client sat for it.

16         You tell me where we are now in light of what I did

17   with 32 as to 34.

18         MR. SALIVAR:  As to 34, your Honor, the issue about

19   potentially this court exceeding scope of jurisdiction based on

20   the prior referral order given that all matters have been

21   referred has been effectively taken care of.

22         We still object to any request to compel supplemental

23   Rule 30(b)(6) depositions given that the original order didn't

24   encompass those depositions.  By agreement the parties

25   attempted to resolve the conflict and produced corporate

1    representatives for two full days of depositions.

2         So I would think that a request and a showing of good

3    cause, that meets with the appropriate Intel factors, would

4    need to be done by the petitioner in a motion to compel a

5    continuation of depo, to which we could respond, if that is

6    where the petitioner intends to continue going.  Albeit, I

7    think that may be subsumed by some of the other motions that

8    have been filed subsequent.  So I'm not sure.  That is probably

9    where we should start.

10        THE COURT:  My question was whether or not that issue

11   isn't subsumed in your response to 50.

12        MR. SALIVAR:  In part it is -- well, 50 went to the

13   document issue as well as the scope of the deposition questions

14   that were asked --

15        THE COURT:  Correct.

16        MR. SALIVAR:  -- outside the scope of the Rule

17   30(b)(6) notices, and the request, effectively the court

18   disallowed any further depositions.  So it is not completely

19   subsumed, but I agree that there is a duplicative request to

20   disallow further 30(b)(6) depositions.

21        THE COURT:  So what about if I do this with 34.  I can

22   deny 34 as moot; however, any challenge to the 30(b)(6) notice

23   that were lodged in 34 I will accept as additional argument to

24   opposition to 50.

25        MR. SALIVAR:  I think that would be appropriate, your

1   Honor.

2          THE COURT:  Does that make sense?

3          MR. SALIVAR:  Yes.

4          THE COURT:  OK.

5          Donna, is Cara on the line?

6          THE DEPUTY CLERK:  Yes, Judge.

7          THE COURT:  OK.  I forgot to ask.  My law clerk is

8   remote and I forgot to ask.  OK.

9          So 34 is denied as moot.

10          Hold on.  Then to the extent there are arguments

11   regarding scope of a 30(b)(6), that will be accepted and

12   considered as objection to 50.  OK.  All right.

13          Now, I am going to jump in a minute to 56.  All right.

14   Because where I sit with 56, Mr. Salivar, and I'll let you

15   respond, is I'm prepared to deny that.  I can deny the sanction

16   by order.  I can't grant sanctions by order.  Those are

17   typically, and I think rightly, done by R&R.  Denials are done

18   by order.

19          Here is my thinking on this, and of course I will hear

20   argument from you.  My thinking on 50, and let me get my notes

21   on 50.  OK.

22          So first of all, in terms of what your legal basis for

23   the sanctions are, as best I can tell I think you are traveling

24   only on the court's inherent authority.  I don't really see

25   anything else.

1           MR. SALIVAR:  Yes, your Honor.

2           THE COURT:  With respect to the inherent authority,

3   that is an incredibly high bar, and I don't see any support in

4   this Circuit for sanctions under this fact pattern.

5           Specifically, it seems to me that what you are arguing

6   here, and in some respects it really dovetails into 52, right,

7   and I think some of those arguments are in 52 and I think that

8   is where they should be considered, right.

9           To the extent that your argument is that they have

10  used some of this discovery for a proceeding in the Southern

11  District, I don't see any reason why they are prohibited from

12  doing so, and I don't see that their doing so is sanctionable

13  conduct.

14          If you are correct that the 1782 application was

15  really for purposes of getting those documents, then that

16  argument is your argument on 52, and I will hear it on 52, but

17  I don't see anything that makes it sanctionable separate and

18  apart.

19          In addition to that, the fact that the companies at

20  issue were incorporated after 2016, which I think is a separate

21  argument you have, I don't think that really is sanctionable

22  either because the fact that the companies were incorporated

23  later doesn't necessarily mean they don't have relevant

24  conduct.  Again, I'm just looking is that issue sanctionable.

25  I don't see it as sanctionable.

1          I think the core of your argument is this petition

2     from the get-go contained information or was based in large

3     part on the testimony of someone that had committed perjury,

4     was unreliable, the petitioners knew that, didn't disclose it

5     to the court, and, in effect, this is really a fishing

6     expedition for other purposes that are unrelated to the Israeli

7     matter.  I think that is your argument.  I think that is the

8     argument I'm hearing in 52.  I will hear it in 52.  I don't see

9     that conduct is sanctionable.

10          In addition, the sanction, if I were to grant your

11     sanction, if I were to agree with you -- I am not there -- if I

12     were to agree with you and sanction them, it would seem to me

13     that that is the result you seek in 52, which is the dismissal

14     of the petition and attorneys' fees and costs, which you would

15     get if I granted 52.

16          MR. SALIVAR:  OK.

17          THE COURT:  So I'm inclined to deny 56 on that ground,

18     but I will hear argument from you.

19          MR. SALIVAR:  Thank you, your Honor.  To address

20     specifically 56, the reason this was filed was because of the

21     timing of all of this.  As the docket reflects --

22          THE COURT:  You have to get a little closer to the

23     microphone.

24          MR. SALIVAR:  As the docket reflects, this action was

25     initiated in March of 2022.  When this initial discovery was

1    sought, supposed subpoenas for document production is what was

2    presented to Judge Martinez for consideration, and that is what

3    the court ultimately allowed to be issued and served.

4         It has then morphed over time into a rather expansive

5    and exhaustive request for information using these two entities

6    that, as the court identified and is reflected in this DE-56

7    motion, were not actually formed, were not operating, were not

8    conducting business, and were not actually investigating the

9    petitioner ever, let alone at the time frame that now the

10   petitioner has openly admitted in the new case in the Southern

11   District of New York would actually be relevant, and this goes

12   to what we found after filing DE-51, which was the motion for

13   reconsideration.  That was filed September 7th.

14        A little over a month later, October 13th, Mr. Azima,

15   as well as four allegedly related or owned entities, filed an

16   extensive civil RICO complaint in the Southern District of New

17   York.  That case No. is 1-22 CV 08728.

18        An actual footnote on page 2, to try and clarify for

19   the court in New York that there was no overlap or

20   interrelation in that case and those claims to the pending UK

21   litigation with RAK or RAKIA, Dechert, who RAK and RAKIA are

22   not party defendants in the New York case, but footnote 2

23   specifically said:  "The UK case seeks damages for the 2016

24   hacking of Azima.  This complaint seeks damages for conduct

25   postdating the 2016 hacking.  In effect, the UK case focuses on

1   crimes that occurred in or about 2016, while this complaint

2   focuses on efforts to cover up those crimes."

3          That blanket statement by the petitioner, with the

4   same counsel in that action that's admitted *pro hac* in this

5   case, Miller Chevalier, we believe highlights the fact this

6   entire case was simply a ruse to obtain a pre-suit snapshot of

7   what discovery might look like if the civil RICO case was filed

8   in the Southern District, Rule 26 disclosures were then

9   requested and provided and discovery was formally conducted in

10  connection with that case, and specifically as it pertains to

11  the alleged coverup, which is part and parcel extensive

12  discovery questioning that was asked of the corporate

13  representative for these two entities that didn't exist at the

14  time of the hacking that Mr. Azima says is the focal point and

15  at issue in the UK case.

16         So the problem has become that after we've gone

17  through all of this and after we requested the court reconsider

18  these 1 and 5 based on what happened at this Rule 30(b)(6)

19  deposition, the petitioner and his counsel effectively said,

20  OK, yes, everything that we're doing in this case, this 28,

21  U.S.C., 1782 case, that postdates 2016, has absolutely nothing

22  to do with the foreign UK proceedings.

23         We also believe that is problematic because the second

24  paragraph of the subpoenas that were submitted to Judge

25  Martinez for review and that were the original subpoenas that

1    were issued specifically related to testimony in the UK court

2    and coverup.  So this case in large part has focused on from

3    the beginning activities that the petitioner has now said to

4    the courts in New York has absolutely nothing to do with the UK

5    proceedings, and yet they have been repeatedly coming to this

6    court over the course of the past eight months requesting

7    discovery, saying this is all related to the UK proceedings.

8            You can't be in two different districts in front of

9    two different district judges saying this does relate to the UK

10   proceedings.  Oh, wait.  Now we will need to make sure our

11   damages don't overlap.

12           This has nothing to do with the UK proceedings.  That

13   is the reason we believe that this clearly, based on what the

14   petitioner has filed, is now something that can be shown to

15   have been filed in bad faith and for an alternative purpose.

16           Now, I understand your Honor has already reviewed this

17   in light of -- and I agree, the relatively high bar the court

18   needs to find *sua sponte* an imposition of sanctions and reports

19   inherent authority, but we are in a discovery proceeding, not a

20   normal civil proceeding where there would have been effectively

21   a two-way street for attorneys' fees having been sought had my

22   parties been party defendants in a civil action and discovery

23   normally initiated.

24           I believe that this was selected for this purpose,

25   because it provides extraordinary power for a petitioner to try

1    and get discovery from a nonparty to a foreign proceeding with

2    really not much for the nonparty to do but show up, show the

3    court how it may be intrusive or it may not attenuate the

4    proceeding, but otherwise effectively in the court's discretion

5    be ordered to provide the discovery.

6          There really is effectively no relief the nonparty can

7    seek as a respondent in these types of proceedings other than

8    in an instance like this it is shown that we believe this was

9    done in bad faith and for an ulterior purpose to bring it to

10   the court's attention.

11         So I fully understand if in light of considering the

12   complaint as referenced in DE-56, the exhibit of the Southern

13   District of New York RICO case, your Honor finds that this is

14   not sufficient to show that the entire action was initiated as

15   a ruse.  I'd say that clearly falls within your Honor's

16   discretion.  However, it is something that is extremely

17   concerning to my clients, having been roped into this case and

18   having had to expend time, expend resources and expend fees to

19   produce a corporate representative for two days of depositions

20   in Tel Aviv, to then find out that effectively this is what it

21   always appeared to be -- a pre-suit fishing expedition under

22   the guise of a 28, U.S.C., 1782 action.

23         THE COURT:  So two things, two issues that you raise.

24         So one issue is this one case is the hacking, one case

25   is the coverup.  The problem is that in every case where there

1    is, and I may use the word crime again just in general to kind
2    of explain my thinking.

3          If they're trying to prove a crime, the fact that
4    someone may have tried to cover up the crime is often evidence
5    of the crime itself.  I mean, that is just kind of logically
6    how people put cases together.  If there is a case just about
7    the coverup, well, the crime's relevant because if there is no
8    crime, you can't recover.

9          So they may be two different actions.  They may be
10   pursuing the hacking, right, or that crime in their UK action
11   and can seek damages for it there, and they may be putting
12   together a coverup action in New York and seeking damages for
13   that there.  They are probably not able to seek the same
14   damages in both places, I would think, but they are separating
15   it out that way.

16         Look, it might ultimately be problematic for the UK
17   court.  It could ultimately be problematic for the Southern
18   District, right.  There might be jurisdictional issues.  I
19   mean, I don't know the RICO case, obviously, well enough other
20   than having perused the complaint.  But the fact that that is
21   the setup, at least procedurally, I don't see it as sufficient
22   to warrant sanctions.

23         Now, I hear you on 1782, but that is the way Congress
24   has set this up.

25         Look, I have had a lot of interesting discussions with

1  my law clerks over the years on these because it is what can be

2  a very effective tool if used well by a party to come into

3  district court, to get evidence, and you are totally right, it

4  is a one-way street, right.  It is not like in civil discovery

5  where, OK, you want to show me this 30(b)(6) depo, you want to

6  pound me with that one, I'm going to pound you too, right.

7  That is just not what you do here.

8           We kind of have to sit here, respond to discovery, and

9  there is not much you can do other than to say, right, attack

10 the Intel factors, which can be very difficult, or scope or all

11 these things.  That is the statutory framework.  I hear you.

12 It is not that I am not hearing you on that.  It is just that

13 that is the statute.

14          So I don't think that either argument is sufficient to

15 warrant sanctions.

16          MR. SALIVAR:  The only thing I didn't get a chance to

17 elucidate, Judge, because I was pulling up the subpoena, the

18 second actual item of the proposed subpoenas that Judge

19 Martinez said yes, you can go ahead and issue, specifically is

20 all documents and communications from January 2018 to present

21 relating to Azima's trial and/or attempts to mislead or

22 conspiracy to mislead the UK court about discovery of hacked

23 data, including, but not limited to, and then multiple

24 paragraphs about communications with Neil Gerrard, David

25 Hughes, Jamie Buchanan, Amit Forlit, Majdi Halabi, Stuart Page

1    Dechert or Stewarts Law; documents and communications regarding
2    meetings between or among you and conspirators, including Hotel
3    Moosegg in Switzerland, any hotel in Cyprus, or any office of
4    Dechert or travel records from meetings in Switzerland, Cyprus
5    or England.
6         I don't believe there is any way the petitioner could
7    in good faith say that that was encompassed with something that
8    is related to the UK trial but at the same time, no, we're
9    going to file a civil RICO case for those exact items in the
10   Southern District of New York, asserting that anything
11   postdating 2016 are damages recoverable due to the conspiracy,
12   not something that is evidence for purposes of prosecuting
13   claims for damages based on the 2016 hacking event in the UK.
14        THE COURT:  Right, but their response to that, in the
15   response, is it is still relevant to the hacking, and it turns
16   out that it is also very relevant to this other action they
17   later filed.
18        I hear you that is not something that was disclosed to
19   the court.  I don't know that it has to be disclosed to the
20   court is the problem.  I don't see any basis for sanctions on
21   those arguments.
22        Ms. Johannes, I don't know if you want to snap victory
23   or whatever that phrase is, but you can certainly --
24        MR. SALIVAR:  Defeat from the jaws of victory.
25        THE COURT:  Defeat from the jaws of victory.  Go right

1     ahead.

2            MS. JOHANNES:  Your Honor, we will just rely on our

3     papers for this because a majority of what Mr. Salivar, in his

4     argument, I am going to have argument for the court as to

5     docket entry 52.  So we will rely on our papers for 52.

6            THE COURT:  OK.  So I am going to deny 56 for the

7     reasons I have stated in the record.

8            So now we are going to get to 52.

9            Ms. Johannes, this is the problem I had with 52.  Your

10    response to 52 -- talk about ships that pass in the night -- it

11    looks like you were accepting or looking at 52 as some sort of

12    objection to 50, and I don't see your response -- the reissue

13    of the Southern District of New York case comes up later.

14           On 52, the real gravamen of their argument is, and I

15    don't think you dispute that the petitioner sought relief in

16    great part on Mr. Page's affidavit.  So they're coming back in

17    and saying, the basis for that petition is the testimony, the

18    sworn testimony of someone who you knew had provided false

19    testimony in the past.  You never disclosed that to the court.

20           So what say you about that argument?  Because I

21    haven't seen in any of the things you filed, and granted, at

22    this point maybe I missed it -- what is it response really to

23    52?  Because 54, which is what you filed, is really not much of

24    a response to that.  I mean, 54 is your response to, hey, they

25    still have to answer discovery.  I think his point is no, I

1    don't if the discovery arose out of your petition, and the

2    court's order obviously granting the petition, and it is a

3    petition that should now be reconsidered.

4           So I can't get to 50, I don't think -- you're not

5    prepared to get to 50 today and can do that, but I can't get to

6    50 unless I rule on 52.  I am having a hard time ruling on 52

7    given what your response was.

8           MS. JOHANNES:  So our response, your Honor, let me

9    start there.  To be honest with you, docket entry 52, in

10   reading it for us, with all due respect to Mr. Salivar, was a

11   very convoluted, confusing pleading, and we were not sure what

12   respondents' arguments were in fact, what they were seeking

13   from the court.  I beg your indulgence as we make those

14   arguments now, but we weren't sure at the time what it was that

15   that pleading was meant to do.

16          Your Honor, this is the issue with their motion to

17   deny docket entry 1 and their arguments that Mr. Page,

18   petitioner knew Mr. Page was a liar and relied on an affidavit

19   of Mr. Page in order to bring forth that petition.

20          One is, the majority of the clarification that comes

21   from what Mr. Page's statements were came in deposition

22   testimony from Mr. Forlit himself in the summer of this year.

23   The way that we get to the deposition of Mr. Forlit in the

24   summer of this year is in fact the granting of docket entry 1,

25   and I disagree with Mr. Salivar that Judge Martinez did not

1    have before him petitioner's request to in fact conduct Rule

2    30(b) depositions.  We went over this, your Honor, at the first

3    hearing we had before the court.

4            The subpoenas themselves were attached; however, Rule

5    30(b)(6) depositions were in fact requested and Judge Martinez

6    issued an order granting the entire application, including the

7    depositions.

8            Now, with respect to what was presented to Judge

9    Martinez at the time, we disagree that petitioner knew or

10   should have known that Mr. Page's statements, that we cited to

11   therein in the affidavit, were lies.

12           There was an entire trial in the UK, as the court may

13   recall.  What is coming up in 2024 is a retrial.  Mr. Page has

14   always been very clear -- he may have perjured himself

15   initially, but since then he has come clean, he has recanted

16   the perjured testimony, and the statements he is making now are

17   true.

18           To the extent that Mr. Forlit's counsel is arguing

19   that, well, you can't believe him anyway because he is an

20   unreliable witness, he is not credible, what is before the

21   court is not a motion for summary judgment.  We are not here to

22   decide the facts as to credibility of a witness.  We are here

23   to decide whether or not discovery should be sought and whether

24   or not that discovery can lead a court to then make credibility

25   judgments.

1          I will also add that to the extent they're arguing

2     that Mr. Page's statements in the affidavits supporting our

3     initial petition are incorrect and false and we should have

4     known that, Mr. Forlit in the depositions that he sat as the

5     corporate representative of this summer admitted that Mr. Page

6     was truthful in his statements, and I have statements I can

7     read before the court.

8          For example, Forlit was asked the following questions:

9     "And so combining the two U.S. entities during the four years,

10     2017 to 2020, you received $10 million from Stuart Page into

11     your U.S. accounts?"

12          His answer was:  "That's correct," but only part of

13     it.  I'm not sure exactly which part -- I'd have to add it all

14     up -- came because of payments for Project Beach.

15          "So approximately what percentage would you estimate

16     over the 10 million was attributable to Project Beach?

17          "I estimate about 50 percent.

18          "So $5 million over four years?

19          "That's correct."

20          Forlit also admitted that Insight and Gadot were the

21     companies, the U.S. companies that Stuart Page paid money to.

22     He stated the following:  "Since these companies were not

23     serving basically any other purpose than being a conduit of

24     transfer of funds, we were not very particular about the choice

25     of titles.  But for all intents and purposes, it was me who was

1   running the company."

2   "Q.  And Stuart Page ultimately gave you work on Project Beach

3   for which you were paid through these U.S. entities?

4   "A.  I received payment for Project Beach through the American

5   companies."

6          That entire deposition he confirmed that Stuart Page's

7   statements were in fact true, your Honor.  The issue that we

8   have procedurally is you don't get to the depositions if you

9   deny docket entry 1.  Those depositions occurred because that's

10  the relief the petitioner sought, that's the relief that was

11  granted.  Now, even though respondents claim that they

12  shouldn't have been subjected to depositions, Judge, they

13  agreed to go.  They wanted the depositions in Tel Aviv.  They

14  agreed to go.  They sat for them.  They confirmed everything

15  that Mr. Page stated that we proffered in our petition.

16         THE COURT:  Right.  So this is the point that I am not

17  hearing a response to.  First of all, it does go to what is

18  outstanding in the case because if one shouldn't have been

19  granted, then you don't get any more discovery.  I think that's

20  their point at this point, right.

21         The depositions have already happened.  I don't think

22  we can do anything about that.  They happened.  But you

23  continue to seek discovery not only from these parties but from

24  Mr. Forlit.  So I think that is why 1 is still at issue.  I'm

25  sorry.  52 is still an issue.

1          I assume, obviously, if 52 were granted, that would

2    dispose of your supplemental petition to add Forlit.

3          What I am not hearing the response to is, and this may

4    not be the crux of your argument but it is the crux of how I

5    read 52, is he is not arguing that Page isn't credible now.

6    Well, he is because he doesn't think Page is credible ever.

7          MR. SALIVAR:  Ever.

8          THE COURT:  Ever.  Right.  I get that.  I think their

9    issue is there were significant issues with his credibility at

10   the time one was filed and those issues were not disclosed.  So

11   in other words, Judge Martinez wasn't told, look, this guy's

12   had all these problems --

13         MR. SALIVAR:  Yes.

14         THE COURT:  -- but now he's saying this and we think

15   this is fair.

16         Now, maybe Judge Martinez wouldn't have ruled any

17   differently, right, had he known that Mr. Page had all these

18   credibility issues.

19         Mr. Salivar, I think that is 52.  Maybe I'm

20   oversimplifying things.

21         MR. SALIVAR:  That is a very narrow view of one of the

22   points raised, Judge, but it is laser focused and directly on

23   point, the issue being that this was an *ex parte* proceeding

24   brought by petitioner before the court to get an order

25   authorizing the discovery, and in that proceeding and as

1    referenced on 52, in paragraph 3 and then in 4, the UK court

2    had found, and the Middle District court in North Carolina had

3    referenced this as well, Page was a dishonest witness who lied

4    about a number of matters.  The court in the initial UK

5    proceedings between petitioner and RAK commented on this

6    reliability saying an unsatisfactory and reliable witness.

7    That is the Middle District case.  The citation is 2021 WL

8    4844754.

9            THE COURT:  Right, but the *ex parte* nature -- all of

10   that, again, take it up with Congress, right.  That's just the

11   process.

12           MR. SALIVAR:  The issue being that in an *ex parte*

13   nature counsel for a party applicant has an increased

14   obligation of candor with the court to bring forth issues that

15   a party, respondent or opponent, could bring to the court's

16   attention for consideration.

17           The point raised in footnote 3, at paragraph 4(d) of

18   52, was that these issues with Mr. Page were fully known to

19   petitioner and petitioner's counsel when they filed this

20   action, including citation to the case that I just referenced,

21   Judge, in another New York proceeding in the Southern District,

22   121 MC 00501 (PGG), that predates the filing of this petition

23   in front of Judge Martinez.

24           So they knew about these problems.  They knew about

25   prior courts' rulings relating to Mr. Page's dishonesty, his

1    unreliability absent independent corroborating evidence, and

2    yet this was not presented to the judge at the time this

3    application was made.

4          THE COURT:  That is the bottom line.  You knew that

5    Page had credibility problems.  Let's just, again, put it kind

6    of broadly.  I don't think there is any dispute that wasn't

7    disclosed in the petition.  So their position is you knew that

8    you were relying on someone that had at least had prior

9    credibility issues.  That was not disclosed to Judge Martinez.

10   That should have been disclosed to Judge Martinez.

11         By way of reconsideration, you're sort of disclosing

12   it now to say, now that you know this, this is a petition that

13   you should essentially provoke, right, or --

14         MR. SALIVAR:  And the additional point, that wasn't

15   encompassed in your Honor's view of the argument, was in

16   addition to this, at the time this action was initiated, the

17   petitioner was already suing Vital Management Services and

18   Nicholas Del Rosso based on the assistance of Mr. Page and the

19   information he's provided for being a hack-for-hire firm,

20   hiring CyberRoot and BellTroX Info Tech Services as the

21   perpetrators of the 2016 hack.  So that also was not disclosed

22   to this court at the time this petition DE-1 was filed.

23         THE COURT:  Correct.  They have that other argument

24   about someone else doing -- you have the argument that they

25   already filed suit against somebody else for the same thing.

1        MR. SALIVAR:  And had been in litigation for nearly a

2   year and a half.

3        THE COURT:  And you have been in litigation and that's

4   something that Judge Martinez didn't know.  So that's the

5   argument I need a response to, those two arguments.

6        MS. JOHANNES:  Your Honor, we disagree on the

7   credibility issues.  It may not have been framed Mr. Page has

8   credibility issues in the same way it wouldn't be framed if the

9   government put forth a cooperator in a case.  They wouldn't

10  necessarily say the cooperator has stated one statement in a

11  debrief --

12       THE COURT:  I completely disagree with you.  If you

13  have a cooperator and the cooperator has provided false

14  information to the government and the cooperator is the basis

15  of your search warrant, you absolutely need to tell the court

16  that.  You tell the court he's had issues with credibility,

17  however, we think he is credible on this point because of X.

18       It is not a criminal matter in any event, but I

19  disagree with you on that.

20       MS. JOHANNES:  Your Honor, it was stated.  It just

21  wasn't stated and outlined, the following occurred on each

22  specific date.

23       THE COURT:  All right.  So tell me where it is stated.

24       MS. JOHANNES:  In Mr. Page's affidavit he states that

25  he has recanted testimony.

```
 1              THE COURT:  OK.  Show me where so I can look at that
 2    specifically.  I have got 1 here.
 3              MS. JOHANNES:  We are pulling up Mr. Page's affidavit,
 4    your Honor.  I'm sorry.  Give me a moment.
 5              THE COURT:  That's all right.
 6              MR. SALIVAR:  I have DE-1, Exhibit D.  Is that it?
 7              If counsel is referring to DE-1, Exhibit 1, your
 8    Honor, that's --
 9              THE COURT:  I had it as part of an exhibit and witness
10    list for the June 6 hearing.
11              MR. SALIVAR:  I believe this would be the same one.
12              THE COURT:  Yes.
13              MR. SALIVAR:  It was filed March 8, 2022 as Exhibit D
14    to the initial petition DE-1 and it is labeled Affidavit of
15    Stuart Robert Page.
16              THE COURT:  I mean, I think it is around in a couple
17    of places.
18              MR. SALIVAR:  Yes.
19              THE COURT:  What I have on the bench, it is the sworn
20    affidavit of January 7, 2022.
21              MR. SALIVAR:  Yes.  January 7, 2022.
22              THE COURT:  OK.
23              MR. SALIVAR:  What I recall reviewing here, and this
24    is why this issue was raised, was at paragraph 26 in Mr. Page's
25    affidavit, what he says is:  "At this point I wish to correct
```

1   and clarify my evidence given at the first trial."

2           THE COURT:  Hold on.  It is Ms. Johannes' argument.  I

3   will get to you in a minute.

4           MR. SALIVAR:  I'm sorry.  I was just trying to assist.

5           THE COURT:  I know.  I appreciate it.

6           Ms. Johannes.

7           MS. JOHANNES:  I think Mr. Salivar is citing to the

8   correct document.  I apologize, your Honor.  In my pile that I

9   printed this morning I didn't print that because I didn't

10  realize this was the focus of today's hearing, but we are

11  trying to bring it up electronically.

12          The point is, yes, your Honor, the petitioner does not

13  outline in the memorandum specifically, these are the instances

14  where Mr. Stuart Page, this is what he stated before the trial,

15  this is what is different now, but there are a couple of things

16  with respect to that.  If we want to go down our cooperator

17  hypothetical, your Honor, I am happy to.

18          This is not like a cooperator where the law

19  enforcement is the only person or the government is the only

20  person that is privy to the statements.  All of his

21  recantations are public because there was an entire trial in

22  the UK.  That is how Mr. Salivar knows about this.

23          THE COURT:  Right, but it is not public to Judge

24  Martinez.  That is the issue.

25          MS. JOHANNES:  In the pleadings that were filed there

1    were two things.  One is, Mr. Page does state in his affidavit

2    that his statements are different, that he's -- I don't know if

3    the exact term is recanted, but different statements, and he's

4    essentially reneging prior statements made during the course of

5    that trial.

6          In the UK, their pleading documents are very different

7    than here.  If you notice, your Honor, they are redlined.

8    Every time the pleading is changed or updated for purposes of a

9    different trial or a rehearing, they're redlined.  They're in

10   there.

11         I admit, your Honor, that in the actual petition it

12   doesn't say the following with respect to Mr. Page, but

13   irrespective of that I think that the petition should be

14   granted regardless of whether Mr. Page has changed his mind and

15   made different statements now than he has in the past.

16         The reality is Insight and Gadot still are

17   Florida-based entities that petitioner knew nothing about when

18   that trial started in the UK.  Insight, Gadot and Mr. Forlit,

19   their names came to fruition in the course of that trial.  That

20   is the reason discovery was sought after 2020 here in the U.S.

21         Mr. Page's statements with respect to Insight, Gadot

22   and Forlit, at trial he stated different things.  What came out

23   in the course of that trial and the truth that came out

24   thereafter, that we relied upon for purposes of bringing the

25   1782, were factual and they were accurate at the time made.

1        All of that information came out afterwards, your

2   Honor, and that is why the petition was brought at the time it

3   was brought.

4        THE COURT:  No, no.  Hold on.

5        MR. SALIVAR:  That still misses the point.

6        THE COURT:  So the issue is -- first of all, if the

7   recantation is at paragraph 26, all he says is that, "At this

8   point I wish to correct and clarify my evidence given at the

9   first trial, as I realize that I was unintentionally misleading

10  when I said that my reports to clients, including the Ruler,

11  were invariably oral."

12       That is not notice of any kind of issue with him

13  providing perjurious testimony.

14       MS. JOHANNES:  He also states that in paragraph 41,

15  your Honor.

16       THE COURT:  OK.  Let me see what they have in 41.

17       "I apologize unreservedly for the part I played in

18  misleading the court during the first trial, and wish to state

19  that the remainder of my evidence was true."

20       Look, that is not the kind of notice that I think

21  would be required if in fact the issues with Mr. Page's

22  testimony are as the respondent says they are.  That being

23  said, if you were to take Mr. Page's affidavit out of ECF-1,

24  out of the petition, what other grounds did the petitioner rely

25  on to seek the 1782 relief from the court?

1           MS. JOHANNES:  We are pulling up docket entry 1, your

2    Honor, but I believe at the time we had already received or

3    knew at least that there were bank records indicating that two

4    Florida entities, Insight and Gadot, were paid monies that stem

5    from the hacking scheme.  In other words, that Mr. Forlit was

6    involved in the hacking scheme and that entities owned and

7    operated by Mr. Forlit, Insight and Gadot, received millions of

8    dollars between 2017 and 2020 related to that hacking scheme.

9           I understand that Mr. Salivar continues to make the

10   distinction that the hacking occurred in 2016 so why do we keep

11   talking about afterwards, but you could fund a scheme after the

12   criminal offense takes place, and it is relevant.

13          THE COURT:  Yes.  I'm not so concerned about that time

14   argument because you can have -- something that happened after

15   the scheme could certainly be relevant --

16          MR. SALIVAR:  Well --

17          THE COURT:  -- to proving the scheme.

18          What I am looking for is the argument that says,

19   again, even if you remove the statements Page made was there a

20   basis to seek relief under 1782 back in March.

21          MR. SALIVAR:  There was a declaration of --

22          THE COURT:  Hold on, Mr. Salivar.  I will let

23   Ms. Johannes finish and then I will let you respond.

24          MR. SALIVAR:  Sorry, your Honor.

25          THE COURT:  That's all right.

```
 1                  (Pause)

 2             MS. JOHANNES:  Thank you for your patience, your

 3    Honor.  We are just bringing up docket entry 1.

 4                  (Pause)

 5             THE COURT:  What you say on page 6 is:  "Based on the

 6    sworn allegations" -- I assume those are Mr. Page's -- "and

 7    pleadings in the UK proceedings."  So whatever pleading was in

 8    the UK proceedings.

 9             MS. JOHANNES:  Your Honor, Mr. Behre can cover the

10    pleadings in the UK proceeding because obviously I wasn't

11    involved in that trial and that proceeding, but what I will

12    tell you is, while we are still bringing up all the affidavits

13    that were attached to docket entry 1, I know an affidavit of

14    Mr. Halabi was provided to the court.  Mr. Halabi was also a

15    witness, and obviously an affidavit of the lawyer who oversaw

16    the litigation in the UK, Mr. Holden, was provided that

17    summarizes witness testimony, and it is very clear just even on

18    those two -- Mr. Holden, if you want to discount because he is

19    counsel, but even on Mr. Halabi's affidavits and his

20    statements, it is not just Mr. Page that is pointing the finger

21    to the fact that a scheme occurred, to the fact that Mr. Forlit

22    was involved in a scheme, and that led us down the path of

23    figuring out what entities Mr. Forlit perhaps was paid through,

24    and that is why we are here before the district.  It is not

25    just Mr. Page's statements.  I admit that Mr. Page's statements
```

1    were a large part of our initial petition, but it is not the

2    only basis upon which discovery was sought here.

3        THE COURT:  Well, what about the omission that the

4    petitioner had also sought suit, a separate suit alleging that

5    somebody else was the hacker?  I don't know if that is true.

6    That is the argument.  So what is your response to that?

7        MS. JOHANNES:  I don't think that has merit either

8    way.  The petitioner has never alleged that only Mr. Forlit

9    was -- that Mr. Forlit himself was the hacker.  We have never

10   alleged that.

11       There have been multiple people involved in the

12   hacking scheme.  That's always been the claim.  In fact, that

13   is the case pending in the UK.  Mr. Forlit is not even a

14   defendant in that case.  There have been multiple people that

15   have been involved in the hacking scheme.  He is just one

16   person that was involved in the conspiracy.  He is an uncharged

17   coconspirator there, if you want to use those terms, but that's

18   never been the allegation, that he is the sole person who set

19   forth the hacking scheme.

20       THE COURT:  So let me ask you another question that is

21   not precisely to 52 but that I think is relevant at least to my

22   thinking about what to do about 50, if I get to 50.

23       You now have a suit pending in this country, in the

24   Southern District of New York, against these two parties.  Why

25   do you still need a 1782 action?  I mean, any discovery you get

1    in New York you can use, I would think, in the Israeli courts,

2    unless there is some reason why you wouldn't be able to, but I

3    don't know of any.

4         MS. JOHANNES:  In the UK courts you mean, your Honor.

5         THE COURT:  I'm sorry.  The UK.  Right.

6         Why are we still here if they're -- I assume you have

7    served them.  Obviously, you wouldn't be able to serve them in

8    the New York case, right.  Are they not parties that are

9    engaging in discovery or will be engaging in discovery in New

10   York?

11        MS. JOHANNES:  Discovery has not commenced yet.

12   Southern District of New York has very different process and

13   procedure, and it is going to take a long time.  That is number

14   one.

15        Number two, we are concerned that the case in the UK

16   is going to proceed faster, ironically, than the case in

17   Southern District of New York, and the discovery is going to be

18   needed and it may not occur before discovery is obtained in

19   Southern District of New York.

20        The third thing, your Honor, that I will say is just

21   because there is a pending case in another district where

22   discovery is going to be sought as it relates to that case

23   doesn't null and void the fact that the discovery here is

24   relevant to the UK case and 1782 is a proper conduit to obtain

25   that discovery.

1          Mr. Salivar never sought a protective order.  He never

2     sought a protective order in this case stating that the

3     discovery obtained here can only be used in this case.  So to

4     the extent that he is arguing now that all the discovery here

5     should not have been used in New York, that's neither here nor

6     there.

7          THE COURT:  I'm not even hearing that argument.  I'm

8     trying to figure out whether one should be reconsidered, and

9     I'm trying to figure out even if one isn't reconsidered,

10    because I think it is proper for the court.  You're right, the

11    fact that there is another pending matter isn't dispositive of

12    the 1782, but I think it does go into the discretionary factors

13    as to whether a court should allow it and whether it is

14    necessary if that information is already going to be sought

15    through legal process in the United States.

16         MS. JOHANNES:  It is going to take a long time, your

17    Honor, for us to get to the discovery phase in the Southern

18    District of New York.  That is just the reality.

19         The RICO case was just filed.  The case in the UK has

20    been pending for six years and is now up for retrial.  It has a

21    retrial date.  Admittedly, it is a year off.  However, that

22    year may come much faster than discovery is even obtained in

23    the Southern District of New York at the pace that we are going

24    in that district.

25         MR. SALIVAR:  I need to be heard on some of the points

1    counsel raised, your Honor.

2              THE COURT:  You're going to be heard.  Hold on.

3              MR. SALIVAR:  Thank you.

4              THE COURT:  Look, I don't know how quickly the

5    discovery in the Southern District of New York will go, but I

6    can't imagine that you won't be in the discovery phase in a

7    year.  You may not get to it next month, but you're not set for

8    trial in the UK until April 2024, right?

9              MR. SALIVAR:  May 2024, your Honor.  There was an

10   order just entered in the UK case recently that I found online

11   where the judge had a supplemental order after a judgment on

12   November 1, 2022.  The court commented the trial is now set

13   down to commence May 2024 and granted leave for an amended

14   counterclaim to be filed which seeks to vacate the underlying

15   fraud judgment, which previously wasn't at issue in the UK

16   case, but now --

17             THE COURT:  The UK case isn't going any time soon.

18             MR. SALIVAR:  No.

19             THE COURT:  Look, this is my concern on 52, and part

20   of my concern is that the written response to 52 was just

21   inadequate.  It was like ships passing in the night.

22             The argument here is that there was a failure to

23   disclose to Judge Martinez both the issues with Mr. Page's

24   credibility as well as the other lawsuit.  I hear you on the

25   other lawsuit.  It is neither here nor there is your position

1    because the theory has always been that there are multiple

2    hackers.  So that is not a significant omission.

3          I think your argument on the Page issue is twofold.

4    It is, one, that it is there in the affidavit.  Although I have

5    to tell you, I don't think it is really there, there.  But that

6    there were other bases to seek the petition and that even with

7    the benefit of what we know today the petition should continue

8    to be granted, it shouldn't be reconsidered, because even

9    taking out the Page information you still have enough

10   information and, oh, by the way, because it was granted you

11   have now affirmative evidence showing that there is a

12   relevancy, right, because he testified to issues that show that

13   it was relevant.  So I think that is your argument.  Is that

14   fair?

15         MS. JOHANNES:  That's correct, your Honor.

16         In terms of just judicial resources, your Honor, I

17   understand Southern District of New York -- we don't have a

18   looking glass.  I don't know when they are going to move on

19   discovery.  But the same issues that we are dealing with here,

20   which I actually really do think we are 90 percent there in the

21   process -- as much as the pleadings don't reflect that, I do

22   think that is reality -- are just going to move to another

23   district that is going to have to deal with it and there is

24   going to be briefing all over again on the same narrow issue

25   that we are already there on.

1          I really just think that we can resolve the very

2    limited discovery that we're seeking here, because it is

3    limited at this point, if we get there, without just kicking

4    this to the Southern District of New York to deal with in

5    another year and have a whole set of briefing.

6          THE COURT:  Well, I promise you that regardless of

7    what I do here you are going to litigate it again in New York.

8          At any rate, look, I understand that if I get to 50, I

9    think what's outstanding is not significant by any measure

10   other than the Mr. Forlit issue is more significant because

11   that is an entirely different party and we haven't ruled on

12   that yet.

13         If I look to 50, I'm going to be honest with you, Ms.

14   Johannes, even if I deny 52, absolutely some of the issues that

15   are raised in 52 are going to impact my thinking on how broad

16   of discovery I should continue to allow sort of given where

17   we're at, both given what the scope of 1 was but also given the

18   fact that there is another action now.

19         So if there is a whole other action, you're not going

20   to trial for maybe another two years.  They're a party in this

21   country to an action on the same set of facts.  Again, I'm not

22   suggesting that I won't grant some of 50, but what I think you

23   need on 50 now, my view of it is going to be pretty narrow.

24         So I don't want to shortchange you on your arguments

25   on 52 because I'm telling you, I can't compartmentalize that

1    well to think they're not going to affect how I see 50.

2          MS. JOHANNES:  Understood, your Honor.  As you know,

3    we serve, Carlton Fields serves as local counsel in this

4    matter, but Mr. Behre, obviously, is counsel for, the lead

5    counsel for petitioner and could speak more about the RICO

6    case, so I am going to allow him to do so.

7          THE COURT:  OK.  Counsel.

8          MR. BEHRE:  Thank you, your Honor.  Just so we're

9    clear, they're far more than local counsel.

10         THE COURT:  I think that is pretty obvious.

11         MR. BEHRE:  They have been invaluable.

12         A couple of points of clarification.

13         In the UK case, that ended up in a trial right before

14   COVID, so that would be February 2020, there was testimony that

15   led us to this name Insight.  So the entire matter about

16   Insight and these companies was tipped off during the testimony

17   at trial.

18         With regard to the RICO case, these defendants and

19   Mr. Forlit, I assume, because he hasn't been served yet, have

20   all sought leave to dismiss that matter.  Two of the defendants

21   have not yet been served because they're foreign nationals.  As

22   a result, this whole thing is kind of bogged down.

23         There is a letter process before a party can move to

24   dismiss.  That letter process is not done.  We anticipate

25   before the court grants those it will be a couple more months.

1    My educated guess would be that these motions to dismiss by ten

2    defendants will not be resolved for more than a year.

3         So the UK trial is a-ways off.  I think discovery is

4    further off.  So with these defendants essentially arguing that

5    that case should be dismissed -- and let me correct myself.

6    These respondents, those defendants arguing that case should be

7    dismissed, they're trying to have it both ways.  They want out

8    of that case and they want out of this case, when in fact that

9    case might never go to discovery.

10        The final point I wanted to note for the court is that

11   the RICO suit alleges, at paragraphs 133 and beyond, that

12   Forlit and his entities obstructed this proceeding.  So they

13   can say they're being whipsawed and this was being used for

14   that, but what is at issue in part in the RICO case is their

15   own conduct, is Mr. Forlit's declarations or affidavits in this

16   courthouse that have become embedded in that RICO suit.  So it

17   is more than simply, oh, we're just going to gather evidence

18   for use there; it's their conduct in this case that gave rise

19   to more allegations.

20        THE COURT:  I don't see how that is relevant to 52,

21   but --

22        MR. SALIVAR:  I need to respond to that.

23        THE COURT:  You can.

24        Let me go back to the issue of the UK case.

25        You made the representation that Insight, you were

1   sort of tipped off and they referred to Insight at the trial.

2   So taking Page out of it, at the first UK trial, what

3   information did the petitioners have that Insight would have

4   relevant evidence to the retrial?

5        MR. BEHRE:  Part of the story that was given during

6   the trial, which we now know was false, was that RAKIA and its

7   agents innocently discovered the data on the internet.  That

8   testimony was given in part by Mr. Halabi and Mr. Page and by

9   at least two other witnesses.

10       During the course of one of those witness'

11  testimony -- and forgive me, I can't remember whether it was

12  Page or Halabi.  I think it was Halabi, but I could be wrong.

13  It could have been Page.  There was sworn testimony in that

14  courthouse in the UK that Insight was in the mix of discovering

15  this stolen data innocently.  That's what caused us to start

16  researching what Insight and Insight was.

17       THE COURT:  And what about SDC-Gadot?

18       MR. BEHRE:  There was no mention of that company.

19       THE COURT:  So how did you get -- where did you get

20  SDC-Gadot?  Just from Page?

21       MR. BEHRE:  Well, no.  I think we got both of them

22  from doing a record search for Forlit to see what companies

23  he's affiliated with in the U.S.  I don't think Page knew the

24  name of those entities, but I could be wrong.

25       THE COURT:  OK.  All right.  Mr. Salivar, response.

1          MR. SALIVAR:  Yes, your Honor.  Again, the 2020 action

2    pending against Mr. Del Rosso and Vital Management has been

3    brought by Mr. Azima to specifically go after damages he

4    claimed from them hiring hackers to hack his private

5    information in 2016.  My clients have never been made a party

6    to that proceeding.  There has never been an allegation that

7    additional non-named parties were liable for that activity.

8          That is something that should have been brought to the

9    court when discovery was being sought pertaining to alleged

10   participants in that hacking activity.  If Mr. Azima had

11   already sued the perpetrators based on information he obtained

12   from Mr. Page --

13         THE COURT:  But what Ms. Johannes is telling us today

14   is that the theory has always been that there were multiple

15   people.  So the response or the information that would have

16   been provided to Judge Martinez, had any information been

17   provided, is that we're pursuing multiple hackers and we've got

18   another one in North Carolina, but we've got this one here.

19         MR. SALIVAR:  That would have certainly been relevant

20   for the court to consider at the time of granting

21   discretionarily whether or not it was going to allow this

22   proceeding to go forward if, Judge, we're admitting we're

23   currently suing in the district of North Carolina people we

24   believe actually perpetrated this hack.  However, the people

25   who are the respondents, the corporate entities, we believe

1    that they were also involved in that same hacking activity.  We

2    haven't sued them yet.  We're planning on it.  We're going to

3    name them in a civil RICO case in the Southern District of New

4    York at some point in time in the next 12 or so months, but

5    we're not going to tell you any of this.  We just want to tell

6    you that this information related to the coverup of this

7    hacking is relevant to the UK case, and that's going to be our

8    position, even though we know we will be filing a civil action

9    in the United States for that exact same conduct without

10   disclosing any of this to you.

11        THE COURT:  Right.  I think the issue there is even if

12   they had disclosed that, their argument to Judge Martinez in

13   the petition would have been, look, we need this for the UK; we

14   will be candid with you, we may be using it someplace else.

15   But the fact that they also needed it for the UK isn't

16   diminished in any way by the fact that they were using it or

17   intended to use it or wanted to use it or thought of using it

18   someplace else.

19        MR. SALIVAR:  And there's the rub because the

20   pleadings in New York admit that they didn't want it for the

21   UK, that it actually is not relevant to the damage claims in

22   the UK.

23        THE COURT:  No, that is where I disagree with you.

24   Their argument is that the damages in New York are the coverup

25   damages.  That doesn't mean that the evidence in New York isn't

1    going to be relevant in the UK.

2          MR. SALIVAR:  For purposes of addressing what has

3    already transpired, and this is also in DE-52, the actual

4    notices of deposition were very limited, and a corporate

5    representative was produced, and then a bunch of additional

6    questions were asked pertaining to an unrelated -- an unnamed,

7    an unidentified in these discovery proceedings Gadot Israel

8    investigative entity, that actually hired persons for purposes

9    of conducting investigations not relating to the petitioner at

10   all but, as testified to by Mr. Forlit, pertaining to a

11   gentleman named Khater Massaad.

12         What this has been focused on is trying to get

13   information that can be used in this New York proceeding under

14   the guise of hacking of Mr. Azima.  On behalf of both corporate

15   respondents I represent, Mr. Forlit unequivocally testified

16   neither he nor the Israeli entity nor the two Florida entities

17   were ever retained to investigate, let alone hack, the

18   petitioner.

19         THE COURT:  Well, of course.  Right.

20         MR. SALIVAR:  They also testified that there was

21   absolutely no participation whatsoever in a coverup scheme --

22         THE COURT:  Well, of course.

23         MR. SALIVAR:  -- to provide false testimony to the

24   court.

25         THE COURT:  The fact that your client is going to say

1   I didn't participate in a hacking or a coverup isn't

2   dispositive because if it were, then nobody would get any

3   evidence.

4           MR. SALIVAR:  But --

5           THE COURT:  I think the issue that you're raising

6   now --

7           MR. SALIVAR:  That discovery is --

8           THE COURT:  -- is the comment that I had from

9   Ms. Johannes, which is that might go to how I see the scope of

10  what ECF-1 should have been, right.  They asked for this,

11  that's what they got.  To the extent they want to branch out or

12  look at relevancy in a much broader light, I might be less

13  inclined to see that now that I have the lens of knowing there

14  is more than just the UK going on.

15          Let's go back to the issue, though, of the

16  reconsideration of ECF-1.  I think that if the petition had

17  included information about the RICO case or even the North

18  Carolina case, I don't see how that diminishes the analysis for

19  why the information is needed for UK, but talk to me about

20  Mr. Page, because if I were to say, look, they should have

21  disclosed these issues with Mr. Page and they did not and I

22  were to look at ECF-1 without the benefit of Mr. Page, what is

23  your argument as to whether or not there is nevertheless

24  something sufficient to have ruled on these?

25          MR. SALIVAR:  Mr. Page is the linchpin.  I started

1    referencing earlier there was another affidavit of a counselor

2    who represented Mr. Azima in the UK case, Dominic Holden.

3    Mr. Holden actually makes sworn comments as to what took place

4    in the UK proceedings and what the evidence is based on the

5    testimony of Mr. Page.

6         Part of his sworn statements contradict what actually

7    is in the content of the Page affidavit that was given to the

8    court, but here's the main point.  He had no personal knowledge

9    whatsoever of the actual evidence, the testimony, or what the

10   relevancy would be of this discovery other than to say, here

11   are affidavits of Page and this other gentleman Halabi.

12        Halabi talks about a scheme to go ahead and present

13   testimony to the UK court to cover up where information was

14   actually obtained.  Page is the linchpin who comes in and

15   testifies that, actually, I was the one retained by RAK and

16   RAKIA for this purpose.  I retained these individuals, this is

17   how the information was actually obtained as opposed to what I

18   testified to the court to previously.

19        The main issue is that with Page the affidavit that

20   was drafted January of 2022, after he had been identified as a

21   potential party defendant in the UK proceedings by Mr. Azima

22   and then they settled with no notice or production to the court

23   of what the terms of that settlement ultimately were, none of

24   that is provided to Judge Martinez for consideration.

25        When the affidavit of Mr. Page is given saying, hey,

1    this is what we need, this is what we're going to do, all of

2    this is relevant to the UK proceedings, and the problem is we

3    look at it as a snowballing effect.  The failure to provide the

4    initial disclosure about known problems with the testimony of

5    Mr. Page, that courts had found that he was completely

6    unreliable absent contradictory, independent evidence, that

7    being known to the petitioner should have been disclosed.  The

8    court could have looked at this and said, OK, what is this

9    actually used for, and have a self-level analysis of how is

10   this really related to the UK proceedings, how does this get to

11   the core issue of what you're currently planning to sue for in

12   the UK proceedings.

13           THE COURT:  Right, but I think they've got enough to

14   show, even if you take Page out -- and I may not be able to

15   rule from the bench on this because I think I have to go look

16   at the other affidavits again.

17           It seems to me that that goes back to my scoping

18   issue, that if Judge Martinez had had all of that, I think they

19   still get their 1782 petition.  It is just a question of the

20   scope of that, right.  It can't be a snowballing effect, to

21   your point.  If Judge Martinez or even me as I sit here today,

22   if I have the benefit of knowing, hey, wait a minute, there are

23   a lot of different things going on here, I'm going to allow the

24   1782 to the extent they can show me that it is relevant to the

25   UK proceeding.  If they can't show me that, they're not getting

1    it.

2          Whereas if New York and North Carolina and if all

3    these things didn't exist, I might not be so concerned about it

4    because what is the harm of a more broader scope, right, or why

5    is the broader scope relevant to the argument.  I might be

6    willing to make the scope a little broader, but if I know now

7    what I know and if your argument is, look, they're really using

8    this 1782 for another purpose, the fact that there is a

9    proceeding in New York doesn't undermine the 1782; however, I

10   think I am duty-bound to be careful, to be sure that what

11   they're getting out of the 1782 is for the purpose that they

12   represent, which is the UK proceeding.

13         MR. SALIVAR:  And that's really the point too, Judge,

14   with the failure to disclose what was known to the petitioner

15   early on.  It certainly would have enabled my clients to have

16   looked at the broader picture of what's going on and what the

17   petitioner is actually doing across multiple lawsuits with

18   multiple parties and bring a request to the court saying, look,

19   this now, with all of the information identifying that Mr. Del

20   Rosso actually is the perpetrator behind the hacking as sued

21   over here, the fact that the D.C. court ended up dismissing for

22   forum non conveniens previously the initial claim against RAK,

23   which led to the UK proceedings individually, the fact that

24   there's been a Southern District of New York proceeding that

25   predates this one seeking production of my client's bank

1    records, the fact that there is another Southern District of

2    New York proceeding against one of the parties who is now a

3    codefendant in the RICO case, seeking information pertaining to

4    him, all relying on Mr. Page's testimony, it would have given

5    my clients the ability to then look at all of this and come to

6    the court and say, what is being requested is grossly overbroad

7    if the real purpose is for purposes of advancing the claims in

8    the UK.

9          THE COURT:  Well, some of that you clearly knew

10   beforehand because the Page stuff you would have known from the

11   beginning.

12         MR. SALIVAR:  This is the point.  All of this has been

13   information that my clients and my office has obtained

14   throughout the course of these proceedings, and we have been

15   the ones bringing to the court's attention the district of

16   North Carolina case.  We have been the ones bringing to the

17   court's attention the Southern District of New York

18   proceedings, the fact that the testimony of a court finding

19   Mr. Page unreliable that was known to the petitioner was used

20   by the petitioner previously in a 28, U.S.C., 1782 proceeding

21   by the petitioner without being provided to this court.

22         All of this information we independently had to go get

23   and then bring up in these motions for relief, indicating that,

24   hey, this was all known to the petitioner, should have been

25   brought to Judge Martinez's attention at the beginning, that

1   way he had a full-scope picture and could have said, like I did

2   early on with this, the first request in the Southern District

3   for production of my client's bank records, the corporate

4   entities' bank records, was actually tailored by the court.

5   They found the first request to be too overly broad.

6        So this is the problem.  The petitioner has been

7   seeking broad scope discovery under the guise of everything

8   just being related, relevant, and useful for the purposes of

9   the UK proceedings without letting any of these courts know

10  what's going on in the other districts in the United States in

11  cases brought by the petitioner.

12       THE COURT:  Right.  I don't think they have -- I think

13  they have an obligation, obviously, not to mislead the court

14  because they are members of the Bar, but that doesn't mean that

15  they have to let you know their entire strategy every time they

16  file something.  They can't file things that are affirmatively

17  misleading.  That is a different issue.

18       My question to you had been, for example, this

19  Mr. Page issue and him being not credible, that is something

20  you would have known in the first instance, and this isn't

21  filed until months later.  So I think one of the arguments --

22  maybe it wasn't -- it might have been to 56.  I don't know if

23  it was to 52.  There is this issue of timeliness, right.

24  You're making this argument now, but some of these arguments

25  you surely could have made in the first instance, no?

1        MR. SALIVAR:  I did not know until shortly before

2   filing on September 7, 2022 about the fact that the petitioner

3   had filed a petition in the Southern District of New York

4   seeking discovery, making reference to the In Re Application of

5   Karam Salah al Din Awni.

6        THE COURT:  No, Page.  I'm talking about Page.

7        MR. SALIVAR:  This is what I'm saying.  These are the

8   proceedings in which these quotes to the UK court's finding,

9   and specifically the Middle District's quote to the dishonesty

10  of Mr. Page.  We saw the affidavit --

11       THE COURT:  They're saying all of that is public

12  record.  You could have looked at that.  They could have had it

13  beforehand.  I think that is what Ms. Johannes said.

14       MR. SALIVAR:  I guess, but you can basically say,

15  well, anything that is in any court proceeding anywhere is

16  public record.  So any attorney practicing in any district in

17  the United States with access to Pacer should be charged with

18  knowledge of what is happening in any other district at any

19  given time, just by knowledge of the fact that this system

20  exists.

21       THE COURT:  What about the issue with Page?

22       MR. SALIVAR:  That's what I'm saying.  The issue about

23  another district court in the United States getting this

24  information in a proceeding under 28, U.S.C., 1782 by the

25  petitioner is something that should have been provided at the

1   outset so we didn't have to go find it six to eight months

2   later.

3         THE COURT:  Let me ask you another question.  What do

4   we do now?  Let's say that I were inclined to agree with you.

5   Your clients have already -- Mr. Forlit, what he is saying he

6   said.  What relief do you seek then?

7         MR. SALIVAR:  The relief we're seeking is the

8   termination of these proceedings.  My clients have produced a

9   corporate representative of Mr. Forlit to sit for two full days

10  of depositions and answer questions that both were within the

11  scope and then grossly outside of the scope of the 30(b)(6)

12  deposition notices that were agreed upon by the parties.  We

13  have responded to the document production requests as they

14  pertain to the documents in existence and care, custody, and

15  control of my corporate clients at the time we served the

16  responses.

17        I actually indicated, though I never heard from

18  counsel about it, in the response that we recently filed that

19  we will produce again bank records we went and got, even though

20  you had already subpoenaed these in the earlier Southern

21  District of New York 28, U.S.C., 1782 proceeding, we will

22  provide the corporate bank records we were able to get after we

23  responded saying we didn't have any, because we didn't.  I

24  didn't get any response to that.

25        Above and beyond any additional depos or additional

service of document production requests, we believe is

completely inappropriate and unnecessary given the fact that my

clients are now party defendants in a New York case, and we

have filed a letter motion requesting a conference, which I

never got a response from Mr. Behre's office about.  If they

wish to discuss the letter motion or a conference to discuss

the content.

They filed a response to the letter motion.  The court

will determine whether or not we are even going to have a

conference with counsel to discuss the merits of a potential

motion to dismiss.

We are under an obligation under the Southern District

rules to cooperate with each other with the exchange of

discovery.  So for purposes of getting that case going, I don't

see why there couldn't be a discussion about, hey, what is the

time frame for initial Rule 26 disclosures.

They're going to get what my clients have that is

relevant to the case.  I expect to get the exact same thing

from the petitioner.  But I don't see how that is possibly

going to take longer than the time needed for the petitioner to

be prepared for a May 2024 trial in the UK case, especially

given now what the petitioner said in the RICO case is relevant

to that case, which is everything after 2016, versus what is

relevant to the UK case and not at issue in the RICO case,

which is the 2016 hack that we have already testified we had

1   nothing to do with and we have no documents pertaining to.

2                THE COURT:  All right.  Ms. Johannes.

3                MS. JOHANNES:  So two things, your Honor.  Actually,

4   three.

5                First, I don't think Mr. Salivar's correct in stating

6   that he only found out or learned that Mr. Page may have had

7   inconsistencies beforehand when he filed docket entry 52,

8   because in docket entry 39, his response to our motion for

9   sanctions, I believe he goes on and on and on in that entry --

10  it may be another one, in another reply, excuse me, if not that

11  one, but well before the depositions took place this summer he

12  has articulated in pleadings that their position has long been

13  that Mr. Page is inaccurate, a liar, and there are other cases

14  where he is not credible.  So I don't think that is true, and

15  that goes to --

16               MR. SALIVAR:  That's not what I said.

17               THE COURT:  Yes.  He was very careful in his words

18  there.  What he said was he didn't know about the North

19  Carolina action and the New York action.  I asked him

20  point-blank and he skirted because --

21               MR. SALIVAR:  No.

22               THE COURT:  -- it has been his position that Page is

23  untrustworthy.  His position here, though, is that there are

24  actually court findings, right, to that effect and that is what

25  he didn't know.

1          MR. SALIVAR:  That is exactly what I indicated I

2     didn't know, your Honor, and paragraphs 3 and 4 of DE-52,

3     citation to the In Re Karam Salah case.

4          THE COURT:  Let me just hear from Ms. Johannes.

5          MS. JOHANNES:  So docket entry, yes, 52 that he's

6     filed that in, we do believe he knew about North Carolina

7     beforehand.  Obviously Southern District of New York how could

8     he.  We just filed the case.

9          In terms of Page, your Honor, I just want us to go

10    back to what this Section 1782 really is about.  Even if you

11    were to read docket entry 1 and say Page is completely

12    unreliable, he's completely unreliable, let's just assume that

13    is the case.  It is all the more reason that the discovery that

14    we're seeking here is actually relevant, because Page is

15    stating, and let's take it he is completely on arrival, that

16    Forlit was paid through entities in Florida.  Forlit, in fact,

17    we confirmed, because we filed that in docket entry 1, Forlit

18    has entities he owns and operates in Florida.

19          If he were not paid, if Mr. Page did not pay

20    Mr. Forlit a dime through those entities and was proven to be a

21    liar, the discovery would still be relevant.  It doesn't matter

22    how the discovery plays out.  The discovery from Insight and

23    Gadot is relevant.

24          This goes to my third point.  We still have yet to get

25    any of that discovery.  We have not gotten any bank records,

1    any statements, any messages between Mr. Page and Mr. Forlit,

2    even though Mr. Forlit filed an affidavit putting in a

3    screenshot of text messages between him and Mr. Page.  We

4    haven't gotten any of that to disprove Mr. Page's statements,

5    to disprove Mr. Azima's theories.  We haven't gotten any of the

6    discovery.

7         Even if you view it narrow in scope, and I understand

8    your Honor is inclined to do so, even if you view it as narrow

9    as possible, we haven't gotten a shred, a single document from

10   respondents.  They haven't given us any incorporation

11   documents, any bank records, nothing.

12        We know the travel records exist.  We know hotel

13   records exist.  We know bank records exist.  We know

14   incorporation documents exist.  That, your Honor, even if you

15   read the subpoena as narrow in scope, even if you take out

16   Mr. Page's reliability and credibility if you read that,

17   petitioner is still entitled to that discovery.  That is our

18   argument.  If you are inclined to not broadly entitle us to

19   discovery and you just slice it there, we still are entitled to

20   that discovery in this court and in this proceeding.

21        THE COURT:  So this is what I am going to do.  I am

22   going to take just a short break because I need coffee and I

23   need a break.  This is what I am inclined to do.  I am inclined

24   to go when I get back from my break to 50, which is the motion

25   to compel.  I want to go through it because I have looked at it

1    and I have gone through it and I don't think -- I could be

2    wrong.  I have my own notes of where I think it is going.  If

3    you take the Forlit issue out for a second and the amended

4    application as to him, I don't know that I think that I was --

5    I wasn't prepared just from the briefing to order much more,

6    Mr. Salivar.

7          Maybe we should go through that exercise.  I will rule

8    on 50.  You can see, Mr. Salivar, after I rule on 50 whether or

9    not we are done or not, because you might say, you know what,

10   if that is all I have to give up, we are done, I will withdraw

11   52 or I will let you rule against me on 52 and we will just be

12   done with it.

13         Obviously, you have got to see where I am going on 50.

14   I am not going to make you do that now, and I think what I will

15   do is that.  Let's go through 50, because I made them do it

16   this way.  I have the benefit of what categories they're

17   looking at.  I have the benefit of your response.  Now I can

18   hear from both of you more precisely as to how what they're

19   looking for is precisely relevant to the UK proceeding.

20         If they make an argument that it is and you tell me

21   those documents exist and I make you produce them, what I can

22   do then is hold 50 in abeyance until I rule on 52 and go until

23   you decide whether or not that is sufficient.  Why don't we do

24   that.

25         I will tell you just my reading of it even before this

1     argument was that we weren't arguing about much.  Maybe that is

2     because I already know what I am going to rule and you don't,

3     or at least I had an idea of kind of where we were going on

4     each category.

5          MR. SALIVAR:  To steal a comment from Judge Nusbaum in

6     Palm Beach County, I don't have my great Carnac hat on today so

7     I don't know what your Honor is exactly thinking.

8          THE COURT:  Correct.

9          MR. SALIVAR:  I will have to wait until you tell me.

10          THE COURT:  That is what I am saying.  Let me get to

11     50 because, look, I think 52 is not an insignificant motion.  I

12     think it requires consideration of the court.  Like I said, I

13     am not prepared to rule from the bench because I think I have

14     got to go back and kind of take Page out of it because to me

15     that's really the more critical issue.

16          The fact that they didn't tell Judge Martinez, well,

17     we also have this pending and that pending and whatever, that

18     doesn't diminish the relevancy that the documents have to the

19     UK proceeding.  But to the extent that they make the relevancy

20     argument based on Page, I think that that is something

21     significant to consider.  It may not matter if what I rule on

22     50 is neither here nor there to you.

23          So it is 11:30.  Let me take like a 15-minute break

24     and then I will come back for 50.

25          MR. SALIVAR:  Thank you, your Honor.  May we leave our

1    materials here?

2              THE COURT:  You can leave everything here, sure.

3              MR. SALIVAR:  Thank you.

4              (Recess)

5              THE COURT:  Let me get organized and pull my notes on

6    50.

7              MR. SALIVAR:  Your Honor, just for purposes of

8    advising the court, I got an email while we were arguing

9    earlier, about 40 minutes ago, from counsel for one of the

10   codefendants in the Southern District of New York RICO action

11   just talking about time for scheduling our Rule 26(f)

12   conference.

13             The court did previously set January 12, 2023 for the

14   initial Rule 16 conference in that case.  So the deadline is

15   coming up -- I think it says tomorrow -- for our initial Rule

16   26(f) conference.

17             If that is the case, unless the court grants an

18   extension, initial disclosures should be done two weeks after

19   that.  So as far as discovery initiating in the New York case,

20   I just wanted to let your Honor know that based on the initial

21   case management order entered by the court seems to be the time

22   frame we're looking at.

23             THE COURT:  OK.  All right.  I am at ECF-50.  I am at

24   page 6, which begins the categories, right.

25             The first category is -- hold on.  Let me get to the

1    right page number of the response.

2              Engagement letters.  The response on the engagement

3    letter was that respondents had already testified that no

4    engagement letter for any work with Stuart Page or his entities

5    exist in the care, custody, or control of respondents.  There

6    was nothing to produce.

7              Let me hear from you, Ms. Johannes.  I'm sorry.

8              MR. BEHRE:  That is OK.  I can address that.

9              Your Honor, Mr. Forlit himself testified that he was

10   involved in the drafting of engagement letters, and the

11   testimony suggests that they exist.  It just seems odd that if

12   the claim now is that they don't exist --

13             THE COURT:  Well, it is not that they don't exist,

14   right.  The claim I thought -- well, he says that there's no

15   engagement letter with Stuart Page or his entities exist in the

16   care, custody, or control of the respondents.  That's the

17   issue.  Forlit might have it.  These two entities don't, is the

18   response.

19             Is that correct?

20             MR. SALIVAR:  Yes, that's the response.  There is

21   nothing to produce in the care, custody, and control of either

22   SDC-Gadot or Insight Analysis and Research.

23             THE COURT:  You have to get closer to the microphone,

24   counsel.

25             MR. SALIVAR:  My apologies, your Honor.  Yes, that is

1   the response.  There is nothing in the care, custody, or

2   control of Insight Analysis and Research or SDC-Gadot.

3         THE COURT:  You have to read Mr. Salivar's stuff very

4   carefully and you have to listen to him carefully.  He didn't

5   say he didn't have them, that they don't exist; it is just that

6   they don't exist in the custody and care of these two entities.

7         MR. BEHRE:  Well, these two defendants by his

8   testimony are the alter ego of Mr. Forlit.  So Mr. Forlit, the

9   30(b)(6) witness, testified on behalf of those entities and

10  they're in his custody, they are in the custody of the two

11  entities.

12        THE COURT:  No, that is not the way it works.  No.  If

13  the entities don't have them, the entities don't have them.

14  Mr. Forlit here is, obviously, wearing multiple hats, right.

15  So it is a very fine distinction to say he has them in his own

16  capacity but that the entities don't have them.  That's a

17  distinction that sounds like Mr. Salivar is trying to make

18  here.  He is entitled to make it.

19        MR. SALIVAR:  I want to clarify.  I have no knowledge

20  of what may or may not exist outside the care, custody, or

21  control of my clients, and so I have not commented on that.  I

22  have no knowledge of whether or not something exists in someone

23  else's possession, but that is not my client.  For purposes of

24  the response, my client, the two corporate entities, do not

25  have any such documents in their care, custody, or control.

```
1              MR. BEHRE:  Your Honor, if I understand, he represents
2         two clients, plural, and the invoices in this case were
3         addressed to those clients, the corporate entities.  It stands
4         to reason -- I don't have the transcript in front of me, but
5         we're citing a transcript in the deposition where we state,
6         Mr. Forlit stated that respondents sometimes had problems with
7         money transfers and drafted engagement letters.  If the
8         explanation is they no longer exist, then, OK, then they no
9         longer exist.  If the explanation is they never had them
10        because there is a shell game being played with who has them,
11        then I'd ask for clarification as to what happened to them.
12             MR. SALIVAR:  This is a request for production, not an
13        interrogatory requesting --
14             THE COURT:  Hold on.  Hold on.
15             MR. SALIVAR:  -- that my clients --
16             THE COURT:  I am going to try to avoid you guys just
17        talking to each other because I don't really want to preside
18        over a meet and confer.
19             I think this is where you are with the engagement
20        letters.  You have a response.  The response is the entities
21        don't have them.  Now, that's a response they are going to have
22        to live with, right.  So if it turns out that engagement
23        letters turn up later or that engagement letters existed at the
24        time he put this response in, then you cross that bridge when
25        you get to it and it is what it is.  But I think you do have to
```

1   accept the representation that it is a request for production

2   of documents, you want engagement letters for these two

3   entities, the entities have responded, they don't have the

4   engagement letters.

5        All right.  So as to the engagement letters, the

6   motion to compel would be denied.

7        Let's go to the invoices and the records of payments

8   to vendors, subcontractors, and employees.

9        All right.  There are some ships passing in the night

10  here with this.  The request is for vendors, subcontractors,

11  and employees.  The response that you provide, Mr. Salivar, as

12  I read it, is almost exclusively relating to employees and then

13  you say what they really want is the stuff from Gadot Israel.

14        Let's just stick to the request.  Where are the

15  invoices and the records of payments to vendors,

16  subcontractors, and employees that these two entities had?

17        MR. SALIVAR:  The only documents these entities would

18  have that would reflect payments to anyone or monies received

19  are the bank records that were referenced, that were already in

20  the possession of the petitioner and that the petitioner in

21  part cross-examined Mr. Forlit about during the Rule 30(b)(6)

22  depositions.  There are no additional documents.

23        We have offered to reproduce the bank records.  Again,

24  they did not exist in the care, custody, or control of either

25  of the respondent entities at the time the response was

1    initially served.  I believe Mr. Forlit actually thanked

2    petitioner's counsel for producing some of those documents

3    during the deposition because he, as the representative of the

4    entities, did not have them or have access to them at the time.

5         THE COURT:  All right.  Let me hear argument.  He is

6    saying there is nothing but those bank records.

7         MR. BEHRE:  Your Honor, the witness, Mr. Forlit,

8    testified that he used these vendors and subcontractors and

9    employees and that some or all of them were paid via the two

10   Florida entities.  So there must be some records.

11        Again, if they no longer exist, that's different from

12   they don't exist now or they never existed.  But there must be

13   records reflecting those payments that were made that are

14   beyond simply the bank records.

15        THE COURT:  Right.  So the problem is it is a request

16   for a production of documents.  Whether they existed at some

17   time or not isn't something that is required from a response.

18   He is saying as he sits here not today but when these requests

19   were served, right, no such record exists.  You have proof of

20   vendors, subcontractors, and/or employees being paid with bank

21   records and that's all they have.

22        Are you requiring him to reproduce those bank records

23   to you?

24        MR. BEHRE:  For evidentiary purposes, yes, because

25   they won't be admissible in the UK without that.

1      MR. SALIVAR:  OK.  We will produce them.

2      THE COURT:  OK.  So your motion is denied in part and

3   granted in part, right.  It will be granted to the extent that

4   the bank records are responsive and will be produced again,

5   will be produced by -- they have never been produced, right,

6   they will be produced by the respondents.

7      All right.  Let's talk about the bank records now.

8      MR. SALIVAR:  We just did.

9      THE COURT:  Are these bank records that are different

10   than the ones that were encompassed in No. 2, counsel?

11      MR. BEHRE:  Well, my expectation is based upon the

12   bank records we do have is that there are other bank records

13   for bank accounts that we don't have.  So yes, we would expect

14   there would be other banking records that the entities have.

15      THE COURT:  You have to get closer to the microphone.

16   I'm sorry.

17      MR. BEHRE:  I'm sorry.

18      THE COURT:  There could be two sets of bank records or

19   two universes, right.  The bank records that reflect the

20   payments.  Those you have, but maybe then he is going to

21   reproduce -- or he is going to produce them.  This request asks

22   for bank records potentially in addition to the ones you

23   already know of.

24      Are there any other bank records, counsel?

25      MR. SALIVAR:  The only bank records my client has

1   access to are the ones from Bank of America and Citibank, as

2   identified in the response, obtained after the initial response

3   to request for production was served on June 14, 2022.  Those

4   are the same bank records that I referenced in category 2,

5   documents that we already have agreed to produce and we have

6   agreed that we will produce them if petitioner wanted them,

7   even though they already have them.  So we will produce those

8   again.

9           THE COURT:  So I want to proceed with a little

10   caution.  I don't know what you mean by the ones he has access

11   to.  Are there bank records he for some reason can't get or the

12   bank isn't giving him?

13           MR. SALIVAR:  The corporate accounts, actually, the

14   bank accounts are closed and have been for a period of time.

15   So at the time the request for production was served my client

16   entities had no bank records.

17           Afterwards they were able to request and get copies of

18   bank account records for the Bank of America and Citibank

19   accounts that were utilized by the corporate entities.  Those

20   are the records that we're talking about.

21           I believe all of them, but I know some of them were

22   previously obtained via subpoena by the petitioner out of a

23   Southern District of New York 28, U.S.C., 1782 action, which

24   were then discussed during the Rule 30(b)(6) depositions.  So

25   when I'm referring to the ones the petitioner already has,

1   that's what I'm referring to.  But the Bank of America account

2   records and the Citibank records my clients were able to go and

3   obtain.  We will still produce them, even though we obtained

4   them after we initially had responded.

5          THE COURT:  Counsel.

6          MS. JOHANNES:  Your Honor, I just want to briefly say

7   something before Mr. Behre continues.

8          I think this has been the constant issue with the

9   discovery requests here.  Counsel has and his clients have an

10  obligation to not only produce what they have immediately

11  sitting in a box somewhere, but they have to do proper due

12  diligence to make sure they're complying with the subpoena.

13         We just want to make sure, and we have asked,

14  actually, in prior pleadings, if you have nothing, OK, but it

15  is one thing to say we have nothing and it is another thing to

16  say we have done the due diligence to search for whatever is

17  within our care, custody, and control that we have access to to

18  comply with the subpoena.

19         THE COURT:  That's why I asked him --

20         MS. JOHANNES:  And that's the disconnect.

21         THE COURT:  -- to clarify on the bank records.  The

22  fact that he doesn't have them in a file drawer doesn't mean he

23  doesn't have access to them.  They clearly didn't have them in

24  a file drawer, but he does have access to the BOA and Citibank

25  bank records and he'll produce them.

1        MR. SALIVAR:  Your Honor --

2        MS. JOHANNES:  I just want to make sure -- excuse

3   me -- I just want to make sure, your Honor, that that's true

4   not just for the bank records but for every additional bucket

5   that we have sought documents in.

6        THE COURT:  I will tell you what my thinking on that

7   is.  If a party, or through counsel, says we don't have the

8   records, then I assume, and I think I'm entitled to assume,

9   that they have done the due diligence that the Rules of

10  Evidence and the law requires, and so if it turns out later

11  that you find evidence that they could have had if they had

12  called the bank or something like that, then I'll hear from you

13  then.

14        Counsel should know what it means to possess the

15  document, and I assume he's had that conversation with his

16  client.  It is an assumption I make in every civil case.  And

17  if a lawyer comes back later and says we didn't know, we had to

18  call to company that we have control over or this person that

19  we have control over or this bank we have control over, I mean,

20  in a typical civil case that leads to sanctions, right.

21        MR. SALIVAR:  Your Honor, just what I wanted to

22  clarify was also there was an expedited time frame for

23  responding to all of this because, counsel may remember before

24  I even appeared on behalf of these respondents, petitioner was

25  trying to expedite moving forward and obtain sanctions for

1    nonproduction of documents, and so I had to come in and request

2    an extension of time or actually filed a motion for protective

3    order pertaining to production and depositions.

4            THE COURT:  That I denied.

5            MR. SALIVAR:  But this response was all done on an

6    expedited time frame based upon the demands of the petitioner

7    to quickly get responses to the document production requests.

8    So any insinuation that my client didn't perform an actual good

9    faith investigation of documents or should have taken more time

10   should be tempered by the fact that the petitioner was

11   immediately demanding production of the documents and my

12   clients did what they were obligated to do.

13           THE COURT:  All right.  But at this point we are at a

14   motion to compel.  You have got plenty of time, and if your

15   client is in possession of documents, given what that term

16   means under the law, then that is what the rule would

17   encompass.

18           OK.  So let's go to accounting records and tax

19   returns.  All right.  Here I've got the same issue.  Mr. Forlit

20   states that Mr. Gur Lavie manages the finances and that there

21   is the American CPA or Ari Propis who is the accountant for the

22   company and records, I assume, the company's business expenses,

23   right.

24           So you're asking for all accounting records held by

25   the finance director and CPA, including, but not limited to,

1    ledgers and tax records that reflect work done by respondents

2    and are responsive.

3         I take this request to be narrow in that you're

4    seeking the accounting records and tax returns of the two

5    entities.  To this the response is --

6         MR. SALIVAR:  It wasn't narrow, Judge.  They are

7    asking for broad, unredacted tax returns for any and all

8    activities for both entities.

9         We object based on the new reading of what previously

10   was asserted to be narrowly-tailored discovery requests now to

11   be broad and open-encompassing, unredacted tax returns for both

12   entities for all business conducted by the entities.

13        THE COURT:  All right.  Let's piece this out a little

14   bit.  It is true that one of the things they're looking for are

15   tax records.

16        MR. SALIVAR:  In a case in which --

17        THE COURT:  Hold on.

18        Tax records -- maybe I'm misreading this -- that

19   reflect work done by respondents.  I think there is some caveat

20   here, but let me hear from you, counsel.  What is it that

21   you're looking for here?

22        MR. BEHRE:  Yes, your Honor.  I think this probably

23   should have been separated into two different buckets -- the

24   accounting records and the tax records.  For the time let's set

25   aside the tax returns and just address the accounting records

1    since it seems like that is counsel's biggest concern, the tax

2    returns.

3           The accounting records back up the payments which we

4    argue in the UK were used to fund the hacking operation, and

5    those records would show money coming in and all of these

6    vendors and third parties and employees that were paid to do

7    the actual hacking.  So those are the accounting records that

8    we would be seeking.

9           THE COURT:  Let me hear from you.

10          MR. SALIVAR:  Your Honor, that's not what the request

11   says.  The request asks for all accounting records held by

12   respondents' finance director and CPA, including, but not

13   limited to -- I highlight that because that's become a phrase

14   that's propped up now to expand the scope of requests --

15   including, but not limited to, ledgers and tax records, reflect

16   work done by respondents and are responsive.

17          So there is no attempt to clarify what it is that the

18   petitioner is seeking other than we want absolutely everything.

19          THE COURT:  Right.  He doesn't want that any more.

20   He's asking for accounting records that back up the payments to

21   vendors, subcontractors, and employees.  Let's read it that way

22   for now.

23          MR. SALIVAR:  And I don't even know which vendors,

24   subcontractors, or employees are specifically being identified

25   which would have allegedly, based on the plaintiff's view of

1   evidence, have had anything to do with the hacking that's being

2   alleged and at issue in the UK proceeding.

3        That's the problem, and that is what came up during

4   the Rule 30(b)(6) depositions, was that the bank records that

5   were reviewed -- there were a number of corporate entities my

6   client was questioned about that had absolutely nothing to do

7   with Farhad Azima.  There was a company that had to do with an

8   investigation that I believe took place somewhere in South

9   America.  Are they asking for accounting records for vendor

10  payments to that entity that had nothing to do with Mr. Azima?

11  Because that has no relevance to the UK proceedings.

12       That's the problem with how this was phrased.  This is

13  being intentionally shoehorned into being overly broad and just

14  ask for everything that is unredacted about any business or

15  any -- excuse me, money that's come into or out of an account

16  held by these entities, because the testimony was these

17  entities didn't conduct business, they were effectively holding

18  institutions for bank accounts.

19       THE COURT:  All right.  Let me hear from you on the

20  issue of why can't this be further narrowed to be a list of

21  entities that you find are at issue.

22       MR. BEHRE:  Well, the docket entry 50 says, vendors,

23  subcontractors, and employees who worked on the investigation

24  related to Azima and Azima's Associates.

25       Look, if he wants to produce a limited subset of what

1    he thinks was asked for, then we can discuss that, but to say

2    you're not going to produce any documents because the request

3    was overbroad doesn't seem like a viable response.

4              We are happy to limit it in that way, and we are happy

5    to take the tax returns off the table if that eliminates some

6    of the concern, and then he can just look for the accounting

7    records that track back to the issues covered during the

8    deposition.

9              I would note the money flow was $10 million and the

10   witness admits at least 5 million related to this Project

11   Beach, which I think everybody would agree relates to our

12   client.

13             MR. SALIVAR:  No, we do not agree to that.

14             THE COURT:  Hold on.  Hold on.  Wait your turn.

15             Continue.

16             MR. BEHRE:  And therefore, at least 5 of that $10

17   million there has to be accounting backup for.

18             THE COURT:  All right.  So your theory is there's at

19   least 5 million under your theory, right, that are related to

20   this project and you're entitled to the accounting records that

21   support payments on the project.

22             MR. BEHRE:  Exactly.  That an accountant used before

23   he would pay a third party, a vendor, a subcontractor, an

24   employee, there would be some accounting records that reflect

25   why they were being paid, and those could reveal further

1    evidence not only about who did the hacking but what their role

2    was in that hacking.

3          THE COURT:  Let me ask a question based on what you

4    know now and the deposition you already took and the records

5    you do have.  Is that a limitation that you can make?  Are you

6    able to say these are the ten entities I want or 15 entities I

7    want or is that something you're requiring him to do?

8          Because once you limit it that way and he's got to

9    identify which ones are related to the hacking, I tell you what

10   he is going to tell me; there are no such documents because

11   there was no hacking.  So that is not a helpful delineation of

12   the evidence.

13         If you have ten vendors and you say, look, these are

14   ten vendors and I want the accounting records to support

15   payments to these ten vendors and you can tell him what the ten

16   vendors are, then we will be getting somewhere.

17         MR. BEHRE:  Well, as a start the subpoena has a

18   defined term, I believe, of Azima and Azima's Associates.  That

19   would define what the scope of inquiry that we think is

20   relevant would be, and the vendors themselves and the

21   subcontractors were discussed during the course of his

22   deposition.  They're in the bank records.

23         I agree with you that there's going to be a difference

24   between the parties with regard to whether or not that's a

25   relevant entity or not, but that shouldn't absolve him of

1    having to produce those records.  It is permitting us to test

2    whether or not we agree with him that they're unrelated to the

3    facts and issues in the UK trial.

4              THE COURT:  Mr. Salizar.

5              MR. SALIVAR:  Yes, your Honor, and that goes to part

6    of why also the request to terminate and reconsider 1 and 5 was

7    entered.  Counsel's reference to the Azima's Associates,

8    literally the testimony of the 30(b)(6) depositions was that

9    neither of these entities nor the Gadot Israel entity nor

10   Mr. Forlit himself ever conducted or performed an investigation

11   of Farhad Azima.  He did testify as to investigations conducted

12   by SDC-Gadot, the Israeli entity, not my client, the Florida

13   entity, having performed investigations into an individual

14   named Khater Massaad.

15             Khater Massaad's name is listed as one of the Azima's

16   Associates, but in no way, shape, or form appears in any way

17   attenuated to the claim at issue in the UK proceedings about

18   how this hack caused damages to Farhad Azima individually.

19             So the entirety of this is trying to end around by

20   saying, well, we're trying to prove that you had something to

21   do with hacking that damaged Mr. Azima, but in order to do so

22   we're going to ask that you produce records pertaining to

23   payments made by an Israeli company that is not my respondent,

24   for purposes of an investigation into another individual that

25   is not Mr. Azima and is not a party.

1           THE COURT:  Let's keep our eye on the ball here.  They

2      can only ask you for the respondents.  So tax records are off

3      the table.  That is withdrawn.  We are only looking for

4      accounting documents that support payments to vendors that are

5      going to be the vendors that they will provide a list of.

6           So in other words, it is not going to be left up to

7      you to decide which vendors are relevant.  I think they've got

8      to use their best judgment here on what that list is.  Then I

9      think if you get the list and you say, look, these four are

10     out, I'm not giving you these four, that is a different issue.

11          I am not going to make Mr. Salivar, on behalf of the

12     entities, determine which ones are at issue because I think

13     that is a little problematic given how discovery is typically

14     done.  I think if you give him the list and say these are -- it

15     doesn't matter if they are Azima entities or the entities in

16     the depo.  It doesn't really matter.  These are the list of

17     entities.  We want accounting documentation for payments to

18     these entities, hard stop.  He might agree on some, he might

19     disagree on others.  You will have to confer about that and

20     move on.

21          So with respect to accounting records and tax returns,

22     the motion is granted in part and denied in part.  I note again

23     for the record the request for tax returns is withdrawn, and I

24     grant the motion only to the extent that the petitioner would

25     provide a list of entities for which payments, accounting

1    records for payments have to be produced to the extent that

2    they are in the custody and control of the respondents.

3          If Mr. Salivar has issues with specific entities, he

4    is to confer with counsel, and if the parties can't agree, then

5    assuming we can get rid of 52 this way and we are back on 50, I

6    will hear argument as to each entity.

7          OK.  So that is 4.

8          Let's talk about email records.  Email records are

9    always a little interesting here because, again, you're looking

10   at two entities and what emails they control.

11         So based on that, counsel, what is it that you seek

12   with respect to email records?

13         MR. BEHRE:  Well, your Honor, during the course of

14   Mr. Forlit's depositions he indicated that he was using several

15   email addresses.  One is amit@gadot.co, that he used

16   amit001@me.com, and as well omri48@gmail.com.

17         As we understand it, at least the first email address

18   I mentioned, @gadot, was used to communicate with his

19   registered agent here in Florida, and with regard to the other

20   two, we're seeking those that we know about, and there might be

21   others, but we are seeking those emails -- not every email he's

22   ever created -- but the emails that were created that reflect

23   and relate to the transactions with these Florida entities.

24         He testified that the people involved have created

25   Google alerts.  So there would be emails reflecting those

1    Google alerts about our client.  Presumably, there would be

2    emails about what we've called the hacking reports, which we

3    are going to get to in a few items down the list here, emails

4    about the hacking reports.

5        There's going to be emails about the travel records,

6    which is another category we seek, and there's going to be

7    emails about this alleged discovery of the stolen data, and

8    there might even be emails containing some of the stolen data,

9    which is another one of the requests.

10       So to date -- I don't think I'm overstating this -- I

11   don't think a single email has been produced, and it defies

12   logic that with $10 million moving in and out of Florida that

13   there weren't some emails that related to those movements.

14       THE COURT:  Well, you haven't been in Florida long, I

15   take it.  All sorts of things happen here, counsel.

16       MR. SALIVAR:  Not in the bankruptcy courts.

17       THE COURT:  All right.  But their response is they

18   don't have them.  They don't exist.  So the response is that

19   you're aware that no emails exist pertaining to the

20   investigation and -- well --

21       MR. SALIVAR:  The testimony was, your Honor, that

22   apparently, I guess -- I don't know if this is referred to as

23   an open source security protocol.  I thought that was what the

24   reference name was, that communications pertaining to Project

25   Beach were done via a shared email account which were drafted

1     and then deleted contemporaneously.

2             There were no saved or transmitted emails pertaining

3     to the Massaad investigation.  So there is absolutely nothing

4     for the investigating entity to have produced.  My clients are

5     not the entity that performed an investigation of Mr. Massaad.

6     So my clients did not use, SDC-Gadot, LLC and Insight Analysis

7     and Research, LLC did not use whatever email account that was

8     from 2016.  We have no emails from that account.

9             Then moving further into the other amit@gadot.com,

10    omri48@gmail.com, or amit001@me.com email addresses, those were

11    not used by SDC-Gadot, LLC or Insight Research and Analysis,

12    LLC.  We do not have any emails from those accounts.

13            THE COURT:  Let me ask you a question.  Did those

14    companies have any emails?  Did they at all use email?

15            MR. SALIVAR:  As far as I can tell, it doesn't look

16    like it, your Honor.  Actually, counsel communicated with the

17    registered agent Shaman Goldberger, who up until being

18    contacted by counsel didn't know he was the registered agent

19    for my clients and I believe initially communicated to Ian at

20    Mr. Behre's office that he was unaware that he even was the

21    registered agent.

22            The only emails I have seen that pertain to my two

23    client entities were the emails related to the initial service

24    of the subpoenas on Mr. Shaman Goldberger and then his forwards

25    to Mr. Forlit.  I believe those have actually been forwarded

1   previously to counsel.

2          THE COURT:  So let me ask you a question.  If the

3   companies are basically a pass-through for money, the entity

4   itself may not have email addresses, right.  There is not going

5   to be a dot whatever, right, for the companies.  But that

6   doesn't mean that the company or that people on behalf of the

7   company aren't using email to communicate with respect to

8   activity that the company's undertaking.

9          So, for example, if Mr. Forlit is sending emails

10  saying do this or do that with this money in this account,

11  right, I think it is too much of a stretch to say that those

12  emails aren't company emails or are not in the possession, if

13  you will, of the company somehow because there are emails that

14  directly relate to the business of the company.

15         That is different than every email in these three

16  accounts.  I get it.  But I am a little concerned that we are

17  making it way too narrow to suggest, because these two

18  companies didn't have like a server, right, with email

19  addresses, there must be no emails.

20         MR. SALIVAR:  My understanding is these companies

21  didn't have employees, your Honor.  They were organized, bank

22  accounts were set up, the bank accounts existed.  They either

23  received money or then transferred money, and that is all that

24  the Florida entities did.

25         THE COURT:  Agreed.  So that was what my hypothetical

1    was to you, right.  If that is all the companies did, if the

2    companies couldn't otherwise do anything with respect to an

3    investigation -- what they did is move money.  Emails about

4    that movement of money, wouldn't those emails be company emails

5    that should be subject to production?

6            Maybe there aren't any, but it would seem to me that

7    it would be a hard argument to make that those aren't emails

8    that the company has control over, irrespective of who sent

9    them.  I get you're not going to have 700 emails talking about

10   XYZ business because the company had no employees and the

11   company is essentially a pass-through for money.

12           MR. SALIVAR:  That is assuming that there were even

13   emails transmitted about any receipt or transmission of money

14   that came into or out of the accounts.

15           THE COURT:  I know.  I don't know that there are any.

16   If there are some, I think you have an obligation to find

17   those.

18           MR. SALIVAR:  I can certainly inquire.  My clients

19   will provide an amended response, your Honor, if there are

20   emails that are directed to or related to money received into

21   or transmitted from the Bank of America or Citibank accounts

22   for SDC-Gadot or Insight Research and Analysis that fall within

23   the scope of the request.

24           I don't believe the intention is every single dollar

25   that ever went into or out of this account, any email related

1  to those has to be produced because I believe the corporate rep

2  testified previously, a significant number of the items flanked

3  by the petitioner's counsel during the two days of depositions

4  pertain to entities and monetary transfers having nothing to do

5  with Mr. Azima or an Azima Associate.  That is not what the

6  court's asking me to inquire my client about, correct?

7          THE COURT:  I think it has to be limited, yes, to what

8  is relevant, to the transactions that are relevant here.  I

9  mean, is it useful?  I don't know if going back to the list we

10  used for 4 --

11          MR. SALIVAR:  That is what I was just thinking.  If

12  there is a list of either transmitting or receiving entities

13  based on the bank accounts the petitioner is seeking emails

14  pertaining to, I can certainly sit down with my client

15  representative and see if there is an email account that has

16  any emails pertaining to those transfers.

17          THE COURT:  Counsel.

18          MR. BEHRE:  We're happy to engage in that discussion,

19  your Honor, but I would note that Mr. Forlit utilized an email

20  address of gadot.co.  So there is clearly a corporate email

21  account that was set up, at least for him, which presumably is

22  not Mr. Forlit as an individual but him as a corporate

23  representative of Gadot.

24          MR. SALIVAR:  That misrepresents the testimony of the

25  witness about the Gadot Israel entity being the entity that he

1   operated for years to conduct investigation activities

2   lawfully.

3           THE COURT:  Right.  That is not the Gadot that is a

4   respondent here, I believe was the --

5           MR. SALIVAR:  It is not.  It is not.

6           THE COURT:  Look, he has to amend to say that.

7           MR. BEHRE:  Understood, but the communications he had

8   with the Florida representative who oversaw SDC-Gadot was under

9   the gadot.co email address.

10          THE COURT:  Correct.

11          MR. BEHRE:  At least in that one instance it was

12  relevant to SDC-Gadot.

13          THE COURT:  Right, but the Florida Gadot doesn't have

14  control over that email.  In other words, the Amit Gadot might

15  have been in his other hat, his Israeli hat, sending an email

16  to Florida, but that doesn't make that email subject to the

17  possession and control of the Florida entity.

18          MR. BEHRE:  But what Mr. Goldberger would have would

19  be in the custody and control of SDC-Gadot since he was the

20  official Florida representative.

21          THE COURT:  Right, and I think you just heard him say

22  he didn't even know he was the representative, so he's got

23  nothing.

24          MR. SALIVAR:  We actually have absolutely no control

25  over Mr. Goldberger.  My understanding is that without the

1   entities or anyone being provided knowledge there was any

2   filings identifying new registered agents for both Florida

3   entities, I think that's been corrected now.  My cocounsel, Mr.

4   Baret, has filed with the Department of State to be identified

5   as the registered agent of both entities.  But as to the prior

6   registered agent we have no control over Mr. Goldberger or his

7   email accounts.

8          THE COURT:  All right.  I am going to grant the

9   request, grant and deny it in part.

10         So what will be subject to production are emails

11  regarding the movement of funds, and the movement of funds will

12  be specific transactions, and that list will be provided by the

13  petitioner to the respondent -- these are the transactions at

14  issue.  If you have emails about the movement of this

15  transaction, those are the ones that we want.

16         So that will be 5.  All right.

17         MR. SALIVAR:  Your Honor, is that also without

18  prejudice to the right to address whether or not --

19         THE COURT:  Of course.  It is the same as we did for

20  4.  If you get that list and you think there are six

21  transactions here that I shouldn't have to give you, it will be

22  subject to that argument.

23         MR. SALIVAR:  Thank you, your Honor.

24         THE COURT:  So let's go to 6, the What's App and other

25  messaging services.

1        MR. BEHRE:  Your Honor, I think it is essentially the

2   same argument with the emails, just on a different medium for

3   transmitting messages.

4        THE COURT:  All right.  So it will be the same ruling

5   for 6, right.  If it is an email or What's App message, if it

6   is a message having to do, again, with the movement of the

7   funds for the transactions that you would provide, then that's

8   discoverable.

9        I assume there is no What's App account for these

10  entities, counsel.

11       MR. SALIVAR:  Not that I am aware of, your Honor, no.

12       THE COURT:  Let's look at travel records.

13       All right.  So the response on the travel records is

14  that they don't have any documents.  "Moreover, these

15  respondents possess no legal right to demand that information."

16       So what say you, counsel, to that response?

17       MR. BEHRE:  Well, we think they're directly relevant

18  to the UK proceeding because they relate to a perjury scheme

19  that was perpetrated in the UK immediately before that trial.

20       With regard to not having possession of the documents,

21  again, it's custody and control, and clearly they must control

22  records regarding travel that relate to, for example, credit

23  cards, maybe a travel agent, maybe an airline record, and the

24  like.

25       It is impossible -- maybe that is overstating it --

1    that someone could travel from point A to point B and there

2    wouldn't be a multitude of records that still exist relating to

3    that travel, for the purchase of the travel, airfare, hotel,

4    and the like.

5         THE COURT:  I don't think anybody disputes that.  The

6    question is whether those kinds of records are in the

7    possession of this company.  If this company, if the funds of

8    this company weren't being used for travel, then I don't see

9    how -- do you have any reason to think that the funds that this

10   entity held were used for travel?

11        MR. BEHRE:  Well, depending on what the other records

12   we have sought show, our working hypothesis is that the money

13   flowed from Florida, went to the Israeli entity, and that's the

14   money that was used to fund his travel from Israel.

15        THE COURT:  Right.

16        MR. BEHRE:  But we don't have that yet.

17        THE COURT:  Right, but that money was taken out of the

18   Israeli account.

19        MR. BEHRE:  Correct.

20        THE COURT:  So the Israeli entity has the travel

21   documents, the Florida entity does not under that theory.  I

22   don't know if that is true, I'm just following your theory

23   through.

24        MR. BEHRE:  So if Mr. Forlit is getting paid through

25   the U.S. entities and he is traveling somewhere to these

1    meetings to talk about the conspiracy to conjure up false

2    testimony, those are the entities that are getting paid, and

3    whether it is directly or indirectly, those are the moneys that

4    are being used to fund his travel because he is submitting --

5                THE COURT:  I understand that.

6                MR. BEHRE:  -- his expenses.

7                THE COURT:  I understand the theory, but if the

8    Florida -- so you can't say, well, this Florida entity sent

9    $50,000 to Israel and we think that $50,000 could have been for

10   some travel, right.  I think that is your theory.  Unless there

11   is some way that you can say that you know that this March

12   expenditure or February expenditure went for travel, that even

13   March expenditure, there is no way for the entity to control

14   that document.

15               In other words, I understand your theory, but in a

16   document request for the two Florida entities, unless you can

17   tell me we know that the April, May, June 2000 whatever were

18   used for travel, then I don't see how you can make the argument

19   that those documents are in the possession of the Florida

20   entity.

21               What would be in possession of the Florida entity is

22   that transfer over.  I get it.  That's indirect.  But you would

23   have to be able to have some proffer, I think, that -- because

24   otherwise every bit of money that went, right, we are back to

25   square one, because every bit of money could have been for

```
 1    travel.

 2            I am going to deny the further request for travel

 3    records.  You have an answer that there are none.  Again, you

 4    have to live with that.  If you show something later on, you

 5    can always come back and say, well, that is not what you said

 6    here.

 7            So 7 is denied.

 8            All right.  So then let's go to the hacking report.

 9            "Mr. Forlit confirmed that he prepared regular reports

10    and sent them to Mr. Page," and then the response -- right.  So

11    these reports obviously exist.  I don't know that he probably

12    would refer to them as hacking reports, but in any event, they

13    are not in the possession of these two entities which were

14    entities solely used to pass through money, I think is your

15    response; is that correct, Mr. Salivar?

16            MR. SALIVAR:  Yes, your Honor, and entities which

17    didn't exist at the time of the creation of the reports that

18    were given to my corporate representative to discuss during the

19    30(b)(6) depositions.  That was a point identified by the

20    witness during the depositions, is the date of the documents

21    predated both of these corporate entities in Florida by years.

22            THE COURT:  All right.  This goes, I think, also to 9,

23    right, the category 9, which is the data.  So let me hear your

24    response to the reports and the data.

25            MR. SALIVAR:  My response to request --
```

```
 1              THE COURT:  I'm sorry.  Counsel's response.
 2              MR. SALIVAR:  Yes.
 3              THE COURT:  Your response is these entities can't
 4    possibly have that.  One, they were created afterwards so they
 5    can't possibly have them, and in any event, they don't have
 6    them.  It is another that would have --
 7              MR. SALIVAR:  Mr. Forlit has already testified that
 8    there were no investigative reports pertaining to Khater
 9    Massaad retained by his investigative entity Gadot Israel.  So
10    we have no access to even request if they did exist in Gadot
11    Israel's possession, but the testimony of the corporate
12    representative was none were retained.  There are none.
13              MR. BEHRE:  Mr. Forlit testified that these reports,
14    we will call them hacking reports for purposes of today, these
15    reports were prepared by him and that his entities were paid
16    for them and, therefore, Mr. Forlit was, and he testified, he
17    was the only employee of these entities.
18              So what Mr. Forlit had or has is in the custody and
19    control of the entities because he is essentially the alter ego
20    of, or those entities are the alter ego of him because the
21    money is coming in, they are paying for the reports, he's
22    preparing the reports, he is the only employee, and he is doing
23    the work for the entities, but now he says he is building this
24    wall between the two.
25              THE COURT:  No, because he said he is doing the work
```

1   for another entity.  He is doing the work for the Israeli

2   entity.  Or Mr. Salivar is saying yes, to the extent he is

3   doing it, he is not doing it for the two Florida entities.  He

4   couldn't be because the Florida entities were incorporated

5   afterwards, right, Mr. Salivar?

6            MR. SALIVAR:  Yes, your Honor.

7            MR. BEHRE:  No, the Florida entities were not

8   incorporated after.  As a matter of fact, there were many,

9   many, dozens and dozens of hacking reports after those entities

10  were created.

11           THE COURT:  Right.  But the point is, again, these

12  reports, the hacking reports, even if they were created during

13  the time that the entity existed, I understand his testimony to

14  be, and the representation in his responses to be, that he

15  didn't create them for these two entities; he created them with

16  his Israeli entity hat on, and these two entities that were

17  created just as pass-throughs for payment, the reports aren't

18  for them, the reports aren't created for those entities or in

19  connection with those entities and, therefore, they can't

20  control because they don't have power over the Israeli entity

21  for whom these reports were created.

22           So the problem with the alter ego argument is if

23  Mr. Forlit had no other entities in the world and you could

24  say, look, these two entities and everything he does is for

25  these two entities, I follow.  But that is not the case, right.

1    He is associated with other entities.  So it can't be the case

2    that anything he does on behalf of anybody else would be

3    responsive to the request for these two entities.

4         MR. BEHRE:  But the only entities we are aware of that

5    invoiced for Project Beach were these two entities; the only

6    entities we're aware of that were paid for Project Beach were

7    these two entities, and these reports directly relate to

8    Project Beach because they say Project Beach on them.

9         So the idea that somehow this is for the Israeli

10   entity is a fiction.  The invoices say U.S., the payments are

11   to the U.S., and they are labeled Project Beach.

12        THE COURT:  Counsel.

13        MR. SALIVAR:  Your Honor, just for clarity sake, I

14   want to make sure -- I don't think your Honor has these as part

15   of the record, but my representations regarding the time frame

16   of the reports we're talking about, deposition Exhibit 10 is

17   dated August 4, 2015.  The title is Project Beach report,

18   Farhad Azima.

19        My client was questioned about that by and through

20   Mr. Forlit, even though neither corporate entity existed in

21   August of 2015.

22        Another report, which was identified as an exhibit and

23   produced during these depositions, was Project Beach

24   Comprehensive Action Plan.  At the bottom of the page it is

25   dated January 26, 2016.

1      As with the prior report I just referenced, neither

2  Florida entity existed at the time of the creation of these

3  documents.  The corporate representative testified any work

4  that was done by the Gadot Israel entity for investigation of

5  Khater Massaad, no work was ever done as it pertains to Farhad

6  Azima, there were no reports retained.

7      So I don't know if counsel wants my client to go find

8  somebody and hack counsel and get these reports, because they

9  have the reports.  Two of them were produced during deposition.

10  They predate the creation of these Florida entities by years,

11  and the response is that none of these reports in the form that

12  work done by Gadot Israel may have been done were retained.

13      So I don't know if they want us to go recreate

14  something.  We certainly have no obligation to recreate

15  documents that don't exist under the Rules of Civil Procedure

16  and the Rules of Evidence.

17      THE COURT:  All right.  So respond to that.  He is

18  saying they don't exist.  So even if I accept your argument

19  that there is an alter ego -- that is not really an alter ego.

20  You are saying, look, they paid for these, right, they have

21  them, they can control them, therefore they can request them

22  somehow.  He's saying that they don't exist anymore.

23      MR. BEHRE:  Well, that is a different argument.

24      THE COURT:  Right.

25      MR. BEHRE:  If that is the representation, I just want

1    to make sure that it is clear that whether or not that

2    representation goes to anything in Mr. Forlit's possession or

3    just the entities for the same alter ego or not, for the same

4    reason, because it feels like it is a shell game where

5    Mr. Forlit has things but he is not agreeing that they are

6    subject to the control of his entities, of which he is the only

7    employee.

8             THE COURT:  Mr. Salivar.

9             MR. SALIVAR:  Judge, the response says the only

10   reports in possession of the respondents are those which were

11   attached in unredacted form as exhibits to the depositions

12   conducted July 20th and July 21, 2022.  That is all the

13   respondents have is what their corporate representative

14   Mr. Forlit was handed and questioned about during the

15   depositions.

16            THE COURT:  Right.  He's asking a broader question

17   now, which is -- because you've said this is what the

18   respondents have, what Mr. Forlit was given -- is your argument

19   that -- let's assume for a minute that the entities have the

20   power to ask for the reports from another entity, because they

21   paid for them, right.  Is your representation that they don't

22   exist anywhere?

23            MR. SALIVAR:  That's --

24            THE COURT:  And that Mr. Forlit wouldn't be able to

25   get them or give them back to the entity.

 1            MR. SALIVAR:  My understanding is that was the

 2    testimony.  The direct testimony was that no report, work

 3    prepared by SDC-Gadot Israel, the SDC-Gadot Israel entity were

 4    retained.  So they don't exist in that entity's custody or

 5    control either.

 6            My recollection and understanding is that is what is

 7    in the transcript of the testimony provided by Mr. Forlit.  If

 8    I'm mistaken, I would be happy to see what it is that counsel

 9    believes was testified to that would indicate that either the

10    Israel or the Florida entities would have access to these

11    reports.

12            THE COURT:  They don't exist is what he's saying.  You

13    heard him.  It is on the record.  You can order the transcript.

14    It will be painful to have to read the whole transcript, but

15    it's here.  You can Google a search break and know that it is

16    after the break at least.

17            So I think that is it for the categories because I

18    think that goes to the hacked data as well, no?

19            MR. SALIVAR:  Yes.

20            THE COURT:  Right.  OK.  So the categories 8 and 9,

21    that's denied.  Again, those are representations -- it is here,

22    but it is also now in the record that no such information in

23    any event would exist.

24            OK.  So that takes care of 50.  However, as I

25    mentioned before, it only takes care of 50 to the extent that

```
1    52 --
2                 MR. SALIVAR:  Is denied.
3                 THE COURT:  -- is denied.
4                 I think what I will do is, I am not going to rule on
5    52 right now.  I am going to ask counsel to consider my rulings
6    on 50 in determining whether or not it is going to persist on
7    52 or whether or not it will agree to produce, as I have
8    ordered on 50, subject to further argument on the entities that
9    you haven't seen and the transactions you haven't seen.  You
10   don't have to give me an answer now.  I will give you a week to
11   answer.
12                MR. SALIVAR:  My only concern and thought, Judge, is
13   that knowing your Honor's ruling on 50, if 52 is not pursued
14   any further to a ruling, it still leaves open the issue of
15   counsel stated on record today a request to compel additional
16   Rule 30(b)(6) depositions.  So it still keeps an issue out
17   there.
18                I think we are probably going to need your Honor's
19   ruling on 52 because it goes beyond just 50.
20                THE COURT:  Right.  To that point, what is the further
21   argument on the 30(b)(6) witnesses?
22                MS. JOHANNES:  Your Honor, that was only relevant to
23   the extent there are additional documents.  I mean, this was
24   done backwards, if you will.  We're talking about documents
25   being produced now, and the deposition has already taken place.
```

1    In a normal, civilized world, the documents would have been

2    produced and then there would have been depositions.  To the

3    extent there are documents produced that require or trigger the

4    need for further Rule 30(b)(6) depositions, that is why

5    petitioner wanted to keep that request out there and not cut

6    ourselves off from additional inquiry of a corporate

7    representative that may have information relating to those

8    documents.

9         THE COURT:  All I'll say to that is, to your comment

10   that it is not a normal world here, you set those depos without

11   the documents.  That is kind of where we're at.

12        MR. SALIVAR:  And --

13        THE COURT:  Hold on.  Hold on.  I'm still talking.

14        MR. SALIVAR:  Sorry, your Honor.

15        THE COURT:  I think what I would be inclined to do on

16   that, though, is if they wanted an additional 30(b), they'd

17   have to request it, and I think your arguments on 52, you could

18   make them again.  You certainly wouldn't be precluded from

19   making them because you'd only be withdrawing it, honestly,

20   with respect to the motion to compel.

21        MR. SALIVAR:  As to 50.

22        THE COURT:  Because otherwise it's moot.  Otherwise it

23   is moot.  There is nothing pending before me other than the

24   motion to compel.  If you agree to produce the documents

25   subject to the agreement -- subject to coming back as to

```
1    whether or not particular transactions are relevant, which is

2    an argument you would have regardless of 52.  I think you

3    preserve all the arguments on 52 if they want a 30(b)(6).

4           I'll let you think about it.  I'm not trying to put

5    you on the spot about that.

6           MR. SALIVAR:  Thank you, your Honor.

7           THE COURT:  I'll give you a week to submit something

8    in writing to the court saying what your position on 52 is

9    going to be given my rulings on 51.

10          MR. SALIVAR:  All right.  Just thinking about it now,

11   I'll think about it and discuss with my client representative

12   as well, your Honor.

13          My only concern is, and the main point with this has

14   been to avoid a waste of the court's time, unnecessary

15   expenditure in this proceeding, especially now where any

16   additional documents that are produced if your Honor enters a

17   ruling on 50, as your Honor has laid out if you get past 52, if

18   those documents are produced, I am certain questions are going

19   to be asked during a Rule 30(b)(6) deposition set in the

20   Southern District of New York matter pertaining to the very

21   transactions identified in the bank records because those

22   pertain to the alleged conspiracy to conceal the testimony,

23   which is at the heart of that case.  It would be duplicative to

24   come back and be trying to do the deposition here and then turn

25   around and do the exact same thing in New York.
```

```
 1              THE COURT:  We are not even there yet.

 2              MR. SALIVAR:  I'm just saying.  That is my thought

 3    process.

 4              THE COURT:  That is why 52 might not be worth it

 5    because you're going to get there anyway.

 6              Now let me talk about one other thing, now having

 7    heard everything I heard, which is what is still pending and we

 8    didn't address today and I wasn't intending to address today,

 9    was the supplemental on Amit.

10              So this is where I'm at on this, because this is where

11    52 comes back and rears its head again, which is that

12    supplement -- correct me if I'm wrong -- that supplement is

13    also devoid of kind of the issues that we addressed with Page

14    today, the North Carolina matter, right.  So it seems to me

15    that as to Forlit you have to amend that again.

16              I think the cleanest way to do it, because I can't

17    imagine -- who knows; I see all sorts of things -- I can't

18    imagine you're not going to continue to persist on having a

19    1782 as to him individually.  If you do -- I could be wrong --

20    if you do, I think you've got to do it, because I can't unknow

21    what I know now.  I think you've got to do it, for lack of a

22    better way of saying it, sort of with a clean application that

23    says, this is what we got on him in terms of why a 1782 is

24    relevant as to him and why you should extend it to him.

25              I think it behooves you to take into account what the
```

1    arguments in 52 are, right, and I think it behooves you to also

2    request that irrespective of what you got in the first

3    application.  Because if not, it is sort of a circular thing,

4    right.  You can't say because of what he said in these we want

5    this, right.  I think you've got to go back to the first

6    instance, which is how you intended to do it, and say in the

7    first instance if we take away Page, this is why something

8    individually as to him qualifies.  Because otherwise I think he

9    loses the benefit of the arguments made in 52, right.

10        You can't come back to me and say, oh, but look what

11   he testified to as a 30(b)(6) witness, because then we're back

12   to where we started, right.  It is kind of a fruit of the

13   poisonous tree thing if you have to go back and do it that way.

14        That would be my suggestion.  You don't have to do

15   that.  I will have you each go back to your respective clients

16   and figure that out.  You've got a week to tell me whether or

17   not you are going to resubmit, you are going to withdraw what

18   you have on Forlit and resubmit something.

19        You certainly don't have to do it.  I will give you a

20   week to give me an answer on that, because otherwise I am going

21   to proceed to write something on that.  Then I will give you a

22   week to tell me what you want to do with 52.

23        Your withdrawal of 52, sir -- I want to be clear so

24   everybody is clear -- it would be without prejudice to you

25   making those arguments again both with respect to Mr. Forlit's

```
1    supplement or making them again with any further discovery

2    based on ECF-1, right.  So if they come back for more on

3    ECF-1 --

4          MR. SALIVAR:  I still have the ability.

5          THE COURT:  -- you will have the right to raise the

6    arguments.  I think I have to accept some of these arguments as

7    the way the record sits now, I will have to accept them if I

8    consider -- if they are going to just sit and stand on the

9    Forlit supplement that they have right now, I have to consider

10   those arguments for that, right.  I don't see how I cannot.

11   Those are arguments that are made in the record.

12          It is a little sloppy to do it that way because I am

13   kind of pulling from all over the document, which is why I

14   think it is easier if you kind of start from scratch on that

15   one.  If they don't, I will consider them when I look at the

16   Forlit petition, because otherwise it's -- I am going to make

17   you resubmit a different supplement.  That doesn't make any

18   sense.  The arguments are in the record.

19          MS. JOHANNES:  Your Honor, just to clarify.  Is it one

20   week to advise the court whether or not we will resubmit and

21   amend docket entries 23 and 24 or one week to actually file

22   those amended?

23          THE COURT:  No, just to tell me.  It's Christmas.  I

24   mean, I'm not that crazy.

25          MS. JOHANNES:  OK.
```

1    THE COURT:  No, no.  I am not going to make you do it

2    on the spot.  I assume if I gave you ten minutes, you would

3    probably figure out what you probably should do on that.

4    People should talk to their clients even when they are

5    going to tell their clients what they need to do.  Talk to your

6    clients and have some time to go back to the office.  I know

7    you guys have a big team of people on this case and you will

8    have time to consider it.

9    You have clients.  You should consider it.  I don't

10   want to kind of strong-arm you into a decision right now and,

11   God knows, we are not in a hurry.  It's taken me this long to

12   get here.  Give yourselves a week, and that way what I will do

13   is I will wait on this paperless order because that way if you,

14   for example, withdraw 52 under the caveats that I have

15   stated --

16   MR. SALIVAR:  Then you can remove it.

17   THE COURT:  -- then I can rule on 50 and I can do

18   everything at once.  I would almost be done with everything.

19   We will wait to see what they do with Mr. Forlit.

20   MR. SALIVAR:  Understood, your Honor.

21   MS. JOHANNES:  In our filing next week or our notice

22   next week as to whether or not we will resubmit or reamend, is

23   it OK for us to propose a briefing schedule?

24   THE COURT:  Yes.  Please do.  Please do.

25   Like I said, it really shouldn't take that long,

```
1   right.  Everybody kind of knows what is going on here at this
2   point.  Don't make it too long of a briefing schedule because
3   then I will have to remember all of this again.
4           MS. JOHANNES:  Yes.
5           THE COURT:  So the sooner you do it, the clearer I
6   will still remember.  Although things have a way of coming back
7   to me.  When I open things, I am like, I remember this
8   perfectly now.
9           MR. SALIVAR:  You are seeing the same names.
10          THE COURT:  I had to rehear a hearing this week
11  because I really -- I agreed to do an in camera inspection.  I
12  looked at all the documents and I am like, why in God's name
13  did I agree to look at all these documents.  I cannot for the
14  life of me remember why I did it.
15          MR. SALIVAR:  It happens.
16          THE COURT:  Then I heard the hearing again and it
17  still didn't remind me as to why I did it.
18          At any rate, I think we have gotten a lot done today.
19  I am hoping that we can be completely done soon.  I will set
20  the other Azima one soon too so we can just kind of wrap all of
21  this up.
22          Ms. Johannes, anything else on behalf of the
23  petitioners?
24          MS. JOHANNES:  Nothing on behalf of the petitioner,
25  your Honor.  Thank you.
```

```
 1              THE COURT:  The respondent.

 2              MR. SALIVAR:  Nothing on behalf of the respondents,

 3   your Honor.

 4              THE COURT:  You all have a fabulous new year and a

 5   nice holiday.

 6              MR. SALIVAR:  Thank you.  You as well, your Honor.

 7              MS. JOHANNES:  Merry Christmas, Judge.

 8              (Adjourned)

 9

10                      C E R T I F I C A T E

11

12      I hereby certify that the foregoing is an accurate

13   transcription to the best of my ability of the digital audio

14   recording in the above-entitled matter.

15

16   December 26, 2022       s/ Joanne Mancari
                             Joanne Mancari, RPR, CRR, CSR
17                           Court Reporter
                             jemancari@gmail.com
18

19

20

21

22

23

24

25
```

MR. BEHRE: [35]  3/10 45/8 45/11 47/5
47/18 47/21 66/8 67/7 68/1 70/7 70/24
71/11 71/17 76/22 78/22 79/16 79/22
80/17 83/13 88/18 89/7 89/11 89/18 91/1
91/17 92/11 92/16 92/19 92/24 93/6
95/13 96/7 97/4 98/23 98/25
MR. SALIVAR: [122]
MS. JOHANNES: [42]  3/7 4/17 4/22
5/22 6/3 6/6 6/9 6/23 10/12 10/24 11/5
11/13 11/21 24/2 25/8 32/6 32/20 32/24
33/3 34/7 34/25 36/14 37/1 38/2 38/9
39/7 40/4 40/11 41/16 43/15 45/2 60/3
61/5 73/6 73/20 74/2 101/22 106/19
106/25 107/21 108/4 108/24 109/7
THE COURT: [187]
THE DEPUTY CLERK: [2]  3/3 14/6

$

$10 [4]  27/10 79/9 79/16 84/12
$5 [1]  27/18
$50,000 [2]  93/9 93/9

0

0050 [1]  1/15
00501 [1]  30/22
08728 [1]  17/17

1

1-22 [1]  17/17
10 [2]  27/16 97/16
109 [1]  1/8
11:30 [1]  64/23
12 [2]  49/4 65/13
121 [1]  30/22
133 [1]  46/11
13th [1]  17/14
14 [1]  72/3
1496 [1]  1/19
15 [1]  80/6
15-minute [1]  64/23
16 [1]  65/14
1782 [22]  15/14 18/21 20/22 21/23 35/25
36/25 37/20 39/25 40/24 41/12 53/19
53/24 54/8 54/9 54/1 55/20 57/24 58/21
61/10 72/23 104/19 104/23
1st [1]  1/14

2

2000 [1]  93/17
20006 [1]  1/19
2015 [2]  97/17 97/21
2016 [14]  15/20 17/23 17/25 18/1 18/21
23/11 23/13 31/21 37/10 48/5 59/23
59/25 85/8 97/25
2017 [2]  27/10 37/8
2018 [1]  22/20
202-626-1496 [1]  1/19
2020 [5]  27/10 35/20 37/8 45/14 48/1
2021 [1]  30/7
2022 [11]  1/5 16/25 33/13 33/20 33/21
42/12 52/20 57/2 72/3 99/12 109/16
2023 [1]  65/13
2024 [5]  26/13 42/8 42/9 42/13 59/21
20707 [1]  3/3
20th [1]  99/12
21 [2]  1/5 99/12
22 [2]  3/3 17/17
22-CV-20707-JEM [1]  1/2
23 [5]  5/22 6/3 6/3 6/11 106/21

24 [4]  5/23 6/3 6/6 106/21
26 [6]  18/3 33/24 36/7 59/18 65/11
65/16 97/25 109/16
28 [6]  18/20 20/22 55/20 57/24 58/21
72/23

3

30 [24]  12/14 12/23 13/17 13/20 13/22
14/11 18/18 22/5 26/2 26/5 58/11 67/9
69/21 72/24 78/4 81/8 94/19 101/16
101/21 102/4 102/16 103/3 103/19
105/11
305-530-0050 [1]  1/15
31 [1]  8/11
32 [13]  5/2 5/2 5/4 6/8 8/22 8/22 8/23
10/1 10/14 10/17 10/17 11/24 12/17
33136 [1]  1/15
33484 [1]  2/4
34 [14]  5/6 5/9 9/1 9/4 9/6 10/1 11/25
12/1 12/17 12/18 13/21 13/22 13/23 14/9
39 [2]  8/11 60/8

4

40 [1]  65/9
41 [2]  36/14 36/16
45 [1]  8/11
46 [1]  8/11
4844754 [1]  30/8

5

50 [52]  5/11 6/9 6/9 8/10 8/24 9/15 9/16
10/1 11/12 11/16 11/20 11/23 13/11
13/12 13/24 14/12 14/20 14/21 24/12
25/4 25/5 25/6 27/17 39/22 39/22 44/8
44/13 44/22 44/23 45/1 62/24 63/8 63/8
63/13 63/15 63/22 64/1 64/22 64/24
65/6 65/23 78/22 83/5 100/24 100/25
101/6 101/13 101/13 101/19 102/21
103/17 107/17
51 [3]  8/10 17/12 103/9
52 [62]  5/13 7/20 8/9 15/6 15/7 15/16
15/16 16/8 16/8 16/13 16/15 24/5 24/5
24/8 24/9 24/10 24/11 24/14 24/23 25/6
25/6 25/9 28/25 29/1 29/5 29/19 30/1
30/18 39/21 42/19 42/20 44/14 44/15
44/25 46/20 50/3 56/23 60/7 61/2 61/5
63/11 63/11 63/22 64/11 83/5 101/1
101/5 101/7 101/13 101/19 102/17 103/2
103/3 103/8 103/17 104/4 104/11 105/1
105/9 105/22 105/23 107/14
54 [2]  24/23 24/24
56 [13]  5/16 8/5 8/6 9/7 9/10 14/13
14/14 16/17 16/20 17/6 20/12 24/6 56/22
561-347-6767 [1]  2/4
57 [1]  8/5
58 [1]  8/5

6

6576 [1]  2/3
6767 [1]  2/4

7

700 [2]  1/14 87/9
7th [1]  17/13

9

90 [1]  43/20
900 [1]  1/18

A

abeyance [1]  63/22
ability [3]  55/5 106/4 109/13
able [10]  21/13 40/2 40/7 53/14 58/22
72/17 73/2 80/6 93/23 99/24
about [78]  4/18 12/1 12/8 12/10 12/18
13/21 18/1 21/6 22/22 22/24 24/10 24/20
27/17 27/24 28/22 30/4 30/24 30/24
31/24 34/22 35/17 37/11 37/13 39/3
39/22 39/22 45/5 45/15 47/17 51/17
51/19 52/12 53/4 54/3 57/2 57/6 57/21
57/22 58/18 59/5 59/15 60/18 61/6 61/10
64/1 65/9 65/11 69/21 71/7 72/20 78/6
78/14 80/1 81/17 82/19 83/8 83/20 84/1
84/2 84/4 84/5 84/7 87/3 87/9 87/13
88/6 88/25 90/14 93/1 97/16 97/19 99/14
101/24 103/4 103/5 103/10 103/11 104/6
above [2]  58/25 109/14
above-entitled [1]  109/14
absent [2]  31/1 53/6
absolutely [9]  18/21 19/4 32/15 44/14
50/21 77/18 78/6 85/3 89/24
absolve [1]  80/25
accept [5]  13/23 69/1 98/18 106/6 106/7
accepted [1]  14/11
accepting [1]  24/11
access [9]  57/17 70/4 72/1 72/10 73/17
73/23 73/24 73/24 95/10 100/10
account [13]  72/18 73/1 78/15 84/25
85/7 85/8 86/10 87/25 88/15 88/21 91/9
92/18 104/25
accountant [2]  75/21 79/22
accounting [19]  75/18 75/24 76/4 76/24
76/25 77/3 77/7 77/11 77/20 78/9 79/6
79/17 79/20 79/24 80/14 82/4 82/17
82/21 82/25
accounts [14]  27/11 71/13 72/13 72/14
72/19 78/18 85/12 86/16 86/22 86/22
87/14 87/21 88/13 90/7
accurate [2]  35/25 109/12
across [1]  54/17
action [22]  7/15 16/24 18/4 19/22 20/14
20/22 21/10 21/12 23/16 30/20 31/16
39/25 44/18 44/19 44/21 48/1 49/8 60/19
60/19 65/10 72/23 97/24
actions [1]  21/9
activities [3]  19/3 76/8 89/1
activity [4]  48/7 48/10 49/1 86/8
actual [8]  6/4 17/18 22/18 35/11 50/3
52/9 75/8 77/7
actually [29]  7/15 17/7 17/8 17/11 43/20
48/24 49/21 50/8 52/3 52/6 52/14 52/15
52/17 53/9 54/17 54/20 56/4 58/17 60/3
60/24 61/14 70/1 72/13 73/14 75/2 85/16
85/25 89/24 106/21
add [4]  6/13 27/1 27/13 29/2
addition [4]  15/19 16/10 31/16 71/22
additional [13]  13/23 31/14 48/7 55/5
58/25 58/25 69/22 74/4 101/15 101/23
102/6 102/16 103/16
additionally [1]  8/15
address [10]  6/11 16/19 66/8 76/25
83/17 88/20 89/9 90/18 104/8 104/8
addressed [3]  8/17 68/3 104/13
addresses [4]  83/15 85/10 86/4 86/19
addressing [2]  7/13 50/2
Adjourned [1]  109/8
admissible [1]  70/25
admit [3]  35/11 38/25 49/20
admits [1]  79/10

**A**

admitted [4]  17/10 18/4 27/5 27/20
Admittedly [1]  41/21
admitting [1]  48/22
advanced [1]  9/7
advancing [1]  55/7
advise [1]  106/20
advising [1]  65/8
affect [1]  45/1
affidavit [19]  24/16 25/18 26/11 32/24 33/3 33/14 33/20 33/25 35/1 36/23 38/13 38/15 43/4 52/1 52/7 52/19 52/25 57/10 62/2
affidavits [6]  27/2 38/12 38/19 46/15 52/11 53/16
affiliated [1]  47/23
affirmative [1]  43/11
affirmatively [1]  56/16
after [20]  9/19 15/20 17/12 18/16 18/17 35/20 37/11 37/14 42/11 48/3 52/20 58/22 59/23 63/8 65/18 72/2 73/4 96/8 96/9 100/16
afterwards [5]  36/1 37/11 72/17 95/4 96/5
again [32]  6/2 10/10 12/6 15/24 21/1 30/10 31/5 37/19 43/24 44/7 44/21 48/1 53/16 58/19 69/23 70/11 71/4 72/8 82/22 83/9 91/6 91/21 94/3 96/11 100/21 102/18 104/11 104/15 105/25 106/1 108/3 108/16
against [6]  31/25 39/24 48/2 54/22 55/2 63/11
agent [7]  83/19 85/17 85/18 85/21 90/5 90/6 91/23
agents [2]  47/7 90/2
ago [4]  5/3 5/3 10/10 65/9
agree [16]  6/16 9/23 13/19 16/11 16/12 19/17 58/4 79/11 79/13 80/23 81/2 82/18 83/4 101/7 102/24 108/13
agreed [7]  28/13 28/14 58/12 72/5 72/6 86/25 108/11
agreeing [1]  99/5
agreement [2]  12/24 102/25
ahead [4]  10/7 22/19 24/1 52/12
airfare [1]  92/3
airline [1]  91/23
al [3]  1/7 3/4 57/5
Albeit [1]  13/6
alerts [2]  83/25 84/1
all [94]  3/16 3/17 4/23 5/18 7/16 8/24 10/7 12/2 12/3 12/20 14/12 14/13 14/22 16/21 18/17 19/7 22/10 22/20 25/10 27/13 27/25 28/17 29/12 29/17 30/9 32/23 33/5 34/20 36/1 36/6 36/7 37/25 38/12 41/4 43/24 45/20 47/25 50/10 53/1 53/18 54/2 54/19 55/4 55/5 55/12 55/22 55/24 57/11 60/2 61/13 63/10 65/23 69/5 69/9 70/5 70/9 70/21 71/7 72/21 74/23 75/5 75/13 75/19 75/24 76/7 76/12 76/13 77/5 77/11 78/19 79/18 84/15 84/17 85/14 86/23 87/1 90/8 90/16 91/4 91/13 94/8 94/22 98/17 99/12 102/9 103/3 103/10 104/17 106/13 108/3 108/12 108/13 108/20 109/4
allegation [2]  39/18 48/6
allegations [2]  38/6 46/19
alleged [7]  18/11 39/8 39/10 48/9 78/2 84/7 103/22
allegedly [2]  17/15 77/25
alleges [1]  46/11

alleging [1]  39/4
allow [5]  41/18 49/16 45/6 48/2 53/23
allowed [1]  17/3
almost [1]  69/12 107/18
alone [2]  17/9 50/17
already [27]  6/19 7/3 8/9 8/16 11/15 19/16 28/21 31/17 31/25 37/2 41/14 43/25 48/11 50/3 58/5 58/20 59/25 64/2 66/3 69/19 71/23 72/5 72/7 72/25 80/4 95/7 101/25
also [23]  5/7 10/21 18/23 23/16 27/1 27/20 31/21 36/14 38/14 39/14 44/17 49/1 49/15 50/3 50/20 64/17 74/22 81/6 90/17 94/22 100/22 104/13 105/1
alter [7]  67/8 95/19 95/20 96/22 98/19 98/19 99/3
alternative [1]  19/15
Although [2]  43/4 108/6
always [8]  9/8 20/21 26/14 39/12 43/1 48/14 83/9 94/5
am [50]  3/22 4/9 4/10 4/14 6/11 9/5 9/8 9/10 9/12 9/18 10/15 14/13 16/11 22/12 24/4 24/6 25/6 28/16 29/3 34/17 37/18 45/6 54/10 62/21 62/21 62/23 62/23 63/13 63/14 64/2 64/10 64/13 65/23 65/23 68/16 82/11 86/16 90/8 91/11 94/2 101/4 101/5 103/18 105/20 106/12 106/16 107/1 108/7 108/12 108/19
amend [1]  89/6 104/15 106/21
amended [4]  42/13 63/3 87/19 106/22
America [5]  72/1 72/18 73/1 78/9 87/21
American [2]  28/4 75/21
amit [5]  22/25 83/15 85/9 89/14 104/9
amit001 [2]  83/16 85/10
among [1]  23/2
analysis [10]  1/6 3/4 3/15 51/18 53/9 66/22 67/2 85/6 85/11 87/22
another [25]  4/7 30/21 39/20 40/21 41/11 43/22 44/5 44/18 44/20 48/18 52/1 54/8 55/1 57/23 58/3 60/10 60/10 73/15 81/24 84/6 84/9 95/6 96/1 97/22 99/20
answer [8]  11/9 24/25 27/12 58/10 94/3 101/10 101/11 105/20
anticipate [1]  45/24
any [79]  7/20 9/25 10/8 11/6 11/8 11/17 12/2 12/22 13/18 13/22 15/3 15/11 23/3 23/3 23/6 23/20 24/21 27/23 28/19 29/16 31/6 32/18 36/12 39/25 40/3 42/17 44/8 44/9 48/16 49/5 49/10 49/16 51/2 56/9 57/15 57/16 57/16 57/18 57/18 58/23 58/24 58/25 61/25 61/25 62/1 62/1 62/4 62/5 62/10 62/11 66/4 67/25 71/24 75/8 76/7 77/19 78/14 78/15 79/2 81/16 85/12 85/14 87/6 87/13 87/15 87/25 88/16 90/1 91/14 92/9 94/12 95/5 98/3 100/23 101/14 103/15 106/1 106/17 108/18
anybody [2]  92/5 97/2
anybody's [1]  4/10
anymore [1]  98/22
anyone [2]  69/18 90/1
anything [18]  4/2 5/20 7/7 7/22 8/2 8/14 8/15 10/10 14/25 15/17 23/10 28/22 57/15 78/1 87/2 97/2 99/2 108/22
anyway [2]  26/19 104/5
anywhere [2]  57/15 99/22
apart [1]  15/18
apologies [1]  66/25
apologize [3]  3/17 34/8 36/17
App [3]  90/24 91/5 91/9
apparently [1]  84/22

appear [3]  9/3 9/5 10/20
appearances [3]  1/14 2/1 3/5
appeared [2]  20/21 74/24
appears [2]  5/7 81/16
applicant [1]  30/13
application [8]  5/14 15/14 26/6 31/3 57/7 63/4 104/22 105/3
appreciate [1]  34/5
appropriate [3]  7/18 13/3 13/25
approximately [1]  27/15
April [2]  42/8 93/17
are [180]
aren't [6]  86/7 86/12 87/6 87/7 96/17 96/18
argue [1]  77/4
arguing [9]  15/5 26/18 27/1 29/5 41/4 46/4 46/6 64/1 65/8
argument [54]  4/13 7/4 9/9 13/23 14/20 15/9 15/16 15/16 15/21 16/1 16/7 16/8 16/18 22/14 24/4 24/4 24/14 24/20 29/4 31/15 31/23 31/24 32/5 34/2 37/14 37/18 39/6 41/7 42/22 43/3 43/13 49/12 49/24 51/23 54/5 54/7 56/24 62/18 63/20 64/1 64/20 70/5 83/6 87/7 90/22 91/2 93/18 96/22 98/18 98/23 99/18 101/8 101/21 103/2
arguments [20]  14/10 15/7 23/21 25/12 25/14 25/17 32/5 44/24 56/21 56/24 102/17 103/3 105/1 105/9 105/25 106/6 106/6 106/10 106/11 106/18
Ari [1]  75/21
arm [1]  107/10
arose [1]  25/1
around [3]  33/16 81/19 103/25
arrival [1]  61/15
articulated [1]  60/12
Arusy [1]  4/18
as [122]
aside [2]  7/10 76/25
ask [13]  14/7 14/8 39/20 58/3 68/11 78/14 80/3 81/22 82/2 85/13 86/2 99/20 101/5
asked [11]  5/12 13/14 18/12 27/8 50/6 51/10 60/19 73/13 73/19 79/1 103/19
asking [6]  75/24 76/7 77/20 78/9 88/6 99/16
asks [2]  71/21 77/11
asserted [1]  76/10
asserting [1]  23/10
assist [1]  34/4
assistance [1]  31/18
Associate [1]  88/5
associated [1]  97/1
Associates [4]  78/24 80/18 81/7 81/16
assume [12]  29/1 38/6 40/6 45/19 61/12 74/8 74/8 74/15 75/22 91/9 99/19 107/2
assuming [2]  83/5 87/12
assumption [1]  74/16
at [109]  4/14 7/20 10/2 10/7 10/17 10/17 10/17 12/7 15/19 17/9 18/13 18/15 18/18 21/21 23/8 24/11 24/21 25/14 26/2 26/9 28/20 28/24 29/9 30/17 31/2 31/8 31/16 31/22 33/1 33/24 33/25 34/1 35/22 35/25 36/2 36/7 36/7 36/8 37/2 37/3 39/21 41/23 42/15 44/3 44/8 44/17 45/17 46/11 46/14 47/1 47/2 47/9 48/20 49/4 50/9 51/12 51/22 53/3 53/8 53/16 54/16 55/5 55/25 57/12 57/18 57/25 58/15 59/24 62/25 63/17 64/3 65/22 65/23 65/23 68/23 69/25 70/3 70/16 72/15 73/13

## A

at... [29]  75/13 78/2 78/21 79/10 79/16
79/18 81/17 82/12 83/10 83/17 85/14
85/19 88/21 89/11 90/13 91/12 94/17
97/24 98/2 100/16 102/11 103/23 104/10
106/15 107/18 108/1 108/12 108/13
108/18
attached [3]  26/4 38/13 99/11
attack [1]  22/9
attempt [1]  77/17
attempted [1]  12/25
attempts [1]  22/21
attention [5]  20/10 30/16 55/15 55/17
55/25
attenuate [1]  20/3
attenuated [1]  81/17
attorney [1]  57/16
attorneys' [2]  16/14 19/21
attributable [1]  27/16
audio [1]  1/10 109/13
August [2]  97/17 97/21
authority [3]  14/24 15/2 19/19
authorizing [1]  29/25
Avenue [1]  1/14
Aviv [2]  20/20 28/13
avoid [2]  68/16 103/14
aware [4]  84/19 91/11 97/4 97/6
away [1]  105/7
Awni [1]  57/5
AZIMA [26]  1/3 3/4 3/8 4/4 17/14 17/24
18/14 48/3 48/10 50/14 52/2 52/21 78/7
78/10 78/24 80/18 81/11 81/18 81/21
81/25 82/15 88/5 88/5 97/18 98/6 108/20
Azima's [6]  22/21 62/5 78/24 80/18 81/7
81/15

## B

back [30]  4/7 24/16 37/20 46/24 51/15
53/17 61/10 62/24 64/14 64/24 74/17
77/3 77/20 79/7 83/5 88/9 93/24 94/5
99/25 102/25 103/24 104/11 105/5
105/10 105/11 105/13 105/15 106/2
107/6 108/6
backup [1]  79/17
backwards [1]  101/24
bad [2]  19/15 20/9
ball [1]  82/1
bank [48]  37/3 54/25 56/3 56/4 58/19
58/22 61/25 62/11 62/13 69/19 69/23
70/6 70/14 70/20 70/22 71/4 71/7 71/9
71/12 71/12 71/13 71/18 71/19 71/22
71/24 71/25 72/1 72/4 72/11 72/12 72/14
72/16 72/18 73/1 73/21 73/25 74/4
74/12 74/19 78/4 78/18 80/22 86/21
86/22 87/21 88/13 103/21
banking [1]  71/14
bankruptcy [1]  84/16
bar [3]  15/3 19/17 56/14
Baret [1]  90/4
based [21]  7/14 12/19 16/2 18/18 19/13
23/13 31/18 35/17 38/5 48/11 52/4 64/20
65/20 71/11 75/6 76/9 77/25 80/3 83/11
88/13 106/2
bases [1]  43/6
basically [4]  6/23 27/23 57/14 86/3
basis [6]  14/22 23/20 24/17 32/14 37/20
39/2
be [157]
Beach [15]  2/4 27/14 27/16 28/2 28/4
64/6 79/11 84/25 97/5 97/6 97/8 97/8

97/11 97/17 97/23
because [119]
BECERRA [1]  1/11
become [3]  18/16 46/16 77/13
been [72]  4/21 8/16 11/15 11/16 12/14
12/20 12/21 13/8 19/5 19/15 19/20 19/21
19/22 20/17 26/14 28/12 28/18 31/10
32/1 32/3 32/7 39/11 39/12 39/14 39/15
39/18 41/5 41/20 43/1 45/11 45/19 45/21
47/13 48/2 48/5 48/6 48/8 48/14 48/16
48/16 48/19 49/13 50/12 51/10 52/20
53/7 54/24 55/12 55/14 55/24 55/6
56/18 56/22 57/25 60/12 60/22 71/5
72/14 73/8 76/23 84/11 84/14 85/25
89/15 90/3 93/9 93/25 98/12 102/1 102/2
103/14
before [21]  1/11 26/1 26/3 26/20 27/7
29/24 34/14 38/24 40/18 45/13 45/23
45/25 57/1 60/11 63/25 73/7 74/23 79/22
91/19 100/25 102/23
beforehand [4]  55/10 57/13 60/7 61/7
beg [1]  25/13
beginning [3]  19/3 55/11 55/25
begins [1]  65/24
behalf [3]  3/8 3/11 3/14 9/25 50/14 67/9
74/24 82/11 86/6 97/2 108/22 108/24
109/2
behind [1]  54/20
behooves [2]  104/25 105/1
BEHRE [5]  1/17 3/10 38/9 45/4 73/7
Behre's [2]  59/5 85/20
being [27]  12/2 27/23 29/23 30/12 31/19
36/22 46/13 46/13 48/9 53/7 55/6 55/21
56/8 56/19 68/10 70/20 77/24 78/1 78/13
78/13 79/25 85/17 88/25 90/1 92/8 93/4
101/25
believe [26]  7/7 8/4 8/14 18/5 18/23
19/13 19/24 20/8 23/6 26/19 33/11 37/2
48/24 48/25 59/1 60/9 61/6 70/1 72/21
78/8 80/18 85/19 85/25 87/24 88/1 89/4
believes [1]  100/9
BellTroX [1]  31/20
bench [4]  3/25 33/19 53/15 64/13
benefit [6]  43/7 51/22 53/22 63/16 63/17
105/9
best [4]  8/3 14/23 82/8 109/13
better [1]  104/22
between [7]  23/2 30/5 37/8 62/1 62/3
80/24 95/24
beyond [4]  46/11 58/25 70/14 101/19
big [1]  107/7
biggest [1]  77/1
bit [3]  76/14 93/24 93/25
blank [1]  60/20
blanket [1]  18/3
BOA [1]  73/24
bogged [1]  45/22
both [15]  11/15 21/14 42/23 44/17 46/7
47/21 50/14 58/10 63/18 76/8 76/11 90/2
90/5 94/21 105/25
bottom [2]  31/4 97/24
bound [1]  54/10
box [1]  73/11
branch [1]  51/11
break [6]  62/22 62/23 62/24 64/23
100/15 100/16
bridge [1]  68/24
briefed [2]  4/21 7/3
briefing [5]  43/24 44/5 63/5 107/23 108/2
briefly [1]  73/6

bring [8]  4/25 20/9 25/19 30/14 30/15
34/7 54/18 55/23
bringing [5]  35/24 38/3 38/12 55/15
55/16
broad [6]  44/15 56/5 56/7 76/7 76/11
78/13
broader [6]  51/12 54/4 54/5 54/6 54/16
99/16
broadly [2]  31/6 62/18
brought [7]  29/24 36/2 36/3 48/3 48/8
55/25 56/11
Buchanan [1]  22/25
bucket [1]  74/4
buckets [1]  76/23
building [1]  95/23
bunch [1]  50/5
business [7]  17/8 75/22 76/12 78/14
78/17 86/14 87/10
but [132]

## C

calendar [1]  4/14
calendaring [1]  4/6
call [2]  74/18 95/14
called [2]  74/12 84/2
came [8]  25/21 27/14 35/19 35/22 35/23
36/1 78/3 87/14
camera [1]  108/11
can [65]  3/23 4/1 4/3 4/24 4/25 6/23 8/20
8/22 8/24 9/17 12/6 13/21 14/15 14/23
19/14 20/6 21/11 22/1 22/9 22/10 22/19
23/23 25/5 26/24 27/6 28/22 33/1 37/14
38/9 40/1 41/3 44/1 45/23 46/13 46/23
50/13 53/24 57/14 63/8 63/17 63/21 65/2
66/8 79/1 79/6 80/5 80/15 82/2 83/5
85/15 87/18 88/14 93/11 93/16 93/18
94/5 98/21 98/21 100/13 100/15 107/16
107/17 107/17 108/19 108/20
can't [27]  3/25 6/24 14/16 19/8 21/8 25/4
25/5 26/19 42/6 44/25 47/11 53/20 53/25
56/16 72/11 78/20 83/4 93/8 95/3 95/5
96/19 97/1 104/16 104/17 104/20 105/4
105/10
candid [1]  49/14
candor [1]  30/14
cannot [2]  106/10 108/13
capacity [2]  5/24 67/16
Cara [1]  14/5
cards [1]  91/23
care [16]  7/8 7/16 11/24 12/21 58/14
66/5 66/16 66/21 67/1 67/6 67/20 67/25
69/24 73/17 100/24 100/25
careful [1]  54/10 60/17
carefully [2]  67/4 67/4
CARLTON [2]  1/14 45/3
carltonfields.com [1]  1/16
Carnac [1]  64/6
Carolina [9]  30/2 48/18 48/23 51/18 54/2
55/16 60/19 61/6 104/14
carries [1]  8/8
case [96]  1/2 3/3 3/22 4/2 4/4 4/7 4/8
4/19 4/19 4/20 7/13 7/18 9/24 17/10
17/17 17/20 17/22 17/23 17/25 18/5 18/6
18/7 18/10 18/15 18/20 18/21 19/2 20/13
20/17 20/24 20/24 20/25 21/6 21/19 23/9
24/13 28/18 30/7 30/20 32/9 39/13 39/14
40/8 40/15 40/16 40/21 40/22 40/24 41/2
41/3 41/19 41/19 42/10 42/16 42/17 45/6
45/13 45/18 46/5 46/6 46/8 46/8 46/9
46/14 46/18 46/23 49/3 49/7 51/17 51/18

C

case... [26]  52/2 55/3 55/16 59/3 59/14
59/18 59/21 59/22 59/23 59/24 59/24
61/3 61/8 61/13 65/14 65/17 65/19 65/21
68/2 74/16 74/20 76/16 96/25 97/1
103/23 107/7
cases [3]  21/6 56/11 60/13
categories [4]  63/16 65/24 100/17
100/20
category [5]  64/4 65/25 72/4 84/6 94/23
cause [1]  13/3
caused [2]  47/15 81/18
caution [1]  72/10
caveat [1]  76/19
caveats [1]  107/14
certain [1]  103/18
certainly [3]  23/23 37/15 48/19 54/15
87/18 88/14 98/14 102/18 105/19
certify [1]  109/12
challenge [1]  13/22
chance [1]  22/16
changed [2]  35/8 35/14
charged [1]  57/17
CHARTERED [1]  1/18
CHEVALIER [2]  1/18 18/5
choice [1]  27/24
Christmas [3]  4/10 106/23 109/7
CHRISTOPHER [3]  2/2 2/3 3/13
Circuit [1]  15/4
circular [1]  105/3
citation [3]  30/7 30/20 61/3
cited [1]  26/10
Citibank [5]  72/1 72/18 73/2 73/24 87/21
citing [2]  34/7 68/5
civil [11]  17/16 18/7 19/20 19/22 22/4
23/9 49/3 49/8 74/16 74/20 98/15
civilized [1]  102/1
claim [6]  28/11 39/12 54/22 66/12 66/14
81/17
claimed [1]  48/4
claims [4]  17/20 23/13 49/21 55/7
clarification [3]  25/20 45/12 68/11
clarify [8]  17/18 34/1 36/8 67/19 73/21
74/22 77/17 106/19
clarity [1]  97/13
clean [2]  26/15 104/22
cleanest [1]  104/16
clear [8]  4/17 10/15 26/14 38/17 45/9
99/1 105/23 105/24
clearer [1]  108/5
clearly [6]  19/13 20/15 55/9 73/23 88/20
91/21
clerk [1]  14/7
clerks [1]  22/1
client [19]  12/15 50/25 67/23 67/24
71/25 72/15 74/16 75/8 75/15 78/6 79/12
81/12 84/1 85/23 88/6 88/14 97/19 98/7
103/11
client's [2]  54/25 56/3
clients [27]  20/17 36/10 48/5 54/15 55/5
55/13 58/5 58/8 58/15 59/3 59/17 67/21
68/2 68/3 68/15 73/2 73/9 75/12 85/4
85/6 85/19 87/18 105/15 107/4 107/5
107/6 107/9
close [2]  4/9 7/18
closed [1]  72/14
closer [3]  16/22 66/23 71/15
coconspirator [1]  39/17
cocounsel [1]  90/3
codefendant [1]  55/3

codefendants [1]  65/10
coffee [1]  8/22
combining [1]  27/9
come [11]  22/2 26/15 41/22 55/5 64/24
75/1 78/15 94/5 103/24 105/10 106/2
comes [5]  24/13 25/20 52/14 74/17
104/11
coming [8]  19/5 24/16 26/13 65/15 77/5
95/21 102/25 108/6
commence [1]  42/13
commenced [1]  40/11
comment [4]  7/12 51/8 64/5 102/9
commented [3]  30/5 42/12 67/21
comments [2]  7/15 52/3
committed [1]  16/3
communicate [2]  83/18 86/7
communicated [2]  85/16 85/19
communications [5]  22/20 22/24 23/1
84/24 89/7
companies [15]  15/19 15/22 27/21 27/21
27/22 28/5 45/16 47/22 85/14 86/3 86/5
86/18 86/20 87/1 87/2
company [18]  28/1 47/18 74/18 75/22
78/7 81/23 86/6 86/7 86/12 86/13 86/14
87/4 87/8 87/10 87/11 92/7 92/7 92/8
company's [2]  75/22 86/8
compartmentalize [1]  44/25
compel [11]  5/11 9/16 12/12 12/22 13/4
62/25 69/6 75/14 101/15 102/20 102/24
compelling [1]  5/5
complaint [7]  17/16 17/24 18/1 20/12
21/20
completely [9]  4/20 13/18 32/12 53/5
59/2 61/11 61/12 61/15 108/19
comply [1]  73/18
complying [1]  73/12
Comprehensive [1]  97/24
conceal [1]  103/22
concern [6]  42/19 42/20 77/1 79/6
101/12 103/13
concerned [4]  37/13 40/15 54/3 86/16
concerning [1]  20/17
conduct [10]  15/13 15/24 16/9 17/24
26/1 46/15 46/18 49/9 78/17 89/1
conducted [5]  18/9 76/12 81/10 81/11
99/12
conducting [2]  17/8 50/9
conduit [2]  27/23 40/24
confer [3]  68/18 82/19 83/4
conference [6]  59/4 59/6 59/10 65/12
65/14 65/16
confirmed [4]  28/6 28/14 61/17 94/9
conflict [1]  12/25
confusing [1]  25/11
Congress [2]  21/23 30/10
conjure [1]  93/1
connection [1]  18/10 96/19
consider [9]  8/3 48/20 64/21 101/5 106/8
106/9 106/15 107/8 107/9
consideration [4]  17/2 30/16 52/24 64/12
considered [2]  14/12 15/8
considering [1]  20/11
conspiracy [5]  22/22 23/11 39/16 93/1
103/22
conspirators [1]  23/2
constant [1]  73/8
CONT'D [1]  2/1
contacted [1]  85/18
contained [1]  16/2
containing [1]  84/8

contemporaneously [1]  85/1
content [2]  52/7 59/7
continuation [1]  13/5
continue [6]  13/6 28/23 43/7 44/16 79/15
104/18
continues [1]  7/14 37/9 73/7
contradict [1]  52/6
contradictory [1]  53/6
control [28]  58/15 66/5 66/16 66/21 67/2
67/21 67/25 69/24 73/17 74/18 74/19
74/19 83/2 83/10 87/8 89/14 89/17 89/17
89/24 90/6 91/21 91/21 93/13 95/19
96/20 98/21 99/6 100/5
conveniens [1]  54/22
conversation [1]  74/15
convoluted [1]  25/11
cooperate [1]  59/13
cooperator [7]  32/9 32/10 32/13 32/13
32/14 34/16 34/18
copies [1]  72/17
core [2]  16/1 53/11
corporate [28]  11/8 11/10 12/25 18/12
20/19 27/5 48/25 50/4 50/14 56/3 58/9
58/15 58/22 67/24 68/3 72/13 72/19 78/5
88/1 88/20 88/22 94/18 94/21 95/11
97/20 98/3 99/13 102/6
correct [30]  6/5 6/20 7/6 8/13 10/23
10/24 11/1 11/4 11/5 11/13 11/21 12/6
13/15 15/14 27/12 27/19 31/23 33/25
34/8 36/8 43/15 46/5 60/5 64/8 66/19
88/6 89/10 92/19 94/15 104/12
corrected [1]  90/3
corroborating [1]  31/1
cost [1]  10/19
costs [2]  16/14
could [26]  13/5 21/17 23/6 30/15 37/11
37/15 45/5 47/12 47/13 47/24 53/8 56/1
56/25 57/12 57/12 61/7 63/1 71/18 74/11
79/25 92/1 93/9 93/25 96/23 102/17
104/19
couldn't [3]  59/15 87/2 96/4
counsel [44]  3/5 7/1 18/4 18/19 26/18
30/13 30/19 33/7 38/19 42/1 45/3 45/4
45/5 45/7 45/9 58/18 59/10 65/9 66/24
70/2 71/10 71/24 73/5 73/9 74/7 74/14
74/23 76/20 83/4 83/11 84/15 85/16
85/18 86/1 88/3 88/17 91/10 91/16 97/12
98/7 98/8 100/8 101/5 101/15
counsel's [3]  77/1 81/7 95/1
counselor [1]  52/1
count [2]  5/1 5/20
counterclaim [1]  42/14
country [2]  39/23 44/21
County [1]  64/6
couple [6]  3/24 10/9 33/16 34/15 45/12
45/25
course [14]  3/19 5/7 14/19 19/6 35/4
35/19 35/23 47/10 50/19 50/22 55/14
80/21 83/13 90/19
court [78]  1/1 2/7 5/8 5/14 6/9 6/18 6/21
10/6 10/15 10/19 12/19 13/17 16/5 17/3
17/6 17/19 18/17 19/1 19/6 19/17 20/3
21/17 22/3 22/22 23/19 23/20 24/4 24/19
25/13 26/3 26/12 26/21 26/24 27/7 29/24
30/1 30/2 30/4 30/14 31/22 32/15 32/16
36/18 36/25 38/14 41/10 41/13 42/12
45/25 46/10 48/9 48/20 50/24 52/8 52/13
52/18 52/22 53/8 54/18 54/21 55/6 55/18
55/21 56/4 56/13 57/15 57/23 59/8 60/24
62/20 64/12 65/8 65/13 65/17 65/21

**C**

court... [3]  103/8 106/20 109/17
court's [10]  14/24 20/4 20/10 25/2 30/15
 55/15 55/17 57/8 88/6 103/14
courthouse [2]  46/16 47/14
courts [6]  19/4 40/1 40/4 53/5 56/9 84/16
courts' [1]  30/25
cover [4]  18/2 21/4 38/9 52/13
covered [1]  79/7
coverup [9]  18/11 19/2 20/25 21/7 21/12
 49/6 49/24 50/21 51/1
COVID [1]  45/14
CPA [3]  75/21 75/25 77/12
crazy [1]  106/24
create [1]  96/15
created [10]  83/22 83/22 83/24 95/4
 96/10 96/12 96/15 96/17 96/18 96/21
creation [3]  94/17 98/2 98/10
credibility [11]  26/22 26/24 29/17 29/18
 31/5 31/9 32/7 32/8 32/16 42/24 62/16
credible [6]  26/20 29/5 29/6 32/17 56/19
 60/14
credit [1]  91/22
crime [6]  21/1 21/3 21/4 21/5 21/8 21/10
crime's [1]  21/7
crimes [2]  18/1 18/2
criminal [3]  3/18 32/18 37/12
critical [1]  64/15
cross [2]  68/24 69/21
cross-examined [1]  69/21
CRR [2]  2/7 109/16
crux [1]  29/4 29/4
CSR [2]  2/7 109/16
cssalivarattorney [1]  2/5
currently [1]  48/23 53/11
custody [17]  58/14 66/5 66/16 66/21
 67/1 67/6 67/10 67/10 67/20 67/25 69/24
 73/17 83/2 89/19 91/21 95/18 100/4
cut [1]  102/5
CV [3]  1/2 3/3 17/17
CyberRoot [1]  31/20
Cyprus [2]  23/3 23/4

**D**

D.C [2]  1/19 54/21
damage [1]  49/21
damaged [1]  81/21
damages [12]  17/23 17/24 19/11 21/11
 21/12 21/14 23/11 23/13 48/3 49/24
 49/25 81/18
data [8]  22/23 47/7 47/15 84/7 84/8
 94/23 94/24 100/18
date [4]  32/22 41/21 84/10 94/20
dated [2]  97/17 97/25
David [1]  22/24
days [4]  13/1 20/19 58/9 88/3
DE [9]  17/6 17/12 20/12 31/22 33/6 33/7
 33/14 50/3 61/2
DE-1 [4]  31/22 33/6 33/7 33/14
DE-51 [1]  17/12
DE-52 [2]  50/3 61/2
DE-56 [2]  17/6 20/12
deadline [1]  65/14
deal [3]  10/7 43/23 44/4
dealing [1]  43/19
debrief [1]  32/11
December [2]  1/5 109/16
Dechert [3]  17/21 23/1 23/4
decide [4]  26/22 26/23 63/23 82/7
decision [1]  107/10

declaration [1]  37/21
declarations [1]  46/15
Defeat [2]  23/24 23/25
defendant [4]  1/8 2/2 39/14 52/21
defendants [9]  17/22 19/22 45/18 45/20
 46/2 46/4 46/6 59/3 67/7
defies [1]  84/11
define [1]  80/19
defined [1]  80/18
Del [3]  31/18 48/2 54/19
deleted [1]  85/1
delineation [1]  80/11
Delray [1]  2/4
demand [1]  91/15
demanding [1]  75/11
demands [1]  75/6
Denials [1]  14/17
denied [11]  11/14 11/22 14/9 69/6 71/2
 75/4 82/22 94/7 100/21 101/2 101/3
deny [2]  9/10 10/21 13/22 14/5 14/15
 16/17 24/6 25/17 28/9 44/14 90/9 94/2
Department [1]  90/4
depending [2]  3/23 92/11
depo [3]  13/5 22/5 82/16
depos [2]  58/25 102/10
deposition [23]  9/4 11/3 11/7 11/7 12/10
 12/11 13/13 18/19 25/21 25/23 28/6 50/4
 58/12 68/5 70/3 79/8 80/4 80/22 97/16
 98/9 101/25 103/19 103/24
depositions [34]  10/20 11/11 12/23
 12/24 13/1 13/18 13/20 20/19 26/2 26/5
 26/7 27/4 28/8 28/9 28/12 28/13 28/21
 58/10 60/11 69/22 72/24 75/3 78/4 81/8
 83/14 88/3 94/19 94/20 97/23 99/11
 99/15 101/16 102/2 102/4
determine [2]  59/9 82/12
determining [1]  101/6
devoid [1]  104/13
did [33]  10/20 11/3 12/10 12/11 12/16
 25/25 36/24 47/3 47/19 47/19 51/21 56/1
 57/1 61/19 65/13 69/24 70/4 71/8 75/12
 80/1 81/11 85/6 85/7 85/13 85/14 86/24
 87/1 87/3 90/19 95/10 108/13 108/14
 108/17
didn't [36]  6/12 6/19 6/21 10/10 12/23
 16/4 18/13 22/16 32/4 34/9 34/9 49/20
 51/1 54/3 58/1 58/23 58/23 58/24 60/18
 60/25 61/2 64/16 67/4 67/5 73/23 74/17
 75/8 78/17 85/18 86/18 86/21 89/22
 94/17 96/15 104/8 108/17
difference [1]  80/23
different [23]  3/21 19/8 19/9 21/9 34/15
 35/2 35/3 35/6 35/9 35/15 35/22 40/12
 44/11 53/23 56/17 70/11 71/9 76/23
 82/10 86/15 91/2 98/23 106/17
differently [1]  29/17
difficult [1]  22/10
digital [2]  1/10 109/13
diligence [3]  73/12 73/16 74/9
dime [1]  61/20
diminish [1]  64/18
diminished [1]  49/16
diminishes [1]  51/18
Din [1]  57/5
direct [1]  100/2
directed [1]  87/20
directly [5]  29/22 86/14 91/17 93/3 97/7
director [2]  75/25 77/12
disagree [7]  25/25 26/9 32/6 32/12 32/19
 49/23 82/19

disallow [1]  13/20
disallowed [2]  13/18 13/19
disclose [3]  16/4 42/23 54/14
disclosed [11]  23/18 23/19 24/19 29/10
 31/7 31/9 31/10 31/21 49/12 51/21 53/7
disclosing [2]  31/11 49/10
disclosure [1]  53/4
disclosures [3]  18/8 59/16 65/18
disconnect [1]  73/20
discount [1]  38/18
discoverable [1]  91/8
discovered [1]  47/7
discovering [1]  47/14
discovery [68]  1/10 5/5 5/23 10/5 15/10
 16/25 18/7 18/9 18/12 19/7 19/19 19/22
 20/1 20/5 22/4 22/8 22/22 24/25 25/1
 26/23 26/24 28/19 28/23 29/25 35/20
 39/2 39/25 40/9 40/9 40/11 40/17 40/18
 40/22 40/23 40/25 41/3 41/4 41/17 41/22
 42/5 42/6 43/19 44/2 44/16 46/3 46/9
 48/9 50/7 51/7 52/10 56/7 57/4 59/14
 61/13 61/21 61/22 61/22 61/25 62/6
 62/17 62/19 62/20 65/19 73/9 76/10
 82/13 84/7 106/1
discretion [2]  20/4 20/16
discretionarily [1]  48/21
discretionary [1]  41/12
discuss [6]  59/6 59/6 59/10 79/1 94/18
 103/11
discussed [2]  72/24 80/21
discussion [2]  59/15 88/18
discussions [1]  21/25
dishonest [1]  30/3
dishonesty [2]  30/25 57/9
dismiss [4]  45/20 45/24 46/1 59/11
dismissal [1]  16/13
dismissed [2]  46/5 46/7
dismissing [1]  54/21
dispose [1]  29/2
dispositive [3]  8/20 41/11 51/2
disprove [2]  62/4 62/5
dispute [2]  24/15 31/6
disputes [1]  92/5
distinction [3]  37/10 67/15 67/17
district [47]  1/1 1/1 5/8 7/14 15/11 17/11
 17/16 18/8 19/9 20/13 21/18 22/3 23/10
 24/13 30/2 30/7 30/21 38/24 39/24 40/12
 40/17 40/19 40/21 41/18 41/23 41/24
 42/5 43/17 43/23 44/4 48/23 49/3 54/24
 55/1 55/15 55/17 56/2 57/3 57/16 57/18
 57/23 58/21 59/12 61/7 65/10 72/23
 103/20
District's [1]  57/9
districts [2]  19/8 56/10
do [88]  4/10 4/22 6/14 6/23 6/24 6/24
 7/22 8/24 10/9 11/10 13/21 18/22 19/4
 19/12 20/2 22/7 22/9 25/5 25/15 28/22
 37/10 39/22 39/25 43/20 43/21 44/7 45/6
 53/1 58/3 58/4 58/6 60/1 61/6 62/8
 62/21 62/23 63/14 63/15 63/15 63/22
 63/23 67/24 68/25 71/12 73/11 75/12
 77/6 78/1 78/6 78/7 78/10 79/13 80/5
 80/7 81/21 81/21 85/12 86/10 86/10 87/2
 88/4 91/6 92/9 101/4 102/15 103/24
 103/25 104/16 104/19 104/20 104/20
 104/21 105/6 105/13 105/14 105/19
 105/22 106/12 107/1 107/3 107/5 107/12
 107/17 107/19 107/24 107/24 108/5
 108/11
docket [28]  5/21 5/22 6/3 6/8 6/18 6/21

**D**

docket... [22]  7/8 7/22 7/24 10/1 10/7
16/21 16/24 24/5 25/9 25/17 25/24 28/9
37/1 38/3 38/13 60/7 60/8 61/5 61/11
61/17 78/22 106/21
document [11]  13/13 17/1 34/8 58/13
59/1 62/9 74/15 75/7 93/14 93/16 106/13
documentation [1]  82/17
documents [46]  9/16 11/9 12/12 15/15
22/20 23/1 35/6 58/14 60/1 62/11 62/14
63/21 64/18 67/25 69/2 69/17 69/22 70/2
70/16 72/5 74/5 75/1 75/9 75/11 75/15
79/2 80/10 82/4 91/14 91/20 92/21 93/19
94/20 98/3 98/15 101/23 101/24 102/1
102/3 102/8 102/11 102/24 103/16
103/18 108/12 108/13
does [11]  14/2 19/9 28/17 34/12 35/1
41/12 53/10 73/24 92/21 96/24 97/2
doesn't [24]  6/22 9/15 10/6 15/23 29/6
35/12 40/23 49/25 54/9 56/14 61/21
64/18 73/22 73/22 73/23 77/19 79/3
82/15 82/16 85/15 86/6 89/13 89/16
106/17
doing [11]  15/12 15/12 18/20 31/24
47/22 54/17 95/22 95/25 96/1 96/3 96/3
dollar [1]  87/24
dollars [1]  37/8
Dominic [1]  52/2
don't [109]  4/12 6/14 7/7 8/4 8/14 8/19
9/10 12/3 12/9 14/24 15/3 15/11 15/12
15/17 15/21 15/23 15/25 16/8 19/11
21/19 21/21 22/14 23/6 23/19 23/20
23/22 24/12 24/15 25/1 25/4 28/8 28/19
28/21 31/6 35/2 39/5 39/7 40/3 42/4
43/5 43/17 43/18 43/21 44/24 46/20
47/23 51/18 56/12 56/22 59/14 59/19
60/5 60/14 63/1 63/4 63/23 64/2 64/6
64/7 66/12 66/13 66/17 67/5 67/6 67/13
67/13 67/16 68/4 68/17 68/21 69/3 70/12
71/13 72/10 74/7 77/23 84/10 84/11
84/18 84/18 84/22 87/15 87/24 88/9
91/14 92/5 92/8 92/16 92/22 93/18 94/11
95/5 96/20 97/14 98/7 98/13 98/15 98/18
98/22 99/21 100/4 100/12 101/10 105/14
105/19 106/10 106/15 107/9 108/2
done [26]  8/21 13/4 14/17 14/17 20/9
45/24 63/9 63/10 63/12 65/18 73/16 74/9
75/5 76/1 76/19 77/16 82/14 84/25 98/4
98/5 98/12 98/12 101/24 107/18 108/18
108/19
Donna [1]  14/5
dot [1]  86/5
dovetails [1]  15/6
down [6]  34/16 38/22 42/13 45/22 84/3
88/14
dozens [2]  96/9 96/9
drafted [3]  52/20 68/7 84/25
drafting [1]  66/10
drawer [2]  73/22 73/24
due [5]  23/11 25/10 73/11 73/16 74/9
duplicative [2]  13/19 103/23
during [21]  27/9 35/4 36/18 45/16 47/5
47/10 69/21 70/3 72/24 78/3 79/7 80/21
83/13 88/3 94/18 94/20 96/12 97/23 98/9
99/14 103/19
duty [1]  54/10
duty-bound [1]  54/10

**E**

each [7]  8/19 32/21 59/13 64/4 68/17

83/6 105/15
earlier [5]  5/8 5/10 52/1 58/20 65/9
early [5]  4/2 4/11 4/13 54/15 56/2
easier [1]  106/14
ECF [17]  5/2 5/2 5/4 5/6 5/11 5/13 10/17
11/16 11/24 11/25 36/23 51/10 51/16
51/22 65/23 106/2 106/3
ECF-1 [6]  36/23 51/10 51/16 51/22
106/2 106/3
ECF-32 [3]  5/2 5/2 10/17
ECF-34 [1]  5/6
ECF-50 [3]  5/11 11/16 65/23
ECF-52 [1]  5/13
educated [1]  46/1
effect [5]  16/5 17/25 53/3 53/20 60/24
effective [1]  22/2
effectively [8]  12/21 13/17 18/19 19/20
20/4 20/6 20/20 78/17
efforts [1]  18/2
ego [7]  67/8 95/19 95/20 96/22 98/19
98/19 99/3
eight [2]  19/6 58/1
Eitan [1]  4/18
either [11]  8/23 11/15 15/22 22/14 39/7
66/21 69/24 86/22 88/12 100/5 100/9
electronically [1]  34/11
eliminates [1]  79/5
else [12]  5/20 7/7 7/22 8/15 14/25 31/24
31/25 39/5 49/14 49/18 97/2 108/22
else's [1]  67/23
elucidate [1]  22/17
email [26]  65/8 83/8 83/8 83/12 83/15
83/17 83/21 84/1 84/25 85/7 85/10
85/14 86/4 86/7 86/15 86/18 87/25 88/15
88/19 88/20 89/9 89/14 89/15 89/16 90/7
91/5
emails [34]  83/10 83/21 83/22 83/25
84/2 84/3 84/5 84/7 84/8 84/13 84/19
85/2 85/8 85/12 85/14 85/22 85/23 86/9
86/12 86/12 86/13 86/19 87/3 87/4 87/4
87/7 87/9 87/13 87/20 88/13 88/16 90/10
90/14 91/2
embedded [1]  46/16
employee [4]  79/24 95/17 95/22 99/7
employees [12]  69/8 69/11 69/12 69/16
70/9 70/20 77/6 77/21 77/24 78/23 86/21
87/10
enabled [1]  54/15
encompass [1]  12/24 75/17
encompassed [3]  23/7 31/15 71/10
encompassing [1]  76/11
end [1]  81/19
ended [2]  45/13 54/21
ending [1]  9/19
enforcement [1]  34/19
engage [1]  88/18
engagement [1]  66/2 66/2 66/4 66/10
66/15 68/7 68/19 68/22 68/23 69/2 69/4
69/5
engaging [2]  40/9 40/9
England [1]  23/5
enough [3]  21/19 43/9 53/13
entered [3]  42/10 65/21 81/7
enters [1]  103/16
entire [8]  18/6 20/14 26/6 26/12 28/6
34/21 45/15 56/15
entirely [1]  44/11
entirety [1]  81/19
entities [102]  17/5 17/15 18/13 27/9 28/3
35/17 37/4 37/6 38/23 46/12 47/24 48/25

50/16 61/16 61/18 61/20 66/4 66/15
66/17 67/6 67/9 67/9 67/13 67/16
67/24 68/3 68/20 69/3 69/3 69/16 69/17
69/25 70/4 70/10 71/14 72/16 72/19 76/5
76/8 76/12 76/12 78/5 78/16 78/17 78/21
80/6 80/6 81/9 82/12 82/15 82/15 82/17
82/18 82/25 83/3 83/10 83/23 85/23
86/24 88/4 88/12 90/1 90/3 90/5 91/10
92/25 93/2 93/16 94/13 94/14 94/16
94/21 95/3 95/15 95/17 95/19 95/20
95/23 96/3 96/4 96/7 96/9 96/15 96/16
96/18 96/19 96/23 96/24 96/25 97/1 97/3
97/4 97/5 97/6 97/7 98/10 99/2 99/6
99/19 100/10 101/8
entities' [1]  56/4
entitle [1]  62/18
entitled [6]  62/17 62/19 67/18 74/8 79/20
109/14
entity [35]  50/8 50/16 78/10 80/25 81/9
81/12 81/13 83/6 85/4 85/5 86/3 88/25
88/25 89/17 92/10 92/13 92/20 92/21
93/8 93/13 93/20 93/21 95/9 96/1 96/2
96/13 96/16 96/20 97/10 97/20 98/2 98/4
99/20 99/25 100/3
entity's [1]  100/4
entries [5]  5/22 6/3 6/8 10/1 106/21
entry [16]  7/8 24/5 25/9 25/17 25/24 28/9
37/1 38/3 38/13 60/7 60/8 60/9 61/5
61/11 61/17 78/22
error [2]  4/6 4/15
especially [2]  59/21 103/15
ESQ [3]  1/13 1/17 2/2
essence [1]  6/9
essentially [6]  31/13 35/4 46/4 87/11
91/1 95/19
estimate [2]  27/15 27/17
et [2]  1/7 3/4
even [41]  12/14 28/11 37/19 38/17 38/19
39/13 41/7 41/9 41/22 43/6 43/8 44/14
49/8 49/11 51/17 53/14 53/21 58/19 59/9
61/10 62/2 62/7 62/8 62/14 62/15 63/25
72/7 73/3 74/24 77/23 84/8 85/20 87/12
89/22 93/12 95/10 96/12 97/20 98/18
104/1 107/4
event [5]  23/13 32/18 94/12 95/5 100/23
ever [9]  17/9 29/6 29/7 29/8 50/17 81/10
83/22 87/25 98/5
every [10]  20/25 35/8 56/15 74/4 74/16
83/21 86/15 87/24 93/24 93/25
everybody [3]  79/11 105/24 108/1
everything [14]  5/19 7/21 12/7 18/20
28/14 56/7 59/23 65/2 77/18 78/14 96/24
104/7 107/18 107/18
evidence [21]  21/4 22/3 23/12 31/1 34/1
36/8 36/19 43/11 46/17 47/4 49/25 51/3
52/4 52/9 53/6 74/10 74/11 78/1 80/1
80/12 98/16
evidentiary [1]  70/24
ex [3]  29/23 30/9 30/12
exact [5]  23/9 35/3 49/9 59/18 103/25
exactly [4]  27/13 61/1 64/7 79/22
examined [1]  69/21
example [5]  27/8 56/18 86/9 91/22
107/14
exceeding [1]  12/19
exchange [1]  59/13
exclusively [1]  69/12
excuse [3]  60/10 74/2 78/15
exercise [1]  63/7
exhaustive [1]  17/5

E

exhibit [7]  20/12 33/6 33/7 33/9 33/13
97/16 97/22
exhibits [1]  99/11
exist [33]  18/13 54/3 62/12 62/13 62/13
62/14 63/21 66/5 66/11 66/12 66/13
66/15 67/5 67/6 67/20 68/8 68/9 69/24
70/11 70/12 84/18 84/19 92/2 94/11
94/17 95/10 98/15 98/18 98/22 99/22
100/4 100/12 100/23
existed [7]  68/23 70/12 70/16 86/22
96/13 97/20 98/2
existence [1]  58/14
exists [3]  57/20 67/22 70/19
expand [1]  77/14
expansive [1]  17/4
expect [2]  59/18 71/13
expectation [1]  71/11
expedite [1]  74/25
expedited [2]  74/22 75/6
expedition [2]  16/6 20/21
expend [3]  20/18 20/18 20/18
expenditure [4]  93/12 93/12 93/13
103/15
expenses [2]  75/22 93/6
explain [1]  21/2
explanation [2]  68/8 68/9
extend [1]  104/24
extension [2]  65/18 75/2
extensive [3]  10/16 17/16 18/11
extent [20]  9/1 11/6 11/16 11/16 12/2 12/11
14/10 15/9 26/18 27/1 41/4 51/11 53/24
64/19 71/3 82/24 83/1 96/2 100/25
101/23 102/3
extraordinary [1]  19/25
extremely [1]  20/16
eye [1]  82/1

F

fabulous [1]  109/4
fact [36]  6/21 15/4 15/19 15/22 18/5 21/3
21/20 25/12 25/24 26/1 26/5 28/7 36/21
38/21 38/21 39/12 40/23 41/11 44/18
46/8 49/15 49/16 50/25 54/8 54/21 54/23
55/1 55/18 57/2 57/19 59/2 61/16 64/16
73/22 75/10 96/8
factors [3]  13/3 22/10 41/12
facts [3]  26/22 44/21 81/3
factual [1]  35/25
failure [4]  9/3 42/22 53/3 54/14
fair [2]  29/15 43/14
faith [4]  19/15 20/9 23/7 75/9
fall [1]  87/22
falls [2]  9/6 20/15
false [6]  24/18 27/3 32/13 47/6 50/23
93/1
far [4]  8/1 45/9 65/19 85/15
FARHAD [6]  1/3 78/7 81/11 81/18 97/18
98/5
faster [2]  40/16 41/22
February [1]  45/14 93/12
feels [1]  99/4
fees [3]  16/14 19/21 20/18
few [1]  84/3
fiction [1]  97/10
FIELDS [2]  1/14 45/3
figure [4]  41/8 41/9 105/16 107/3
figuring [1]  38/23
file [7]  5/12 23/9 56/16 56/16 73/22
73/24 106/21

filed [32]  5/17 6/20 13/8 16/20 17/13
17/13 18/7 18/14 19/15 23/7 24/2
24/23 29/10 30/19 31/22 31/25 33/13
34/25 41/19 42/14 56/21 57/3 58/18 59/4
59/8 60/7 61/6 61/8 61/17 62/2 75/2
90/4
filing [6]  7/14 17/12 30/22 49/8 57/2
107/21
filings [1]  90/2
final [1]  46/10
finance [2]  75/25 77/12
finances [1]  75/20
find [7]  19/18 20/20 58/1 74/11 78/21
87/16 98/7
finding [1]  55/18 57/8
findings [3]  5/9 5/10 60/24
finds [2]  7/17 20/13
fine [1]  67/15
finger [1]  38/20
finish [1]  37/23
firm [1]  31/19
first [22]  6/14 6/19 6/9 4 10/18 14/22 26/2
28/17 34/1 36/6 36/9 36/18 47/2 56/2
56/5 56/20 56/25 60/5 65/25 83/17 105/2
105/5 105/7
fishing [2]  16/5 20/21
FL [2]  1/15 2/4
flanked [1]  88/2
FLORIDA [34]  1/1 1/4 35/17 37/4 50/16
61/16 61/18 70/10 81/12 83/19 83/23
84/12 84/14 86/24 89/8 89/13 89/16
89/17 89/20 90/2 92/13 92/21 93/8 93/8
93/16 93/19 93/21 94/21 96/3 96/4 96/7
98/2 98/10 100/10
Florida-based [1]  35/17
flow [1]  79/13
flowed [1]  92/13
focal [1]  18/14
focus [1]  34/10
focused [3]  19/2 29/22 50/12
focuses [1]  17/25 18/2
follow [1]  96/25
following [6]  3/2 27/8 27/22 32/21 35/12
92/22
footnote [1]  17/18 17/22 30/17
foregoing [1]  109/12
foreign [3]  18/22 20/1 45/21
forgive [1]  47/11
forgot [2]  14/7 14/8
Forlit [71]  5/24 5/25 6/13 10/20 11/3
11/9 22/25 25/22 25/23 27/4 27/8 27/20
28/24 29/2 35/18 35/22 37/5 37/7 38/21
38/23 39/8 39/9 39/13 44/10 45/19 46/12
47/22 50/10 50/15 58/5 58/9 61/16 61/16
61/17 61/20 62/1 62/2 63/3 66/9 66/17
67/8 67/8 67/14 68/6 69/21 70/1 70/7
75/19 81/10 85/25 86/9 88/19 88/22
92/24 94/9 95/7 95/13 95/16 95/18 96/23
97/20 99/5 99/14 99/18 99/24 100/7
104/15 105/18 106/9 106/16 107/19
Forlit's [5]  26/18 46/15 83/14 99/2
105/25
form [3]  81/16 98/11 99/11
formally [2]  10/8 18/9
formed [1]  17/7
forth [4]  25/19 30/14 32/9 39/19
forum [1]  54/22
forward [5]  4/1 8/8 10/4 48/22 74/25
forwarded [1]  85/25
forwards [1]  85/24

found [6]  17/12 30/2 42/10 53/5 56/5
66/6
four [5]  17/15 27/9 27/18 82/9 82/10
frame [6]  17/9 59/16 65/22 74/22 75/6
97/15
framed [2]  32/7 32/8
framework [1]  22/11
frankly [1]  11/2
fraud [1]  42/15
front [4]  7/4 19/8 30/23 68/4
fruit [1]  105/12
fruition [1]  35/19
full [3]  13/1 56/1 58/9
full-scope [1]  56/1
fully [4]  4/21 7/3 20/11 30/18
fund [4]  37/11 77/4 92/14 93/4
funds [6]  27/24 90/11 90/11 91/7 92/7
92/9
further [12]  13/18 13/20 46/4 78/20
79/25 85/9 94/2 101/8 101/14 101/20
102/4 106/1

G

gadot [34]  3/14 27/20 35/16 35/18 35/21
37/4 37/7 47/17 47/20 50/7 61/23 66/22
67/2 69/13 81/9 81/12 83/18 85/6 85/11
87/22 88/23 88/25 89/3 89/8 89/12 89/13
89/14 89/19 95/9 95/10 98/4 98/12 100/3
100/3
gadot.co [3]  83/15 88/20 89/9
gadot.com [1]  85/9
game [2]  68/10 99/4
gather [1]  46/17
gave [3]  28/2 46/18 107/2
general [1]  21/1
gentleman [2]  50/11 52/11
Gerrard [1]  22/24
get [62]  3/25 6/15 6/15 6/16 11/25 14/20
16/2 16/15 16/22 20/1 22/3 22/16 24/8
25/4 25/5 25/5 25/23 28/8 28/19 29/8
29/24 34/3 39/22 39/25 41/17 42/7 44/3
44/8 47/19 47/19 50/12 51/2 53/10 53/19
55/22 58/22 58/24 59/17 59/18 61/24
62/24 64/10 65/5 65/25 66/23 68/25
71/15 72/11 72/17 75/7 82/9 83/5 84/3
86/16 87/9 90/20 93/22 98/8 99/25
103/17 104/5 107/12
get-go [1]  16/2
getting [10]  3/17 10/5 15/15 53/25 54/11
57/23 59/14 80/16 92/24 93/2
give [13]  9/7 33/4 63/10 82/14 90/21
99/25 101/10 101/10 103/7 105/19
105/20 105/21 107/12
given [22]  12/20 12/23 25/7 34/1 36/8
44/16 44/17 44/17 47/5 47/8 52/7 52/25
55/4 57/19 59/2 59/22 62/10 75/15 82/13
94/18 99/18 103/9
giving [2]  72/12 82/10
glass [1]  43/18
gmail.com [5]  2/5 2/8 83/16 85/10
109/17
go [41]  8/22 9/17 10/7 10/14 16/2 22/19
23/25 28/13 28/14 28/17 34/16 41/12
42/5 46/9 46/24 48/3 48/22 51/9 51/15
52/12 53/15 55/22 58/1 61/9 62/24 62/25
63/7 63/15 63/22 64/14 69/7 73/2 75/18
90/24 94/8 98/7 98/13 105/5 105/13
105/15 107/6
goal [1]  10/5
God [1]  107/11

**G**

God's [1] 108/12
goes [10] 17/11 53/17 60/9 60/15 61/24 81/5 94/22 99/2 100/18 101/19
going [94] 3/22 4/9 4/10 6/11 7/4 10/3 10/15 10/20 13/6 14/13 22/6 23/9 24/4 24/6 24/8 40/13 40/16 40/17 40/22 41/14 41/16 41/23 42/2 42/17 43/18 43/22 43/23 43/24 44/7 44/13 44/15 44/19 44/23 45/1 45/6 46/17 48/21 49/2 49/5 49/7 50/1 50/25 51/14 53/1 53/23 53/23 54/16 56/10 59/9 59/14 59/17 59/20 62/21 62/22 63/2 63/13 63/14 64/2 64/3 68/16 68/21 71/20 71/21 79/2 80/10 80/23 81/22 82/5 82/6 82/11 84/3 84/5 84/6 86/4 87/9 88/9 90/8 94/2 101/4 101/5 101/6 101/18 103/9 103/18 104/5 104/18 105/17 105/17 105/20 106/8 106/16 107/1 107/5 108/1
Goldberger [5] 85/17 85/24 89/18 89/25 90/6
gone [2] 18/16 63/1
good [9] 3/7 3/9 3/10 3/12 3/13 3/16 13/2 23/7 75/8
Google [3] 83/25 84/1 100/15
got [23] 5/19 33/2 47/21 48/17 48/18 51/11 53/13 58/19 59/5 63/13 64/14 65/8 75/14 75/19 80/8 82/7 89/22 104/20 104/21 104/23 105/2 105/5 105/16
gotten [6] 61/25 62/4 62/5 62/9 108/18
government [3] 32/9 32/14 34/19
grant [8] 7/20 7/20 14/16 16/10 44/22 82/24 90/8 90/9
granted [13] 9/15 16/15 24/21 28/11 28/19 29/1 35/14 42/13 43/8 43/10 71/3 71/3 82/22
granting [5] 5/14 25/2 25/24 26/6 48/20
grants [2] 45/25 65/17
gravamen [1] 24/14
great [2] 24/16 64/6
grossly [2] 55/6 58/11
ground [1] 16/17
grounds [1] 36/24
guess [3] 46/1 57/14 84/22
guise [3] 20/22 50/14 56/7
Gur [1] 75/20
guy's [1] 29/11
guys [3] 4/2 68/16 107/7

**H**

hac [1] 18/4
hack [8] 31/19 31/21 48/4 48/24 50/17 59/25 81/18 98/8
hacked [2] 22/22 100/18
hacker [2] 39/5 39/9
hackers [3] 43/2 48/4 48/17
hacking [35] 17/24 17/25 18/14 20/24 21/10 23/13 23/15 37/5 37/6 37/8 37/10 39/12 39/15 39/19 48/10 49/1 49/7 50/14 51/1 54/20 77/4 77/7 78/1 80/1 80/2 80/9 80/11 81/21 84/2 84/4 94/8 94/12 95/14 96/9 96/12
had [69] 3/18 4/4 5/7 6/20 7/3 7/3 10/8 11/18 16/3 19/21 20/18 21/25 24/9 24/18 26/3 29/12 29/17 30/2 30/2 31/5 31/8 31/8 32/1 32/16 33/9 37/2 39/4 42/11 48/10 48/16 49/12 51/5 51/16 52/8 52/20 53/5 53/18 53/18 55/22 56/1 56/18 57/3 57/12 58/20 59/25 60/6 64/3 66/3 68/6 68/9 69/16 72/16 73/4 74/11 74/11 74/15 74/17 75/1 78/1 78/6 78/7 78/10 81/20 87/10 89/9 95/18 96/23 108/10
hadn't [1] 12/7
Halabi [8] 22/25 38/14 38/14 47/8 47/12 47/12 52/11 52/12
Halabi's [1] 38/19
half [1] 32/2
handed [1] 99/14
handle [1] 4/4
happen [1] 84/15
happened [5] 18/18 28/21 28/22 37/14 68/11
happening [1] 57/18
happens [1] 108/15
happy [5] 34/17 79/4 79/4 88/18 100/8
hard [3] 25/6 82/18 87/7
harm [1] 54/4
has [71] 5/9 6/24 12/6 12/21 17/4 17/10 18/16 18/21 19/2 19/3 19/4 19/12 19/14 19/16 21/24 23/19 26/13 26/15 26/15 30/13 32/7 32/10 32/13 32/25 35/14 35/15 39/7 39/8 40/11 40/12 41/19 41/20 43/1 48/2 48/6 48/14 50/2 50/12 55/12 55/13 56/6 60/12 60/12 60/22 61/18 67/15 68/10 71/25 72/10 72/25 73/8 73/9 78/11 79/17 80/17 83/3 84/11 87/8 88/1 88/7 88/15 89/6 90/4 92/20 95/7 95/18 97/14 99/5 101/25 103/13 103/17
hasn't [1] 45/19
hat [4] 64/6 89/15 89/15 96/16
hats [1] 67/14
have [264]
haven't [10] 24/21 44/11 49/2 62/4 62/5 62/9 62/10 84/14 101/9 101/9
having [13] 9/19 19/21 20/17 20/18 21/20 25/6 81/1 81/13 88/4 91/6 91/20 104/6 104/18
he [127]
he'll [1] 73/25
he's [17] 29/14 31/19 32/16 35/2 35/3 47/23 61/5 61/12 74/15 77/20 80/8 83/21 89/22 95/21 98/22 99/16 100/12
head [1] 101/24
hear [22] 9/7 9/19 9/21 10/21 14/19 15/16 16/8 16/18 21/23 22/11 23/18 42/24 61/4 63/18 66/7 70/5 74/12 76/20 77/9 78/19 83/6 94/23
heard [8] 41/25 42/2 58/17 89/21 100/13 104/7 104/7 108/16
hearing [11] 1/10 16/8 22/12 26/3 28/17 29/3 33/10 34/10 41/7 108/10 108/16
heart [1] 103/23
held [6] 3/2 11/11 75/24 77/11 78/16 92/10
helpful [1] 80/11
here [57] 9/12 14/19 15/6 22/7 22/8 26/21 26/22 33/2 33/23 35/7 35/20 38/24 39/2 40/6 40/23 41/3 41/4 41/5 42/22 42/25 43/19 44/2 44/7 48/18 52/10 53/21 53/23 54/21 60/23 61/14 64/22 65/1 65/2 67/14 67/18 69/10 70/18 73/9 75/19 76/20 76/21 82/19 83/19 83/19 84/3 84/15 88/8 89/4 90/21 94/6 100/15 100/21 102/10 103/24 107/12 108/1
here's [1] 52/8
hereby [1] 109/12
hey [5] 24/24 52/25 53/22 55/24 59/15
high [2] 15/3 19/17
highlight [1] 77/13
highlights [1] 18/5
him [29] 26/1 26/19 36/12 45/6 55/4 56/1 56/1 56/23 63/4 63/7 70/22 72/12 73/19 80/7 80/15 80/25 81/2 82/14 88/21 88/22 89/21 95/15 95/20 100/13 104/19 104/23 104/24 104/24 105/8
himself [5] 25/22 26/14 39/9 66/9 81/10
hire [1] 31/19
hired [1] 50/8
hiring [2] 31/20 48/4
his [42] 5/24 18/19 24/3 24/25 27/6 27/12 29/9 30/25 34/20 35/1 35/2 35/14 38/19 46/12 48/4 52/6 60/8 60/17 60/22 60/23 66/4 66/15 67/7 67/10 67/15 73/9 74/15 80/21 83/18 85/24 89/15 90/6 92/14 93/4 93/6 95/9 95/15 96/13 96/14 96/16 99/6
hold [15] 11/19 14/10 34/2 36/4 37/22 42/2 63/22 65/25 68/14 68/14 76/17 79/14 79/14 102/13 102/13
Holden [4] 38/16 38/18 52/2 52/3
holding [1] 78/17
holiday [1] 109/5
honest [2] 25/9 44/13
honestly [1] 102/19
Honor [100] 3/7 3/10 3/13 4/17 4/22 5/22 6/8 7/2 7/4 7/12 7/17 7/25 8/9 8/15 9/23 10/12 11/5 11/13 11/21 12/18 14/1 15/1 16/19 19/16 20/13 24/2 25/8 25/16 26/2 28/7 32/6 32/20 33/4 33/8 34/8 34/12 34/17 35/7 35/11 36/2 36/15 37/2 37/24 38/3 38/9 40/4 40/20 41/17 42/1 42/9 43/15 43/16 45/2 45/8 48/1 60/3 61/2 61/9 62/8 62/14 64/7 64/25 65/7 65/20 66/9 66/25 68/1 70/7 73/6 74/1 74/3 74/21 76/22 77/10 81/5 83/13 84/21 85/16 86/21 87/19 89/19 90/17 90/23 91/1 91/11 94/16 96/6 97/13 97/14 101/22 102/14 103/6 103/12 103/16 103/17 106/19 107/20 108/25 109/3 109/6
Honor's [4] 20/15 31/15 101/13 101/18
HONORABLE [1] 1/11
hopefully [1] 4/1
hoping [2] 10/9 108/19
hotel [4] 23/2 23/3 62/12 92/3
how [27] 4/24 9/17 20/3 21/6 29/4 34/22 42/4 44/15 45/1 46/20 47/19 51/9 51/18 52/17 53/9 53/10 59/19 61/7 61/22 63/18 78/12 81/18 82/13 92/9 93/18 105/6 106/10
however [9] 12/5 13/22 20/16 26/4 32/17 41/21 48/24 54/9 100/24
Hughes [1] 22/25
hurry [1] 107/11
hypothesis [1] 92/12
hypothetical [2] 34/17 86/25

**I**

I'd [3] 20/15 27/13 68/11
I'll [6] 14/14 74/12 102/9 103/4 103/7 103/11
I'm [48] 3/25 5/1 5/25 8/20 9/3 10/12 12/6 13/8 14/15 15/24 16/8 16/17 22/6 27/13 28/24 29/19 33/4 34/4 37/13 40/5 41/7 41/7 41/9 44/13 44/21 44/25 53/23 57/6 57/7 57/22 66/7 71/16 71/17 72/25 73/1 74/8 76/18 82/10 84/10 92/22 95/1 100/8 102/13 103/4 104/2 104/10 104/12 106/24
I've [1] 75/19

Ian [1] 85/19
idea [2] 64/3 97/9
identified [9] 8/9 17/6 52/20 72/2 77/24
90/4 94/19 97/22 103/21
identify [1] 80/9
identifying [2] 54/19 90/2
if [153]
imagine [3] 42/6 104/17 104/18
immediately [3] 73/10 75/11 91/19
impact [1] 44/15
imposition [1] 19/18
impossible [1] 91/25
in [408]
inaccurate [1] 60/13
inadequate [1] 42/21
inappropriate [1] 59/2
inclined [8] 16/17 51/13 58/4 62/8 62/18
62/23 62/23 102/15
included [1] 51/17
including [8] 22/23 23/2 26/6 30/20
36/10 75/25 77/12 77/15
inconsistencies [1] 60/7
incorporated [4] 15/20 15/22 96/4 96/8
incorporation [1] 62/10 62/14
incorrect [1] 27/3
increased [1] 10/3
incredibly [1] 15/3
independent [2] 31/1 53/6
independently [1] 55/22
indicate [1] 100/9
indicated [4] 7/4 58/17 61/1 83/14
indicating [2] 37/3 55/23
indirect [1] 93/22
indirectly [1] 93/3
individual [3] 81/13 81/24 88/22
individually [4] 54/23 81/18 104/19 105/8
individuals [1] 52/16
indulgence [1] 25/13
Info [1] 31/20
information [27] 16/2 17/5 31/19 32/14
36/1 41/14 43/9 43/10 47/3 48/5 48/11
48/15 48/16 49/6 50/13 51/17 51/19
52/13 52/17 54/19 55/3 55/13 55/22
57/24 91/15 100/22 102/7
inherent [3] 14/24 15/2 19/19
initial [15] 9/14 16/25 27/3 30/4 33/14
39/1 53/4 54/22 59/16 65/14 65/15 65/18
65/20 72/2 85/23
initially [4] 26/15 70/1 73/4 85/19
initiated [4] 16/25 19/23 20/14 31/16
initiating [1] 65/19
innocently [2] 47/7 47/15
inquire [1] 87/18 88/6
inquiry [2] 80/19 102/6
INSIGHT [23] 1/6 3/4 3/14 27/20 35/16
35/18 35/21 37/4 37/7 45/15 45/16 46/25
47/1 47/3 47/14 47/16 47/16 61/22 66/22
67/2 85/6 85/11 87/22
insignificant [1] 64/11
insinuation [1] 75/8
inspection [1] 108/11
instance [6] 20/8 56/20 56/25 89/11
105/6 105/7
instances [1] 34/13
institutions [1] 78/18
Intel [2] 13/3 22/10
intend [1] 4/13
intended [3] 4/4 49/17 105/6
intending [1] 104/8

intends [1] 13/6
intention [1] 67/24
intentionally [1] 78/13
intents [1] 27/25
interesting [2] 21/25 83/9
internet [1] 47/7
interrelation [1] 17/20
interrogatory [1] 68/13
into [17] 15/6 17/4 20/17 22/2 27/10
41/12 76/23 78/13 78/15 81/13 81/24
85/9 87/14 87/20 87/25 104/25 107/10
intrusive [1] 20/3
invaluable [1] 45/11
invariably [1] 36/11
investigate [1] 50/17
investigating [2] 17/8 85/4
investigation [11] 75/9 78/8 78/23 81/10
81/24 84/20 85/3 85/5 87/3 89/1 98/4
investigations [3] 50/9 81/11 81/13
investigative [3] 50/8 95/8 95/9
invoiced [1] 97/5
invoices [4] 68/2 69/7 69/15 97/10
involved [9] 37/6 38/11 38/22 39/11
39/15 39/16 49/1 66/10 83/24
ironically [1] 40/16
irrespective [3] 35/13 87/8 105/2
is [649]
isn't [11] 13/11 29/5 41/9 41/11 42/17
49/15 49/25 51/1 56/20 70/17 72/12
Israel [12] 50/7 69/13 81/9 88/25 92/14
93/9 95/9 98/4 98/12 100/3 100/3 100/10
Israel's [1] 95/11
Israeli [13] 16/6 40/1 50/16 81/12 81/23
89/15 92/13 92/18 92/20 96/1 96/16
96/20 97/9
issue [61] 6/13 7/13 8/2 9/11 9/13 10/13
11/2 12/4 12/5 12/8 12/18 13/10 13/13
15/20 15/24 18/15 20/24 22/19 25/16
28/7 28/24 28/25 29/9 29/23 30/12 33/24
34/24 36/6 36/12 42/15 43/3 43/24 44/10
46/14 46/24 49/11 51/5 51/15 52/19
53/11 53/18 56/17 56/19 56/23 57/21
57/22 59/24 63/3 64/15 66/17 73/8 75/19
78/2 78/20 78/21 81/17 82/10 82/12
90/14 101/14 101/16
issued [3] 17/3 19/1 26/6
issues [22] 6/14 20/23 21/18 29/9 29/10
29/18 30/14 30/18 31/9 32/7 32/8 32/16
36/21 42/23 43/12 43/19 44/14 51/21
79/7 81/3 83/3 104/13
it [320]
it's [11] 4/20 11/5 11/15 11/16 46/18
91/21 100/15 102/22 106/16 106/23
107/11
item [1] 22/18
items [4] 8/16 23/9 84/3 88/2
its [2] 47/6 104/11
itself [2] 21/5 86/4

J

JACQUELINE [1] 1/11
Jamie [1] 22/25
January [7] 4/2 22/20 33/20 33/21 52/20
65/13 97/25
jaws [2] 23/24 23/25
JEM [1] 1/2
jemancari [2] 2/8 109/17
Joanne [2] 2/7 109/16 109/16
JOHANNES [19] 1/13 3/8 3/9 4/12 5/20
9/21 10/21 23/22 24/9 34/6 37/23 44/14

48/13 51/9 57/13 60/2 61/4 66/7 108/22
Johannes [1] 34/2
judge [39] 1/11 6/23 10/3 12/6 14/6 17/2
18/24 22/17 22/18 25/25 26/5 26/8 28/12
29/11 29/16 29/22 30/21 30/23 31/2 31/9
31/10 32/4 34/23 42/11 42/23 48/16
48/22 49/12 52/24 53/18 53/21 54/13
55/25 64/5 64/16 76/6 99/9 101/12 109/7
judges [1] 19/9
judgment [4] 26/21 42/11 42/15 82/8
judgments [1] 26/25
judicial [1] 43/16
July [2] 99/12 99/12
jump [1] 14/13
June [3] 33/10 72/3 93/17
jurisdiction [1] 12/19
jurisdictional [1] 21/18
just [79] 4/17 5/18 10/3 15/24 21/1 21/5
21/6 22/7 22/12 24/2 30/10 30/20 31/5
32/20 34/4 38/3 38/17 38/20 38/25 39/15
40/20 41/18 41/19 42/10 42/20 43/16
43/22 44/1 44/3 45/8 46/17 47/20 49/5
51/14 53/19 56/8 57/19 61/4 61/8 61/9
61/12 62/19 62/22 63/4 63/11 63/25 65/7
65/11 65/20 66/11 67/5 68/16 69/14 71/8
73/6 73/13 74/2 74/3 74/4 74/21 76/25
78/13 79/6 88/11 89/21 91/2 92/22 96/17
97/13 98/1 98/25 99/3 101/19 103/10
104/2 106/8 106/19 106/23 108/20

K

Karam [2] 57/5 61/3
kbehre [1] 1/20
keep [4] 10/4 37/10 82/1 102/5
keeps [1] 101/16
Khater [5] 50/11 81/14 81/15 95/8 98/5
kicking [1] 44/3
kind [23] 3/19 8/18 9/6 9/17 9/20 12/9
21/1 21/5 22/8 31/5 36/12 36/20 45/22
64/3 64/14 102/11 104/13 105/12 106/13
106/14 107/10 108/1 108/20
kinds [1] 92/6
KIRBY [2] 1/17 3/10
knew [13] 16/4 24/18 25/18 26/9 30/24
30/24 31/4 31/7 35/17 37/3 47/23 55/9
61/6
know [63] 4/6 4/13 5/1 6/15 8/3 8/19
21/19 23/19 23/22 31/12 32/4 34/5 35/2
38/13 39/5 40/3 42/4 43/7 43/18 45/2
47/6 49/8 54/6 54/7 56/5 56/15 56/22
57/1 60/18 60/25 61/2 62/12 62/12 62/13
62/13 63/4 63/9 64/2 64/7 65/20 71/23
72/10 72/21 74/14 74/17 77/23 80/4
83/20 84/22 85/18 87/15 87/15 88/9
89/22 92/22 93/17 93/17 94/11 98/7
98/13 100/15 104/21 107/6
knowing [5] 51/13 53/22 101/13
knowledge [6] 52/8 57/18 57/19 67/19
67/22 90/1
known [11] 26/10 27/4 29/17 30/18 53/4
53/7 54/14 55/10 55/19 55/24 56/20
knows [4] 34/22 104/17 107/11 108/1

L

labeled [2] 33/14 97/11
lack [1] 104/21
laid [1] 103/17
large [3] 16/2 19/2 39/1
laser [1] 29/22
last [1] 4/5

later [10]  15/23 17/14 23/17 24/13 56/21
58/2 68/23 74/10 74/17 94/4
Lavie [1]  75/20
law [6]  14/7 22/1 23/1 34/18 74/10 75/16
lawfully [1]  89/2
lawsuit [2]  42/24 42/25
lawsuits [1]  54/17
lawyer [5]  4/7 4/7 4/12 38/15 74/17
lead [2]  26/24 45/4
leads [1]  74/20
learned [1]  60/6
least [1]  7/20 21/21 31/8 37/3 39/21
47/9 64/3 79/10 79/16 79/19 83/17 88/21
89/11 100/16
leave [4]  42/13 45/20 64/25 65/2
leaves [1]  101/14
led [3]  38/22 45/15 54/23
ledgers [2]  76/1 77/15
left [1]  82/6
legal [3]  14/22 41/15 91/15
lens [1]  51/13
less [1]  51/12
let [38]  4/23 5/1 7/24 8/18 9/21 10/14
11/1 14/14 14/20 17/9 25/8 36/16 37/22
37/23 39/20 46/5 46/24 50/17 56/15 58/3
61/4 63/11 64/10 64/23 65/5 65/20 65/25
66/7 70/5 76/20 77/9 78/19 80/3 85/13
86/2 94/23 103/4 104/6
let's [21]  5/18 6/15 31/5 51/15 58/4
61/12 61/13 63/15 69/7 69/14 71/7 75/18
76/13 76/24 77/21 82/1 83/8 90/24 91/12
94/8 99/19
letter [8]  45/23 45/24 59/4 59/6 59/8
66/3 66/4 66/15
letters [9]  66/2 66/10 68/7 68/20 68/23
68/23 69/2 69/4 69/5
letting [2]  4/12 56/9
level [1]  53/9
liable [1]  48/7
liar [3]  25/18 60/13 61/21
lied [1]  30/3
lies [1]  26/11
life [1]  108/14
light [4]  12/16 19/17 20/1 51/12
like [23]  4/15 5/3 18/7 20/8 22/4 24/11
34/18 42/21 56/1 64/12 64/23 67/17
74/12 77/1 79/3 85/16 86/18 91/24 92/4
99/4 107/25 108/7 108/12
limit [2]  79/4 80/8
limitation [1]  80/5
limited [9]  22/23 44/2 44/3 50/4 75/25
77/13 77/15 78/25 88/7
linchpin [2]  51/25 52/14
line [2]  14/5 31/4
list [14]  6/12 33/10 78/20 82/5 82/8 82/9
82/14 82/16 82/25 84/3 88/9 88/12 90/12
90/20
listed [1]  81/15
listen [1]  67/4
literally [1]  81/8
litigate [1]  44/7
litigation [4]  17/21 32/1 32/3 38/16
little [9]  16/22 17/14 54/6 72/9 76/13
82/13 83/9 86/16 106/12
live [2]  68/22 94/4
LLC [6]  1/7 3/4 85/6 85/7 85/11 85/12
local [2]  45/3 45/9
lodged [1]  13/23
logic [1]  84/12

logically [1]  21/5
long [8]  51/16 71/13 111/16 60/12 84/14
107/11 107/25 108/2
longer [4]  59/20 68/8 68/9 70/11
look [33]  10/17 18/7 21/16 21/25 29/11
33/1 36/20 42/4 42/19 44/8 44/13 49/13
51/12 51/20 51/23 53/15 54/7 54/18
55/5 64/11 78/25 79/6 80/13 82/9 85/15
89/6 91/12 96/24 98/20 105/10 106/15
108/13
looked [6]  4/14 53/8 54/16 57/12 62/25
108/12
looking [11]  15/24 24/11 37/18 43/18
63/17 63/19 65/22 76/14 76/21 82/3 83/9
looks [1]  24/11
loses [1]  105/9
lot [6]  3/21 3/22 9/4 21/25 53/23 108/18

**M**

made [14]  10/1 31/3 35/4 35/15 35/25
37/19 46/25 48/5 56/25 63/15 70/13
81/23 105/9 106/11
MAGISTRATE [1]  1/11
main [3]  52/8 52/19 103/13
Majdi [1]  22/25
majority [2]  24/3 25/20
make [32]  5/18 10/14 11/1 14/2 19/10
13/13 26/24 37/9 54/6 63/14 63/20 63/21
64/19 67/17 67/18 72/13 73/13 74/2 74/3
74/16 80/5 82/11 87/7 89/16 93/18 97/14
99/1 102/18 106/16 106/17 107/1 108/2
makes [2]  15/17 52/3
making [7]  26/16 56/24 57/4 86/17
102/19 105/25 106/1
management [3]  31/17 48/2 65/21
manages [1]  75/20
Mancari [3]  2/7 109/16 109/16
many [3]  42/5 96/8 96/9
March [5]  16/25 33/13 37/20 93/11
93/13
Martinez [23]  3/3 6/23 12/6 17/2 18/25
22/19 25/25 26/5 26/9 29/11 29/16 30/23
31/9 31/10 32/4 34/24 42/23 48/16 49/12
52/24 53/18 53/21 64/16
Martinez's [1]  55/25
Massaad [6]  50/11 81/14 85/3 85/5 95/9
98/5
Massaad's [1]  81/15
materials [1]  65/1
matter [22]  4/18 5/7 5/10 5/12 6/21 6/22
6/25 7/2 16/7 32/18 41/11 45/4 45/15
45/20 61/21 64/21 82/15 82/16 96/8
103/20 104/14 109/14
matters [5]  3/18 7/11 7/17 12/20 30/4
may [34]  3/16 6/15 6/15 13/7 20/3 20/3
21/1 21/4 21/9 21/9 21/11 26/12 26/14
29/3 32/7 40/18 41/22 42/7 42/9 42/13
49/14 53/14 59/21 60/6 60/10 64/21
64/25 67/20 67/20 74/23 86/4 93/17
98/12 102/7
maybe [14]  4/7 24/22 29/16 29/19 44/20
56/22 63/7 64/1 71/20 76/18 87/6 91/23
91/23 91/25
MC [1]  30/22
me [73]  3/19 3/24 4/23 5/1 7/24 8/18
9/21 10/14 11/1 12/6 12/7 12/16 14/20
15/5 16/12 22/5 22/6 25/8 27/25 32/23
33/1 33/4 36/16 39/20 46/5 46/24 47/11
51/19 53/17 53/21 53/24 53/25 58/3
60/10 61/4 61/13 63/20 64/10 64/14 64/14

64/23 65/5 65/25 66/7 68/4 70/5 74/3
76/20 77/9 78/15 79/15 79/19 80/3 80/10 85/13
86/2 87/6 88/6 93/17 94/23 101/10
102/23 104/6 104/12 104/14 105/10
105/16 105/20 105/22 106/23 107/11
108/7 108/14 108/17
me.com [2]  83/16 85/10
mean [17]  12/9 15/23 21/5 21/19 24/24
33/16 39/25 40/4 49/25 56/14 72/10
73/22 74/19 86/6 88/9 101/23 106/24
means [2]  74/14 75/16
meant [1]  25/15
measure [1]  44/9
medium [1]  91/2
meet [1]  68/18
meetings [3]  23/2 23/4 93/1
meets [1]  13/3
members [1]  56/14
memorandum [2]  6/6 34/13
mention [1]  47/18
mentioned [2]  83/18 100/25
merit [1]  39/7
merits [1]  59/10
Merry [1]  109/7
mess [1]  3/18
message [2]  91/5 91/6
messages [3]  62/1 62/3 91/3
messaging [1]  90/25
Miami [1]  1/4 1/15
microphone [3]  16/23 66/23 71/15
Middle [3]  30/2 30/7 57/9
might [19]  5/2 7/16 18/7 21/16 21/18
46/9 51/9 51/12 54/3 54/5 56/22 63/9
66/17 82/18 82/18 83/20 84/8 89/14
104/4
milchev.com [1]  1/20
MILLER [2]  1/18 18/5
million [8]  27/10 27/16 27/18 79/9 79/10
79/17 79/19 84/12
millions [1]  37/7
mind [2]  4/12 35/14
minute [6]  10/25 14/13 34/3 53/22 64/23
99/19
minutes [1]  65/9 107/2
mislead [3]  22/21 22/22 56/13
misleading [1]  36/9 36/18 56/17
misreading [1]  76/18
misrepresents [1]  88/24
missed [1]  24/22
misses [1]  36/5
missing [1]  5/1
mistaken [1]  100/8
mix [1]  47/14
moment [1]  33/4
monetary [1]  88/4
money [21]  27/21 68/7 77/5 78/15 79/9
86/3 86/10 86/23 86/23 87/3 87/4 87/11
87/13 87/20 92/12 92/14 92/17 93/24
93/25 94/14 95/21
moneys [1]  93/3
monies [2]  37/4 69/18
month [2]  17/14 42/7
months [5]  19/6 45/25 49/4 56/21 58/1
Moosegg [1]  23/3
moot [13]  7/17 8/23 9/1 9/16 11/3 11/14
11/15 11/22 12/3 13/22 14/9 102/22
102/23
moots [2]  7/20 9/15
more [18]  12/12 28/19 44/10 45/5 45/9
45/25 46/2 46/17 46/19 51/14 54/4 61/13

**M**

more... [6] 63/5 63/18 64/15 75/9 77/19 106/2
Moreover [1] 91/14
morning [8] 3/7 3/9 3/10 3/12 3/13 3/16 10/21 34/9
morphed [1] 17/4
motion [27] 5/4 5/11 5/13 5/16 8/15 9/14 12/12 13/4 17/7 17/12 25/16 26/21 59/4 59/6 59/8 59/11 60/8 62/24 64/11 69/6 71/2 75/2 75/14 82/22 82/24 102/20 102/24
motion-wise [1] 8/15
motions [4] 7/20 13/7 46/1 55/23
move [8] 4/1 4/3 10/4 43/18 43/22 45/23 82/20 87/3
movement [5] 87/4 90/11 90/11 90/14 91/6
movements [1] 84/13
moving [3] 74/25 84/12 85/9
Mr [6] 38/9 45/4 59/5 73/7 85/20 90/3
Mr. [164]
Mr. Azima [12] 3/8 17/14 18/14 48/3 48/10 50/14 52/2 52/21 78/10 81/21 81/25 88/5
Mr. Azima's [1] 62/5
Mr. Del [2] 48/2 54/19
Mr. Forlit [55] 5/24 5/25 6/13 10/20 11/3 11/9 25/22 25/23 27/4 28/24 35/18 37/5 37/7 38/21 38/23 39/8 39/9 39/13 44/10 45/19 50/10 50/15 58/5 58/9 61/20 62/1 62/2 66/9 67/8 67/8 67/14 68/6 69/21 70/1 70/7 75/19 81/10 85/25 86/9 88/19 88/22 92/24 94/9 95/7 95/13 95/16 95/18 96/23 97/20 99/5 99/14 99/18 99/24 100/7 107/19
Mr. Forlit's [5] 26/18 46/15 83/14 99/2 105/25
Mr. Goldberger [3] 89/18 89/25 90/6
Mr. Gur [1] 75/20
Mr. Halabi [3] 38/14 38/14 47/8
Mr. Halabi's [1] 38/19
Mr. Holden [3] 38/16 38/18 52/3
Mr. Massaad [1] 85/5
Mr. Page [32] 25/17 25/18 25/19 26/13 27/5 28/15 29/17 30/18 31/18 32/7 35/1 35/12 35/14 38/20 47/8 48/12 51/20 51/21 51/22 52/5 52/22 52/25 53/5 55/19 56/19 57/10 60/6 60/13 61/19 62/1 62/3 94/10
Mr. Page's [18] 24/16 25/21 26/10 27/2 30/25 32/24 33/3 33/24 35/21 36/21 36/23 38/6 38/25 38/25 42/23 55/4 62/4 62/16
Mr. Salivar [22] 12/1 14/14 24/3 25/10 25/25 29/19 34/7 34/22 37/9 37/22 41/1 47/25 63/6 63/8 67/17 69/11 82/11 83/3 94/15 96/2 96/5 99/8
Mr. Salivar's [2] 60/5 67/3
Mr. Salizar [1] 81/4
Mr. Shaman [1] 85/24
Mr. Stuart [1] 34/14
Ms [1] 44/13
Ms. [17] 3/9 4/12 5/20 9/21 10/21 23/22 24/9 34/2 34/6 37/23 48/13 51/9 57/13 60/2 61/4 66/7 108/22
Ms. Johannes [16] 3/9 4/12 5/20 9/21 10/21 23/22 24/9 34/6 37/23 48/13 51/9 57/13 60/2 61/4 66/7 108/22
Ms. Johannes' [1] 34/2

**N**

much [9] 20/2 22/9 24/23 41/22 43/21 81/12 83/5 84/1 86/11
multiple [9] 22/23 39/11 39/14 43/1 48/14 48/17 54/17 54/18 67/14
multitude [1] 92/2
must [4] 70/10 70/12 86/19 91/21
my [90] 5/1 5/8 6/12 7/2 7/12 9/4 9/7 9/12 11/1 11/19 13/10 14/7 14/19 14/20 14/20 19/21 20/17 21/2 22/1 34/1 34/8 36/8 36/10 36/19 39/21 42/19 42/20 44/15 44/23 46/1 48/5 53/17 54/15 54/25 55/5 55/13 55/13 56/3 56/18 58/8 58/15 59/2 59/17 61/24 62/24 63/2 63/25 64/6 65/5 66/25 67/21 67/23 67/24 69/8 71/11 71/25 72/15 73/2 74/6 75/8 75/11 78/5 81/12 81/23 85/4 85/6 85/19 85/22 86/20 86/25 87/18 88/6 88/14 89/25 90/3 94/18 94/25 97/15 97/19 98/7 100/1 100/6 101/5 101/12 103/9 103/11 103/13 104/2 105/14 109/13
myself [1] 46/5
N.W [1] 1/18
name [6] 45/15 47/24 49/3 81/15 84/24 108/12
named [3] 48/7 50/11 81/14
names [2] 35/19 108/9
narrow [10] 11/7 29/21 43/24 44/23 62/7 62/8 62/15 76/3 76/6 86/17
narrowed [1] 78/20
narrowly [1] 76/10
narrowly-tailored [1] 76/10
nationals [1] 45/21
nature [2] 30/9 30/13
navigate [1] 4/24
nearly [1] 32/1
neatly [1] 8/20
necessarily [2] 15/23 32/10
necessary [1] 41/14
need [16] 8/2 13/4 19/10 32/5 32/15 39/25 41/25 44/23 46/22 49/13 53/1 53/9 53/11 53/17 67/21 102/4 107/5
needed [5] 7/8 40/18 49/15 51/19 59/20
needs [1] 19/18
Neil [1] 22/24
neither [7] 41/5 42/25 50/16 64/22 81/9 97/20 98/1
never [15] 12/14 24/19 39/8 39/9 39/18 41/1 41/1 46/9 48/5 48/6 58/17 59/5 68/9 70/12 71/5
nevertheless [1] 51/23
new [50] 7/14 7/15 17/10 17/11 17/16 17/19 17/22 19/4 20/13 21/12 23/10 24/13 30/21 39/24 40/1 40/8 40/9 40/12 40/17 40/19 41/5 41/18 41/23 42/5 43/17 44/4 44/7 44/9 49/20 49/24 49/25 50/13 54/2 54/9 54/24 55/2 55/17 57/3 58/21 59/3 60/19 61/7 65/10 65/19 72/23 76/9 90/2 103/20 103/25 109/4
newly [1] 11/9
newly-produced [1] 11/9
next [4] 42/7 49/4 107/21 107/22
nice [1] 109/5
Nicholas [1] 31/18
night [4] 4/5 24/10 42/21 69/9
no [72] 1/2 3/3 4/8 5/4 10/25 11/14 11/18 11/24 11/25 17/17 17/19 20/6 21/7 23/8 24/25 36/4 36/4 42/18 47/18 47/21 49/23 50/21 52/8 52/22 56/25 57/6 60/1

**O**

03/21 66/3 66/14 67/12 67/12 67/19 67/22 68/6 68/8 69/22 70/1 70/19 71/10 72/16 77/17 78/11 79/13 80/10 80/11 81/16 84/19 85/2 85/8 86/19 87/10 89/24 90/6 91/9 91/11 91/15 93/13 95/8 95/10 95/25 96/7 96/23 98/5 98/6 98/14 100/2 100/18 100/22 106/23 107/1 107/1
nobody [1] 51/2
non [2] 48/7 54/22
non-named [1] 48/7
none [5] 52/23 94/3 95/12 95/12 98/11
nonparty [1] 20/1 20/2 20/6
nonproduction [1] 75/1
nor [7] 41/5 42/25 50/16 50/16 64/22 81/9 81/9
normal [3] 19/20 102/1 102/10
normally [1] 19/23
North [9] 30/2 48/18 48/23 51/17 54/2 55/16 60/18 61/6 104/14
not [195]
note [4] 46/10 79/9 82/22 88/19
notes [4] 11/1 14/20 63/2 65/5
nothing [20] 18/21 19/4 19/12 35/17 60/1 62/11 66/6 66/21 67/1 70/6 73/4 73/15 78/6 78/10 85/3 88/4 89/23 102/23 108/24 109/2
notice [7] 12/14 13/22 35/7 36/12 36/20 52/22 107/21
notices [1] 13/17 50/4 58/12
November [1] 42/12
now [73] 4/9 5/3 7/25 8/24 11/1 11/25 12/7 12/10 12/16 14/13 17/9 19/3 19/10 19/14 19/16 21/23 24/8 25/3 25/14 26/8 26/16 28/11 29/5 29/14 29/16 31/12 31/12 34/15 35/15 39/23 41/4 41/20 42/12 42/16 43/11 44/18 44/23 47/6 51/6 51/13 54/6 54/19 55/2 56/24 58/4 59/3 59/22 63/14 63/17 66/12 68/21 70/12 71/7 76/10 77/14 77/22 80/4 90/3 95/23 99/17 100/22 101/5 101/10 101/25 103/10 103/15 104/6 104/6 104/21 106/7 106/9 107/10 108/8
null [1] 40/23
number [8] 3/18 6/2 30/4 40/13 40/15 66/1 78/5 88/2
Nusbaum [1] 64/5
NW [1] 1/14

object [2] 12/22 76/9
objection [6] 5/6 5/9 9/4 12/13 14/12 24/12
obligated [1] 75/12
obligation [6] 30/14 56/13 59/12 73/10 87/16 98/14
obstructed [1] 46/12
obtain [4] 18/6 40/24 73/3 74/25
obtained [10] 40/18 41/3 41/22 48/11 52/14 52/17 55/13 72/2 72/22 73/3
obvious [1] 45/10
obviously [14] 9/8 12/12 21/19 25/2 29/1 38/10 38/15 40/7 45/4 56/13 61/7 63/13 67/14 94/11
occur [1] 40/18
occurred [5] 18/1 28/9 32/21 37/10 38/21
October [1] 17/14
odd [2] 12/10 66/11
off [8] 41/21 45/16 46/3 46/4 47/1 79/5 82/2 102/6

## O

offense [1] 37/12
offered [1] 69/23
office [5] 23/3 55/13 59/5 85/20 107/6
official [1] 89/20
often [1] 21/4
oh [4] 19/10 43/10 46/17 105/10
OK [34] 4/8 4/23 8/18 11/2 11/14 11/22 11/24 14/4 14/7 14/8 14/12 14/21 16/16 18/20 22/5 24/6 33/1 33/22 36/16 45/7 47/25 53/8 65/23 66/8 68/8 71/1 71/2 73/14 75/18 83/7 100/20 100/24 106/25 107/23
omission [2] 39/3 43/2
omri48 [2] 83/16 85/10
on [192]
once [2] 80/8 107/18
one [49] 4/6 4/15 4/21 8/19 8/20 8/24 8/25 10/25 11/18 20/24 20/24 20/24 22/4 22/6 25/20 28/18 29/10 29/21 32/10 33/11 35/1 39/15 40/14 41/8 41/9 43/4 47/10 48/18 48/18 52/15 54/25 55/2 56/21 60/10 60/11 65/9 73/15 76/14 81/15 83/15 84/9 89/11 93/25 95/4 104/6 106/15 106/19 106/21 108/20
one-way [1] 22/4
ones [10] 55/15 55/16 71/10 71/22 72/1 72/10 72/25 80/9 82/12 90/15
online [1] 42/10
only [33] 4/6 4/15 11/18 11/25 14/24 22/16 27/12 28/23 34/19 34/19 39/2 39/8 41/3 60/6 69/17 71/25 73/10 80/1 82/2 82/3 82/24 85/22 95/17 95/22 97/4 97/5 99/6 99/9 100/25 101/12 101/22 102/19 103/13
open [20] 5/5 5/7 5/10 5/12 5/15 5/20 6/21 6/21 6/25 7/22 8/15 8/19 9/8 9/11 9/13 11/18 76/11 84/23 101/14 108/7
open-encompassing [1] 76/11
openly [1] 17/10
operated [2] 37/7 89/1
operates [1] 61/18
operating [1] 17/7
operation [1] 77/4
opponent [1] 30/15
opposed [1] 52/17
opposition [1] 13/24
or [147]
oral [1] 36/11
order [28] 5/6 6/20 6/23 6/24 7/11 7/13 9/5 9/14 10/16 12/20 12/23 14/16 14/16 14/18 25/2 25/19 26/6 29/24 41/1 41/2 42/10 42/11 63/5 65/21 75/3 81/21 100/13 107/13
ordered [2] 20/5 101/8
organization [1] 4/1
organized [2] 65/5 86/21
original [3] 5/14 12/23 18/25
other [48] 4/4 4/8 6/14 6/16 7/16 8/2 13/7 16/6 20/7 21/19 22/9 23/16 27/23 29/11 31/23 36/24 37/5 42/24 42/25 43/6 44/10 44/19 47/9 52/10 52/11 53/16 56/10 57/18 59/13 60/13 68/17 71/12 71/14 71/24 77/18 82/6 83/19 85/9 89/14 89/15 90/24 92/11 93/15 96/23 97/1 102/23 104/6 108/20
others [2] 82/19 83/21
otherwise [8] 20/4 87/2 93/24 102/22 102/22 105/8 105/20 106/16
our [24] 4/15 6/8 10/5 19/10 24/2 24/5 25/8 27/2 28/15 34/16 39/1 49/7 60/8 62/17 64/25 65/11 65/15 73/17 79/11 82/1 84/1 92/12 107/21 107/21
ourselves [1] 102/6
out [42] 9/6 9/8 9/19 20/20 21/15 23/16 25/1 35/22 35/23 36/1 36/23 36/24 38/23 41/8 41/9 43/9 46/7 46/8 47/2 51/11 53/14 54/11 60/6 61/22 62/15 63/3 64/14 68/22 72/22 74/10 76/13 78/15 82/10 84/12 87/14 87/25 92/17 101/16 102/5 103/17 105/16 107/3
outline [1] 34/13
outlined [1] 32/21
outset [1] 58/1
outside [3] 13/16 58/11 67/20
outstanding [2] 28/18 44/9
over [21] 11/11 17/4 17/14 19/6 22/1 26/2 27/16 27/18 43/24 54/21 68/18 74/18 74/19 74/19 87/8 89/14 89/25 90/6 93/22 96/20 106/13
overbroad [2] 55/6 79/3
overlap [3] 7/16 17/19 19/11
overly [2] 56/5 78/13
oversaw [2] 38/15 89/8
oversimplifying [1] 29/20
overstating [2] 84/10 91/25
own [3] 46/15 63/2 67/15
owned [2] 17/15 37/6
owns [1] 61/18

## P

P.L.L.C [1] 2/3
pace [1] 41/23
Pacer [1] 57/17
page [75] 10/17 17/18 22/25 25/17 25/18 25/19 26/13 27/5 27/10 27/21 28/2 28/15 29/5 29/6 29/17 30/3 30/18 31/5 31/18 32/7 33/15 34/14 35/1 35/12 35/14 37/19 38/5 38/20 43/3 43/9 47/2 47/8 47/12 47/13 47/20 47/23 48/12 51/20 51/21 51/22 51/25 52/5 52/7 52/11 52/14 52/19 52/25 53/5 53/14 55/10 55/19 56/19 57/6 57/6 57/10 57/21 60/6 60/13 60/22 61/9 61/11 61/14 61/19 62/1 62/3 64/14 64/20 65/24 66/1 66/4 66/15 94/10 97/24 104/13 105/7
Page's [19] 24/16 25/21 26/10 27/2 28/6 30/25 32/24 33/3 33/24 35/21 36/21 36/23 38/6 38/25 38/25 42/23 55/4 62/4 62/16
pages [2] 1/8 10/17
paid [16] 27/21 28/3 37/4 38/23 61/16 61/19 70/9 70/20 77/6 79/25 92/24 93/2 95/15 97/6 98/20 99/21
painful [1] 100/14
Palm [1] 64/6
paperless [1] 107/13
papers [2] 24/3 24/5
paragraph [6] 18/24 30/1 30/17 33/24 36/7 36/14
paragraphs [3] 22/24 46/11 61/2
parcel [1] 18/11
part [26] 4/16 6/25 11/12 13/12 16/3 18/11 19/2 24/16 27/12 27/13 33/9 36/17 39/1 42/19 46/14 47/5 47/8 52/6 69/21 71/2 71/3 81/5 82/22 82/22 90/9 97/14
parte [3] 29/23 30/9 30/12
participants [1] 48/10
participate [1] 51/1
participation [1] 50/21
particular [2] 27/24 103/1
parties [13] 7/8 12/24 19/22 28/23 39/24 40/8 48/7 54/18 55/2 58/12 77/6 80/24 83/4
party [14] 17/22 19/22 22/2 30/13 30/15 44/11 44/20 45/23 48/5 52/21 59/3 74/7 79/23 81/25
pass [5] 24/10 86/3 87/11 94/14 96/17
pass-through [2] 86/3 87/11
pass-throughs [1] 96/17
passing [2] 42/21 69/9
past [4] 19/6 24/19 35/15 103/17
path [1] 38/22
patience [1] 38/2
pattern [1] 15/4
pause [3] 5/18 38/1 38/4
pay [2] 61/19 79/23
paying [1] 95/21
payment [2] 28/4 96/17
payments [17] 27/14 69/7 69/15 69/18 70/13 71/20 77/3 77/20 78/10 79/21 80/15 81/23 82/4 82/17 82/25 83/1 97/10
pejorative [1] 12/9
pending [18] 3/21 4/24 5/2 6/17 7/11 7/16 8/16 17/20 39/13 39/23 40/21 41/11 41/20 48/2 64/17 64/17 102/23 104/7
people [10] 21/6 39/11 39/14 48/15 48/23 48/24 83/24 86/6 107/4 107/7
percent [2] 27/17 43/20
percentage [1] 27/15
perfectly [1] 108/8
perform [1] 75/8
performed [3] 81/10 81/13 85/5
perhaps [2] 10/5 38/23
period [1] 72/14
perjured [2] 26/14 26/16
perjurious [1] 36/13
perjury [2] 16/3 91/18
permitting [1] 81/1
perpetrated [2] 48/24 91/19
perpetrator [1] 54/20
perpetrators [2] 31/21 48/11
persist [2] 101/6 104/18
person [5] 34/19 34/20 39/16 39/18 74/18
personal [2] 5/24 52/8
persons [1] 50/8
pertain [4] 58/14 85/22 88/4 103/22
pertaining [14] 48/9 50/6 50/10 55/3 60/1 75/3 81/22 84/19 84/24 85/2 88/14 88/16 95/8 103/20
pertains [2] 18/10 98/5
perused [1] 21/20
petition [29] 5/23 6/4 16/1 16/14 24/17 25/1 25/2 25/3 25/19 27/3 28/15 29/2 30/22 31/7 31/12 31/22 33/14 35/11 35/13 36/2 36/24 39/1 43/6 43/7 49/13 51/16 53/19 57/3 106/16
petitioner [61] 3/8 3/11 5/12 8/23 9/25 11/6 13/4 13/6 17/9 17/10 18/3 18/19 19/3 19/14 19/25 23/6 24/15 25/18 26/9 28/10 29/24 30/5 30/19 31/17 34/12 35/17 36/24 39/4 39/8 45/5 50/9 50/18 53/7 54/14 54/17 55/19 55/20 55/21 55/24 56/6 56/11 57/2 57/25 59/19 59/20 59/22 62/17 69/20 69/20 72/6 72/22 72/25 74/24 75/6 75/10 77/18 82/24 88/13 90/13 102/5 108/24
petitioner's [6] 5/4 10/3 26/1 30/19 70/2 88/3

**P**

petitioners [2] 16/4 47/3 108/23
PGG [1] 30/22
phase [2] 41/17 42/6
phrase [2] 23/23 77/13
phrased [1] 78/12
pick [1] 8/20
picture [2] 54/16 56/1
piece [1] 76/13
pile [1] 34/8
place [7] 12/11 12/11 37/12 52/3 60/11
78/8 101/25
places [2] 21/14 33/17
plaintiff [3] 1/4 1/13 3/6
plaintiff's [1] 77/25
Plan [1] 97/24
planning [2] 49/2 53/11
played [2] 36/17 68/10
plays [1] 61/22
pleading [5] 25/11 25/15 35/6 35/8 38/7
pleadings [8] 7/15 34/25 38/7 38/10
43/21 49/20 60/12 73/14
please [3] 3/5 107/24 107/24
plenty [1] 75/14
plural [1] 68/2
point [32] 10/2 18/14 24/22 24/25 28/16
28/20 28/20 29/23 30/17 31/14 32/17
33/25 34/12 36/5 36/8 44/3 46/10 49/4
52/8 53/21 54/13 55/12 60/20 61/24
75/13 92/1 92/1 94/19 96/11 101/20
103/13 108/2
point-blank [1] 60/20
pointing [1] 38/20
points [3] 29/22 41/25 45/12
poisonous [1] 105/13
position [9] 6/8 10/3 31/7 42/25 49/8
60/12 60/22 60/23 103/8
possess [2] 74/14 91/15
possession [13] 67/23 69/20 75/15 86/12
89/17 91/20 92/7 93/19 93/21 94/1
95/11 99/2 99/10
possible [2] 10/4 62/9
possibly [3] 59/19 95/4 95/5
postdates [1] 18/21
postdating [2] 17/25 23/11
potential [2] 52/21 59/10
potentially [3] 7/17 12/19 71/22
pound [2] 22/6 22/6
power [3] 19/25 96/20 99/20
practicing [1] 57/16
pre [2] 18/6 20/21
pre-suit [2] 18/6 20/21
precedent [1] 3/19
precisely [3] 39/21 63/18 63/19
precluded [1] 102/18
predate [1] 98/10
predated [1] 94/21
predates [2] 30/22 54/25
prejudice [2] 90/18 105/24
prepared [5] 9/10 14/15 25/5 59/21 63/5
64/13 94/9 95/15 100/3
preparing [2] 22/20 52/12
present [2] 22/20 52/12
presented [3] 17/2 26/8 31/2
preserve [2] 12/13 103/3
preside [1] 68/17
presumably [2] 84/1 88/21
pretty [2] 44/23 45/10
previously [9] 42/15 52/18 54/22 55/20
65/13 72/22 76/9 86/1 88/2

printed [1] 34/9
prior [7] 12/20 30/25 31/8 35/4 73/14
90/5 98/1
private [1] 48/4
privy [1] 34/20
pro [1] 18/4
probably [7] 13/8 21/13 76/22 94/11
101/18 107/3 107/3
problem [10] 18/16 20/25 23/20 24/9
53/2 56/6 70/15 78/3 78/12 96/22
problematic [4] 18/23 21/16 21/17 82/13
problems [5] 29/12 30/24 31/5 53/4 68/6
procedurally [4] 9/24 12/10 21/21 28/8
procedure [2] 40/13 98/15
proceed [3] 40/16 72/9 105/21
proceeding [29] 15/10 19/19 19/20 20/1
20/4 29/23 29/25 30/21 38/10 38/11
46/12 48/6 48/22 50/13 53/25 54/9 54/12
54/24 55/2 55/20 57/15 57/24 58/21
62/20 63/19 64/19 78/2 91/18 103/15
proceedings [24] 3/2 18/22 19/5 19/7
19/10 19/12 20/7 30/5 38/7 38/8 50/7
52/4 52/21 53/2 53/10 53/12 54/23 55/14
55/18 56/9 57/8 58/8 78/11 81/17
process [7] 30/11 40/12 41/15 43/21
45/23 45/24 104/3
produce [19] 20/19 58/19 63/21 66/6
66/21 71/1 71/21 72/5 72/6 72/7 73/3
73/10 73/25 78/25 79/2 81/1 81/22 101/7
102/24
produced [19] 11/9 12/25 50/5 58/8 71/4
71/5 71/5 71/6 83/1 84/11 85/4 88/1
97/23 98/9 101/25 102/2 102/3 103/16
103/18
producing [1] 70/2
production [16] 17/1 52/22 54/25 56/3
58/13 59/1 68/12 69/1 70/16 72/3 72/15
75/3 75/7 75/11 87/5 90/10
proffer [1] 93/23
proffered [1] 28/15
prohibited [1] 15/11
project [15] 27/14 27/16 28/2 28/4 79/10
79/20 79/21 84/24 97/5 97/6 97/8 97/8
97/11 97/17 97/23
promise [1] 44/6
proof [1] 70/19
proper [3] 40/24 41/10 73/11
Propis [1] 75/21
propose [1] 107/23
proposed [1] 22/18
propped [1] 77/14
prosecuting [1] 23/12
protective [3] 41/1 41/2 75/2
protocol [1] 84/23
prove [2] 21/3 81/20
proven [1] 61/20
provide [9] 20/5 50/23 53/3 58/22 69/11
82/5 82/25 87/19 91/7
provided [14] 18/9 24/18 31/19 32/13
38/14 38/16 48/16 48/17 52/24 55/21
57/25 90/1 90/10 100/7
provides [1] 19/25
providing [1] 36/13
proving [1] 37/17
provoke [1] 31/13
public [4] 34/21 34/23 57/11 57/16
pull [4] 7/24 8/22 10/8 65/5
pulling [4] 22/17 33/3 37/1 106/13
purchase [1] 92/3

purpose [8] 19/15 19/24 29/9 27/23
32/16 54/8 54/11 59/7
purposes [17] 6/22 15/15 16/6 23/12
27/25 35/8 35/24 50/2 50/8 55/7 56/8
59/14 65/7 67/23 70/24 81/24 95/14
pursued [1] 101/13
pursuing [2] 21/10 48/17
put [5] 21/6 31/5 32/9 68/24 103/4
putting [2] 21/11 62/2

**Q**

qualifies [1] 105/8
question [11] 11/8 13/10 39/20 53/19
56/18 58/3 80/3 85/13 86/2 92/6 99/16
questioned [3] 78/6 97/19 99/14
questioning [1] 18/12
questions [6] 11/9 13/13 27/8 50/6 58/10
103/18
quick [1] 4/13
quicker [1] 9/18
quickly [2] 42/4 75/7
quite [1] 11/2
quote [1] 57/9
quotes [1] 57/8

**R**

railroad [1] 9/18
raise [2] 20/23 106/5
raised [5] 29/22 30/17 33/24 42/1 44/15
raising [1] 51/5
RAK [5] 17/21 17/21 30/5 52/15 54/22
RAKIA [4] 17/21 17/21 47/6 52/16
rate [2] 44/8 108/18
rather [1] 17/4
Re [2] 57/4 61/3
read [11] 10/10 12/5 27/7 29/5 61/11
62/15 62/16 67/3 69/12 77/21 100/14
reading [4] 11/19 25/10 63/25 76/9
real [2] 24/14 55/7
reality [3] 35/16 41/18 43/22
realize [2] 34/10 36/9
realized [1] 4/5
really [26] 4/1 9/11 10/5 14/24 15/6
15/15 15/21 16/5 20/2 20/6 24/22 24/23
43/5 43/20 44/1 53/10 54/7 54/13 61/10
64/15 68/17 69/13 82/16 98/19 107/25
108/11
reamend [1] 107/22
rears [1] 104/11
reason [10] 15/11 16/20 19/13 35/20
40/2 61/13 68/4 72/11 92/9 99/4
reasons [1] 24/7
recall [2] 26/13 33/23
recantation [1] 36/7
recantations [1] 34/21
recanted [3] 26/15 32/25 35/3
receipt [1] 87/13
received [7] 27/10 28/4 37/2 37/7 69/18
86/23 87/20
receiving [1] 88/12
recent [1] 5/16
recently [2] 42/10 58/18
Recess [1] 65/4
recollection [2] 7/3 100/6
reconsider [3] 5/14 18/17 81/6
reconsideration [4] 9/14 17/13 31/11
51/16
reconsidered [4] 25/3 41/8 41/9 43/8
record [17] 3/5 4/18 10/15 24/7 47/22
57/12 57/16 70/19 82/23 91/23 97/15

R

record... [6]  100/13 100/22 101/15 106/7
106/11 106/18
recording [2]  1/10 109/14
records [85]  23/4 37/3 55/1 56/3 56/4
58/19 58/22 61/25 62/11 62/12 62/13
62/13 69/7 69/15 69/19 69/23 70/6 70/10
70/13 70/14 70/21 70/22 71/4 71/7 71/9
71/12 71/12 71/14 71/18 71/19 71/22
71/24 71/25 72/4 72/11 72/16 72/18
72/20 73/2 73/2 73/21 73/25 74/4 74/8
75/18 75/22 75/24 76/1 76/4 76/15 76/18
76/24 76/24 76/25 77/3 77/5 77/7 77/11
77/15 77/20 78/4 78/9 79/7 79/20 79/24
80/4 80/14 80/22 81/1 81/22 82/2 82/21
83/1 83/8 83/8 83/12 84/5 91/12 91/13
91/22 92/2 92/6 92/11 94/3 103/21
recover [1]  21/8
recoverable [1]  23/11
recreate [2]  98/13 98/14
redlined [2]  35/7 35/9
refer [1]  94/12
reference [3]  57/4 81/7 84/24
referenced [7]  20/12 30/1 30/3 30/20
69/19 72/4 98/1
referencing [1]  52/1
referral [2]  6/22 12/20
referred [5]  3/18 12/7 12/21 47/1 84/22
referring [3]  33/7 72/25 73/1
reflect [8]  43/21 69/18 71/19 76/1 76/19
77/15 79/24 83/22
reflected [1]  17/6
reflecting [2]  70/13 83/25
reflects [2]  16/21 16/24
refused [1]  11/10
regard [5]  10/8 45/18 80/24 83/19 91/20
regarding [6]  11/8 14/11 23/1 90/11
91/22 97/15
regardless [3]  35/14 44/6 103/2
registered [7]  83/19 85/17 85/18 85/21
90/2 90/5 90/6
regular [1]  94/9
rehear [1]  108/10
rehearing [1]  35/9
reissue [1]  24/12
relate [6]  19/9 83/23 86/14 91/18 91/22
97/7
related [17]  6/10 17/15 19/1 19/7 23/8
37/8 49/6 53/10 56/8 78/24 79/10 79/19
80/9 84/13 85/23 87/20 87/25
relates [2]  40/22 79/11
relating [6]  22/21 30/25 50/9 69/12 92/2
102/7
relatively [1]  19/17
relevance [1]  78/11
relevancy [5]  43/12 51/12 52/10 64/18
64/19
relevant [37]  15/23 17/11 21/7 23/15
23/16 37/12 37/15 39/21 40/24 43/13
46/20 47/4 48/19 49/7 49/21 50/1 53/2
53/24 54/5 56/8 59/18 59/22 59/24 61/14
61/21 61/23 63/19 80/20 80/25 82/7 88/8
88/8 89/12 91/17 101/22 103/1 104/24
reliability [2]  30/6 62/16
reliable [1]  30/6
relied [2]  25/18 35/24
relief [13]  8/23 10/18 10/19 11/6 20/6
24/15 28/10 28/10 36/25 37/20 55/23
58/6 58/7
rely [3]  24/2 24/5 36/24

relying [2]  31/8 55/4
remainder [1]  36/19
remember [6]  47/11 74/23 108/3 108/6
108/7 108/14
remind [1]  108/17
remote [1]  14/8
remove [2]  37/19 107/16
renege [1]  10/2
reneging [1]  35/4
rep [1]  88/1
repeatedly [1]  19/5
replies [1]  8/5
reply [2]  8/16 60/10
report [5]  94/8 97/17 97/22 98/1 100/2
reporter [3]  2/7 10/19 109/17
reports [30]  19/18 36/10 84/2 84/4 94/9
94/11 94/12 94/17 94/24 95/8 95/13
95/14 95/15 95/21 95/22 96/9 96/12
96/12 96/17 96/18 96/21 97/7 97/16 98/6
98/8 98/9 98/11 99/10 99/20 100/11
represent [2]  50/15 54/12
representation [6]  46/25 69/1 96/14
98/25 99/2 99/21
representations [2]  97/15 100/21
representative [19]  11/8 11/10 18/13
20/19 27/5 50/5 58/9 70/3 88/15 88/23
89/8 89/20 89/22 94/18 95/12 98/3 99/13
102/7 103/11
representatives [1]  13/1
represented [1]  52/2
represents [1]  68/1
reproduce [3]  69/23 70/22 71/21
request [41]  5/8 10/18 10/22 11/14
12/22 13/2 13/17 13/19 17/5 26/1 54/18
56/2 56/5 68/12 69/1 69/10 69/14 70/15
71/21 72/3 72/15 72/17 75/1 76/3 77/10
77/11 79/2 81/6 82/23 87/23 90/9 93/16
94/2 94/25 95/10 97/3 98/21 101/15
102/5 102/17 105/2
requested [6]  6/9 8/23 18/9 18/17 26/5
55/6
requesting [4]  5/4 19/6 59/4 68/13
requests [11]  9/25 10/2 10/8 58/13 59/1
70/18 73/9 75/7 76/10 77/14 84/9
require [1]  102/3
required [2]  36/21 70/17
requires [2]  64/12 74/10
requiring [1]  9/5 70/22 80/7
RESEARCH [8]  1/6 3/4 3/15 66/22 67/2
85/7 85/11 87/22
researching [1]  47/16
reserve [1]  7/5
resolution [1]  4/25
resolve [2]  12/25 44/1
resolved [1]  46/2
resources [2]  20/18 43/16
respect [13]  11/6 15/2 25/10 26/8 34/16
35/12 35/21 82/21 83/12 86/7 87/2
102/20 105/25
respective [1]  105/15
respectively [1]  8/12
respects [1]  15/6
respond [6]  13/5 14/15 22/8 37/23 46/22
98/17
responded [4]  58/13 58/23 69/3 73/4
respondent [9]  5/17 20/7 30/15 36/22
69/25 81/23 89/4 90/13 109/1
respondents [24]  3/14 9/3 9/12 28/11
46/6 48/25 50/15 62/10 66/3 66/5 66/16
68/6 71/6 74/24 76/1 76/19 77/16 82/2

82/3 91/15 99/10 99/13 99/18 109/2
respondents [4]  5/19 5/23 25/12 77/12
responding [1]  74/23
response [57]  8/10 8/16 9/2 13/11 23/14
23/15 24/10 24/12 24/22 24/24 24/24
25/7 25/8 28/17 29/3 32/5 39/6 42/20
47/25 48/15 58/18 58/24 59/5 59/8 60/8
63/17 66/1 66/2 66/18 66/20 67/1 67/24
68/20 68/20 68/21 68/24 69/11 69/25
70/17 72/2 72/2 75/5 76/5 79/3 84/17
84/18 87/19 91/13 91/16 94/10 94/15
94/24 94/25 95/1 95/3 98/11 99/9
responses [4]  8/6 58/16 75/7 96/14
responsive [4]  71/4 76/2 77/16 97/3
resubmit [5]  105/17 105/18 106/17
106/20 107/22
result [2]  16/13 45/22
retained [8]  50/17 52/15 52/16 95/9
95/12 98/6 98/12 100/4
retrial [4]  26/13 41/20 41/21 47/4
returns [9]  75/19 76/4 76/7 76/11 76/25
77/2 79/5 82/21 82/23
reveal [1]  79/25
reverse [1]  7/12
review [2]  5/8 18/25
reviewed [2]  19/16 78/5
reviewing [1]  33/23
reviews [1]  10/18
RICO [17]  17/16 18/7 20/13 21/19 23/9
41/19 45/5 45/18 46/11 46/14 46/16 49/3
51/17 55/3 59/22 59/24 65/10
rid [1]  83/5
right [127]
rightly [1]  14/17
rights [1]  12/13
ripe [1]  4/21
rise [1]  46/18
Robert [1]  33/15
role [1]  80/1
roped [1]  20/17
Rosso [3]  31/18 48/2 54/20
RPR [2]  2/7 109/16
rub [1]  49/19
rule [29]  7/5 12/23 13/16 18/8 18/18
25/6 26/1 26/4 53/15 59/16 63/7 63/8
63/11 63/22 64/2 64/13 64/21 65/11
65/14 65/15 69/21 72/24 75/16 78/4
101/4 101/16 102/4 103/19 107/17
ruled [3]  29/16 44/11 51/24
Ruler [1]  36/10
rules [4]  59/13 74/9 98/15 98/16
ruling [8]  9/7 9/12 25/6 91/4 101/13
101/14 101/19 103/17
rulings [3]  30/25 101/5 103/9
running [1]  28/1
ruse [2]  18/6 20/15

S

said [21]  4/14 6/23 17/23 18/19 19/3
22/19 36/10 36/23 53/8 56/1 57/13 58/6
59/22 60/16 60/18 64/12 94/5 95/25
99/17 105/4 107/25
sake [1]  97/13
Salah [2]  57/5 61/3
SALIVAR [25]  2/2 2/3 3/14 12/1 14/14
24/3 25/10 25/25 29/19 34/7 34/22 37/9
37/22 41/17 47/25 63/6 65/14 67/17 69/11
82/11 83/3 94/15 96/2 96/5 99/8
Salivar's [2]  60/5 67/3
Salizar [1]  81/4

same [21] 18/4 21/13 23/8 31/25 32/8 33/11 43/19 43/24 44/21 49/1 49/9 59/18 72/4 75/19 90/19 91/2 91/4 99/3 99/3 103/25 108/9
sanction [5] 11/17 14/15 16/10 16/11 16/12
sanctionable [6] 15/12 15/17 15/21 15/24 15/25 16/9
sanctioning [2] 9/3 9/5
sanctions [18] 5/4 5/17 9/2 9/2 9/11 10/1 10/22 12/2 14/16 14/23 15/4 19/18 21/22 22/15 23/20 60/9 74/20 74/25
sat [4] 12/15 12/15 27/4 28/14
satisfied [1] 11/15
saved [1] 85/2
saw [1] 57/10
say [46] 8/20 9/25 12/9 20/15 22/9 23/7 24/20 31/12 32/10 35/12 38/5 40/20 46/13 50/25 51/20 52/10 55/6 57/14 58/4 61/11 63/9 67/5 67/15 69/13 73/6 73/15 73/16 79/1 80/6 80/13 82/9 82/14 86/11 89/6 89/21 91/16 93/8 93/11 94/5 96/24 97/8 97/10 102/9 105/4 105/6 105/10
saying [26] 10/21 19/7 19/9 24/17 29/14 30/6 52/25 54/18 57/7 57/11 57/22 58/5 58/23 64/10 70/6 70/18 81/20 86/10 96/2 98/18 98/20 98/22 100/12 103/8 104/2 104/22
says [14] 18/14 33/25 36/7 36/22 37/18 65/15 66/14 74/7 74/17 77/11 78/22 95/23 99/9 104/23
schedule [3] 4/10 107/23 108/2
scheduling [1] 65/11
scheme [14] 37/5 37/6 37/8 37/11 37/15 37/17 38/21 38/22 39/12 39/15 39/19 50/21 52/12 91/18
scope [20] 12/19 13/13 13/16 14/11 22/10 44/17 51/9 53/20 54/4 54/5 54/6 56/1 56/7 58/11 58/11 62/7 62/15 77/14 80/19 87/23
scoping [1] 53/17
scratch [1] 106/14
screenshot [1] 62/3
SDC [14] 3/14 47/17 47/20 66/22 67/2 81/12 85/6 85/11 87/22 89/8 89/12 89/19 100/3 100/3
SDC-Gadot [14] 3/14 47/17 47/20 66/22 67/2 81/12 85/6 85/11 87/22 89/8 89/12 89/19 100/3 100/3
search [4] 32/15 47/22 73/16 100/15
seated [1] 3/16
second [4] 11/2 18/23 22/18 63/3
Section [1] 61/10
security [1] 84/23
see [33] 7/22 7/24 9/17 9/20 9/21 14/24 15/3 15/11 15/12 15/17 15/25 16/8 21/21 23/20 24/12 36/16 45/1 46/20 47/22 51/9 51/13 51/18 59/15 59/19 63/8 63/13 88/15 92/8 93/18 100/8 104/17 106/10 107/19
seeing [1] 108/9
seek [12] 11/6 16/13 20/7 21/11 21/13 28/23 36/25 37/20 43/6 58/6 83/11 84/6
seeking [17] 5/23 9/2 21/12 25/12 44/2 54/25 55/3 56/7 57/4 58/7 61/14 76/4 77/8 77/18 83/20 83/21 88/13
seeks [3] 17/23 17/24 42/14
seem [4] 5/3 16/12 79/3 87/6
seems [6] 15/5 53/17 65/21 66/11 77/1

seen [4] 24/21 55/22 101/5 101/9
selected [1] 19/24
self [1] 53/9
self-level [1] 53/9
sending [2] 86/9 89/15
sense [2] 14/2 106/18
sent [3] 87/8 93/8 94/10
separate [5] 4/19 4/20 15/17 15/20 39/4
separated [1] 76/23
separating [1] 21/14
September [2] 17/13 57/2
serve [2] 40/7 45/3
served [10] 12/14 17/3 40/7 45/19 45/21 58/15 70/1 70/19 72/3 72/15
server [1] 86/18
serves [1] 45/3
service [2] 59/1 85/23
services [3] 31/17 31/20 90/25
serving [1] 27/23
set [18] 4/6 4/9 4/11 4/13 7/9 21/24 39/18 42/7 42/12 44/5 44/21 65/13 76/24 86/22 88/21 102/10 103/19 108/19
sets [1] 71/18
settled [1] 52/22
settlement [1] 52/23
setup [1] 21/21
several [1] 83/14
Shaman [2] 85/17 85/24
shape [1] 81/16
shared [1] 84/25
shell [2] 68/10 99/4
ships [3] 24/10 42/21 69/9
shoehorned [1] 78/13
short [1] 62/22
shortchange [1] 44/24
shortly [1] 57/1
should [36] 9/14 12/14 13/9 15/8 25/3 26/10 26/23 27/3 31/10 31/13 35/13 41/5 41/8 41/13 43/7 44/16 46/5 46/6 48/8 51/10 51/20 53/7 55/24 57/17 57/25 63/7 65/18 74/14 75/9 75/10 76/23 87/5 104/24 107/3 107/4 107/9
shouldn't [6] 28/12 28/18 43/8 80/25 90/21 107/25
show [13] 6/20 20/2 20/2 20/14 22/5 33/1 43/12 53/14 53/24 53/25 77/5 92/12 94/4
showed [1] 6/18
showing [3] 13/2 43/11
shown [2] 19/14 20/8
shred [1] 62/9
significant [6] 29/9 43/2 44/9 44/10 64/21 88/2
simple [1] 10/4
simply [5] 7/12 8/11 18/6 46/17 70/14
since [5] 6/22 26/15 27/22 77/1 89/19
single [3] 62/9 84/11 87/24
sir [2] 7/23 105/23
sister [1] 4/19
sit [7] 11/3 14/14 22/8 53/21 58/9 88/14 106/8
sits [2] 70/18 106/7
sitting [2] 4/7 73/11
six [3] 41/20 58/1 90/20
Sixteenth [1] 1/18
skirted [1] 60/20
slice [1] 62/19
sloppy [1] 106/12
slowly [1] 94/7

snap [1] 23/22
snapshot [1] 18/6
snowballing [2] 53/3 53/20
so [182]
sole [1] 39/18
solely [1] 94/14
some [36] 3/23 3/25 13/7 15/6 15/7 15/10 24/11 40/2 41/25 44/14 44/22 49/4 55/9 56/24 69/9 70/2 70/9 70/10 70/16 72/11 72/21 76/19 79/5 79/24 82/18 84/8 84/13 87/16 93/10 93/11 93/23 106/6 107/6
somebody [3] 31/25 39/5 98/8
somehow [3] 86/13 97/9 98/22
someone [7] 16/3 21/4 24/18 31/8 31/24 67/22 92/1
someplace [2] 49/14 49/18
something [26] 5/2 19/14 20/16 23/7 23/12 23/18 32/4 37/14 48/8 51/24 56/16 56/19 57/25 64/20 67/22 70/17 73/7 74/12 80/7 81/20 94/4 98/14 103/7 105/7 105/18 105/21
sometimes [1] 68/6
somewhere [4] 73/11 78/8 80/16 92/25
soon [3] 42/17 108/19 108/20
sooner [2] 3/18 108/5
sorry [12] 5/25 10/12 28/25 33/4 34/4 37/24 40/5 66/7 71/16 71/17 95/1 102/14
sort [7] 6/20 24/11 31/11 44/16 47/1 104/22 105/3
sorts [2] 84/15 104/17
sought [18] 11/16 12/2 17/1 19/21 24/15 26/23 28/10 35/20 39/2 39/4 40/22 41/1 41/2 41/14 45/20 48/9 74/5 92/12
sounds [1] 67/17
source [1] 84/23
South [1] 78/8
SOUTHERN [32] 1/1 7/14 15/10 17/10 17/16 18/8 20/12 21/17 23/10 24/13 30/21 39/24 40/12 40/17 40/19 41/17 41/23 42/5 43/17 44/4 49/3 54/24 55/1 55/17 56/2 57/3 58/20 59/12 61/7 65/10 72/23 103/20
speak [1] 45/5
specific [3] 32/22 83/3 90/12
specifically [11] 15/5 16/20 17/23 18/10 19/1 22/19 33/2 34/13 48/3 57/9 77/24
sponte [1] 19/18
spot [2] 103/5 107/2
square [1] 93/25
stand [1] 106/8
standing [1] 9/22
stands [2] 9/24 68/3
start [5] 13/9 25/9 47/15 80/17 106/14
started [3] 35/18 51/25 105/12
starting [1] 3/6
state [5] 3/5 35/1 36/18 68/5 90/4
stated [12] 24/7 27/22 28/15 32/10 32/20 32/21 32/23 34/14 35/22 68/6 101/15 107/15
statement [2] 18/3 32/10
statements [20] 25/21 26/10 26/16 27/2 27/6 27/6 28/7 34/20 35/2 35/3 35/4 35/15 35/21 37/19 38/20 38/25 38/25 52/6 62/1 62/4
states [10] 1/1 1/11 32/24 36/14 41/15 49/9 56/10 57/17 57/23 75/20
stating [3] 41/2 60/5 61/15
statute [1] 22/13
statutory [1] 22/11

**S**

steal [1]  64/5
stem [1]  37/4
Stewarts [1]  23/1
stick [1]  69/14
still [33]  5/2 5/5 5/7 5/10 6/16 9/16 12/5
  12/13 12/22 23/15 24/25 28/24 28/25
  35/16 36/5 38/12 39/25 40/6 43/9 53/19
  61/21 61/24 62/17 62/19 73/3 92/2
  101/14 101/16 102/13 104/7 106/4 108/6
  108/17
stolen [3]  47/15 84/7 84/8
stop [1]  82/18
story [1]  47/5
strategy [1]  56/15
streamline [1]  10/6
street [3]  1/18 19/21 22/4
stretch [1]  86/11
strong [1]  107/10
strong-arm [1]  107/10
Stuart [9]  22/25 27/10 27/21 28/2 28/6
  33/15 34/14 66/4 66/15
stuff [3]  55/10 67/3 69/13
sua [1]  19/18
subcontractor [1]  79/23
subcontractors [9]  69/8 69/10 69/16 70/8
  70/20 77/21 77/24 78/23 80/21
subject [9]  9/16 87/5 89/16 90/10 90/22
  99/6 101/8 102/25 102/25
subjected [1]  28/12
submit [1]  103/7
submitted [1]  18/24
submitting [1]  93/4
subpoena [6]  22/17 62/15 72/22 73/12
  73/18 80/17
subpoenaed [1]  58/20
subpoenas [6]  17/1 18/24 18/25 22/18
  26/4 85/24
subsequent [1]  13/8
subset [1]  78/25
subsumed [7]  8/24 11/16 11/19 11/23
  13/7 13/11 13/19
such [4]  67/25 70/19 80/10 100/22
sue [1]  53/11
sued [3]  48/11 49/2 54/20
sufficient [5]  20/14 21/21 22/14 51/24
  63/23
suggest [1]  86/17
suggesting [2]  9/12 44/22
suggestion [1]  105/14
suggests [1]  66/11
suing [2]  31/17 48/23
suit [8]  18/6 20/21 31/25 39/4 39/4 39/23
  46/11 46/16
summarizes [1]  38/17
summary [1]  26/21
summer [5]  11/11 25/22 25/24 27/5
  60/11
supplement [7]  6/9 6/19 104/12 104/12
  106/1 106/9 106/17
supplemental [5]  5/23 12/22 29/2 42/11
  104/9
supplements [1]  8/11
support [5]  6/6 15/3 79/21 80/14 82/4
supporting [1]  27/2
supposed [1]  17/1
sure [16]  5/18 10/14 11/1 13/8 19/10
  25/11 25/14 27/13 54/10 65/2 73/12
  73/13 74/2 74/3 97/14 99/1
surely [1]  56/25

Switzerland [2]  23/3 23/4
sworn [6]  24/18 33/9 36/6 47/13 52/5
  52/6
system [1]  57/19

**T**

table [2]  79/5 82/3
tailored [2]  56/4 76/10
take [23]  3/19 7/8 7/16 12/10 12/11
  30/10 36/23 40/13 41/16 53/14 59/20
  61/15 62/15 62/22 63/3 64/14 64/23 76/3
  79/5 84/15 104/25 105/7 107/25
taken [6]  6/24 12/21 75/9 92/17 101/25
  107/11
takes [4]  11/24 37/12 100/24 100/25
taking [2]  43/9 47/2
talk [8]  24/10 51/19 71/7 83/8 93/1 104/6
  107/4 107/5
talking [10]  4/18 37/11 57/6 65/11 68/17
  72/20 87/9 97/16 101/24 102/13
talks [1]  52/12
tax [15]  75/18 76/1 76/4 76/7 76/11
  76/15 76/18 76/24 76/25 77/1 77/15 79/5
  82/2 82/21 82/23
team [1]  107/7
Tech [1]  31/20
Tel [2]  20/20 28/13
tell [26]  3/24 4/23 8/18 12/16 14/23
  32/15 32/16 32/23 38/12 43/5 49/5 49/5
  63/20 63/25 64/9 64/16 74/6 80/9 80/10
  80/15 85/15 93/17 105/16 105/22 106/23
  107/5
telling [2]  44/25 48/13
tempered [1]  75/10
ten [7]  46/1 80/6 80/13 80/14 80/15
  80/15 107/2
term [3]  35/3 75/15 80/18
terminate [1]  81/6
termination [1]  58/8
terms [6]  14/22 39/17 43/16 52/23 61/9
  104/23
test [1]  81/1
testified [18]  43/12 50/10 50/15 50/20
  52/18 59/25 66/3 66/9 67/9 70/8 83/24
  88/2 95/7 95/13 95/16 98/3 100/9 105/11
testifies [1]  52/15
testify [1]  81/11
testimony [36]  16/3 19/1 24/17 24/18
  24/19 25/22 26/16 32/25 36/13 36/22
  38/17 45/14 45/16 47/8 47/11 47/13
  50/23 52/5 52/9 52/13 53/4 55/4 55/18
  66/11 67/8 78/16 81/8 84/21 88/24 93/2
  95/11 96/13 100/2 100/2 100/7 103/22
text [1]  62/3
than [19]  20/7 21/20 22/9 27/23 35/7
  35/15 40/16 41/22 44/10 45/9 46/2 46/17
  51/14 52/10 59/20 71/10 77/18 86/15
  102/23
Thank [10]  16/19 38/2 42/3 45/8 64/25
  65/3 90/23 103/6 108/25 109/6
thanked [1]  70/1
that [862]
that's [48]  11/5 18/4 27/12 27/19 28/9
  28/10 28/19 30/10 32/3 32/4 33/8 33/18
  37/25 39/12 39/17 41/5 43/15 47/15 49/7
  51/11 54/13 57/22 60/16 64/15 66/16
  66/20 67/16 68/21 70/11 70/21 73/1
  73/19 73/20 74/3 77/10 77/13 77/14 78/1
  78/3 78/12 78/15 80/24 90/3 91/7 92/13
  92/22 99/23 100/21

their [25]  15/12 21/10 23/11 24/14 25/16
  25/17 28/20 29/8 31/7 35/8 35/19 46/14
  46/18 49/12 49/24 53/19 56/15 60/12
  67/25 80/1 82/8 84/17 99/13 107/4 107/5
them [60]  8/19 16/12 28/14 40/7 40/7
  47/21 48/4 49/2 49/3 63/15 63/21 67/5
  67/13 67/13 67/15 67/16 68/9 68/10
  68/11 68/21 70/4 70/4 70/9 71/1 71/21
  72/6 72/6 72/7 72/21 72/21 73/3 73/4
  73/22 73/23 73/23 73/25 84/18 87/9
  94/10 94/12 95/5 95/6 95/14 95/16 96/15
  96/15 96/18 97/8 98/9 98/21 98/21 98/21
  99/21 99/25 99/25 102/18 102/19 106/1
  106/7 106/15
themselves [2]  26/4 80/20
then [62]  3/24 5/6 5/11 5/16 6/23 7/5
  9/15 11/2 11/18 14/10 15/15 17/4 18/8
  20/20 22/23 26/15 26/24 28/19 30/1
  37/23 50/5 51/2 52/22 55/5 55/23 58/6
  58/11 63/22 64/24 68/8 68/8 68/11 68/24
  69/12 71/20 72/24 74/8 74/12 74/13
  75/16 79/1 79/6 80/16 82/8 83/4 85/1
  85/9 85/24 86/23 91/7 92/8 93/18 94/8
  94/10 102/2 103/24 105/11 105/21
  107/16 107/17 108/3 108/16
theories [1]  62/5
theory [9]  43/1 48/14 79/18 79/19 92/21
  92/22 93/7 93/10 93/15
there [147]
there's [7]  49/19 54/24 66/14 79/18
  80/23 84/5 84/6
thereafter [1]  35/24
therefore [4]  79/16 95/16 96/19 98/21
therein [2]  7/16 26/11
thereof [1]  6/7
Thereupon [1]  2/9
these [93]  6/14 6/16 17/5 18/13 18/18
  20/7 22/1 22/11 27/22 28/3 28/23 29/12
  29/17 30/18 30/24 34/13 39/24 45/16
  45/18 46/1 46/4 46/6 50/7 51/21 51/24
  52/16 54/3 55/14 55/23 56/9 56/24 57/7
  57/8 58/8 58/20 66/17 67/6 67/7 69/2
  69/16 69/17 70/8 70/18 71/9 74/24 77/5
  78/16 78/16 80/6 80/13 80/15 81/9 82/9
  82/10 82/14 82/16 82/18 83/23 86/15
  86/17 86/20 90/13 91/9 91/14 92/25
  94/11 94/13 94/21 95/3 95/13 95/14
  95/17 96/11 96/15 96/16 96/21 96/24
  96/25 97/3 97/5 97/7 97/7 97/14 97/23
  98/2 98/8 98/10 98/11 98/20 100/10
  105/4 106/6 108/13
they [153]
they'd [1]  102/16
they're [25]  21/3 24/16 27/1 35/9 35/9
  40/6 44/20 45/1 45/9 45/21 46/7 46/13
  53/25 54/7 54/11 57/11 59/17 63/16
  63/18 67/10 73/12 76/14 80/22 81/2
  91/17
they've [2]  53/13 82/7
thing [12]  11/25 22/16 31/25 40/20 45/22
  59/18 73/15 73/15 103/25 104/6 105/3
  107/7
things [21]  3/21 3/24 4/25 6/16 20/23
  22/11 24/21 29/20 34/15 35/1 35/22
  53/23 54/3 56/16 60/3 76/14 84/15 99/5
  104/17 108/6 108/7
think [138]
thinking [9]  14/19 14/20 21/2 39/22
  44/15 64/7 74/6 88/11 103/10
thinks [1]  79/1

**T**

third [4] 40/20 61/24 77/6 79/23
this [226]
those [71] 3/19 10/2 10/22 12/24 14/16
15/7 15/15 17/20 18/2 23/9 23/21 25/13
28/9 29/10 32/5 38/6 38/18 39/17 45/25
46/6 47/10 47/24 61/20 63/21 67/9 68/3
70/2 70/6 70/13 70/22 71/20 72/3 72/7
72/19 77/5 77/7 79/25 81/1 83/20 83/21
83/25 84/13 85/10 85/12 85/13 85/25
86/11 87/4 87/7 87/17 88/1 88/16 90/15
92/6 93/2 93/3 93/19 95/20 96/9 96/18
96/19 99/10 100/21 102/7 102/10 103/18
103/21 105/25 106/10 106/11 106/22
though [13] 7/23 12/14 28/11 49/8 51/15
58/17 58/19 60/23 62/2 72/7 73/3 97/20
102/16
thought [5] 49/17 66/14 84/23 101/12
104/2
three [2] 60/4 86/15
through [25] 3/22 3/23 3/25 6/19 8/22
9/18 10/14 18/17 28/3 28/4 38/23 41/15
61/16 61/20 62/25 63/1 63/7 63/15 74/7
86/3 87/11 92/23 92/24 94/14 97/19
throughout [1] 55/14
throughs [1] 96/17
time [49] 12/7 17/4 17/9 18/14 20/18
23/8 25/6 25/14 26/9 29/10 31/2 31/16
31/22 35/8 35/25 36/2 37/2 37/13 40/13
41/16 42/17 48/20 49/4 56/15 57/19
58/15 59/16 59/20 65/11 65/21 68/24
69/25 70/4 70/19 72/14 72/15 74/22 75/2
75/6 75/9 75/14 76/24 94/17 96/13 97/15
98/2 103/14 107/6 107/8
timeliness [1] 56/23
timing [1] 16/21
tipped [2] 45/16 47/1
title [1] 97/17
titles [1] 27/25
today [18] 3/22 4/4 4/24 6/12 7/10 10/5
25/5 43/7 48/13 53/21 64/6 70/18 95/14
101/15 104/8 104/8 104/14 108/18
today's [1] 34/10
together [2] 21/6 21/12
told [1] 29/11
tomorrow [1] 65/15
too [8] 4/9 22/6 54/13 56/5 86/11 86/17
108/2 108/20
took [4] 52/3 60/11 78/8 80/4
tool [1] 22/2
totally [1] 22/3
track [1] 79/7
transaction [1] 90/15
transactions [9] 83/23 88/8 90/12 90/13
90/21 91/7 101/9 103/1 103/21
TRANSCRIBED [2] 1/10 2/7
transcript [5] 68/4 68/5 100/7 100/13
100/14
transcription [1] 109/13
transfer [2] 27/24 93/22
transferred [1] 86/23
transfers [3] 68/7 88/4 88/16
transmission [1] 87/13
transmitted [3] 85/2 87/13 87/21
transmitting [2] 88/12 91/3
transpired [1] 50/3
travel [20] 23/4 62/12 84/5 91/12 91/13
91/22 91/23 92/1 92/3 92/3 92/8 92/10
92/14 92/20 93/4 93/10 93/12 93/18 94/1
94/2

traveling [2] 14/23 92/25
tree [1] 105/19
trial [27] 22/21 23/8 26/12 34/1 34/14
34/21 35/5 35/9 35/18 35/19 35/22 35/23
36/9 36/18 38/11 42/8 42/12 44/20 45/13
45/17 46/3 47/1 47/2 47/6 59/21 81/3
91/19
tricky [1] 12/1
tried [1] 21/4
trigger [1] 102/3
true [8] 26/17 28/7 36/19 39/5 60/14
74/3 76/14 92/22
truth [1] 35/23
truthful [1] 27/6
try [6] 3/22 4/25 10/3 17/18 19/25 68/16
trying [15] 3/25 9/18 21/3 34/4 34/11
41/8 41/9 46/7 50/12 67/17 74/25 81/19
81/20 103/4 103/24
turn [3] 68/23 79/14 103/24
turns [3] 23/15 68/22 74/10
two [54] 13/1 17/5 18/13 19/8 19/9 19/21
20/19 20/23 20/23 21/9 27/9 32/5 35/1
37/3 38/18 39/24 40/15 44/20 45/20 47/9
50/16 58/9 60/3 65/18 66/17 67/6 67/7
67/10 67/24 68/2 69/2 69/10 70/9 71/18
71/19 76/4 76/23 83/10 83/20 85/22
86/17 88/3 93/16 94/13 95/24 96/3 96/15
96/16 96/24 96/25 97/3 97/5 97/7 98/9
two-way [1] 19/21
twofold [1] 43/3
types [1] 20/7
typical [1] 74/20
typically [2] 14/17 82/13

**U**

U.S [9] 27/9 27/11 27/21 28/3 35/20
47/23 92/25 97/10 97/11
U.S.C [6] 18/21 20/22 55/20 57/24 58/21
72/23
UK [73] 17/20 17/23 17/25 18/15 18/22
19/1 19/4 19/7 19/9 19/12 21/10 21/16
22/22 23/8 23/13 26/12 30/1 30/4 34/22
35/6 35/18 38/7 38/8 38/10 38/16 39/13
40/4 40/5 40/15 40/24 41/19 42/8 42/10
42/15 42/17 45/13 46/3 46/24 47/2 47/14
49/7 49/13 49/15 49/21 49/22 50/1 51/14
51/19 52/2 52/4 52/13 52/21 53/2 53/10
53/12 53/25 54/12 54/23 55/8 56/9 57/8
59/21 59/24 63/19 64/19 70/25 77/4 78/2
78/11 81/3 81/17 91/18 91/19
ulterior [1] 20/9
ultimately [5] 17/3 21/16 21/17 28/2
52/23
unaware [1] 85/20
uncharged [1] 39/16
under [14] 15/4 20/21 37/20 50/13 56/7
57/24 59/12 59/12 75/16 79/19 89/8
92/21 98/15 107/14
underlying [1] 42/14
undermine [1] 54/9
understand [12] 19/16 20/11 37/9 43/17
44/8 62/7 68/1 83/17 93/5 93/7 93/15
96/13
understanding [4] 86/20 89/25 100/1
100/6
Understood [3] 45/2 89/7 107/20
undertaking [1] 86/8
unequivocally [1] 50/15
unidentified [1] 50/7
unintentionally [1] 36/9

UNITED [7] 1/1 1/11 41/15 49/9 56/10
97/9 97/23
universes [1] 71/19
unknow [1] 104/20
unless [5] 25/6 40/2 65/17 93/10 93/16
unnamed [1] 50/6
unnecessary [2] 59/2 103/14
unredacted [4] 76/7 76/11 78/14 99/11
unrelated [3] 16/6 50/6 81/2
unreliability [1] 31/1
unreliable [6] 16/4 26/20 53/6 55/19
61/12 61/12
unreservedly [1] 36/17
unsatisfactory [1] 30/6
until [8] 4/5 42/8 56/21 57/1 63/22 63/22
64/9 85/17
untrustworthy [1] 60/23
up [34] 4/2 7/24 18/2 20/2 21/4 21/24
22/17 24/13 26/22 27/14 30/10 33/3
34/11 37/1 38/3 38/12 41/20 45/13 52/13
54/21 55/23 63/10 65/15 68/23 77/3
77/14 77/20 78/3 82/6 85/17 86/22 88/21
93/1 108/21
updated [1] 35/8
upon [5] 35/24 39/2 58/12 71/11 75/6
us [12] 25/10 38/22 41/17 45/15 47/15
48/13 61/9 62/10 62/18 81/1 98/13
107/23
use [10] 21/1 39/17 40/1 46/18 49/7
49/17 82/8 85/6 85/7 85/14
used [21] 15/10 22/2 41/3 41/5 46/13
50/13 53/9 55/19 70/8 77/4 79/22 83/15
83/18 85/11 88/10 92/8 92/10 92/14 93/4
93/18 94/14
useful [2] 56/8 88/9
using [7] 17/5 49/14 49/16 49/17 54/7
83/14 86/7
utilized [2] 72/19 88/19

**V**

vacate [1] 42/14
VANESSA [2] 1/13 3/7
vendor [2] 78/9 79/23
vendors [17] 69/8 69/10 69/15 70/8
70/20 77/6 77/21 77/23 78/22 80/13
80/14 80/15 80/16 80/20 82/4 82/5 82/7
versus [1] 59/23
very [18] 11/7 11/7 22/2 22/10 23/16
25/11 26/14 27/24 29/21 35/6 38/17
40/12 44/1 50/4 60/17 67/3 67/15 103/20
via [3] 70/9 72/22 84/25
viable [1] 79/3
victory [3] 23/22 23/24 23/25
videographer [1] 10/19
view [6] 29/21 31/15 44/23 62/7 62/8
77/25
Vital [2] 31/17 48/2
vjohannes [1] 1/16
void [1] 40/23

**W**

wait [6] 19/10 53/22 64/9 79/14 107/13
107/19
waited [1] 9/19
wall [1] 95/24
want [40] 6/14 10/14 22/5 22/5 23/22
34/16 38/18 39/17 44/24 46/7 46/8 49/5
49/20 51/11 61/9 62/25 67/19 68/17 69/2
69/13 72/9 73/6 73/13 74/2 74/3 77/18
77/19 80/6 80/7 80/14 82/17 90/15 97/14

W

want... [7]  98/13 98/25 103/3 105/4
105/22 105/23 107/10
wanted [8]  28/13 46/10 49/17 65/20 72/6
74/21 102/5 102/16
wants [2]  78/25 98/7
warrant [3]  21/22 22/15 32/15
was [190]
Washington [1]  1/19
wasn't [12]  4/5 5/3 29/11 31/6 31/14
32/21 38/10 42/15 56/22 63/5 76/6 104/8
waste [1]  44/14
way [33]  2/3 12/9 19/21 21/15 21/23
22/4 23/6 25/23 31/1 32/8 39/8 43/10
49/16 56/1 63/16 67/12 77/21 79/4 80/8
81/16 81/16 83/5 86/17 93/11 93/13
104/16 104/22 105/13 106/7 106/12
107/12 107/13 108/6
ways [2]  46/3 46/7
we [219]
we're [27]  18/20 23/8 44/2 44/17 45/8
46/17 48/17 48/22 48/22 49/2 49/2 49/5
53/1 58/7 61/14 65/22 68/5 72/20 81/20
81/22 83/20 88/18 97/6 97/16 101/24
102/11 105/11
we've [4]  18/16 48/17 48/18 84/2
wearing [1]  67/14
week [11]  101/10 103/7 105/16 105/20
105/22 106/20 106/21 107/12 107/21
107/22 108/10
weeks [2]  10/10 65/18
weird [2]  12/8 12/9
well [43]  3/11 9/6 12/13 13/12 13/13
17/15 21/7 21/19 22/2 26/19 29/6 30/3
37/16 39/3 42/24 44/6 45/1 47/21 50/19
50/22 55/9 57/15 60/11 64/16 66/13
66/14 67/7 71/11 78/22 80/17 81/20
83/13 83/16 84/14 84/20 91/17 92/11
93/8 94/5 98/23 100/18 103/12 109/6
went [8]  6/19 13/12 26/2 58/19 87/25
92/13 93/12 93/24
were [125]
weren't [4]  25/14 64/1 84/13 92/8
what [178]
what's [6]  44/9 54/16 56/10 90/24 91/5
91/9
whatever [9]  6/23 6/24 23/23 38/7 64/17
73/16 85/7 86/5 93/17
whatsoever [2]  50/21 52/9
when [20]  4/14 8/22 10/17 11/25 16/25
30/19 35/17 36/10 43/18 46/8 48/9 52/25
60/7 62/24 68/24 70/18 72/25 106/15
107/4 108/7
where [33]  9/20 9/24 12/16 13/6 13/9
14/14 15/8 19/20 20/25 22/5 32/23 33/1
34/14 34/18 40/21 42/11 44/16 47/19
49/23 52/13 60/14 63/2 63/13 64/3 68/5
68/19 69/14 99/4 102/11 103/15 104/10
104/10 105/12
Whereas [1]  54/2
whether [31]  7/13 9/11 9/13 12/8 13/10
26/23 26/23 35/14 41/8 41/13 41/13
47/11 48/21 51/23 59/9 63/8 63/23 67/22
70/16 80/24 81/2 90/18 92/6 93/3 99/1
101/6 101/7 103/1 105/16 106/20 107/22
which [59]  5/2 5/9 5/11 5/13 5/16 7/9
10/20 13/5 15/20 16/13 16/14 17/12
18/11 22/10 24/23 27/13 28/3 39/2 42/14
42/15 43/20 47/6 51/9 54/12 54/23 57/8
54/4 59/23 59/25 62/24 65/24 72/23

76/16 77/3 77/23 77/25 79/1 80/9 82/7
82/12 82/23 84/2 84/8 84/9 84/9 84/25 86/21
94/13 94/16 94/23 97/22 99/6 99/10
99/17 103/1 103/23 104/7 104/11 105/6
106/13
while [4]  5/3 18/1 38/12 65/8
whipsawed [1]  46/13
Whispering [1]  2/3
who [17]  17/21 24/18 27/25 30/3 38/15
39/18 48/25 52/2 52/14 55/2 68/10 75/21
78/23 80/1 85/17 87/8 89/8 104/17
whole [4]  44/5 44/19 45/22 100/14
whom [1]  96/21
why [29]  4/15 6/12 7/9 15/11 28/24
33/24 36/2 37/10 38/24 39/24 40/2 40/6
51/19 54/4 59/15 63/23 73/19 78/20
79/25 81/6 102/4 104/4 104/23 104/24
105/7 106/13 108/12 108/14 108/17
will [82]  4/11 4/22 7/24 9/7 9/7 9/25 10/2
10/7 13/23 14/11 14/19 15/16 16/8 16/18
19/10 24/2 24/5 27/1 34/3 37/22 37/23
38/11 40/9 40/20 42/5 45/25 46/2 49/8
49/14 58/19 58/21 59/9 63/7 63/10 63/11
63/11 63/14 63/25 64/9 64/24 71/1 71/3
71/4 71/5 71/6 72/6 72/7 73/3 74/6
80/16 82/5 82/19 83/6 86/13 87/19 90/10
90/11 90/12 90/16 90/21 91/4 95/14
100/14 101/4 101/7 101/10 101/24
105/15 105/19 105/21 106/5 106/7
106/15 106/20 107/7 107/12 107/13
107/19 107/22 108/3 108/6 108/19
willing [1]  54/6
Wind [1]  2/3
wise [1]  8/15
wish [4]  33/25 36/8 36/18 59/6
withdraw [4]  10/24 63/10 105/17 107/14
withdrawal [1]  105/23
withdrawing [1]  102/19
withdrawn [6]  10/22 10/25 11/17 12/3
82/3 82/23
within [6]  5/9 12/13 20/15 58/10 73/17
87/22
without [10]  44/3 49/9 51/22 55/21 56/9
70/25 89/25 90/17 102/10 105/24
witness [13]  26/20 26/22 30/3 30/6 33/9
38/15 38/17 67/10 77/9 79/10 88/25 94/20
105/11
witness' [1]  47/10
witnesses [2]  47/9 101/21
WL [1]  30/7
won't [3]  42/6 44/22 70/25
word [1]  21/1
words [6]  29/11 37/5 60/17 82/6 89/14
93/15
work [16]  3/22 3/23 3/25 7/12 28/2 66/4
76/1 76/19 77/16 95/23 95/25 96/1 98/3
98/5 98/12 100/2
worked [1]  78/23
working [1]  92/12
works [1]  67/12
world [5]  9/17 9/20 96/23 102/1 102/10
worth [1]  104/4
would [73]  7/12 8/15 10/9 11/6 11/7 13/2
13/3 13/25 16/12 16/14 17/11 19/20
21/14 27/15 29/1 33/11 36/21 40/1 45/14
46/1 47/3 48/15 48/19 49/13 51/2 52/10
54/15 55/4 55/10 56/20 61/21 69/6 69/17
69/18 71/13 71/14 75/16 77/5 77/8 77/25
79/9 79/11 79/23 79/24 80/19 80/20
82/24 83/25 84/1 87/6 87/7 88/19 89/18

89/18 91/7 93/21 93/22 94/12 95/6 97/2
100/8 100/9 100/10 100/23 102/1 102/2
102/15 103/2 103/23 105/14 105/24
107/2 107/18
wouldn't [9]  29/16 32/8 32/9 40/2 40/7
87/4 92/2 99/24 102/18
wrap [2]  4/2 108/20
write [1]  105/21
writing [2]  10/15 103/8
written [1]  42/20
wrong [6]  12/6 47/12 47/24 63/2 104/12
104/19

X

XYZ [1]  87/10

Y

year [11]  4/11 4/14 25/22 25/24 32/2
41/21 41/22 42/7 44/5 46/2 109/4
years [9]  5/3 22/1 27/9 27/18 41/20
44/20 89/1 94/21 98/10
yes [34]  4/17 4/21 5/22 5/25 7/1 11/13
14/3 14/6 15/1 18/20 22/19 29/13 33/12
33/18 33/21 34/12 37/13 48/1 60/17 61/5
66/20 66/25 70/24 71/13 76/22 81/5 88/7
94/16 95/2 96/2 96/6 100/19 107/24
108/4
yesterday [1]  4/14
yet [10]  19/5 31/2 40/11 44/12 45/19
45/21 49/2 61/24 92/16 104/1
York [45]  7/15 17/11 17/17 17/19 17/22
19/4 20/13 21/12 23/10 24/13 30/21
39/24 40/1 40/8 40/10 40/12 40/17 40/19
41/5 41/18 41/23 42/5 43/17 44/4 44/7
49/4 49/20 49/24 49/25 50/13 54/2 54/9
54/24 55/2 55/17 57/3 58/21 59/3 60/19
61/7 65/10 65/19 72/23 103/20 103/25
you [309]
you'd [1]  102/19
you're [24]  4/18 6/1 7/19 9/21 25/4 31/11
41/10 42/2 42/7 44/19 51/5 53/11 56/24
75/24 76/3 76/21 79/2 79/20 80/7 83/9
84/19 87/19 104/5 104/18
you've [5]  99/17 104/20 104/21 105/5
105/16
your [158]
yourselves [1]  107/12