IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-20707-JEM/BECERRA

In re: Application Pursuant to
28 U.S.C.§ 1782 of

FARHAD AZIMA

                      Petitioner,

v.

INSIGHT ANALYSIS AND RESEARCH, LLC,
SDC-GADOT, LLC, and AMIT FORLIT,

                      Respondents.
_____/

## REPLY IN SUPPORT OF AMENDED PETITION FOR DISCOVERY

Pursuant to D.E. 62, Petitioner Farhad Azima filed an amended petition for discovery under 28 U.S.C. § 1782 ("Section 1782") seeking documents from Insight Analysis and Research LLC ("Insight") and SDC-Gadot LLC ("Gadot") and documents and deposition testimony from Amit Forlit in his personal capacity. (*See* D.E. 64.) In response, the Respondents submitted two separate opposition briefs, for a combined 82 pages (*see* D.E.s 69 and 70), that that mostly ignores the legal issues before this Court and essentially concedes that Petitioner has met the Section 1782 requirements for discovery.

Indeed, most of Respondents' briefing consists of factual arguments regarding whether Forlit hacked Petitioner, thus demonstrating that Forlit has evidence relevant to Petitioner's claim in a foreign proceeding. Furthermore, this Court has jurisdiction to order the discovery of Forlit because he is found in the jurisdiction and acts as the alter ego of his Florida-based companies, Insight and Gadot. Indeed, Insight and Gadot previously have conceded this Court's jurisdiction

1

2810389.3

and submitted to Section 1782 discovery in their corporate capacity in this same matter – and Forlit has testified that he is the sole person in charge of and working on behalf of those entities.

As explained in Petitioner's amended petition and addressed below, the statutory requirements of Section 1782 are met, the *Intel* factors also favor of the discovery sought, and indisputably, at this junction, the Court has broad discretion to grant the petition and order discovery from Respondent Forlit.[1]

## I. Insight and Gadot Should Provide Discovery and Have No Basis to Oppose Discovery of Forlit

Petitioner posits that Insight and Gadot must produce discovery that it has not yet provided. Insight and Gadot have no basis to oppose discovery from Petitioner, and to the extent they are retroactively challenging the discovery ordered against them, that argument also fails. Respondents do not dispute that these entities are subject to discovery in this district. They do not argue any of the statutory requirements are not met, that is, that (1) both entities reside and are found in the district, (2) Petitioner is an "interested person," (3) evidence is being sought and (4) the evidence will be used in a foreign proceeding. *See In re England/Bahamas*, No. 20-MC-61696, 2021 WL 3270074, at *2 (S.D. Fla. July 30, 2021) (citing *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 817 (11th Cir. 2019))). Indeed, it is odd that Respondents now oppose the petition since they have already submitted discovery by way of two Rule 30(b)(6) depositions and limited document production.[2]

---

[1] Notably, Respondents' opposition to the amended petition appears to address other motions and filings in this case – such as renewing arguments related to a motion to dismiss and quashing subpoena requests. Petitioner submits that such motions are already pending, have been fully briefed and argued, and simply convolute the real issues at hand. As such, Petitioner will only address the Respondents' arguments related to the amended petition in this reply.

[2] Insight and Gadot continue to only "produce" materials that Petitioner provided to them or already has. For instance, they recently produced the documents that were presented by Petitioner at the Rule 30(b)(6) depositions. This is inadequate. Insight and Gadot have a duty to search their own records for all responsive documents in their possession, custody, or control.

2810389.3

Respondents' primary argument appears to be that Petitioner's discovery requests are unduly burdensome. However, Petitioner's outstanding requests for discovery are quite reasonable and limited. It is also difficult to understand how such requests can be "burdensome" when Respondents continue to state that they hold nothing responsive and have not searched their own records. As such, to the extent that the Court ordered Respondents to produce select bank records, accounting records, emails, and messaging application documents (*see* D.E. 62 at ¶ 5), such materials are still due for production and an order should be entered granting the amended petition that reiterated the need for such discovery.

## II. Petitioner Has Met the Section 1782 Requirements for Discovery of Forlit, and Discovery is Necessary to Prevent Respondents' Shell Game

Discovery from Forlit in his personal capacity also meets the statutory and discretionary factors of Section 1782, and the Court should order Forlit to sit for a personal deposition and to produce documents in his possession, custody, or control. Forlit does not dispute that Petitioner is a party to the U.K. proceeding and is seeking discovery for use in the U.K. proceeding. Rather, he argues only that Forlit does not reside and is not found in the district.[3]

Forlit is "found" in this district because of he has substantial and consistent contacts related to the allegations in the U.K. proceeding. Additionally, Forlit "resides" or is "found" in the district because he is the "alter ego" of Insight and Gadot, which are both Florida companies owned and operated by Forlit, which are clearly – and undisputedly – subject to this Court's jurisdiction, as described above. Forlit has admitted that he is the only individual controlling those entities, that

---

[3] Forlit continues to mention that Petitioner has brought a RICO lawsuit against Forlit and others in the Southern District of New York. It is unclear what that lawsuit – and discovery that may be produced in that case – has to do with this Section 1782 request. In fact, Petitioner's counterclaim for hacking will go to trial in the U.K. next year, and the information Petitioner seeks here is directly relevant to those claims. It is important to also note that the only defendant not served in New York is Forlit, who continues to dodge service, and that his entities, Insight and Gadot, have moved to dismiss that case. As such, Forlit knows that Petitioner will not get meaningful and timely discovery from the RICO suit to use in the upcoming U.K. trial.

2810389.3

he used the entities just to make payments that were blocked by the banks, and that he used the entities and their bank accounts for personal use.

As the alter ego of those entities, Forlit is subject to the same jurisdiction as those entities and the Court has the discretion to order discovery from Forlit himself. In addition, the discretionary factors favor ordering discovery against Forlit personally, which will help prevent him from playing a shell game to avoid discovery in this matter. Such conduct should not be rewarded in this jurisdiction.

### A. Forlit is "found" in the jurisdiction because of his substantial contacts with the jurisdiction directly related to this matter

Forlit's jurisdictional arguments are based entirely on the idea that someone is only "found" in a jurisdiction for purposes of Section 1782 if they are "tagged" or physically served there. *See* D.E. 69 at ¶ 15.  However, courts have persuasively stated that "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019).  It was "Congress's intent that § 1782 be 'interpreted broadly,' especially given the district court's ability 'to exercise discretion in deciding whether, and in what manner, to order discovery in particular cases." *Id*. at 528 (citation omitted) (also noting that "Courts have consistently given broad interpretations to similar 'found' language in other statutes."). Given Congress's intent to give courts broad discretion to order discovery under Section 1782, the Court should adopt the Second Circuit's interpretation of the statute and find that Forlit is "found" in the district as long as there is personal jurisdiction over him consistent with due process.

As to a non-resident, "a federal court may properly exercise personal jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the state long-arm statute, and (2) the Due Process Clause." *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1134-35 (S.D.

Fla. 2007) (citations omitted). In this matter, it is clear that due process weighs in favor of personal jurisdiction over Mr. Forlit.

As to the long-arm statute, Florida's long arm statute permits jurisdiction over someone who is not a citizen or resident of Florida who is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Fla. Stat. §48.193(1)(a)(1). The statute is specifically designed, consistent with principles of due process, to afford courts jurisdiction over individuals who have substantial and consistent contacts with the relevant district in the absence of citizenship or physical presence. *See, e.g.*, *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1237-38 (S.D. Fla. 2015); *XL Vision, LLC v. Holloway*, 856 So. 2d 1063 (Fla. Dist. Ct. App. 2003); *ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp. 3d 1281 (S.D. Fla. 2021); *Iconic Content, LLC v. Unknown Officer*, 522 F. Supp. 3d 1179 (M.D. Fla. 2020).

As previously argued at numerous hearings and in our amended petition, Forlit has substantial and consistent contacts with this district that specifically relate to the conduct alleged in the U.K. proceeding. For example, Forlit created Insight and Gadot in Florida and was directly paid millions of U.S. dollars through those entities for Project Beech, which Petitioner posits, entailed the illicit hacking of his data. Forlit also admitted that he flew from Israel to Florida to set up Gadot's and Insight's bank accounts. [D.E. 67, Ex. A-5 (Gadot Tr.) at 80:20-25; Ex. A-6 (Insight Tr.) at 62:5-63:5.] Both Insight and Gadot are still operational, with Forlit serving as the managing member for both entities and signing their annual reports. (*Id.* at 66:19-67:14; Ex. A-6 at 55:21-56:4.) Further, Forlit does not dispute that he is the individual coordinating such transactions in Florida, by and through Insight and Gadot. (D.E. 67, Ex. A-5 at 66:19-67:14; Ex. A-6 at 55:21-56:4). In fact, he admits he is the only employee and member of the entities.

### B. Forlit is the "alter ego" of Insight and Gadot and as a result is subject to the same jurisdiction the court has over the entities

Separately, jurisdiction over Forlit is appropriate because he is the alter ego of Respondents Insight and Gadot. Because he is the alter ego of entities that are clearly subject to Section 1782 jurisdiction, he is also subject to the jurisdiction of this court. As this Court is aware, piercing the corporate veil is appropriate when an entity only acts as a "puppet" for an individual. *See, e.g.*, *E. Okeechobee Palms, LLC v. Kellam*, No. 14-cv-80866, 2015 WL 12977392, at *4 (S.D. Fla. 2015); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984); *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 556 (Fla. Dist. Ct. App. 2017).

In this case, Forlit testified during the Rule 30(b)(6) depositions that he solely formed Insight and Gadot and is the only member or employee of the companies, stating that he did not pay particular attention to the title he used on official documents (President, Secretary, etc.) because "for all intents and purposes, it was me who was running the company." (D.E. 67, Ex. A-7 at 55:21-56:4.) He testified that for both entities "there's no business activity other than to serve as a conduit to transfer money" to an entity owned by Forlit, Israel-based Gadot Information Services. (D.E. 67, Ex. A-6 at 16:8-13.)

"The company was established mainly because there was a problem transferring monies from Dubai to Israel . . . [so] two companies were established in the United States to facilitate the transfer of money." [*Id.* at13:1-12 and 98:19-99:4 (stating that Insight and Gadot typically did not have engagement letters with Stuart Page but "when we had problems with funds transferring with Hong Kong we would make some arrangements that would pacify the banks.").] The accounts also included several charges of personal expenses for Forlit, including payments to Miami salon in April 2020 and for the purchase of a Porsche in June 2019. [D.E. 67, Ex. E, p. 15 (SDC-GADOT-CITI_00090) and p. 18 (SDC-GAFOT-CITI_00114).]

Thus, by Forlit's own words, the companies were created and controlled solely by and for Forlit and his benefit. Because it is not possible to distinguish between Forlit's personal actions and those of Insight and Gadot, as they are his alter ego. To use them as a shield and sword in this regard is contrary to the principles of fairness and equity that our legal system allows.

Moreover, while Forlit argues that he cannot be the alter ego of Insight and Gadot because of his other company, Gadot Information Services, D.E. 69 at ¶¶ 23-27, that argument is a non-sequitur. Forlit may have done business through Gadot Information Services, but he created Insight and Gadot to ensure he was paid for his work. This does not undermine Petitioner's alter ego argument; in fact, it enhance the necessity of discovery from Forlit because it shows that Insight and Gadot had no legitimate purpose and were used just to receive and transfer funds related to Forlit's conduct.

### C. *Intel* Factors Demonstrate that Discovery Over Forlit Is Appropriate.

The discretionary *Intel* factors also favor discovery. Forlit does not dispute that he is not a party to the UK proceeding, which is the first *Intel* factor. The second *Intel* factor relates to the receptivity of the foreign tribunal to foreign evidence, and the third relates to whether the application is an attempt to circumvent foreign proof-gathering restrictions. Forlit actually argues that **because** the U.K. is receptive to foreign evidence, Petitioner should get the evidence through Israeli processes. This misunderstands the proper inquiry. *Intel* is concerned with parties using Section 1782 to gather evidence that is not allowed in the foreign proceeding. Since Forlit admits that the U.K. proceeding is receptive to foreign evidence, these factors favor granting the revised petition.

Last, Forlit argues that the request is burdensome, which relates to the fourth *Intel* factor. The request for documents and a deposition from Forlit is not unduly burdensome and is necessary

to prevent Respondents from using a shell game to avoid discovery, which they have done thus far.  For example, Page stated that he paid Forlit $250,000 USD per month through 2020 in connection with the hacking reports that were prepared, D.E. 67, Ex. A-5 at 95:22-96:4, and Forlit admitted that Insight and Gadot were simply conduits to pay the Israeli company for its work, *id.* at 16:8-13.  But at the Rule 30(b)(6) depositions of Insight and Gadot, Forlit refused to answer questions about the employees, subcontractors, and vendors who helped prepare the reports on the basis that the reports were prepared by Gadot Information Services.  (*Id.* at 24:12-25:15.)  Forlit similarly refused to answer questions about "sources" who provided information.  (*Id.* at 57:14-59:3.)  He also refused to answer questions about a report containing Petitioner's hacked data because the report was written prior to the formation of the company.  (*Id.* at 185:24-186:6.)  These are just mere examples of the discovery games being played here.  The Court should end that by ordering discovery from Forlit himself, which would move this matter forward accordingly.

**D.  Petitioner's Allegations Are Based Upon Substantial Evidence**

Finally, though he admits that it is not relevant to his opposition to the amended petition (*see* D.E. 69 at ¶ 30), Forlit repeatedly argues that Petitioner's factual assertions – including that Forlit is a hacker who was involved in the hacking of Petitioner's data – are untrue.  Ultimately, that is the question before the U.K. court and this proceeding is being used to gather evidence for that upcoming trial.  However, given Respondents' flagrant allegations about Petitioner's candor, it is worth noting that Petitioner's allegations in this case are not based on mere information and belief.

The original and amended petitions were supported by multiple witness statements from Page, who said that Forlit conducted investigation through "signal intelligence, which is intelligence-gathering by interception of communications" and is a term that continues to be used

"to include the hacking of confidential emails and unauthorized access to other confidential electronic data." [D.E. 67, Ex. A-4 (Affidavit of Stuart Robert Page) at ¶¶ 11-12.] Page said that Forlit authored monthly reports, some of which included "extracts from confidential documents" and "[i]t was obvious to me (and it would have been obvious to anyone else reading the reports) that such documents were obtained as a result of unauthori[z]ed access to computers," *i.e.*, hacking. (*Id.* ¶¶ 15-16.)

Forlit makes much of the fact that Page has admitted that his testimony in the first U.K. trial was not true. (D.E. 69 at ¶ 34; D.E. 67, Ex. A-4 at p. 14 n.7.) Indeed, Page has admitted that his prior statements – on behalf of RAKIA and made in concert with Forlit – were false. (D.E. 67, Ex. A-4 at ¶¶ 46-53.) Importantly, however, Forlit continues to ignore that much of Page's current testimony about Forlit has been corroborated by Forlit himself or by third party records. For example, Page first stated that he paid Forlit approximately $250,000 USD per month, *id.* at ¶ 17, which subsequently subpoenaed bank records and Forlit's Rule 30(b)(6) deposition testimony corroborated. (*See* D.E. 67, Ex. A-5 at 95:22-96:4.)

In addition, Forlit admitted in the deposition testimony that he prepared regular reports and that the reports looked very similar to the hacking reports that Page provided as evidence. (D.E. 67, Ex. A-6 at 125:15-24.) Not surprisingly, Forlit did not admit that the reports contained excerpts from hacked documents, but the examples provided by Page include information such as privileged emails and confidential bank records that are personal information only accessible by Petitioner. Again, while Petitioner does not believe any of this factual squabbling is relevant to the Court's ruling on its amended petition, Petitioner did want to briefly clarify the accuracy of Respondents arguments.

9

### III.     CONCLUSION

For the foregoing reasons, and those in the amended petition, Petitioner respectfully requests that this Court grant his Section 1782 discovery application.

Dated: January 30, 2023               Respectfully submitted,

<u>s/ *Vanessa Singh Johannes*</u>
Michael S. Pasano (FBN 475947)
Email: MPasano@carltonfields.com
Vanessa Singh Johannes (FBN 1028744)
E-mail: VJohannes@carltonfields.com
CARLTON FIELDS P.A.
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Telephone: (305) 530-0050

<u>*s/ Ian Herbert*</u>
Kirby D. Behre (admitted *pro hac vice*)
Timothy P. O'Toole (admitted *pro hac vice*)
Ian A. Herbert (admitted *pro hac vice*)
Calvin Lee (admitted *pro hac vice*)
MILLER & CHEVALIER CHARTERED
900 16th Street, NW
Washington, D.C. 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
Email: kbehre@milchev.com

*Counsel for Petitioner*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 30, 2023, a true and correct copy of the foregoing document was filed via CM/ECF and served on counsel for Insight, Gadot, and Mr. Forlit, that is, Christopher S. Salivar and Elan I. Baret, via such means.

                                                                            *s/ Vanessa Singh Johannes*
                                                                            Vanessa S. Johannes